**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DONALD J. TRUMP,

                Plaintiff,

    v.

HILLARY R. CLINTON, et al.,

                Defendants.

Case No. 2:22-cv-14102-DMM

**DEFENDANT HILLARY RODHAM CLINTON'S MOTION TO DISMISS THE
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

David E. Kendall*
Katherine M. Turner*
Michael J. Mestitz*

WILLIAMS & CONNOLLY LLP
725 Twelfth Street N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

        * Motion for admission *pro
hac vice* pending

David Oscar Markus

MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, FL 33128
Tel: (305) 379-6667

*Counsel for Defendant Hillary
Rodham Clinton*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

ARGUMENT .................................................................................................................1

I.    PLAINTIFF'S CLAIMS ARE TIME-BARRED ON THE FACE OF THE
COMPLAINT ........................................................................................................1

II.   EACH OF PLAINTIFF'S CLAIMS FAILS ON THE MERITS.......................................5

    A.    Count I:  RICO.............................................................................................6

    B.    Count II:  RICO Conspiracy .................................................................14

    C.    Count III:  Injurious Falsehood............................................................15

    D.    Count IV:  Conspiracy to Commit Injurious Falsehood .......................19

    E.    Count VI:  Conspiracy to Commit Malicious Prosecution ...................19

    F.    Count VII:  Computer Fraud and Abuse Act .......................................20

    G.    Count VIII:  Theft of Trade Secrets .....................................................20

    H.    Count X:  "Agency"..............................................................................20

CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*ADT LLC v. Vivint, Inc.*, No. 17-cv-80432, 2017 WL 5640725 (S.D. Fla. Aug. 3, 2017) .............4

*Agency Holding Corp. v Malley-Duff & Assocs.*, 483 U.S. 143 (1987) ..........................................3

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..........................................19

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017) .................................................7

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) .....................................6, 7, 15

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) .................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ *passim*

*Barabe v. Apax Partners Eur. Managers, Ltd.*, 359 F. App'x 82 (11th Cir. 2009) ......................20

*Beck v. Prupis*, 529 U.S. 494 (2000) ......................................................................................10, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................6, 7, 19

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................................................7

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............................................................................................15

*Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*,
    No. 19-cv-2527, 2020 WL 5628734 (M.D. Fla. Sept. 21, 2020) ...........................................20

*Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002) ............................................................................4

*Ferrell v. Durbin*, 311 F. App'x 253 (11th Cir. 2009)..................................................................12

*From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52 (Fla. Dist. Ct. App. 1981) ..........................18

*Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007)....................................................14

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003) ............14

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989).................................................................11, 12

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir.), *vacated on other grounds*, 138 S. Ct. 377
    (2017)........................................................................................................................................2

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020).................................................8

*Hemi Grp. v. City of New York*, 559 U.S. 1 (2010) .....................................................................12

iii

*Henry v. ExamWorks Inc.*, No. 20-cv-12268, 2021 WL 3440698 (11th Cir. Aug. 6, 2021) ...........2

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)...........................................................................16

*Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227 (N.D. Ill. 1996)........................................................8

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) ...........................................11, 12

*Kanarick v. GE Credit Retail Bank Care Credit*,
    No. 13-cv-80039, 2013 WL 12092479 (S.D. Fla. Sept. 6, 2013) .....................................15, 18

*Klayman v. City Pages*, No. 13-cv-143, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015),
    *aff'd*, 650 F. App'x 744 (11th Cir. 2016)...........................................................................17

*La Grasta v. First Union Sec.*, 358 F.3d 840 (11th Cir. 2004) .........................................................1

*Lehman v. Lucom*, 727 F.3d 1326 (11th Cir. 2013) ..........................................................................3

*Masson v. New Yorker Mag.*, 501 U.S. 496 (1991) .........................................................................17

*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116 (S.D. Fla. 2019) .........................................19

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ...................................................................16

*Nunes v. Fusion GPS*, 531 F. Supp. 3d 993 (E.D. Va. 2021) .........................................................13

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974).....................................................................................................16

*Ray v. Spirit Airlines*, 836 F.3d 1340 (11th Cir. 2016) ..................................................................12

*Rock the Vote v. Trump*, No. 20-cv-06021, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020)............2

*Sentry Data Sys. v. CVS Health*, 361 F. Supp. 3d (S.D. Fla. 2018)................................................8

*Sewell v. Bernardin*, 795 F.3d 337 (2d Cir. 2015) ...........................................................................4

*Simpson v. Sanderson Farms*, 744 F.3d 702 (11th Cir. 2014)......................................................6, 7

*Super Vision Int'l v. Mega Int'l Comm. Bank*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...............15

*TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289 (S.D. Fla. 2016) .........................20

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) .............................................................10

*United States v. Flynn*, 507 F. Supp. 3d 116 (D.D.C. 2020) ...........................................................2

*United States v. Smith*, 22 F.4th 1236 (11th Cir. 2022) ...................................................................8

iv

*United States v. Sutton*, No. 20-7028, 2022 WL 1014359 (10th Cir. Apr. 5, 2022)......................10

*United States v. Young*, 916 F.3d 368 (4th Cir. 2019) ................................................................10

*Willis v. Lipton*, 947 F.2d 998 (1st Cir. 1991) ..........................................................................14

*Young v. Ball*, 835 So. 2d 385 (Fla. Dist. Ct. App. 2003)...........................................................4

## STATUTES

18 U.S.C. § 1030(g) ..................................................................................................................4

