# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

DONALD J. TRUMP

    Plaintiff,

v.

HILLARY R. CLINTON et al.,

    Defendants.

Case No. 2:22-cv-14102-DMM

## DEFENDANTS FUSION GPS, GLENN SIMPSON, AND PETER FRITSCH'S MOTION TO DISMISS THE COMPLAINT AND <u>MEMORANDUM OF LAW IN SUPPORT</u>

Adam S. Fels
**FRIDMAN FELS & SOTO PLLC**
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
afels@ffslawfirm.com

Tel: 305-569-7701

Joshua A. Levy*
Rachel Clattenburg*
Kevin P. Crenny*
* admitted *pro hac vice*
**LEVY FIRESTONE MUSE LLP**
900 17th St. NW, Suite 1200
Washington, D.C. 20006
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com

Tel: 202-845-3215
Fax: 202-595-8253

*Counsel for Defendants Fusion GPS, Peter Fritsch, and Glenn Simpson*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

LEGAL STANDARD..................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

   I.   THE COMPLAINT DOES NOT STATE A CLAIM FOR RICO CONSPIRACY AGAINST THE FUSION DEFENDANTS. ................................................................... 5

        A.   The Statute of Limitations for RICO and RICO Conspiracy Has Run. ............... 5

        B.   The Complaint Does Not Plausibly Allege RICO Standing. .............................. 6

        C.   The Elements of the RICO Predicate Acts Are Not Adequately Alleged. ......... 8

        D.   A Pattern of Racketeering Activity Is Not Adequately Alleged. ........................ 9

        E.   The Entirely Conclusory Conspiracy Allegations Fall Short of the Pleading Standards. ............................................................................................................ 10

   II.   THE STATE LAW CLAIMS BROUGHT AGAINST THE FUSION DEFENDANTS ALSO FAIL................................................................................................................... 11

        A.   The Conspiracy to Commit Injurious Falsehood Claim Is Untimely, Constitutionally Invalid, and Lacking Key Elements of the Tort. .................... 11

        B.   The Malicious Prosecution Claims Fails Because Trump Has Not Been Prosecuted. ........................................................................................................ 16

        C.   "Respondeat Superior/Vicarious Liability" Is Not a Cause of Action.............. 16

CONCLUSION............................................................................................................................. 17

## INTRODUCTION

Defendants Bean LLC, d/b/a Fusion GPS,[1] Glenn Simpson, and Peter Fritsch (the "Fusion Defendants") move to dismiss the Complaint with prejudice because the claims are time-barred and the Complaint fails to state a claim for relief.

The Complaint—a lengthy jumble of incorrect statements of fact—alleges a conspiracy over the course of 2016 and early 2017 designed to damage Plaintiff Donald Trump's political fortunes. Trump alleges that the Fusion Defendants conspired with other defendants to violate RICO, 18 U.S.C. § 1962(c), "for the express purpose of injuring the Plaintiff's political career and/or impeding his ability to effectively govern through a pattern of racketeering activity," which, according to Trump, consisted of alleged theft of trade secrets and conspiracy to steal trade secrets, Compl. ¶¶ 284–95, and alleged obstruction of justice and a conspiracy to obstruct justice, *id.* ¶¶ 296–311. Trump does not allege that the Fusion Defendants violated a substantive RICO provision and instead only alleges they violated the RICO conspiracy provision, 18 U.S.C. § 1962(d) (Count II). In addition, Trump alleges the following Counts against the Fusion Defendants: Conspiracy to Commit Injurious Falsehood (Count IV); Malicious Prosecution (Count V, against Fritsch and Simpson); Conspiracy to Commit Malicious Prosecution (Count VI, against Fritsch and Simpson); and "Respondeat Superior/Vicarious Liability" (Count XIV, against Fusion GPS only).

While the Fusion Defendants strongly dispute the Complaint's allegations and insinuations about them, their firm, and their work, this motion treats nonconclusory allegations made in the Complaint as though they are true—as a motion to dismiss must at this stage of litigation. Even

---

[1] Named in the complaint as Fusion GPS.

affording the Complaint this generous standard of review, it fails entirely to state any claims against the Fusion Defendants.

## BACKGROUND

Trump's Complaint alleges few facts concerning the Fusion Defendants.

