# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

DONALD J. TRUMP,

                    Plaintiff,

       v.

HILLARY R. CLINTON, et al.,

                    Defendants.

Case No. 2:22-cv-14102-DMM

## DEMOCRATIC NATIONAL COMMITTEE, DNC SERVICES CORPORATION, AND DEBBIE WASSERMAN SCHULTZ'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Gerald Edward Greenberg
GELBER SCHACHTER & GREENBERG PA
One Southeast Third Avenue
Suite 2600
Miami, FL 33131-1715
(305) 728-0950
ggreenberg@gsgpa.com

Roberta A. Kaplan
Shawn G. Crowley
Maximillian L. Feldman
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com
mfeldman@kaplanhecker.com
*Admitted Pro Hac Vice*

*Attorneys for Defendants Democratic National Committee, DNC Services Corporation, and Debbie Wasserman Schultz*

## PRELIMINARY STATEMENT

Defendants the Democratic National Committee and DNC Services Corporation ("DNC"), as well as Defendant Debbie Wasserman Schultz, respectfully request that the Court dismiss the Complaint with prejudice.

*First*, all of Plaintiff's claims against the DNC and Ms. Wasserman Schultz—which largely concern events surrounding the 2016 Presidential election—are clearly time-barred on the face of the Complaint. This result is hardly surprising: for well over five years, Plaintiff has known about (and publicly decried) the supposed vast conspiracy at the heart of this untimely Complaint.

*Second*, Plaintiff's allegations against the DNC and Ms. Wasserman Schultz fail to state a claim on which relief can be granted in any event. Despite the sheer bulk of the Complaint (108 pages and 508 paragraphs), the only facts pleaded with specificity against these parties concern routine political behavior: for example, the DNC hired the same general counsel as the Clinton Campaign; those parties negotiated a joint fundraising agreement; and the DNC's former chair (Ms. Wasserman Schultz) appeared twice on cable news to express her opinions about the President of the United States. To be sure, Plaintiff sprays the Complaint with additional, general allegations that *others* were acting at the DNC's direction. But those vague and conclusory allegations cannot push his claims past the plausibility threshold. Indeed, as discussed below, each of the claims alleged in the Complaint rests on fundamental errors of both law and logic.

## ARGUMENT

To state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (*per curiam*) (citation omitted). "A complaint that provides 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action'" is insufficient. *Id.* (citation omitted). "Stating a plausible claim for relief requires pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged; this obligation requires more than a sheer possibility that a defendant has acted unlawfully" or facts that are "merely consistent with" a defendant's liability. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up). Additionally, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Id.*

When it comes to issues of timeliness, "[a]lthough a statute of limitations bar is an affirmative defense, and a plaintiff need not negate such a defense in his complaint, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *Makozy v. Stewart Title*, No. 20 Civ. 14316, 2021 WL 686863, at *1 (S.D. Fla.) (cleaned up), *aff'd sub nom. Makozy v. Westcor Land Title*, 852 F. App'x 518 (11th Cir. 2021).

Moreover, because the thrust of Plaintiff's Complaint is a "wide-ranging and fraudulent scheme" to produce and disseminate "fraudulent evidence" that was supposedly "intended to mislead law enforcement, the media, and the public at large," ¶¶ 7, 281-82, *see also* ¶¶ 4, 9, 59, 70, 263, 270, 278, 293, 308, 321, Plaintiff must comply with Rule 9(b)'s heightened pleading standard, which requires him to state with precision and particularity the circumstances constituting fraud. *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014).

## I.     Plaintiff's Claims Are Time-Barred.

The relevant statutes of limitations provide a complete defense on the face of the Complaint as to all counts against the DNC and Ms. Wasserman Schultz (together, the "DNC Parties"). To that end, the DNC Parties adopt by reference the arguments made in Part I of Hillary Rodham Clinton's Motion to Dismiss the Complaint ("Clinton Brief") (ECF No. 52 at pp. 1-5). Plaintiff

brings only a subset of the claims he brings against Secretary Clinton (Counts I-IV, VI-VIII, X) against the DNC (Counts I, II, IV, VII, VIII) and Ms. Wasserman Schultz (Counts III, IV, VI).[1] And Plaintiff does not assert any material allegations against the DNC Parties independent of his vague and conclusory allegations that the DNC Parties conspired with Secretary Clinton to "weave a false narrative that their Republican opponent, Donald J. Trump, was colluding with a hostile foreign sovereignty." ¶ 1. Indeed, Plaintiff avers that "at all relevant times" the DNC was "controlled by Clinton." ¶ 276. Accordingly, Plaintiff's claims against the DNC and Ms. Wasserman Schultz are time-barred, for substantially the same reasons as those outlined in the Clinton Brief.[2]