18 U.S.C. § 1503 ....................................................................................................................10

18 U.S.C. § 1512 ..............................................................................................................8, 9, 10

18 U.S.C. § 1512(f)(1) ............................................................................................................10

18 U.S.C. § 1515(a) ................................................................................................................10

18 U.S.C. § 1519 ....................................................................................................................10

18 U.S.C. § 1622 ....................................................................................................................10

18 U.S.C. § 1832 ......................................................................................................................7

18 U.S.C. § 1836 ......................................................................................................................5

18 U.S.C. § 1836(d) ..................................................................................................................5

18 U.S.C. § 1962 ....................................................................................................................12

18 U.S.C. § 1962(c) .............................................................................................................6, 15

18 U.S.C. § 1962(d) .........................................................................................................14, 15

Fla. Stat. § 95.11(4)(g) .............................................................................................................4

Fla. Stat. § 95.11(3)(p) .............................................................................................................4

## OTHER SOURCES

Donald J. Trump (@realDonaldTrump), archived at The Trump Twitter Archive,
    thetrumparchive.com ...............................................................................................2, 3, 16

Robert S. Mueller, III, Report on the Investigation into Russian Interference in the 2016
    Presidential Election, 1 (Vol. 1, March 2019),
    https://www.justice.gov/storage/report.pdf...................................................................17

Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, S. Rep.
116-290, vol. 2 (2020), https://www.intelligence.senate.gov/sites/default/files/
documents/Report_Volume2.pdf ............................................................................17

U.S. Dep't of Justice, Office of the Inspector General, Review of Four FISA Applications
and Other Aspects of the FBI's Crossfire Hurricane Investigation (2019), available at
https://www.justice.gov/storage/120919-examination.pdf ...............................13, 14

## INTRODUCTION

Whatever the utility of Plaintiff's Complaint as a fundraising tool, a press release, or a list of political grievances, it has no merit as a lawsuit, and should be dismissed with prejudice.

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE TIME-BARRED ON THE FACE OF THE COMPLAINT

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate . . . if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec.*, 358 F.3d 840, 845–46 (11th Cir. 2004).  This is plainly such a case.  The gravamen of Plaintiff's claims concerns alleged events occurring in 2016 and 2017, so the statute of limitations on his claims expired long ago.

Plaintiff focuses on four supposed instances of Defendants' alleged wrongdoing, which he collectively characterizes as "an unthinkable plot . . . to weave a false narrative that their Republican opponent, Donald J. Trump, was colluding with a hostile foreign sovereignty."  Compl. ¶ 1.  First, he alleges that Defendants conspired in the creation of the Steele Dossier.  *Id.* ¶ 4. Second, he alleges that Defendants conspired to obtain and reveal Domain Name System ("DNS") internet traffic information from various computers.  *Id.* ¶¶ 5, 123.  Third, he alleges that Defendants conspired to provide false statements to law enforcement, which he asserts were single-handedly responsible for a variety of investigations into Plaintiff, his campaign, and his associates.  *Id.* ¶¶ 7, 8.  Finally, he alleges that Defendants "orchestrated a malicious conspiracy to disseminate patently false and injurious information"—that is, public speech with which he disagrees.  *Id.* ¶ 9.

By the Complaint's own telling, these alleged events occurred long ago, and Plaintiff has been aware of his purported injuries for years.  For example, Plaintiff alleges that the DNS traffic

collected from the Trump Organization computers was public knowledge "in or about late October 2016." *Id.* ¶¶ 183–84. The only concrete allegations concerning Clinton date back to October 31, 2016, when she issued two tweets referring to the reported connection between Plaintiff and Alfa Bank, based on the public reporting of the DNS traffic information. *Id.* ¶¶ 188–89.

Plaintiff's claims about the "Steele Dossier" fare no better. Buzzfeed News published the dossier on January 10, 2017. That day, and in the days that followed, Plaintiff took to Twitter to express the same allegations at issue here, confirming that he was on notice of his supposed claims.[1] On January 11, 2017, Plaintiff tweeted "Russia just said the unverified report paid for by political opponents is 'A COMPLETE AND TOTAL FABRICATION, UTTER NONSENSE.' Very unfair!"[2] On January 13, 2017, in a series of tweets, he laid out his allegations in more detail:

> It now turns out that the phony allegations against me were put together by my political opponents and a failed spy afraid of being sued…. Totally made up facts by sleazebag political operatives, both Democrats and Republicans – FAKE NEWS! Russia says nothing exists. Probably… released by "Intelligence" even knowing there is no proof, and never will be. My people will have a full report on hacking within 90 days![3]

Moreover, additional allegations confirm that information publicly available throughout 2017 put Plaintiff on notice of his claims. For example, the Complaint alleges that in March 2017, Robert Mook allegedly "acknowledged" that "surveillance may have been conducted on Trump

---

[1] The Court may rely on judicially noticeable facts in ruling on the timeliness of Plaintiff's claims on a motion to dismiss. *See, e.g.*, *Henry v. ExamWorks Inc.*, No. 20-cv-12268, 2021 WL 3440698, at *3 (11th Cir. Aug. 6, 2021) (affirming dismissal on statute-of-limitations grounds).