Only a few meetings between the Fusion Defendants and their alleged co-conspirators are mentioned, and none are described with the required specificity. The Complaint alleges that in April 2016, Fritsch and Simpson met with Defendant Marc Elias and that this meeting was arranged by a "senior figure in the Democratic party." Compl. ¶ 66. Then, it says, Fusion GPS was retained by Elias and his then-firm Perkins Coie and was instructed to conduct "opposition research for the Clinton Campaign and the DNC." *Id.* ¶ 68. It is alleged that all parties understood that Fusion's "true task was to prepare a fraudulent 'dossier'" that could be used to harm Trump's campaign and, if elected, his ability to serve as president. *Id.* ¶ 70. Just two meetings between Fusion and Perkins are identified: Defendants Elias and Michael Sussmann are alleged to have met with "personnel from Fusion GPS" on July 29, 2016, and Sussmann is said to have met with a Fusion representative again on August 20, 2016. *Id.* ¶ 168.[2] The Fusion Defendants are said to have "[known] that they were engaged in a conspiracy to" steal trade secrets and obstruct justice, and to have "agreed to facilitate" this scheme. *Id.* ¶¶ 320–21.

As for Fusion's own operations, the Complaint alleges that "in or about June 2016" the firm "officially retained Orbis Ltd. and Steele to find 'links between Russia and the then Republican candidate . . . Donald J. Trump'" and directed Orbis, Steele, and others to "beg[in] preparing approximately seventeen anti-Trump memoranda known collectively as the 'Steele

---

[2] The Complaint describes these meetings as being held "[i]n the lead-up" to a meeting Sussmann had with the FBI general counsel on September 19, 2016. *Id.* ¶ 168, 170.

Dossier.'" *Id.* ¶¶ 80–81. The Complaint alleges that this dossier was "intended to . . . harm Trump's candidacy" and "to induce the FBI to commence an investigation into alleged ties between Russia and Donald J. Trump." *Id.* ¶ 84. Defendant Nellie Ohr is said to have worked for the firm around April 2016 and is said to have researched "Trump's family members and campaign aides." *Id.* ¶ 74. The Fusion Defendants are alleged to have thought that she "would be instrumental in lending credibility to the Steele Dossier." *Id.* ¶ 76.

The Complaint provides few details on the Fusion Defendants' alleged roles in spreading alleged misinformation. In July 2016, unspecified Defendants are said to have "beg[u]n feeding false information to federal law enforcement . . . [and] through the media. . . . in an effort to cast malicious aspersions on Donald J. Trump." *Id.* ¶ 131; *see also id.* ¶ 165 (alleging again that "Defendants were also spreading disinformation"). Along with other Defendants the Fusion Defendants are alleged to have "conspired to disseminate" claims of collusion with Russia that they knew were false or were reckless in failing to verify. *Id.* ¶ 351. Fritsch and Simpson, with Steele, are only said to have met with members of the media once, on September 21, 2016 "to discuss their investigative findings" concerning Trump's relationships with Russia, but does not identify what, if any, false information they conveyed at this meeting. *Id.* ¶ 166. In late September and early October 2016, Fusion is alleged to have "coordinate[d] with" Sussmann, Elias, and Rodney Joffe "to disseminate the . . . allegations" of communications between the Trump Organization and Alfa Bank to the media. *Id.* ¶ 181. Fusion's role in this dissemination is not described.[3] More broadly, Fritsch and Simpson allegedly acted with actual malice as they allegedly

---

[3] These coordinated efforts are said to have occurred "in the weeks following" September 19, 2016, *id.* ¶¶ 179, 181, which suggests that the Fusion Defendants' September 21, 2016 meetings with members of the media were not part of this coordinated effort. This means Trump has not alleged a single specific action concerning the Fusion Defendants' supposed coordination with Sussmann, Elias, and Joffe.

3

"engaged in efforts to falsify information, documents and/or evidence, such as the Dossier" and allegedly conspired to "spread a false narrative in an attempt to ruin" Trump and "feed false and/or misleading information to the FBI and DOJ." *Id.* ¶¶ 362, 371.