In addition to his generalized allegations of a conspiracy, Plaintiff alleges that Ms. Wasserman Schultz made two specific statements constituting injurious falsehoods under Florida law. But the Florida statute of limitations for injurious falsehood claims is two years. *ADT LLC v. Vivint, Inc.*, No. 17 Civ. 80432, 2017 WL 5640725, at *6 & n.8 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.). As a result, the statute of limitations has run on both statements attributed to Ms. Wasserman Schultz since the first statement allegedly occurred on May 10, 2019, *see* ¶ 258,

---

[1] Although Plaintiff purports to bring a claim for "Respondeat Superior/Vicarious Liability" (Count XII) against the DNC, that is not an independent claim under Florida law. *See* Part I.H, *infra*.

[2] While the Complaint cites two alleged statements by Secretary Clinton within the limitations period, from June 16, 2021 and February 16, 2022, ¶¶ 260-61, it is black letter law that the statute of limitations for civil RICO actions begins running "when the injury was or should have been discovered." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013); *Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) (affirming dismissal of civil RICO claim on statute of limitation grounds); *see also Verdejo v. HP Inc.*, No. 21 Civ. 20431, 2021 WL 5933727, at *11 (S.D. Fla. Nov. 8, 2021) (plaintiffs' RICO conspiracy claims based on additional extortionary payments within the limitations period could not revive their time-barred action where the new injury was "merely a reaffirmation of the original threats"); *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) ("Statutes of limitations triggered by injury to the Plaintiffs begins to run when the injury commences or first appears, not when it recurs."). Nor can Plaintiff take advantage of the "separate accrual" rule because he does not allege a "new RICO predicate act," let alone one that "gives rise to a new and independent injury." *Lehman*, 727 F.3d at 1330-31.

and the second statement on its face occurred before Special Counsel Robert Mueller was appointed in May 2017, *see* ¶ 337 ("Donald Trump should be the first person asking for one"— *i.e.*, an investigation into allegations of Russian collusion).

For these reasons, all claims against the DNC Parties are clearly untimely on their face, and this Court need not even reach the other independent reasons to dismiss for failure to state a claim under Rule 12(b)(6).

## II.      Plaintiff Fails to State a Plausible Claim for Relief.

### A.      Count I: RICO (against the DNC)

As many courts have recognized, because of their very nature, civil RICO claims "must be subjected to scrutiny due to their potential for abuse by civil litigants." *Al-Ghena Int'l Corp. v. Radwan*, No. 13 Civ. 61557, 2013 WL 12237726, at *9 (S.D. Fla. Dec. 23, 2013) (citation omitted). As a result, plaintiffs "wielding RICO almost always miss the mark," *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017), and "courts have generally approached civil RICO claims with a skeptical eye," *Entretelas Americanas S.A. v. Soler*, No. 19 Civ. 03658, 2020 WL 9815186, at *5 (S.D.N.Y.), *aff'd*, 840 F. App'x 601 (2d Cir. 2020), *as amended* (Jan. 7, 2021). Because of this potential for abuse, "courts have an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO." *DeBoskey v. SunTrust Mortg., Inc.*, No. 14 Civ. 1778, 2017 WL 4083557, at *7 (M.D. Fla. Sept. 14, 2017) (citation omitted). Plaintiff's pleading here is not even close to being the kind of "rare" RICO complaint that should survive a motion to dismiss.

With respect to the Complaint's civil RICO claims, the DNC Parties adopt by reference the arguments in Part II.A of the Clinton Brief, pp. 6-14. Plaintiff asserts that the DNC and Secretary Clinton participated in the same RICO enterprise, supported by the same predicate acts and the same pattern of racketeering activity, causing the same (vague) injury. Thus, Plaintiff's

4

failures to adequately plead (a) the existence of a cognizable RICO enterprise, (b) predicate acts supporting a RICO claim, (c) a pattern of racketeering activity, or (d) standing under the RICO statute are fatal to his RICO claim against the DNC for substantially the same reasons as those asserted by Secretary Clinton.