[2] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 11, 2017), archived at The Trump Twitter Archive, thetrumparchive.com. The Court may take judicial notice of Plaintiff's tweets. *See, e.g.*, *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir.) (per curiam) (taking judicial notice of Plaintiff's tweets), *vacated on other grounds*, 138 S. Ct. 377 (2017); *Rock the Vote v. Trump*, No. 20-cv-06021, 2020 WL 6342927, at *4 n.2 (N.D. Cal. Oct. 29, 2020) (same); *United States v. Flynn*, 507 F. Supp. 3d 116, 126 n.6 (D.D.C. 2020) (same).

[3] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 13, 2017) (ellipses in original), archived at The Trump Twitter Archive, thetrumparchive.com.

computers as well." Compl. ¶ 220. It also alleges that the claim that "Sussmann was acting on behalf of, and in coordination with, the Clinton Campaign and DNC" was "confirmed in December 2017." *Id.* ¶ 218.

Indeed, *all* of Plaintiff's claims accrued no later than October 29, 2017, when Plaintiff publicly asserted that Clinton was responsible for the Steele Dossier, "the Comey fix," and "phony" stories on his collusion with Russia, and claimed the facts of the alleged conspiracy were "pouring out":

> Never seen such Republican ANGER & UNITY as I have concerning the lack of investigation on Clinton made Fake Dossier (now $12,000,000?),… …the Uranium to Russia deal, the 33,000 plus deleted Emails, the Comey fix and so much more. Instead they look at phony Trump/Russia,…. …"collusion," which doesn't exist. The Dems are using this terrible (and bad for our country) Witch Hunt for evil politics, but the R's… …are now fighting back like never before. There is so much GUILT by Democrats/Clinton, and now the facts are pouring out. DO SOMETHING![4]

These allegations form the gravamen of all of Plaintiff's claims. But notwithstanding his rousing, all-caps call to action, Plaintiff waited four years, four months, and twenty-four days before filing suit. His delay renders each of his claims untimely.

The statute of limitations for civil RICO actions (Count I) and conspiracy to commit RICO violations (Count II) is four years, and begins running when the injury was or should have been discovered. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013); *Agency Holding Corp. v Malley-Duff & Assocs.*, 483 U.S. 143 (1987). Because the claim accrued no later than October 29, 2017—the date by which Plaintiff's own statements and allegations make clear he was aware of not only his alleged injury, but also the supposed conspiracy and Clinton's alleged role in it—the statute of limitations expired by October 29, 2021.

---

[4] Donald J. Trump (@realDonaldTrump), Twitter (Oct. 29, 2017) (ellipses in original), archived at The Trump Twitter Archive, thetrumparchive.com.

The statute of limitations for injurious falsehood, a type of "trade slander" under Florida law, is two years from publication. *ADT LLC v. Vivint, Inc.*, No. 17-cv-80432, 2017 WL 5640725, at \*6 & n.8 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.); Fla. Stat. § 95.11(4)(g).  The statute of limitations on Plaintiff's claims regarding Clinton's October 31, 2016 tweets therefore ran on October 31, 2018.  Compl. ¶¶ 188–89.[5]

The statute of limitations for conspiracy to commit injurious falsehood (Count IV) and conspiracy to commit malicious prosecution (Count VI) is four years from the date of injury, in keeping with Florida's statute of limitations for general claims of civil conspiracy.  *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002); *Young v. Ball*, 835 So. 2d 385, 386 (Fla. Dist. Ct. App. 2003); *see* Fla. Stat. § 95.11(3)(p) (providing four-year statute of limitations for claims not otherwise listed).  Because Plaintiff's claims again accrued no later than October 29, 2017, the statute of limitations on these claims expired by October 29, 2021.[6]

The statute of limitations under the Computer Fraud and Abuse Act (Count VII) is two years from the violation or discovery of the violation.  18 U.S.C. § 1030(g).  Here, Plaintiff asserts that "[t]he acts of the above-mentioned Defendants" were not discoverable until September 2021.  Compl. ¶ 393.  But Plaintiff's other factual allegations—which state that the DNS lookup information was publicly known in October 2016—contradict this boilerplate legal conclusion. *Id.* at ¶¶ 183–89.  As the Second Circuit has held, a claim under the Computer Fraud and Abuse Act accrues when the plaintiff is aware of the alleged violation, even if the plaintiff does not know the identity of the alleged perpetrators.  *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015).

---

[5] The Complaint also cites two additional tweets by Clinton from June 16, 2021, and February 16, 2022.  *See* Compl. ¶¶ 260–61.  Although these tweets fall within two years of the Complaint's filing, any claims based on those statements fail on the merits.  *See infra*, pp. 15–18.

[6] Moreover, tolling for delayed discovery does not apply to conspiracy claims under Florida law. *See Davis*, 832 So. 2d at 709; *Young v. Ball*, 835 So. 2d at 386.

Thus, even if Plaintiff was unaware of the identity of the supposed perpetrators until more recently, Plaintiff's knowledge of the DNS information's release in late October 2016 means the statute of limitations ran in late October 2018.

Finally, the statute of limitations for a civil action for theft of trade secrets under 18 U.S.C. § 1836(d) is three years from the date "on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836. Here, again, Plaintiff's claims accrued upon public knowledge of his DNS traffic in October 2016. The statute of limitations therefore ran in late October 2019.