Following the election, Simpson is said to have met with Bruce Ohr "to discuss Fusion GPS's findings regarding Russia and the election." *Id.* ¶ 195. Simpson is alleged to have provided Ohr with "most of the reports comprising the Steele Dossier," and Ohr is alleged to have provided those reports to the FBI in December 2016. *Id.* ¶ 197. Simpson is also alleged to have met with John Podesta in January 2017 "to compare notes on Russia meddling in the election." *Id.* ¶ 82. Finally, the Fusion Defendants are alleged to have "continued their collective mission to fabricate evidence and disparage Donald J. Trump" in the years since 2016. *Id.* ¶ 252. The Complaint states that an organization known as The Democracy Integrity Project has been funding these efforts. *Id.* ¶¶ 253–54. Finally, the Complaint brings the aforementioned five claims against the Fusion Defendants.

## LEGAL STANDARD

A court faced with a motion to dismiss must determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must have "ple[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court should treat the complaint's factual allegations as true and construe all reasonable inferences from those facts in the nonmovant's favor, *see Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998), but need not accept the complaint's legal conclusions, and may reject any "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. A complaint that provides only "conclusory statements,"

4

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" fails to state a claim." *Id.*

## ARGUMENT

I. **THE COMPLAINT DOES NOT STATE A CLAIM FOR RICO CONSPIRACY AGAINST THE FUSION DEFENDANTS.**

Count I alleges a substantive RICO violation under 18 U.S.C. § 1962(c) against a subset of the defendants, but not against the Fusion Defendants. Count II alleges that the Fusion Defendants conspired with other defendants to violate RICO § 1962(d). Both Counts fail to state a claim for relief. The Complaint's failure to state a claim under § 1962(c) dooms Count II's RICO conspiracy claim, because "a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." *Beck v. Prupis*, 529 U.S. 494, 507 (2000). Because the Complaint fails to state a claim for relief under § 1962(c), Plaintiff cannot state a claim for a relief for RICO conspiracy. For this reason, Defendant Clinton's arguments as to why the Complaint's RICO claims must be dismissed are equally applicable to the Fusion Defendants, and the Fusion Defendants adopt and incorporate Defendant Clinton's arguments on Count I and Count II. *See* Def. Hillary Rodham Clinton's Mot. to Dismiss the Compl. and Mem. of L. in Supp. ("Clinton Br.") at 1–15.

A. **The Statute of Limitations for RICO and RICO Conspiracy Has Run.**

The RICO allegations in the Complaint are barred by the applicable statute of limitations. The statute of limitations for RICO actions—including RICO conspiracy actions—is four years from the date when the injury was or should have been discovered. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013); *Agency Holding Corp. v Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). As demonstrated in Defendant Clinton's brief, Trump sent four tweets on October 29, 2017

5

describing the same conspiracy he now alleges in the Complaint.[4] Clinton Br. at 3, Dkt. No. 52. As early as January 2017 he had suggested that the "dossier" was "A COMPLETE FRAUD" consisting of "phony allegations . . . put together by my political opponents."[5] In May 2017 Trump asserted again that "the story that there was collusion between the Russians & Trump campaign was fabricated by Dems."[6] The statute of limitations therefore started running no later than October 29, 2017 and expired no later than October 29, 2021. Because the Complaint includes only conclusory allegations concerning the Fusion Defendants' conduct after that date, any alleged injuries—including legal fees—that Trump incurred later than October 2017 are irrelevant for statute of limitations purposes. *See Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013) ("[W]hen an injury is a continuation of an initial injury it is not *new and independent*" such that it would restart the statute of limitations (internal quotations and alteration omitted)).

### B. The Complaint Does Not Plausibly Allege RICO Standing.

The Complaint fails to plausibly allege that the alleged predicate acts directly caused Trump's alleged injuries, and the Complaint should be dismissed on that basis. 18 U.S.C. § 1964(c). "[P]leading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for and proximate

---

[4] Donald J. Trump (@realDonaldTrump), Twitter (Oct. 29, 2017 at 9:53:43 AM, 10:02:37 AM, 10:09:51 AM, and 10:17:14 AM), archived at The Trump Twitter Archive, thetrumparchive.com. Federal courts have taken judicial notice of the former President's tweets in a number of cases. *See, e.g.*, *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir.) (per curiam) (taking judicial notice of Plaintiff's tweets), *vacated on other grounds*, 138 S. Ct. 377 (2017); *Rock the Vote v. Trump*, No. 20-cv-06021, 2020 WL 6342927, at *4 n.2 (N.D. Cal. Oct. 29, 2020) (same); *United States v. Flynn*, 507 F. Supp. 3d 116, 126 n.6 (D.D.C. 2020) (same).