Furthermore, Plaintiff does not plausibly allege that the DNC participated in the purported enterprise, let alone participated through a pattern of racketeering activity, as required by the RICO statute. 18 U.S.C. § 1962(c); *see Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (holding that "one must have some part in directing" the enterprise to be liable under the statute). Plaintiff's allegations concerning the DNC's connection to the alleged racketeering activity are wholly conclusory. *See, e.g.*, ¶¶ 81, 106, 123, 173. Indeed, Plaintiff's vague allegations that the DNC "directed" *other* alleged participants to commit predicate acts are contradicted in key respects by Plaintiff's own, more specific allegations. For example, although Plaintiff alleges that Mr. Joffe acted to unlawfully exploit access to internet data at "at the behest of certain 'VIPs' of the Clinton Campaign and Perkins Coie" including "Clinton, Sullivan, Elias and/or Sussmann," ¶ 122, in the very next paragraph, the Complaint alleges that Joffe acted "at the direction of Clinton, the Clinton Campaign and the DNC," ¶ 123. Similarly, Plaintiff alleges that Mr. Sussmann met with the FBI's General Counsel "at the behest of Clinton, the Clinton Campaign, and the DNC," but in the very next sentence alleges that "he billed the Clinton Campaign for his efforts, as he had with all of his actions taken in furtherance of the Defendants' conspiracy." ¶ 172. Black letter principles prohibiting improper group pleading, *see, e.g.*, *Libov v. Readix, Inc.*, No. 10 Civ. 61755, 2011 WL 13216996, at *1 (S.D. Fla. Sept. 8, 2011), mean that Plaintiff cannot simply "lump[] together all of the defendants in their allegations of fraud," *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (affirming dismissal of civil RICO claims). Plaintiff's failure

5

"to describe the who, what, when, where, and how" of **the DNC's** participation in the alleged racketeering activity, with specificity, is fatal to his RICO claim against the DNC. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020) (affirming dismissal of federal RICO claims).

### B.     Count II: RICO Conspiracy (against the DNC)

The DNC Parties adopt by reference the arguments made in Part II.B of the Clinton Brief, pp. 14-15. Plaintiff's conclusory allegations concerning a RICO conspiracy do not differentiate among the roles and actions of the 21 purported participants in the conspiracy. His claims against the DNC thus fail for substantially the same reasons as those outlined by Secretary Clinton.

### C.     Count III: Injurious Falsehood (against Ms. Wasserman Schultz)

Plaintiff's claim for injurious falsehood fails as well. To state a claim for injurious falsehood, Plaintiff must allege:

> (1) A falsehood (2) has been published, or communicated to a third
> person (3) when the defendant-publisher knows or reasonably
> should know that it will likely result in inducing others not to deal
> with the plaintiff and (4) in fact, the falsehood does play a material
> and substantial part in inducing others not to deal with the plaintiff;
> and (5) special damages are proximately caused as a result of the
> published falsehood.

*Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App. 1984).[3]

Plaintiff points to two statements allegedly made by Ms. Wasserman Schultz to support his claim. First, he alleges that on May 10, 2019, Ms. Wasserman Schultz stated on MSNBC:

> You know, what's so disturbing is that Donald Trump is so lacking
> in confidence about his ability to actually get elected without the
> help of a foreign power, and particularly a foreign adversary, that
> they will go to any lengths and that he will instruct and allow his

---

[3] While *Bothmann* concerned a cause of action for "slander of title," 458 So. 2d at 1168, as this Court has recognized, "[i]njurious falsehood is a term interchangeably used to refer to a group of torts, which includes slander of title, disparagement of property, or trade libel." *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13 Civ. 80039, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.) (internal quotation marks omitted) (applying elements set forth in *Bothmann* to injurious falsehood claim).

> colleagues and allies to go to any lengths to be able to secure his
> success in an election.