## II.   EACH OF PLAINTIFF'S CLAIMS FAILS ON THE MERITS

Even were Plaintiff's claims timely, they are still meritless. To be clear, Clinton vigorously disputes the allegations in the Complaint. But even taking those allegations as true, Plaintiff fails to plead any cognizable legal causes of action.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will "naked assertions devoid of further factual enhancement." *Id.* (alterations adopted) (citation omitted). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

Moreover, because Plaintiff hinges his RICO claim on a pattern of allegedly fraudulent activity, *see, e.g.*, Compl. ¶ 281 (alleging a "fraudulent scheme"), he must comply with Rule 9(b)'s

heightened pleading standard, which requires that a party state with particularity the circumstances constituting fraud. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Plaintiff's pleading flunks both the traditional and the heightened standards. The *only* factually supported allegations concerning Clinton in the lengthy Complaint are that she declared her candidacy for president on April 12, 2015, Compl. ¶ 42; she won the Democratic Party nomination for president on July 26, 2016, *id.* ¶ 128; she tweeted twice regarding reported computer connections between Trump and Alfa Bank on October 31, 2016, *id.* ¶¶ 188–89; and she made two subsequent statements regarding Plaintiff and Russia, *id.* ¶¶ 260, 261, 335.

The remainder of the allegations about Clinton are purely conclusory: that she "orchestrated" schemes, Compl. ¶ 1, "exerted control over" others, *id.* ¶ 54, "conceived and funded" Defendants' "plot," *id.* ¶ 57, "direct[ed]" activities, *id.* ¶¶ 81, 123, that others acted "at [her] behest," *id.* ¶ 172, and that she otherwise masterminded each element of Defendants' alleged wrongdoing through agents and intermediaries, *see generally id.* ¶¶ 424–46 (alleging a cause of action for "Agency" against Clinton). These "formulaic recitation[s] of the elements of a cause of action," and "legal conclusions" are the type of fact-free pleading this Court is bound to reject. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. And a closer examination of Plaintiff's purported causes of action reveals ample additional reasons to dismiss.

### A.     Count I:  RICO

Section 1962(c) prohibits persons "employed by or associated with any enterprise" from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To allege a violation of Section 1962(c), a plaintiff must show that a RICO enterprise committed a pattern of RICO predicate acts. *Simpson v. Sanderson Farms*, 744 F.3d 702, 705 (11th Cir. 2014). In addition, a plaintiff must show they suffered an "injury to business or property" and "that the defendant's racketeering

activity proximately caused the injury." *Id.* The Complaint does not satisfy these elementary requirements.

*First*, Plaintiff has not alleged that Clinton participated in any cognizable RICO enterprise. A claim that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not . . . enough to show that the individuals were members of an enterprise." *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009). Here, the Complaint alleges only an amalgamation of political grievances against twenty-eight named defendants and several unnamed entities. Clinton's participation in the supposed enterprise is nothing more than a collection of "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *see supra*, p. 5. Absent any well-pleaded allegations connecting Clinton to the supposed enterprise, she is not a proper defendant.

At most, Plaintiff alleges that other entities sought to further Clinton's candidacy and, after the election, politically opposed Plaintiff's administration. This is conduct plainly protected by the First Amendment, and there is nothing unlawful about engagement in political activity. Further, mere allegations of independent action—or even intentional parallel conduct between actors—do not suffice to state a RICO claim. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017) (finding no RICO enterprise and noting parallel conduct is insufficient); *Am. Dental Ass'n*, 605 F.3d at 1296.

*Second*, Plaintiff has not adequately alleged any RICO predicate acts. Plaintiff alleges that the enterprise as a whole—but not Clinton herself—engaged in two RICO predicate acts: theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1832, and witness tampering in violation of 18 U.S.C. § 1512.

"Theft of trade secrets consists of five elements: first, the defendant must intend to convert proprietary information to the economic benefit of anyone other than the owner; second, the proprietary information must be a trade secret; third, the defendant must knowingly steal, take without authorization, or obtain by fraud or deception trade secret information; fourth, the defendant must intend or know that the offense would injure the owner of the trade secret; and finally, the trade secret must be related to a product that is in interstate or foreign commerce." *United States v. Smith*, 22 F.4th 1236, 1243 (11th Cir. 2022).

Here, Plaintiff's trade secret claim is apparently based on the alleged misappropriation of "DNS internet traffic data." Compl. ¶ 285. But DNS data is not information "owned" by Plaintiff. On the contrary, DNS information is created automatically when computers connect to each other across the internet. *See Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1231 (N.D. Ill. 1996) (explaining DNS data). Like Internet Protocol ("IP") addresses, DNS information is part of the internet architecture allowing computers to communicate, and is automatically shared with Internet Service Providers and third-party devices. Courts have routinely held that, for this reason, plaintiffs have no legally protected privacy interest in their IP address information. *E.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020). This reasoning applies to Plaintiff's DNS information, which defeats his trade-secret claim.[7]

Nor does Plaintiff adequately allege that the DNS information is a "trade secret"—that is, that it "derives independent economic value" from "not being generally known to" others. *Sentry Data Sys. v. CVS Health*, 361 F. Supp. 3d, 1279, 1292 (S.D. Fla. 2018). Plaintiff alleges that DNS

---

[7] Plaintiff faces an additional hurdle, even if DNS information were "owned" by anyone: he also attempts to include the Trump Organization's servers in his trade-secret claim, because he claims "an ownership interest" in the Organization. *See* Compl. ¶ 286. And he mentions in passing DNS information for the Executive Office of the President. *E.g.*, *id.* ¶ 250. But the Trump Organization and the federal government are not plaintiffs, and Plaintiff cannot press a claim on their behalves.

information "could" reveal information about "website traffic, e-mail traffic," and information about hardware and software used on a computer.  Compl. ¶ 286.[8]  And the Complaint alleges, in conclusory terms, that DNS information reflects information that "derive[s] significant economic value from not being generally known to or ascertainable by others."  *Id.* ¶ 289.  But this is nothing more than a formulaic recitation of the elements, unsupported by any facts.  *Iqbal*, 556 U.S. at 678.  Plaintiff articulates no way in which this information is *independently* valuable:  unlike a customer list, a confidential process, or other trade secrets, Plaintiff does not capitalize on DNS or server information, nor does DNS information *lose* value if it becomes widely known.