[5] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 14, 2017 at 8:14:13 AM), archived at The Trump Twitter Archive, thetrumparchive.com; *Id.* (Jan. 13, 2017 at 6:05:55 AM).

[6] *Id.* (May 12, 2017 at 7:51:56 AM); *see also id.* (May 8, 2017 at 6:46:00 PM) ("The Trump-Russia collusion story is a total hoax . . . ."); *id.* (Jun. 22, 2017 at 10:01:10) (referring to collusion allegations as "all a big Dem HOAX!").

cause of the plaintiffs' injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis in original).

Here, Trump cannot demonstrate a "'direct causal connection' between the predicate offense and the alleged harm." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10–11 (2010); *Klayman v. Clinton*, No. 15-cv-80388, 2015 WL 10857500, at *6 (S.D. Fla. Aug. 11, 2015) (Middlebrooks, J.) ("RICO standing requires a plaintiff's injury to be *directly* caused by a predicate racketeering act prohibited under § 1962.") (emphasis in original). This is because Trump does not claim that the alleged predicate acts directly and proximately caused him to incur the vaguely asserted legal fees and other expenses, or to lose alleged business opportunities. *See* Compl. ¶ 263. Rather, he alleges that the *Government's* investigations and proceedings caused him to incur legal fees and expenses. Any claimed connection between his alleged expenses and the alleged predicate acts is too attenuated. The *direct* cause of Trump's alleged expenditures on defense costs and legal fees, and his alleged lost business opportunities, were the independent decisions of U.S. government investigators to take actions to investigate Trump, as part of their alleged "federal investigations and official proceedings." *Id.* ¶ 263. Those decisions of federal investigators are many steps removed from the alleged predicate offenses of stealing "DNS internet traffic data" or making "false statements." *Id.* ¶¶ 284, 299–302. "RICO only reaches harm that necessarily is caused by the predicate acts." *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-cv-24431, 2018 WL 1393790, at *9 (S.D. Fla. Jan. 26, 2018) (citing *Hemi Grp.*, 559 U.S. at 13). The analysis of RICO proximate cause should not "go beyond the first step." *In re Takata Airbag Prod. Liab. Litig.*, 524 F. Supp. 3d 1266, 1284 (S.D. Fla. 2021) (dismissing RICO allegations for failure to meet RICO's "strict causation requirement") (quoting *Hemi Grp.*, 559 U.S. at 10) (internal

7

quotation marks omitted). Here, Trump fails to plausibly allege that the alleged predicate acts are the "first step" in the chain of causation of his alleged injuries.

It is not sufficient for Trump to allege that the purported economic harm was a "foreseeable and natural consequence" of the alleged predicate acts, *see* Compl. ¶ 264. "[T]he fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action—the injury must be direct." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (citing *Hemi Grp.*, 559 U.S. at 12). The Complaint should be dismissed for lack of RICO standing.[7]

### C. The Elements of the RICO Predicate Acts Are Not Adequately Alleged.

Two RICO predicate acts are identified in the Complaint—theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1832, and witness tampering in violation of 18 U.S.C. § 1512—but neither is properly alleged.

The trade secret allegations depend on the alleged misappropriation of "DNS internet traffic data," Compl. ¶ 285, but Trump did not own this data, as would be required if its theft were to constitute an actionable theft of trade secrets. *United States v. Smith*, 22 F.4th 1236, 1243 (11th Cir. 2022) (elements of theft of trade secrets include that "the offense would injure the *owner* of the trade secret" (emphasis added)). Nor did the allegedly stolen DNS data "derive independent economic value" from the fact that they are "not . . . generally known to" persons other than Trump. 18 U.S.C. § 1839(3)(B) (defining a "trade secret"). The information is not "independently

---

[7] Furthermore, it is not clear that Trump's alleged injuries are cognizable RICO injuries. "Some courts interpreting RICO's statutory language have found attorneys' fees and legal expenses not to constitute an injury sufficient to confer standing under RICO." *Natural-Immunogenics Corp. v. Newport Trial Grp.*, No. 8:15-cv-02034 (C.D. Cal. Nov. 23, 2020) (citing, *inter alia*, *Hotel, Motel, Restaurant & Hi-Rise Employees & Bartenders v. Pier 66 Co.*, 599 F. Supp. 761, 765 (S.D. Fla. 1984)).