¶ 258.[4] Second, and alternatively, Plaintiff alleges that Ms. Wasserman Schultz stated on CNN:

"[W]ith every passing day, it gets more and more disturbing, and more and more evidence that

there was collusion. . . . Donald Trump should be the first person asking for one, but since I think

he likely was part of it, it's not surprising that hasn't happened." ¶ 337.[5]

Plaintiff's allegations, which focus on political speech, are a poor fit for an injurious

falsehood claim, the "gist" of which is a defendant's "intentional interference with another's

economic relations." *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13 Civ. 80039, 2013

WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.). Indeed, Plaintiff fails to allege

*any facts* suggesting that Ms. Wasserman Schultz knew that her statements would likely induce

others not to deal economically with Plaintiff, who at the time was serving as President of the

United States. Nor does Plaintiff allege that (and, if so, how) Ms. Wasserman Schultz's statements

played a material or substantial role in inducing others not to do business with Plaintiff. *See, e.g.*,

*Dragash v. Fed. Nat'l Mortg. Ass'n*, No. 15 Civ. 847, 2016 WL 9632958, at *4 (M.D. Fla. Mar.

14, 2016), *aff'd*, 700 F. App'x 939 (11th Cir. 2017) (dismissing claim for slander of title where

plaintiff failed to plead that falsehood "induced others to not deal with the plaintiff"). Plaintiff also

fails to plead the requisite "special damages . . . proximately caused as a result of the published

falsehood." *Bothmann*, 458 So. 2d at 1168. To the contrary, he asserts that he suffered the same

---

[4] In the same paragraph, Plaintiff also alleges "Schultz appeared on MSNBC and boldly announced that there were 'clear indications' that Donald J. Trump colluded with Russia." In addition to the other reasons for dismissal outlined in this section, any claim based on this allegation should be dismissed because it "fail[s] to provide an adequate description of the statements," *Malhotra v. Aggarwal*, No. 17 Civ. 24407, 2019 WL 3425161, at *2 (S.D. Fla. July 30, 2019).

[5] Any claim based on this statement fails because Plaintiff "fail[s] to provide an adequate description of the . . . time frame" in which the statement was made, *Malhotra*, 2019 WL 3425161, at *2, in addition to the other reasons set forth herein.

losses for injurious falsehood as he did with respect to *all* of the other claims alleged in the Complaint. *See* ¶ 344. This obviously does not suffice. And of course, each of these pleading failures provides an independent basis for dismissal.

But there is more: Plaintiff's claim is also clearly barred by the First Amendment to the U.S. Constitution. Political comments based on facts "known or available to the reader or listener as a member of the public" are, by definition, "pure opinion" protected by the First Amendment. *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981); *see also Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985) ("Opinions are protected from defamation actions by the First Amendment."); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1384 (S.D. Fla. 2006) (finding "textbook expression of pure opinion" where defendant "merely offered readers his judgment—albeit, a harsh one—based upon facts that were known or available to them").[6] Plaintiff cannot seriously dispute that facts concerning Plaintiff's interactions with Russia were widely known: it is the premise of his entire Complaint. And while Plaintiff may find Ms. Wasserman Schultz's alleged characterizations objectionable, that does not convert them into falsifiable statements of fact. Because Ms. Wasserman Schultz's "subjective assessment of [Mr. Trump's] conduct" is "not readily capable of being proven true or false," it is not actionable as a matter of law. *Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018).

Plaintiff also violates a separate First Amendment limitation: he fails to allege that Ms. Wasserman Schultz uttered either of the alleged statements with actual malice (in other words,

---

[6] Florida courts "have afforded" personal defamation claims and injurious falsehood-type claims "identical treatment, distinguishing them only to the extent that 'slander of title' is defined as defamation of property interest, while libel and slander are defined as defamation of character of the person." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. Dist. Ct. App. 2002); *see also Tobinick v. Novella,* 108 F. Supp. 3d 1299, 1309 (S.D. Fla. 2015) (holding, under California law, that "constitutional protection does not depend on the label given the stated cause of action" and where "allegedly false and/or defamatory statements . . . constitute the gravamen of" trade libel and unfair competition claims, "each of these claims is subject to the First Amendment defamation rules.").