Plaintiff's allegations about witness tampering as a RICO predicate act fare no better.  Plaintiff alleges that the RICO enterprise violated 18 U.S.C. § 1512, which forbids individuals from "alter[ing], destroy[ing], or conceal[ing] a record, document, or other object" in an "official proceeding," from "obstruct[ing] influenc[ing], or imped[ing] any official proceeding," and from "corruptly persuad[ing] another person" to "withhold testimony," or alter and destroy documents in an "official proceeding."  Plaintiff claims that Defendants violated this provision by "deliberately providing falsified, altered and misleading records" and inducing Sussmann and Danchenko to make false statements in the "Crossfire Hurricane" investigation.  Compl. ¶¶ 298–307.

Defendants' supposed wrongdoing does not satisfy the statutory elements of witness tampering.  As an initial matter, Plaintiff does not identify any "official proceeding" Defendants supposedly obstructed.  "Official proceeding" is defined by statute as a federal judicial case, a proceeding before Congress, a proceeding before a federal government agency, or a proceeding

---

[8] Tellingly, Plaintiff does not allege that DNS traffic actually reveals the *content* of emails or other communications—it does not.

involving insurance business.  18 U.S.C. § 1515(a).  Investigations that do not result in charges are not "official proceedings" under the statute.  *See United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (FBI investigation); *United States v. Ermoian*, 752 F.3d 1165, 1171–72 (9th Cir. 2013) (same).  But here, Plaintiff's allegations are limited to "investigations into Russian collusion," *e.g.*, Compl. ¶ 297, and the assertion that individual Defendants allegedly impeded "ongoing investigations by the CIA, the FBI, the IG, and/or the DOJ," *id.* ¶ 302.  He has identified no judicial, congressional, or agency proceeding that Defendants purportedly obstructed.[9]

Moreover, Plaintiff's "witness tampering" charges are really allegations that Defendants— including the witnesses themselves—conspired to offer false evidence.  These claims are a poor fit for the statute.  Plaintiff's claim is not that Defendants "destroyed" or "altered" documents, but that they contributed to the *creation* of documents that contained purported inaccuracies, like the Steele Dossier, or created "curated" information, like DNS data.  *See id.* ¶ 299.  Similarly, Plaintiff asserts that the enterprise induced Sussmann and Danchenko to provide supposedly false testimony that "withheld and/or concealed pertinent information."  *Id.*  But that is not the same as "withhold[ing] testimony" entirely.  18 U.S.C. § 1512.  Plaintiff's allegations are more akin to suggestions that Defendants supposedly suborned perjury or falsified documents.  *See* 18 U.S.C. §§ 1519, 1622.  But neither of those appear in RICO's list of predicate acts, which is "exhaustive." *See Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000).

---

[9] Although a proceeding need not be "pending or imminent" under Section 1512, *see* 18 U.S.C. § 1512(f)(1), one must nevertheless be "reasonably foreseeable to the defendant."  *United States v. Sutton*, No. 20-7028, 2022 WL 1014359, at *2 (10th Cir. Apr. 5, 2022).  Plaintiff also sporadically cites obstruction of justice under Section 1503, *see* Compl. ¶¶ 296, 302, 310, which is even further from a viable claim:  that section requires that an "official proceeding" be actually pending.

***Third***, Plaintiff has not adequately alleged a pattern of racketeering activity.  Beyond adequately pleading predicate acts, *supra*, pp. 7–10, a plaintiff must also allege that the acts "amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  A plaintiff may do this two ways:  by pleading "closed-ended continuity" or "open-ended continuity."  Here, Plaintiff succeeds at neither.

A party can allege closed-ended continuity "by proving a series of related predicates extending over a substantial period of time."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1265 (11th Cir. 2004) (quoting *H.J. Inc.*, 492 U.S. at 241).  But Plaintiff has failed entirely to allege any specific dates for the supposed theft of trade secrets, alleging only that they occurred "after May 11, 2016."  Compl. ¶ 311.  And the alleged instances of witness tampering occurred in a seven-month period between September 2016 and June 2017.  *See* Compl. ¶ 298–307.

The Eleventh Circuit has categorically rejected allegations of closed-ended continuity when the supposed pattern of racketeering activity lasted less than nine months, and other circuits reject patterns lasting less than a year.  *Jackson*, 372 F.3d at 1266 (11th Cir. 2004) (collecting cases, including those rejecting longer periods).  This alone defeats Plaintiff's claim.  And "the courts have [also] refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time" when "the RICO allegations concern only a single scheme with a discrete goal."  *Jackson*, 372 F.3d at 1267.  Here, Plaintiff alleges that the supposed RICO scheme worked "with a *single*, self-serving purpose:  to vilify Donald J. Trump" in connection with his campaign and presidency.  Compl. ¶ 2 (emphasis added).  In light of this "single" goal, even a lengthier time period would not save Plaintiff's deficient pleading.