8

valuable" at all, and the Complaint's assertion to the contrary is entirely unexplained and conclusory. *See* Compl. ¶ 289.

The witness tampering allegations are also not properly alleged. The "Crossfire Hurricane" FBI *investigation* is not an "official *proceeding*" within the meaning of the witness tampering statute. 18 U.S.C. § 1515(a) (definitions). Additionally, the Complaint focuses on conduct that does not fit the plain language of the statute. The statute concerns, among other things, "alter[ing], destroy[ing], or conceal[ing] . . . record[s], document[s], or other object[s]" or "corruptly persuad[ing]" others to do the same or to otherwise impede investigations. 18 U.S.C. § 1512. The Complaint, on the other hand, alleges that certain defendants "provided falsified, altered and misleading records" to law enforcement. Compl. ¶ 297. Section 1512 describes a number of possible violations, but none of them—and no other RICO predicate act—lines up with the conduct alleged.

### D. A Pattern of Racketeering Activity Is Not Adequately Alleged.

To prove that the conduct of RICO defendants "amount[s] to, or . . . otherwise constitute[s] a threat of, *continuing* racketeering activity" beyond just "multiple schemes," a plaintiff must allege that the racketeering activity had characteristics of either "closed- [or] open-ended continuity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–41 (1989). Closed-ended continuity requires that the predicate acts "extend[] over a substantial period of time"—more than nine months in this Circuit. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1265–66 (11th Cir. 2004). Plaintiffs' timeline of alleged predicate acts, spanning seven months, is too brief. *See* Compl. ¶¶ 298–307, 311. Additionally, "a single scheme with a discrete goal" necessarily lacks closed-ended continuity, *Jackson,* 372 F.3d at 1267, and Trump has described a scheme with the "single" goal of harming his political career. Compl. ¶ 2. Open-ended continuity has also not been alleged because nothing in the Complaint amounts to anything beyond the most conclusory allegations

9

that any of the RICO defendants are likely to commit further predicate acts. *See Jackson*, 372 F.3d at 1268.

### E. The Entirely Conclusory Conspiracy Allegations Fall Short of the Pleading Standards.

Finally, even if true, the allegations in the Complaint concerning the Fusion Defendants are too vague to state a claim for RICO conspiracy. The Complaint contains only "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement,'" which do not suffice to state a claim upon which relief can be granted and are not enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007)). A Complaint alleging a conspiracy must give the Court a basis for inferring that the defendants were conspiring and not just engaging in "unknowingly parallel conduct." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017). The Fusion Defendants are alleged to have been hired to conduct research and to have met with the firm and lawyers who hired them, and to have attempted to share their research. *See supra* at 2–4 (summarizing allegations concerning Fusion Defendants). The Complaint then applies "labels and conclusions" asserting a conspiracy. *Iqbal*, 556 U.S. at 678. Many of the RICO conspiracy defendants were working, in one way or another, for or with a campaign opposed to the Plaintiff— as were countless other Americans. The Complaint singles out a subset of those opposed to Trump's campaign and labels their ordinary election-year campaigning and parallel conduct a conspiracy. But such conclusory labels and allegations can and should be ignored by the Court. *In re Northlake Foods, Inc.*, 715 F.3d 1251, 1257 (11th Cir. 2013); *see also Twombly*, 550 U.S. at 566–67 ("[T]he plaintiff 'may believe the defendants conspired . . . , [but] the defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals

which do not constitute a conspiracy.'" (quoting *Kramer v. Pollock–Krasner Foundation,* 890 F. Supp. 250, 256 (S.D.N.Y. 1995))).

Additionally, as explained *supra* at 8–9, the Complaint's failure to properly allege a violation of either RICO substantive provision means the RICO conspiracy claim also must be dismissed. *See Doria v. Class Action Servs., LLC*, No. 08-cv-80512, 2008 WL 11411205, at *4 n.9 (S.D. Fla. Oct. 30, 2008) (Middlebrooks, J.) ("[A] plaintiff alleging a violation of § 1962(d) must first show an overt act that is independently wrongful under a substantive provision of the RICO statute.").

## II. THE STATE LAW CLAIMS BROUGHT AGAINST THE FUSION DEFENDANTS ALSO FAIL.

### A. The Conspiracy to Commit Injurious Falsehood Claim Is Untimely, Constitutionally Invalid, and Lacking Key Elements of the Tort.