with knowledge of their falsity or reckless disregard for their truth). *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Jacoby v. Cable News Network, Inc.*, No. 21-12030, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (*per curiam*) ("We may not hold a defendant liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice."); *Smith v. Russell*, 456 So. 2d 462, 464 (Fla. 1984) (holding, in defamation action, that "the applicable *New York Times* standard allows public figures or public officials to recover for injury to reputation only upon clear and convincing proof of actual malice"). Plaintiff's only allegations on this score are general and conclusory. *See* ¶ 328 (stating that Defendants "knew that Plaintiff was not colluding with Russia, or, at a minimum, acted with reckless abandon as to the truth" of their statements). Such vague allegations are plainly inadequate to state a claim. *See Jacoby*, 2021 WL 5858569, at *4-5 (affirming dismissal of defamation claim where plaintiff offered only "conclusory allegations" that defendant "intend[ed] to fabricate or otherwise mispresent facts concerning [the plaintiff] and his business so that he would suffer resulting reputational harm"); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1253 (11th Cir. 2021) ("bare-bone[s] allegations" that the defendant's "conduct, in and of itself, would have created a high degree of awareness of the probable falsity of" the statement insufficient to allow court to infer that the defendant "seriously doubted" the statement's accuracy).

> **D.   Count IV: Conspiracy to Commit Injurious Falsehood (against the DNC and Ms. Wasserman Schultz)**

Plaintiff's conspiracy claim fails because his claims concerning the underlying injurious falsehood tort fail. "An action for civil conspiracy requires that a claimant plead an underlying tort or civil wrong, serving as the conspiracy's object." *Abromats v. Abromats*, No. 16 Civ. 60653, 2016 WL 4917153, at *4 (S.D. Fla. Sept. 15, 2016). As set forth above, Plaintiff's underlying injurious falsehood claims are time-barred and inadequately pleaded. *See* Parts I & II.C *supra*;

Clinton Brief at pp. 4, 15-18. As a result, the conspiracy claim must necessarily fail as well. *See,*

*e.g.*, *Abromats*, 2016 WL 4917153, at *4 (S.D. Fla. Sept. 15, 2016) (dismissing conspiracy claim

where underlying tort claims were time-barred); *Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. Dist.

Ct. App. 2000) (holding that "conspiracy to defame claim cannot stand where" underlying

defamation claim was time-barred); *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025,

1027 (Fla. Dist. Ct. App. 1981).

Moreover, even if that were not the case (which it is), Plaintiff has failed to adequately

allege a conspiracy. Under Florida law, in order "to plead civil conspiracy, a plaintiff must allege

(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by

unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to

plaintiff as a result of the acts done under the conspiracy." *Alhassid*, 60 F. Supp. 3d at 1316

(internal quotation marks omitted). Plaintiff must "set forth clear, positive, and specific allegations

of civil conspiracy." *Corbett v. Transportation Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla.

2012), *aff'd*, 568 F. App'x 690 (11th Cir. 2014). Here, however, Plaintiff has failed to allege the

"who, what, when, where, and how" of any purported conspiratorial agreement. *Alhassid*, 60 F.

Supp. 3d at 1320; *see also Corbett*, 968 F. Supp. 2d at 1190 (noting that "[g]eneral allegations of

conspiracy are inadequate" (citation omitted)). For example, Plaintiff asserts generally that

Defendants "had a meeting of the minds" to make and disseminate "false and damaging

statements," ¶ 347, but does not allege any specific facts establishing a conspiratorial agreement

to commit injurious falsehood. "Without more, parallel conduct does not suggest conspiracy, and

a conclusory allegation of agreement at some unidentified point does not supply facts adequate to

show illegality." *Alhassid*, 60 F. Supp. 3d at 1319 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556-57 (2007)); *see also Parisi v. Kingston*, 314 So. 3d 656, 662 (Fla. Dist. Ct. App. 2021)

(dismissing a complaint alleging civil conspiracy as "deficient because it fails to allege, with any specificity, any facts evidencing how [one defendant] conspired with [others]").

E.     **Count VI: Conspiracy to Commit Malicious Prosecution (against Ms. Wasserman Schultz)**

Similar to the claims discussed above, Plaintiff's claim of conspiracy to commit malicious prosecution against Ms. Wasserman Schultz requires that he plead *both* elements of civil conspiracy under Florida law, *and* the underlying tort of malicious prosecution. *See* Part I.E *supra*. Plaintiff fails on both fronts.