Plaintiff has also failed to allege open-ended continuity.  To plead open-ended continuity, a plaintiff must "allege either that the alleged acts were part of the defendants' 'regular way of

doing business,' or that the illegal acts threatened repetition in the future." *Jackson*, 372 F.3d at 1267 (quoting *H.J. Inc.*, 492 U.S. at 242–43). Here, the Complaint lacks any allegations that the predicate acts—which Plaintiff alleges were engineered specifically to target him—were part of Defendants' "regular" way of doing business. Nor is there any nonconclusory allegation that the supposed racketeering is likely to recur in the future. Indeed, "single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity." *Ferrell v. Durbin*, 311 F. App'x 253, 257 (11th Cir. 2009). Here, Plaintiff claims the racketeering activity was intended to "mislead law enforcement, the media, and the public at large and to impede, obstruct, and falsely provoke federal investigations against the Plaintiff, the Trump Campaign, and the Trump Administration." Compl. ¶ 282. With Plaintiff out of office, there is no reason this would recur. The only continuing conduct Plaintiff alleges are instances of public speech—acts that are not RICO predicates, so cannot support an ongoing "pattern" of offenses. This lays bare Plaintiff's claim for what it is:  a lawsuit aimed at political speech he does not like.

**Finally**, Plaintiff has failed to adequately allege RICO standing—that is, an injury directly caused by a predicate racketeering act prohibited under Section 1962. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006). A viable RICO claim requires both an injury to the plaintiff's business or property and "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp. v. City of New York*, 559 U.S. 1, 9 (2010) (citation omitted). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* Similarly, that an injury was "foreseeable" is not enough; instead, "the injury must be direct." *Ray v. Spirit Airlines*, 836 F.3d 1340, 1349 (11th Cir. 2016).

Plaintiff has alleged injury in only the vaguest terms, asserting repeatedly that he incurred "defense costs, legal fees and related expenses . . . in connection with his efforts to defend himself"

against "Defendant's tortious actions, false accusation, and overall fraudulent scheme to discredit and delegitimize him." *E.g.*, Compl. ¶ 263; *id.* ¶ 264 (seeking "the cost of dealing with . . . legal and political issues"). Here, however, any costs and fees Plaintiff incurred were directly and proximately caused by his own political goals, not Defendants' alleged racketeering activities. Indeed, similar allegations have been found insufficient to state a RICO claim based on the Steele Dossier. *See Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1012–13 (E.D. Va. 2021) (rejecting suit for damages incurred to "publicly address" a "smear campaign").

Here, Plaintiff has not articulated any direct connection between the release of DNS data or witness statements and the costs he incurred for "legal issues and political issues," even if such vague allegations were sufficient to state a RICO injury.[10] Plainly, Plaintiff's public-relations and political expenses are not recoverable. *See id.* And to the extent Plaintiff was allegedly harmed by investigations, other actors—federal investigators—needed to decide independently to pursue investigations, based on their own judgment and a variety of evidence, before he incurred any legal fees. Indeed, the U.S. Department of Justice Office of Inspector General's investigation into Crossfire Hurricane—which Plaintiff cites at Compl. ¶ 3 n.1—was critical of the FBI in several respects, but found that the agency opened the investigation "for an authorized purpose" and "with adequate factual predication."[11] In particular, the investigation was *not* predicated on DNS information or the Steele Dossier, but on a tip from a friendly foreign government that a Trump campaign advisor "suggested" that "the Trump campaign had received 'some kind of suggestion' from Russia that it could assist with the anonymous release of information that would be damaging

---

[10] Plaintiff limits his claim to these unidentified costs, and three times purports to disclaim any damages for injury to his reputation. *See* Compl. ¶¶ 345, 355, 449.

[11] U.S. Dep't of Justice, Office of the Inspector General, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation at 347 (2019), available at https://www.justice.gov/storage/120919-examination.pdf.

to Hillary Clinton."[12]  The Inspector General "did not find information . . . indicating that any information other than the [friendly foreign government] information was relied upon to predicate the opening of the Crossfire Hurricane investigation."[13]

The independent basis for investigation, and the exercise of judgment by federal investigators, breaks any chain of causation with Plaintiff's supposed injury.  *See Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (affirming dismissal where plaintiffs could not establish "obstruction of justice and witness tampering" as "the proximate cause of their alleged injury"); *Willis v. Lipton*, 947 F.2d 998, 1001 (1st Cir. 1991) (defendant's conduct did not proximately cause the plaintiff's loss of employment where that conduct preceded an FTC enforcement action and a bankruptcy action); *see also Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007) (a "judicial officer's exercise of independent judgment in the course of his official duties" is a quintessential "superseding cause").

Plaintiff also alleges that he was injured by "the loss of existing and future business opportunities."  Compl. ¶ 263.  But these, too, go wholly unidentified.  Plaintiff alleges they are "too numerous to list," and cites only his ban from Twitter as an example, which he asserts was "due to the misinformation claim waged by Hillary Clinton."  *Id.* at n.78.  This alleged harm also depends on a third-party actor—Twitter—and is unmoored from any of the alleged racketeering conduct.  Plaintiff has not alleged that his Twitter ban had any connection to his DNS information or the myriad investigations regarding his connections to Russia.  Plaintiff's core grievance against Hillary Clinton is the practice of politics, and cannot support this legal claim.

### B.    Count II:  RICO Conspiracy

Section 1962(d) prohibits the act of conspiring to violate subsections (a) through (c).

---

[12] *Id.* at 1.
[13] *Id.* at ii.