The tort of "[i]njurious falsehood essentially concerns 'intentional interference with another's economic relations'" and it is appropriately brought by a plaintiff asserting "damage to property . . . [or] damage to business interests from disparagement reflecting upon the business'[s] existence or character, or the manner in which the business is conducted." *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003) (quoting *Salit v. Ruden, McClosky, et al., P.A.*, 742 So. 2d 381, 386 (Fla. 4th Dist. Ct. App. 1999)). Count IV fails to state a claim for conspiracy to commit injurious falsehood against the Fusion Defendants.

*First*, the claim has been brought outside the applicable statutes of limitations. A claim for conspiracy fails when the underlying tort alleged is outside its statute of limitations, *see Ovadia v. Bloom*, 756 So.2d 137, 140–41 (Fla. 3d Dist. Ct. App. 2000) (citing *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So.2d 607, 609 (Fla. 4th Dist. Ct. App. 1975)); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014) (holding that where underlying tort claims "[do] not survive [a] Motion to Dismiss, they cannot substantiate [a] civil conspiracy claim"). Florida

11

allows just two years from publication for an injurious falsehood claim. *ADT LLC v. Vivint, Inc.*, No. 17-cv-80432, 2017 WL 5640725, at *6 & n.8 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.) (equating "injurious falsehood" with "trade slander" and applying two-year statute of limitations to such claims); *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So.3d 173, 174 (S.D. Fla. 2016) (two-year limit for slander actions runs from publication); Fla. Stat. Ann. § 95.11(4)(g). A claim alleging civil conspiracy also fails when it is not brought within four years from the date that the plaintiff "either knows or should know that the last element of the cause of action occurred." *Wilder v. J.P. Morgan Chase Bank, N.A.*, No. 18-cv-20820, 2018 WL 5629922, at *2 (S.D. Fla. Oct. 30, 2018) (quoting *Lesti v. Wells Fargo Bank*, N.A. 980 F. Supp. 2d 1311, 1320 (M.D. Fla. 2013)). This is the same starting point and length of time as the RICO claims discussed above, and Trump's October 29, 2017 tweets alleging a conspiracy again show that he knew all the facts he purports to allege here over four years before filing this suit.

The facts alleged in the Complaint are all over four years old. The Complaint describes no publications, statements, or even activity by the Fusion Defendants later than early 2017 in anything more than conclusory fashion. The only post-January 2017 allegation concerning Fusion Defendants is that they have allegedly "continued their collective mission to fabricate evidence and disparage Donald J. Trump . . . well after Trump won the 2016 election." *Id.* ¶ 252. Beyond statements about alleged funding for this mission, *id.* ¶¶ 253–54, the Complaint does not say when, where, or how the Fusion Defendants continued this supposed mission. There is no allegation that they published anything within the two years prior to the filing of this lawsuit. These post-election allegations amount to nothing more than conclusory assertions of an ongoing injury, which may be ignored like any other conclusory allegations. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("[C]onclusory allegations . . . are not entitled to an assumption of truth . . . ."); *see also*

12

*In re Takata Airbag Prods. Liability Litig.*, No. 14-cv-24009, 2016 WL 11662171, at *14 (S.D. Fla. Sept. 30, 2016) (noting that "conclusory allegations" do not impact the running of a statute of limitations). Because all the alleged conduct occurred and was known to Trump over four years ago, the Complaint fails to plausibly allege that the underlying tort alleged (injurious falsehood) has been brought within its two-year statute of limitations or that the conspiracy claim has been brought within its four-year conspiracy limitations period.

*Second*, any statements made by the Fusion Defendants concerning candidate or President Trump at any point are protected under the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam); *see also* Clinton Br. at 15. A public official cannot recover damages for defamatory falsehoods relating to official conduct without proving—or, at this stage, plausibly alleging—that the falsehoods were made with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).  Trump's suggestions that the Fusion Defendants acted with actual malice consist entirely of conclusory assertions that unspecified information was untrue, *see, e.g.*, Compl. ¶ 70 (stating that Fusion's "true task was to prepare a fraudulent 'dossier'"); *id.* ¶ 131 (referencing "false information"); *id.* ¶ 165 (referencing "disinformation"), and equally conclusory allegations of actual malice, *see, e.g.*, *id.* ¶¶ 351, 362, 373. These are simply "formulaic recitation[s] of the elements of a cause of action," that fail to state a claim. *Iqbal*, 556 U.S. at 678.[8]