As with his other conspiracy claims, Plaintiff fails to "set forth clear, positive, and specific allegations of civil conspiracy." *Corbett*, 968 F. Supp. 2d at 1190. Once again, he fails to allege any basic facts of any conspiratorial agreement. *Alhassid*, 60 F. Supp. 3d at 1320. Other than the conclusory allegation that Ms. Wasserman Schultz and eleven other defendants supposedly "had a meeting of minds," ¶ 369, Plaintiff offers no factual allegations indicating Ms. Wasserman Schultz had interactions with any of the other alleged conspirators, let alone any factual allegations to support the conclusion that Ms. Wasserman Schultz agreed to join a conspiracy "to feed false and/or misleading information to the FBI and the DOJ." ¶ 371. His claim fails for that reason alone.

Plaintiff's claim, however, also fails for the independent reason that he has not sufficiently pleaded the underlying tort of malicious prosecution. To state a claim for malicious prosecution under Florida law, a plaintiff must allege:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123-24 (S.D. Fla. 2019). Here, Plaintiff

cannot allege that an "original judicial proceeding" was commenced against him. More

specifically, Plaintiff's claim is founded exclusively on investigations by the FBI and Special

Counsel Mueller. Under well-settled Florida law, a non-adversarial, confidential investigation is

not a judicial proceeding for purposes of a claim of malicious prosecution. *See Nw. Fla. Home*

*Health Agency v. Merrill*, 469 So. 2d 893, 900 (Fla. Dist. Ct. App. 1985) (noting that such an

investigation "does not become quasi-judicial unless the agency determination is subject to the

right to notice and hearing on the part of the person being proceeded against").

### F.      Count VII: Computer Fraud and Abuse Act (against the DNC)

Not surprisingly, Plaintiff's claim under the federal Computer Fraud and Abuse Act

(CFAA) should likewise be dismissed. A defendant can be held liable under the CFAA only if he

"(1) intentionally 'accessed' a computer, (2) lacked authorization or exceeded his authorized

access to the computer, (3) obtained information from the computer, and (4) caused a loss of at

least $5,000.00 to [Plaintiff]." *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1313

(S.D. Fla. 2018) (alteration in original) (citation omitted).[7] Plaintiff's CFAA claim fails for

multiple reasons.

*First*, Plaintiff does not allege the DNC "accessed" any computer. Instead, Plaintiff alleges

the DNC "conspired with Neustar and Joffe in *their* commission" of the relevant acts. ¶ 390

(emphasis added). But this stretches civil liability beyond the bounds of the statute. As a general

rule, courts do not read civil secondary liability into laws that do not provide for it. *See Cent. Bank*

*of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) ("[W]hen

---

[7] While a civil plaintiff may establish a CFAA claim based on other forms of damage—for
example, "physical injury to any person," 18 U.S.C. § 1030(c)(4)(A)(i)(III)—the only cognizable
injury Plaintiff pleads here is loss in excess of $5,000. ¶ 319.

Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."). And here, there is no basis to expand liability under the CFAA, which expressly limits its private right of action to suits "against the violator." 18 U.S.C. § 1030(g); *see Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017) (holding that even if one defendant had "directed or induced" another defendant to violate the CFAA, the first defendant "did not access [Plaintiff's] computers, and therefore, [the first defendant] may not be held liable as the violator under the CFAA").

*Second*, Plaintiff does not allege sufficient facts to establish "an agreement to violate the law," as is required in order to state a claim for conspiracy in any event. *Coll Builders Supply, Inc. v. Velez*, No. 617 Civ. 933, 2017 WL 4158661, at *10 (M.D. Fla. Aug. 31, 2017) (dismissing CFAA conspiracy claim based on allegations that one defendant acted "at the behest of and on behalf of" another defendant), *report and recommendation adopted*, No. 617 Civ. 933, 2017 WL 4125641 (M.D. Fla. Sept. 18, 2017); *Agilysys*, 258 F. Supp. 3d at 1343 (dismissing CFAA conspiracy claim where, in addition to lack of statutory basis for theory, there "are no facts showing" that one defendant "induced or even directed" another defendant to take the relevant actions).[8]

*Third*, Plaintiff has not adequately alleged that he suffered the type of loss necessary to bring a civil claim under the CFAA. For purposes of the statute, the term "loss" is defined to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its

---

[8] In *Coll Builders*, the court noted that "it remains a somewhat unsettled question of law as to whether a civil defendant may be held liable for attempting or conspiring to violate the CFAA." 2017 WL 4158661, at *6. This Court should reject civil liability for conspiracy to violate the CFAA for the reasons explained herein.

condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). As the Eleventh Circuit has explained, this "includes the *direct* costs of responding to the violation in the first portion of the definition, and consequential damages *resulting from interruption of service* in the second." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017) (emphasis added). But here, Plaintiff does not allege any direct costs expended in responding to the alleged violations, and the "defense costs, legal fees, and related expenses" he purports to have incurred are certainly not related to any interruption of service. ¶ 392.