Plaintiff alleges that Defendants conspired to violate Section 1962(c).  To state a RICO conspiracy claim, "a plaintiff must 'allege an illegal agreement to violate a substantive provision of the RICO statute.'"  *Super Vision Int'l v. Mega Int'l Comm. Bank*, 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008) (citation omitted).   Conclusory allegations of a conspiracy "unsupported by actual allegations of fact"—like the conclusory allegations here, *see* Compl. ¶¶ 319–22—are not enough. *Super Vision Int'l*, 534 F. Supp. 2d at 1343; *see also Am. Dental Ass'n*, 605 F.3d at 1293–94.

Furthermore, for a plaintiff to prevail under Section 1962(d), the overt act causing injury must itself be an act of racketeering.  *Beck*, 529 U.S. at 495–96.  Plaintiff has not alleged a predicate act of racketeering here, nor any injury from such an act.  He therefore fails to state a viable RICO conspiracy claim.  *See Super Vision Int'l*, 534 F. Supp. 2d at 1342.

### C.      Count III:  Injurious Falsehood

Under Florida law, the term injurious falsehood refers variously to slander of title, disparagement of property, or trade libel.  "The gist of the tort is the 'intentional interference with another's economic relations.'"  *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13-cv-80039, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.) (citation omitted).

As an initial matter, Plaintiff's lawsuit fails because political speech is "integral to the operation of the system of government established by our Constitution," and "[t]he First Amendment affords the broadest protection to such political expression." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam).  The only statements attributed to Clinton are her commentary that "We don't have Trump as a spokesperson for Putin, anymore," and "[a]fter [a] disastrous Trump presidency, in which he gave Putin a green light to do whatever he wanted to do, once Trump was elected, of course."  Compl. ¶ 335.  Plaintiff also alleges earlier in the Complaint that, "in response to media reports" Clinton tweeted that "Trump & Fox are desperately spinning up a fake scandal

to detract from his real ones.  So it's a day that ends in Y.  The more his misdeeds are exposed, the more they lie.  For those interested in reality, here's a good debunking of their latest nonsense."[14]

These statements are quintessential expressions of opinion under the First Amendment. Debate on matters of public import "may well include vehement, caustic, and sometimes unpleasantly sharp attacks," but are nonetheless constitutionally protected when they are "rhetorical hyperbole."  *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (citations omitted).

Plaintiff can hardly claim to be a stranger to the rough-and-tumble tone of political rhetoric. *See supra*, p. 2–3; *see generally* The Trump Twitter Archive, thetrumparchive.com (collecting Plaintiff's tweets).  Here, Clinton's statements use rhetorical imagery and figures of speech to discuss a matter of public importance.  Plaintiff concedes that each of these statements were made in connection with media reports, evidencing the widespread public interest in the issue.  Compl. ¶¶ 260–61.  "[T]o use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist'—is not to falsify facts."  *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (holding the epithet "traitor" not actionable).

Plaintiff faces another hurdle under the First Amendment:  the Constitution also "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  Although referred to as "malice," actual malice in this context "should not be confused with the concept of malice as an evil intent or a

---

[14] The Complaint also refers to Clinton's tweets from October 31, 2016, Compl. ¶¶ 188, 189, 333, but any claim on those statements is time-barred.  *See supra*, p. 4.

motive arising from spite or ill will." *Masson v. New Yorker Mag.*, 501 U.S. 496, 510–11 (1991). Instead, it refers to a speaker's subjective belief that her own statements were probably false, or at least that she entertained serious doubts as to their truth. *Id.* at 510.

Plaintiff's allegations here, too, are lacking. The Complaint focuses largely on Clinton's alleged ill will towards Plaintiff. *See* Compl. ¶ 1 (alleging that defendants "maliciously conspired"); *id.* ¶ 190 (alleging Clinton's "pathological need to stop Trump"); *id.* ¶ 259 (alleging a motivation to damage Plaintiff's political career). "However, no amount of repeating the word 'malice' will overcome the constitutional requirement." *Klayman v. City Pages*, No. 13-cv-143, 2015 WL 1546173, at *14 (M.D. Fla. Apr. 3, 2015) (rejecting similar pleading), *aff'd*, 650 F. App'x 744 (11th Cir. 2016) (per curiam). As to the *true* actual malice standard, Plaintiff offers only conclusory and unsupported allegations that Clinton was "aware" her statements or the Trump-Russia story was "false," Compl. ¶¶ 190, 260, and makes a single conclusory allegation that "the Defendants acted with actual malice," *id.* ¶ 328. This is nothing more than the type of "labels and conclusions" that do not suffice. *Iqbal*, 556 U.S. at 678 (citation omitted). And, in any event, investigations by the federal government corroborate Russian interference in the 2016 election designed to benefit Plaintiff and harm Clinton.[15]

Even setting aside the constitutional deficiencies with Plaintiff's pleading, he also fails to allege the elements of injurious falsehood under Florida law. "In order to sustain a claim for

---

[15] *See, e.g.*, Robert S. Mueller, III, Report on the Investigation into Russian Interference in the 2016 Presidential Election, 1 (Vol. 1, March 2019), https://www.justice.gov/storage/report.pdf ("[T]he Special Counsel's investigation established that Russia interfered in the 2016 presidential election" and "favored presidential candidate Donald J. Trump and disparaged presidential candidate Hillary Clinton."); Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, S. Rep. 116-290, vol. 2, at 32 (2020), https://www.intelligence.senate.gov/sites/default/files/documents/Report_Volume2.pdf ("At the direction of the Kremlin," the Russian Internet Agency "sought to influence the 2016 U.S presidential election by . . . supporting Donald Trump.").

injurious falsehood, Plaintiff must adequately allege: (1) a falsehood; (2) published or communicated to a third party; (3) the Defendant kn[e]w that the falsehood would likely induce others not to deal with the Plaintiff; (4) the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff; and (5) special damages." *Kanarick*, 2013 WL 12092479, at *4.