---

[8] Although a plaintiff's facts are accepted as true at this stage, it should be noted that many of the premises underlying Trump's alleged falsehoods concerning the relationship among Russia, Trump, and the Trump Campaign were later substantiated by the findings of multiple federal investigations. The Treasury Department identified a "known Russian Intelligence Services Agent," Konstantin Kilimnik, as having "provided the Russian Intelligence Services with sensitive information on polling and campaign strategy," that Special Counsel Robert Mueller's investigation had previously determined Kilimnik obtained from Trump Campaign official Paul Manafort. Press Release, U.S. Dep't of the Treasury, Treasury Escalates Sanctions Against the Russian Government's Attempts to Influence U.S. Elections (Apr. 15, 2021), https://home.treasury.gov/news/press-releases/jy0126; Robert S. Mueller, III, Report on the Investigation into Russian Interference in the 2016 Presidential Election ("Mueller Report"), 130–31 (Vol. 1, March 2019),

13

*Third*, Trump also fails to properly plead a number of the required elements for injurious falsehood under Florida law. These elements under Florida law are "(1) a falsehood; (2) published or communicated to a third party; (3) the Defendant kn[e]w that the falsehood would likely induce others not to deal with the Plaintiff; (4) the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff; and (5) special damages." *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13-cv-80039, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013). The Complaint entirely ignores the economic nature of the third and fourth elements' requirements concerning "others not [dealing] with the Plaintiff." *Id.* Injurious falsehood involves holding a person who "disparage[es] . . . the quality of another's land, chattels or intangible things" accountable for "pecuniary loss resulting . . . from the impairment of vendibility." *Lehman v. Goldin*, 36 So. 2d 259, 260 (Fla. 1948) (quoting the Restatement of Torts § 624 (1938)); *see also Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 387 (Fla. Dist. Ct. App. 1999) ("[A]ny kind of legally protected property interest which is capable of being sold or transferred may be the subject of disparagement."). The statements Trump alleges were false did not touch in the least on any of his property interests, nor does he allege anywhere that the Fusion Defendants—or any others—anticipated that anything they were doing or saying "would likely induce others not to *deal with* the Plaintiff" with regard to property or money. The Complaint itself alleges that Fusion aimed to "ruin[] [Trump]'s opportunity to be elected and . . . to properly serve as President,"[9] Compl. ¶ 70, not to ruin the Trump Organization or Trump's personal finances.

---

https://www.justice.gov/storage/report.pdf. The Special Counsel also established that "Russia interfered in the 2016 presidential election" and "favored presidential candidate Donald J. Trump." Mueller Report at 1. The Senate Intelligence Committee reached the same conclusion. Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, S. Rep. 116-290, vol. 2, at 32 (2020), https://www.intelligence.senate.gov/sites/default/files/documents/Report_Volume2.pdf.

[9] These unquantifiable "opportunit[ies]" are not "intangible things" under the definition given in the Restatement of Torts, which the Florida Supreme Court adopted in *Lehman*. The "intangible

Nor does the Complaint adequately allege any of Trump's damages were directly caused by the Defendants' supposed conduct. The Complaint's periodic references to lost "business opportunities," *e.g., id.* ¶¶ 263, 354, are again conclusory recitations of the elements of a claim, *Iqbal*, 556 U.S. at 678, and bear no connection to Trump's overall narrative of harm to his *political* fortunes. Furthermore, even if the Complaint had adequately identified Trump's lost business opportunities, they could not plausibly be directly attributed to Defendants' conduct to the exclusion of unrelated negative press coverage or controversial statements and decisions that Trump and his surrogates made during his campaign and presidency.[10] This, too, is fatal to the injurious falsehood claims because "[s]pecial damages require proof that the loss is directly attributed to defendants conduct and the loss is not to be explained by other considerations." *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, No. 19-cv-62078, 2022 WL 320952, at *14 (S.D. Fla. Jan. 28, 2022) (citing *Salit*, 742 So. 2d at 386); *see also id.* ("Defendants fail to show that Plaintiffs' actions were the sole cause of Defendants['] losses, which is a requirement to establish special damages.").