### G.      Count VIII: Theft of Trade Secrets (against the DNC)

Plaintiff's claim for theft of trade secrets fails for the same reasons that Plaintiff has not sufficiently pleaded theft of trade secrets as a RICO predicate act. *See* Clinton Brief pp. 8-9.

In any event, because criminal statutes generally "do not provide for private civil causes of action," *Smith v. JP Morgan Chase*, 837 F. App'x 769, 770 (11th Cir. 2021), there is no private right of action for conspiracy claims based on theft of trade secrets, Plaintiff's sole relevant claim against the DNC. *See* ¶ 413 ("The actions of Defendants, Perkins Coie, Sussmann, Clinton Campaign, DNC, and Clinton, constitute a conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5)."). Instead, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The statutory provision at issue does not expressly provide for a private right of action; nor can one be implied in light of the substantial criminal enforcement mechanism in the statute. *See, e.g.*, *Love v. Delta Air Lines*, 310 F.3d 1347, 1357 (11th Cir. 2002) ("The explicit provision of these elaborate enforcement mechanisms strongly undermines the suggestion that Congress also intended to create by implication a private right of action in a federal district court but declined to say so expressly."). While a *separate* provision of the Defend Trade Secrets Act does provide for a private right of action to obtain "an

14

order providing for the seizure of property necessary to prevent the propagation or dissemination of the trade secret that is the subject of the action," that cause of action is limited to civil actions under that subsection. 18 U.S.C. § 1836(b). Accordingly, "the weight of authority tips against the viability of conspiracy claims based on misappropriation of trade secrets under" 18 U.S.C. § 1832. *NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021); *see also, e.g.*, *Genentech, Inc. v. JHL Biotech, Inc.*, No. 18 Civ. 06582, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 840–44 (E.D. Va. 2017).

### H.  Count XII: Respondeat Superior/Vicarious Liability (against the DNC)

Plaintiff's claim for respondeat superior should be dismissed because "no such cause of action exists." *Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05 Civ. 60046, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006). Moreover, the Complaint is bereft of any factual allegations establishing that Ms. Wasserman Schultz was acting within the scope of her employment when she undertook the actions described in the Complaint, especially since Plaintiff's *own* allegations make it clear that Ms. Wasserman Schultz had already resigned as Chair of the DNC on July 28, 2016, ¶ 18, well before she made the alleged statements concerning Plaintiff on MSNBC and CNN.

### CONCLUSION

For the foregoing reasons, the DNC and Ms. Wasserman Schultz respectfully request that the Court grant their motion to dismiss the Complaint with prejudice.

Dated: May 11, 2022                         Respectfully submitted,

By:     /s/*Gerald E. Greenberg*
        Gerald Edward Greenberg
        GELBER SCHACHTER & GREENBERG PA
        One Southeast Third Avenue
        Suite 2600
        Miami, FL 33131-1715
        (305) 728-0950
        ggreenberg@gsgpa.com

        Roberta A. Kaplan
        Shawn G. Crowley
        Maximillian L. Feldman
        KAPLAN HECKER & FINK LLP
        350 Fifth Avenue, 63rd Floor
        New York, NY 10118
        212.763.0883
        rkaplan@kaplanhecker.com
        scrowley@kaplanhecker.com
        mfeldman@kaplanhecker.com
        *Admitted Pro Hac Vice*

        *Attorneys for Defendants Democratic
        National Committee, DNC Services
        Corporation, and Debbie Wasserman
        Schultz*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 11, 2022, I caused to be filed electronically the foregoing

Democratic National Committee, DNC Services Corporation, and Debbie Wasserman Schultz's

Motion to Dismiss the Complaint and Memorandum of Law in Support with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to all counsel of record in

this matter who are on the CM/ECF system.

By:      /s/*Gerald E. Greenberg*
Gerald Edward Greenberg
GELBER SCHACHTER & GREENBERG PA
One Southeast Third Avenue
Suite 2600
Miami, FL 33131-1715
(305) 728-0950
ggreenberg@gsgpa.com