Here, Plaintiff has failed to allege any "falsehood" under Florida law.  Clinton's statements were "critical judgments" of opinion, based on facts "set forth" in the press, or "otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981).  Such statements are not actionable.

Nor has Plaintiff alleged that Clinton knew the statements "would likely induce others not to deal with the Plaintiff." *Kanarick*, 2013 WL 12092479, at *4.  On the contrary, the only allegations about Clinton's state of mind assert that her motivation had nothing to do with Plaintiff's business, but that she was motivated by "a pathological need to stop Trump from ever entering the White House," and a "hope[] of damaging Trump's political career."  Compl. ¶¶ 190, 259.  Clinton's statements deal entirely with Trump's presidency and his fitness for public office.  There is no allegation that Clinton knew or intended that the alleged statements would harm Plaintiff's *business interests*, or induce others not to deal with him commercially.

Finally, Plaintiff wholly fails to plead that Clinton's statements actually played "a material and substantial part in inducing others not to deal with the Plaintiff." *Kanarick*, 2013 WL 12092479, at *4.  Because Plaintiff pleads nothing whatsoever about his supposed business injury, *see supra*, p. 12–13, 15, the Complaint is devoid of any well-pleaded factual allegations that Clinton's statements played any role in inducing others to deprive him of unspecified business opportunities.

**D.    Count IV:  Conspiracy to Commit Injurious Falsehood**

"To plead civil conspiracy, a plaintiff must allege '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'"  *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (citation omitted).  Here, as before, the allegations of any agreement between Clinton and other defendants, or any specific actions on Clinton's part, are purely conclusory.  *See* Compl. ¶¶ 346–52.  These "formulaic recitation[s] of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor has Plaintiff alleged any underlying injurious falsehood.  *Supra,* pp. 15–18.

**E.    Count VI:  Conspiracy to Commit Malicious Prosecution**

"Under Florida law, Plaintiff must establish six elements to support a claim for the tort of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding."  *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123–24 (S.D. Fla. 2019).  Plaintiff fails to plead any of these elements.  Most notably, Plaintiff identifies no judicial proceedings, much less ones that terminated in his favor.  Nor can he allege an absence of probable cause for the Crossfire Hurricane investigation.  *See supra*, p. 13.

Clinton, however, is named only as a defendant as to the conspiracy count, not the substantive offense.  To allege a conspiracy to commit malicious prosecution, Plaintiff must satisfy the same elements of civil conspiracy set out above.  His conclusory pleading fails for the same reason as the previous conspiracy claims.  Nor does Plaintiff cogently allege the specific aim of

the conspiracy—for example, the judicial proceeding that Defendants allegedly conspired to commence or continue.  This claim, like the others, must fail.

### F.      Count VII:  Computer Fraud and Abuse Act

To allege a violation of the Computer Fraud and Abuse Act, a plaintiff must allege that (1) the defendant accessed a protected computer; (2) without authorization or by exceeding authorized access; (3) knowingly and with intent to defraud; and (4) the defendant's access furthered the intended fraud and obtained anything of value.  *See TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1300 (S.D. Fla. 2016).  Plaintiff does not allege that Clinton personally took any of these steps, but merely allege in boilerplate that she "conspired" with others.  Compl. ¶ 390.  No well-pleaded factual allegations support this cursory allegation, and the claim must be dismissed.

### G.      Count VIII:  Theft of Trade Secrets

Plaintiff's allegations for theft of trade secrets fail for the same reasons that Plaintiff has failed to allege this count as a cognizable RICO predicate act.  *See supra*, pp. 8–9.

### H.      Count X:  "Agency"

This count recites a litany of threadbare allegations that Clinton masterminded all the foregoing events.  But those allegations are unsupported by any facts.  And, in any event, "agency" is not an independent cause of action.  *See, e.g.*, *Barabe v. Apax Partners Eur. Managers, Ltd.*, 359 F. App'x 82, 84 (11th Cir. 2009) (per curiam); *see also Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, No. 19-cv-2527, 2020 WL 5628734, at *2 (M.D. Fla. Sept. 21, 2020) (holding that respondeat superior is not an independent cause of action, but a theory of liability).

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.[16]

---

[16] Clinton also incorporates by reference and adopts the arguments made by other defendants in support of dismissal.

Dated: April 20, 2022

Respectfully submitted,

*/s/ David E. Kendall*
David E. Kendall*
Katherine M. Turner*
Michael J. Mestitz*

WILLIAMS & CONNOLLY LLP
725 Twelfth Street N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dkendall@wc.com

* Motion for admission *pro hac vice* pending

David Oscar Markus

MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, FL 33128
Tel.  (305) 379-6667

*Attorneys for Defendant Hillary Rodham Clinton*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 20, 2022, I caused to be filed electronically the foregoing Defendant Hillary Rodham Clinton's Motion to Dismiss the Complaint and Memorandum of Law in Support with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*/s/ David E. Kendall*
David E. Kendall