Finally, even if the underlying claim for injurious falsehood were adequately pled—which it is not—the conspiracy claim would still fail. As was the case for the RICO conspiracy claim, a conspiracy among parties is not alleged in any detail but is instead asserted in conclusory terms.

---

things" described there are "interests recognized by the law of property which are salable or otherwise capable of profitable disposal." Restatement of Torts § 624, special note c ("It may be a mortgage, lease, easement, reversion or remainder, . . . a trust or other equitable interest therein[,] . . . . a patent right, a copyright or the right to use a trademark or trade name[,] . . . . intangible property whether represented and embodied in a document, negotiable or otherwise, or consisting of a simple debt or other cause of action.").

[10] The Complaint's lone purported example of a lost business opportunity—Trump's 2021 loss of access to his Twitter account, Compl. at n.78—was quite famously prompted by *his own* conduct in the aftermath of the *2020* election, not Defendants' conduct in 2016. Kate Conger & Mike Isaac, *Inside Twitter's Decision to Cut off Trump*, N.Y. Times (Jan. 16, 2021), https://www.nytimes.com/2021/01/16/technology/twitter-donald-trump-jack-dorsey.html.

15

### B. The Malicious Prosecution Claims Fails Because Trump Has Not Been Prosecuted.

Under Florida law, a plaintiff claiming malicious prosecution must establish:

(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123–24 (S.D. Fla. 2019) (citing *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994)). The Complaint identifies no such proceeding, nor has one been brought against Trump in connection with the allegations at issue. "An action for malicious prosecution . . . [can] never occur outside the context of litigation." *Fischer v. Debrincat*, 169 So. 3d 1204, 1209 (Fla. Dist. Ct. App. 2015), *approved*, 217 So. 3d 68 (Fla. 2017). The remaining elements accordingly fail as well.[11] Count VI's conspiracy claim likewise fails because, yet again, the conspiracy is asserted in only conclusory fashion, and a conspiracy claim cannot survive absent a viable claim for the underlying tort. *Ovadia*, 756 So.2d at 140–41; *Alhassid*, 60 F. Supp. 3d at 1317.[12]

### C. "Respondeat Superior/Vicarious Liability" Is Not a Cause of Action.

Finally, Trump's claim against Fusion itself for "Respondeat Superior" or "Vicarious

---

[11] Even if the "Crossfire Hurricane" investigation qualified as a proceeding—which it does not under Florida law because it was not a judicial proceeding—Trump could not establish the fifth element (among others) because an Inspector General investigation into that investigation found that it was properly initiated. U.S. Dep't of Justice, Office of the Inspector General, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation at 347 (2019), https://www.justice.gov/storage/120919-examination.pdf.

[12] Count VI is also untimely even under the four-year conspiracy statute of limitations applied in Florida. *See supra* at 11–12. All of the Complaint's non-conclusory allegations involving the Fusion Defendants concern actions taken in 2016 and early 2017.

16

Liability" (Count XIV) fails to state a claim because respondeat superior and vicarious liability are not valid causes of action, but rather theories of liability. *Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, 2020 WL 5628734, at *2 (M.D. Fla. Sept. 21, 2020) ("[U]nder Florida . . . law, respondeat superior does not constitute an independent cause of action.") (citing *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So.2d 1242, 1245 (Fla. 1st Dist. Ct. App. 1995)). To the extent that Count XIV is intended to charge Fusion with vicarious liability for the malicious prosecution torts brought against Simpson, Fritsch, and Nellie Ohr, it fails for the same reasons as those underlying torts.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice as to the Fusion Defendants.

Dated: May 11, 2022

By: /s/ Adam S. Fels
Adam S. Fels
**FRIDMAN FELS & SOTO PLLC**
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
afels@ffslawfirm.com

Tel: 305-569-7701

Joshua A. Levy (admitted *pro hac vice*)
Rachel Clattenburg (admitted *pro hac vice*)
Kevin P. Crenny (admitted *pro hac vice*)
**LEVY FIRESTONE MUSE LLP**
900 17th St. NW, Suite 1200
Washington, D.C. 20006
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com

Tel: 202-845-3215
Fax: 202-595-8253

*Counsel for Defendants*
*Fusion GPS, Peter Fritsch, and Glenn Simpson*

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served through the Court's electronic filing system on May 11, 2022 to counsel of record.

    /s/ Adam S. Fels
Adam S. Fels