IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Donald J. Trump,

    Plaintiff,

  v.

Hillary R. Clinton et al.,

    Defendants.

Civil Action No. 22-14102

## PERKINS COIE LLP'S MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6) AND INCORPORATED MEMORANDUM OF LAW

Nancy E. Hart (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-4000

F. Joseph Warin (*pro hac vice*)
Geoffrey M. Sigler (*pro hac vice*)
Katherine Moran Meeks (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:  (202) 955-8500

Eleni Kastrenakes Howard
Howard J. Harrington
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Telephone:  (561) 653-5000
Fax:  (561) 659-6313

*Attorneys for Perkins Coie LLP*

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.      Plaintiff's Claims Are Untimely. ................................................................................... 2

II.     Plaintiff Has Failed to State a Plausible RICO Claim Against Perkins Coie. ................. 2

III.    Plaintiff Cannot Maintain a Claim Against Perkins Coie for Conspiracy to Publish an Injurious Falsehood Because the Underlying Claim Fails on the Merits ..................... 4

        A.     Plaintiff Fails to Plead Multiple Elements of the Injurious Falsehood Claim. ............................................................................................................ 4

        B.     The Injurious Falsehood Claim Is Untimely ............................................. 8

        C.     The Conspiracy Claim Fails Because the Underlying Claim Does. ..................... 9

IV.    Plaintiff Cannot Maintain a Claim for Conspiracy to Commit Malicious Prosecution Because the Underlying Claim Fails on the Merits. ..................................... 9

V.     Plaintiff Fails to Plead Multiple Elements of the Computer Fraud and Abuse Act Claim. .......................................................................................................................... 13

        A.     The Supreme Court Has Foreclosed the "Unauthorized Access" Theory on Which the CFAA Claim Rests. ............................................................ 13

        B.     Plaintiff Fails to Plead Damage or Loss Compensable Under the CFAA. .......... 15

        C.     The CFAA Claim Should Be Dismissed to the Extent It Relates to EOP Computers or Systems. ........................................................................... 17

VI.    The Respondeat Superior Count Against Perkins Coie Should Be Dismissed Because the Underlying Claims Fail ................................................................................ 17

CONCLUSION .......................................................................................................................... 17

REQUEST FOR HEARING ....................................................................................................... 18

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*777 Partners LLC v. Pagnanelli*,
   No. 20-cv-20172, 2021 WL 2038175 (S.D. Fla. Mar. 8, 2021) ......................................13, 16

*ADT LLC v. Vivint, Inc.*,
   No. 17-cv-80432, 2017 WL 5640725 (S.D. Fla. Aug. 3, 2017) ............................................8, 9

*Am. Heritage Enters., Inc. v. Am. Paramount Fin., Inc.*,
   No. 10-cv-80921, 2011 WL 13225180 (S.D. Fla. July 5, 2011) ..............................................4

*Armor Corr. Health Servs., Inc. v. Teal*,
   No. 19-cv-24656, 2021 WL 5834245 (S.D. Fla. Dec. 8, 2021)...............................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................3, 4, 15

*Brown Jordan Int'l, Inc. v. Carmicle*,
   846 F.3d 1167 (11th Cir. 2017) ............................................................................................16

*CareersUSA, Inc. v. Guerrero*,
   No. 14-cv-80096, 2014 WL 12862259 (S.D. Fla. Aug. 25, 2014) ..........................................14

*Christman v. Holmes*,
   448 F. App'x 869 (11th Cir. 2011) ........................................................................................10

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ..............................................................................................3

*Colite Int'l Inc. v. Robert L. Lipton, Inc.*,
   No. 05-cv-60046, 2006 WL 8431505 (S.D. Fla. Jan. 20, 2006).............................................17

*Cox v. Adm'r U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir.), *modified on reh'g*, 30 F.3d 1347 (1994).........................................4

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ..............................................................................................8

*Debrincat v. Fischer*,
   217 So. 3d 68 (Fla. 2017)................................................................................................10, 11

*Falic v. Legg Mason Wood Walker, Inc.*,
   347 F. Supp. 2d 1260 (S.D. Fla. 2004) ................................................................................4, 5

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*FEC v. Craig for U.S. Senate*,
    816 F.3d 829 (D.C. Cir. 2016) ..................................................................................8

*Funny Cide Ventures, LLC v. Miami Herald Publ'g Co.*,
    955 So. 2d 1241 (Fla. 4th DCA 2007) ......................................................................6

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) .....................................................................9

*IBI Grp. v. B&S Eng'g Consultants, LLC*,
    No. 17-cv-246, 2017 WL 7311866 (M.D. Fla. June 27, 2017) ...............................15

*Kanarick v. GE Credit Retail Bank Care Credit*,
    No. 13-cv-80039, 2013 WL 12092479 (S.D. Fla. Sept. 6, 2013) ..............................5

*Mortg. Now, Inc. v. Stone*,
    No. 09-cv-80, 2010 WL 11519201 (N.D. Fla. Sept. 29, 2010) ...............................16

*Muskegan Hotels, LLC v. Patel*,
    986 F.3d 692 (7th Cir. 2021) ....................................................................................3

*My Energy Monster, Inc. v. Gawrych*,
    No. 20-cv-2548, 2021 WL 6125579 (M.D. Fla. Sept. 29, 2021)............................16

*Rodgers v. Addy*,
    No. 17-cv-23429, 2021 WL 4487903 (S.D. Fla. Sept. 27, 2021)............................3

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
    742 So. 2d 381 (Fla. 4th DCA 1999) .....................................................................6, 8

*Schwartz v. ADP, Inc.*,
    No. 21-cv-283, 2021 WL 5760434 (M.D. Fla. Dec. 3, 2021) ................................16

*Sierra v. City of Hallandale Beach*,
    996 F.3d 1110 (11th Cir. 2021) ..............................................................................17

*Sream, Inc. v. PB Grocery, Inc.*, No. 16-cv-81584, 2017 WL 6409006
    (S.D. Fla. Mar. 1, 2017).............................................................................................6

*St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*,
    347 F. Supp. 3d 1047 (M.D. Fla. 2018)...................................................................13

*Union Oil of Calif. v. Watson*,
    468 So. 2d 349 (Fla. 3d DCA 1985) .......................................................................12

*Valladares v. Bank of Am. Corp.*,
    197 So. 3d 1 (Fla. 2016).........................................................................................10

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021)................................................................................................13, 14, 15

*Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*,
   629 So. 2d 113 (Fla. 1993)..........................................................................................................9

*Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*,
   No. 19-cv-62078, 2022 WL 320952 (S.D. Fla. Jan. 28, 2022)............................................6, 7

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
   No. 14-cv-21029, 2014 WL 12729173 (S.D. Fla. Aug. 1, 2014) ............................................5

### STATUTES

18 U.S.C. § 1030...............................................................................................................13, 14, 15

18 U.S.C. § 1962.............................................................................................................................3

### OTHER AUTHORITIES

Devlin Barrett & Matt Zapotosky, *Mueller Complained that Barr's Letter Did Not Capture
   "Context" of Trump Probe*, Wash. Post (Apr. 30, 2019) .......................................................12

Office of the Inspector Gen., U.S. Dep't of Justice, *Review of Four FISA Applications and Other
   Aspects of the FBI's Crossfire Hurricane Investigation* (2019) .......................................8, 11

Office of Special Counsel, U.S. Dep't of Justice, *Report on the Investigation into Russian
   Interference in the 2016 Presidential Election* (2019) ..........................................................12

Restatement (Second) of Torts § 654.........................................................................................10

### RULES

Fed. R. Civ. P. 9.........................................................................................................................6, 7

Fed. R. Civ. P. 12...........................................................................................................................1

Fed. R. Evid. 201 ...........................................................................................................................6

Defendant Perkins Coie LLP ("Perkins Coie") respectfully submits this motion to dismiss Counts I–VIII and XI of the complaint under Federal Rule of Civil Procedure 12(b)(6) and this accompanying memorandum of law.

## INTRODUCTION

As a result of "various federal investigations," plaintiff Donald J. Trump alleges he has incurred $24 million in "defense costs, legal fees, and related expenses."  Compl. ¶ 314.  He now seeks to shift the blame—and the bill—for his mounting legal debts to a host of political rivals and perceived adversaries, from the 2016 Democratic candidate for president and her lawyers to the former director of the FBI.  But plaintiff has not come close to tracing his legal fees to any conduct by Perkins Coie LLP or stating a viable claim against this defendant (or any other).  To the contrary, plaintiff's stale claims fall well outside the statute of limitations and fail on the merits in multiple independent respects.  Whatever value plaintiff's hyperbolic allegations may hold as political rhetoric, the claims lack any legal merit.

Defendant Hillary Clinton has submitted a memorandum explaining why plaintiff's claims should be dismissed.  Dkt. No. 52.  In the interest of avoiding duplicative briefing, Perkins Coie adopts and incorporates by reference Secretary Clinton's arguments as to the statutes of limitations for all claims; the civil RICO and RICO conspiracy claims (Counts I and II); the injurious falsehood and conspiracy to commit injurious falsehood claims, to the extent the arguments are not specific to Secretary Clinton's individual statements (Counts III and IV); the conspiracy to commit malicious prosecution claim (Count VI); and theft of trade secrets claim (Count VIII).  *See* Clinton Mem. 1–15, 17–20.  Perkins Coie submits this memorandum to address the claims and allegations unique to the firm.  For the reasons given below and in Secretary Clinton's briefing, this Court should dismiss the claims against Perkins Coie.

## ARGUMENT

### I.      Plaintiff's Claims Are Untimely.

Plaintiff's claims and allegations relate to conduct dating back two presidential election cycles to 2016 and 2017—ancient history from both a political and legal perspective.  For the reasons stated in Secretary Clinton's brief, the statute of limitations has run on the civil RICO and RICO conspiracy claims (Counts I and II), the conspiracy to commit injurious falsehood claim (Count IV), the conspiracy to commit malicious prosecution claim (Count VI), the Computer Fraud and Abuse Act claim (Count VII), and the theft of trade secrets claim (Count VIII).  *See* Clinton Mem. 1–5.  The injurious falsehood claim specific to Perkins Coie's former partner Michael Sussmann (Count III), and the related vicarious liability count against Perkins Coie (Count XI), are also untimely as explained in Section III.B, *infra*.  Plaintiff's failure to timely assert these claims provides a standalone basis for dismissal as against Perkins Coie.

### II.     Plaintiff Has Failed to State a Plausible RICO Claim Against Perkins Coie.

For the reasons given in Secretary Clinton's brief, the civil RICO claim (Count I) and RICO conspiracy claim (Count II) fail on multiple independent grounds.  Plaintiff has not plausibly alleged any cognizable RICO enterprise, has not sufficiently alleged any (much less the required two) predicate acts, has not shown any pattern of racketeering activity, and has entirely failed to allege the basic elements of RICO standing.  Clinton Mem. 6–14.  As to the conspiracy claim, plaintiff has not plausibly alleged an illegal agreement to violate a substantive provision of the RICO statute, an overt act of racketeering, or any injury arising from such an act.  *Id.* at 14–15.  Any one of these defects provides a sufficient basis for dismissing the RICO and RICO conspiracy claims against Perkins Coie.

Above and beyond the grounds for dismissal articulated by Secretary Clinton, the Court should dismiss the civil RICO claim against Perkins Coie because the complaint fails plausibly to

allege that the firm participated in the supposed RICO enterprise.  To survive a motion to dismiss, "the plaintiff must plead that *each* defendant engaged in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity involving at least two predicate criminal acts." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1208 (11th Cir. 2020) (emphasis added).  As to Perkins Coie, however, the allegations consist solely of the sort of "conclusory statements" and "naked assertions" that need not be taken as true even at the pleading stage.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted).  Plaintiff asserts that Perkins Coie served as general counsel to the Clinton campaign and the Democratic National Committee, "spearhead[ed] the scheme" to find proof of "a sinister link" between plaintiff and Russia, and "launched parallel operations" through its former partners Marc Elias and Michael Sussmann.  Compl. ¶¶ 3, 43, 49. These allegations do not come close to showing that Perkins Coie engaged in a single RICO predicate act, let alone "a pattern of racketeering activity."  *See* 18 U.S.C. § 1962(c).  "A complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c)."  *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698–99 (7th Cir. 2021). Because the complaint does not plausibly allege that Perkins Coie "engaged in the conduct of the affairs of the RICO enterprise," *Cisneros*, 972 F.3d at 1208, the RICO claim should be dismissed. *See also Rodgers v. Addy*, No. 17-cv-23429, 2021 WL 4487903, at *4 (S.D. Fla. Sept. 27, 2021) (dismissing RICO claim where plaintiffs "have not met their . . . pleading requirements to make out two predicate acts . . . for each defendant").

 Nor has plaintiff plausibly alleged that Perkins Coie is vicariously liable for supposed RICO violations by its former partners (Count XI).  In the RICO context, plaintiff must do more than allege an employment or agency relationship.  To recover under a respondeat superior theory, plaintiff must plausibly allege that Perkins Coie "derive[d] some benefit from the RICO violation."

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406 (11th Cir.), *modified on reh'g*, 30 F.3d 1347 (1994); *Am. Heritage Enters., Inc. v. Am. Paramount Fin., Inc.*, No. 10-cv-80921, 2011 WL 13225180, at *6 n.8 (S.D. Fla. July 5, 2011).  But the complaint does not identify a single benefit that accrued to Perkins Coie from the supposed RICO violations of its former partners.  As alleged in the complaint, the asserted aim of the enterprise was not to benefit Perkins Coie at all, but to injure plaintiff and cost him the presidency.  Compl. ¶ 9.

Plaintiff likewise fails to allege that Perkins Coie "authorized or subsequently acquiesced in" the supposedly wrongful acts of its former partners.  *See Cox*, 17 F.3d at 1407.  The complaint does not plead a single fact to suggest that the firm knew about or authorized an alleged "plan . . . to provide false evidence and information" to law enforcement officials.  Compl. ¶ 167.  Plaintiff must offer more than "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (brackets omitted), before it can hold "an international law firm," Compl. ¶ 16, vicariously liable for supposed falsehoods to law enforcement officials or other alleged acts of the firm's former partners.

### III.   Plaintiff Cannot Maintain a Claim Against Perkins Coie for Conspiracy to Publish an Injurious Falsehood Because the Underlying Claim Fails on the Merits.

The complaint does not allege that Perkins Coie published a single injurious falsehood concerning plaintiff, and instead seeks to hold the firm liable on vicarious liability or conspiracy grounds.  The respondeat superior (Count XI) and conspiracy (Count IV) counts against Perkins Coie should be dismissed because the underlying injurious falsehood claim fails on the merits.

#### A.   Plaintiff Fails to Plead Multiple Elements of the Injurious Falsehood Claim.

Injurious falsehood is a close cousin to defamation, except that it protects "economic interests" rather than "personal reputation."  *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004).  "Injurious falsehood essentially concerns intentional interference

with another's economic relations." *XTec, Inc. v. Hembree Consulting Servs., Inc.*, No. 14-cv-21029, 2014 WL 12729173, at *6 (S.D. Fla. Aug. 1, 2014). Because the tort vindicates commercial interests, a plaintiff must plausibly allege, among other elements, that (1) defendant knew his falsehood would "likely induce others not to deal with the Plaintiff," (2) "the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff," and (3) special damages. *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13-cv-80039, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.); *see also* Clinton Mem. 17–18.

The injurious falsehood claim fails at the threshold because the alleged injuries plaintiff claims are not "economic" in nature. *See Falic*, 347 F. Supp. 2d at 1268. Although the complaint recites boilerplate allegations that plaintiff lost "existing and future business opportunities," Compl. ¶ 354, the gravamen of the alleged injury concerns plaintiff's political prospects rather than his private business ventures. By plaintiff's own account, the "false information" allegedly propagated by defendants had the purpose of "derail[ing] his campaign" and impairing his ability to govern as president. *Id.* ¶¶ 70, 352. Perkins Coie has found no authority suggesting that a damaged political candidacy amounts to an economic injury cognizable under the banner of injurious falsehood. Plaintiff, in any event, does not come close to showing that any supposed falsehoods actually damaged his campaign. *Plaintiff*—not Hillary Clinton—won the 2016 election. *Id.* ¶ 193.

The complaint also fails to allege that Perkins Coie or its former partners "induce[d]" a single individual or entity "not to deal with the Plaintiff." *See Kanarick*, 2013 WL 12092479, at *4. The closest the complaint comes is a single footnote alleging that plaintiff was "banned from different social media platforms, including Twitter," as a result of "the misinformation campaign waged by Hillary Clinton." Compl. ¶ 263 n.78. But while plaintiff's exile from social media

might stifle his communications with the public, the complaint does not allege that plaintiff monetized his social media accounts or suffered specific economic losses as a result of the alleged bans.  In any event, plaintiff rewrites history when he suggests that Twitter shut down his account as a result of defendants' alleged falsehoods.  Twitter suspended plaintiff from its platform on January 8, 2021—two days after the insurrection at the U.S. Capitol, and nearly five years after the alleged conspiracy at issue in this case—because it determined that plaintiff's tweets posed "the risk of further incitement of violence."   Twitter Blog, Permanent Suspension of @realDonaldTrump (Jan. 8, 2021).[1]

The injurious falsehood claim should also be dismissed because plaintiff has failed to plead special damages, a "crucial element" of the tort.  *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999).  "The special damage rule requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales." *Id.*  "Special damages require proof that the loss is directly attributed to defendants['] conduct and the loss is not to be explained by other considerations."  *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, No. 19-cv-62078, 2022 WL 320952, at *14 (S.D. Fla. Jan. 28, 2022); *see also Funny Cide Ventures, LLC v. Miami Herald Publ'g Co.*, 955 So. 2d 1241, 1246 (Fla. 4th DCA 2007).  Under the Federal Rules, special damages must be "specifically stated" in the complaint. Fed. R. Civ. P. 9(g).

---

[1]  The Court may judicially notice the date and content of Twitter's suspension notice even at the pleading stage because these are facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," namely from Twitter's own web site.  *See* Fed. R. Evid. 201(b); *Sream, Inc. v. PB Grocery, Inc.*, No. 16-cv-81584, 2017 WL 6409006 (S.D. Fla. Mar. 1, 2017) (Middlebrooks, J.).  As the former president, plaintiff can hardly expect the Court to turn a blind eye to the circumstances of his suspension from Twitter, which was widely covered in the press at the time.

The allegations do not come close to establishing the required nexus between plaintiff's legal bills and the alleged false narrative supposedly spread by Perkins Coie's former partner, Michael Sussmann. By plaintiff's telling, he accumulated the vast legal fees in the course of defending himself from "*various* federal investigations" and "official proceedings." Compl. ¶¶ 344, 354 (emphasis added). But the complaint does not provide any accounting of how the $24 million in legal fees is apportioned among these various inquiries—and that failure is fatal to his claim. Plaintiff faced multiple investigations and proceedings that he does not even attempt to connect to Perkins Coie or Sussmann, from special counsel Robert Mueller's investigation, to the two impeachment proceedings, to the House inquest into the January 6, 2021 attack on the U.S. Capitol. Instead, the complaint identifies only a single investigation, Operation Crossfire Hurricane, supposedly related to the Steele dossier or the allegedly false evidence Sussmann allegedly tendered to the FBI. *Id.* ¶¶ 170, 179.[2] Because the complaint fails to connect the $24 million in legal fees to that lone investigation, plaintiff has not plausibly alleged that his "loss is directly attributed to defendants," *Wound Care Concepts*, 2022 WL 320952, at *14, or stated his damages with the specificity required by Federal Rule 9(g).

Even Crossfire Hurricane bears no logical relationship to plaintiff's asserted legal fees. As alleged in the complaint, the FBI "opened an investigation of the Trump–Alfa Bank allegations" just days after Sussmann met with the FBI's general counsel on September 19, 2016. Compl. ¶¶ 170, 179. But the FBI "concluded" no later than February 2017 that "there was insufficient

---

[2] The complaint alleges that Sussmann has been indicted "for proffering false statements to law enforcement officials." Compl. ¶ 8. But the indictment itself alleges that the false statement consisted of Sussmann's alleged representation that he was not presenting evidence "for any client." *See* Indictment ¶ 4, Dkt. No. 1, *United States v. Sussmann*, No. 21-cr-00582 (D.D.C. Sept. 16, 2021) (incorporated by reference at Compl. ¶ 5 n.2). Plaintiff at no point explains how he was possibly injured by this supposed misrepresentation.

evidence to support the allegations of a secret communications channel with the Russian bank." *Id.* ¶¶ 170, 180.[3]  The complaint offers no plausible explanation for how plaintiff could possibly have accrued $24 million in legal fees defending himself from an allegedly false report that the FBI considered and dispatched within the space of five months.

Plaintiff has not even plausibly alleged that he is personally liable for the cost of his legal defense.  Although plaintiff repeatedly asserts that he was "forced to *incur* . . . defense costs, legal fees, and related expenses" amounting to $24 million, Compl. ¶¶ 344, 354 (emphasis added), he does not specify what amount (if any) of that total he paid from his own pocket.  Federal election law permits candidates or office holders to use campaign funds to pay "legal expenditures made in response to charges of campaign or official misconduct."  *FEC v. Craig for U.S. Senate*, 816 F.3d 829, 842 (D.C. Cir. 2016).  Particularly because the complaint points to unspecified injuries sustained by the Trump campaign, Compl. ¶ 314, the allegations do not support the inference that plaintiff has "realized" an actual "pecuniary loss" recoverable as special damages.  *See Salit*, 742 So. 2d at 388.

### B.    The Injurious Falsehood Claim Is Untimely.

The injurious falsehood claim must also be dismissed because the allegedly injurious conduct took place well outside Florida's two-year limitations period.  *See ADT LLC v. Vivint,*

---

[3]  A report of the Department of Justice's inspector general that is incorporated by reference into the complaint confirms that the FBI quickly dismissed a supposed connection between plaintiff and the Russian bank.  *See* Compl. ¶ 3 n.1.  The report concluded:  "The FBI investigated whether there were cyber links between the Trump Organization and Alfa Bank, but had concluded by early February 2017 that there were no such links."  *See* Ex. 1, Office of the Inspector Gen., U.S. Dep't of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* 119 n.259 (2019) (hereinafter "IG Report").  The full report is available online at https://www.justice.gov/storage/120919-examination.pdf.  Because the complaint incorporates the IG Report by reference, the Court may consider it at the pleading stage without converting this motion into one for summary judgment.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

*Inc.*, No. 17-cv-80432, 2017 WL 5640725, at *6 (S.D. Fla. Aug. 3, 2017) (collecting cases). A cause of action for injurious falsehood accrues at the time defendant publishes the falsehood to a third party. *Id.*; *see also Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114–15 (Fla. 1993). Here, the statute of limitations began running when Sussmann allegedly provided false statements and documentary evidence to the FBI and CIA in late 2016 and early 2017 concerning a possible connection between plaintiff and a Russian bank—and expired no later than 2019. Compl. ¶¶ 121, 170, 215.

To the extent plaintiff bases his injurious falsehood claim on information Sussmann provided to reporters, it fares no better. The complaint alleges that Sussmann "communicated with the media" on August 20, 2016, Compl. ¶ 168(f); "met with a reporter" on September 1, 2016 "to discuss the false Trump–Alfa Bank connection," *id.* ¶ 166(a); and "emailed a reporter a link to an opinion article" on October 10, 2016, *id.* ¶ 182. Any claim based on these stale communications falls far outside the two-year limitations period, and is meritless in any event.

### C. The Conspiracy Claim Fails Because the Underlying Claim Does.

Plaintiff cannot salvage his meritless injurious falsehood claim by repackaging it as a claim for conspiracy to commit an injurious falsehood (Count IV). "An actionable conspiracy requires an actionable underlying tort or wrong." *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018). Because the underlying tort claim fails on the merits, the Court should dismiss the conspiracy claim against Perkins Coie.

## IV. Plaintiff Cannot Maintain a Claim for Conspiracy to Commit Malicious Prosecution Because the Underlying Claim Fails on the Merits.

To state a claim for malicious prosecution (Count V), plaintiff must plausibly allege, among other elements, that (1) "an original criminal or civil judicial proceeding" was instituted against the plaintiff, (2) defendant was "the legal cause of the original proceeding," (3) "there was

an absence of probable cause for the original proceeding," and (4) there was a "bona fide termination" of the original proceeding "in favor of" the plaintiff. *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017). Plaintiff has not plausibly alleged any of these four elements.

Plaintiff fails to satisfy a fundamental precondition for a malicious prosecution claim: he does not allege he was ever charged, prosecuted, or named as a defendant in "an original criminal or civil judicial proceeding." *See Debrincat*, 217 So. 3d at 70. At most, plaintiff asserts that Perkins Coie's former partners "misled FBI and DOJ officials with the intention of inducing the FBI to commence an investigation" into plaintiff's possible collusion with Russia. Compl. ¶ 357. But "an action for malicious prosecution . . . could never occur outside the context of litigation." *Debrincat*, 217 So. 3d at 70 (brackets omitted). Absent an allegation that the investigation ripened into a civil or criminal case, plaintiff cannot state a claim for malicious prosecution as a matter of law. *See Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 10 (Fla. 2016) (rejecting malicious prosecution claim because plaintiff was "never arrested or prosecuted"); *see also Christman v. Holmes*, 448 F. App'x 869, 872 (11th Cir. 2011) (holding plaintiff could not state a claim based on a warrantless arrest where he was never arraigned or indicted); Restatement (Second) of Torts § 654 (recognizing that "[c]riminal proceedings" begin when an indictment is returned or process is issued "for the purpose of bringing the person accused . . . before an official or tribunal").

Even assuming a mere investigation could support a malicious prosecution claim, plaintiff was *not even the subject* of Crossfire Hurricane—the only investigation he even attempts to link to Perkins Coie's former partners. As alleged in the complaint, the FBI opened individual cases into Carter Page, George Papadopoulous, and Paul Manafort, all of whom were "associated with the Trump Campaign," and into Michael Flynn, who later served as plaintiff's national security advisor. Compl. ¶¶ 136–37. But the complaint nowhere indicates that the Crossfire Hurricane

investigation ever broadened to include plaintiff himself.  Because the complaint fails to allege a criminal investigation (much less criminal charges) "against the *present plaintiff*," *Debrincat*, 217 So. 3d at 70 (emphasis added), the malicious prosecution claim must be dismissed.

Even if the Crossfire Hurricane investigation could support a malicious prosecution claim, which it cannot, the allegations undermine rather than support the conclusion that defendants were the "legal cause" of that investigation or that the FBI lacked "probable cause." *See Debrincat*, 217 So. 3d at 70.  The complaint extensively cites and relies upon the published findings of the Department of Justice's inspector general concerning the origins of the Crossfire Hurricane investigation. *E.g.*, Compl. ¶¶ 3 n.1, 80 n.23, 132 n.41.  And the IG Report concludes, based on interviews with FBI officials and a review of classified documents, that Crossfire Hurricane had "a legitimate law enforcement purpose" entirely independent of the Steele dossier. Ex. 1, at 350. More specifically, the FBI launched the investigation on July 31, 2016, after it received a tip from a friendly foreign government that a foreign policy advisor to the Trump campaign had "suggested" that Russia could release damaging information about the Clinton campaign—a tip that came only days after WikiLeaks released hacked emails from the Democratic National Committee ("DNC").  *Id.* at 49–51, 346.  According to the inspector general, the information flowing from "a trusted intelligence partner," combined with the DNC hack, "created a counterintelligence concern that the FBI was 'obligated' to investigate."  *Id.* at 53–54, 346–48.  In short, the FBI launched Crossfire Hurricane for an "authorized purpose" based on an "adequate factual predication" that had nothing to do with Perkins Coie, its former partners, or any other defendant. *Id.* at 347.

Finally, plaintiff has not plausibly alleged that any investigation supposedly instigated by Perkins Coie's former partners terminated in his favor.  "That element is satisfied by either a

favorable decision on the merits or a bona fide termination of the proceedings," that is, "a good faith nolle prosequi or declination to prosecute." *Union Oil of Cal. v. Watson*, 468 So. 2d 349, 353 & n.3 (Fla. 3d DCA 1985).  Plaintiff attempts to meet his burden by asserting that Special Counsel Robert Mueller "found no evidence" that plaintiff or his campaign associates "ever colluded with the Russian government to undermine the 2016 election." Compl. ¶¶ 232–33.  But plaintiff cannot rely on the Mueller investigation to satisfy the "favorable termination" element because the complaint does not allege that Perkins Coie's former partners in any way influenced the opening of that investigation.  And even if it did, the Mueller investigation did *not* conclude with "a favorable decision on the merits" as to plaintiff's innocence.  *See Union Oil*, 468 So. 2d at 353.

The Mueller Report states only that the special counsel declined to issue a judgment about whether plaintiff's conduct "constitutes a federal offense" in light of the Office of Legal Counsel's opinion that a sitting president should not be indicted.  Office of Special Counsel, U.S. Dep't of Justice, 2 *Report on the Investigation into Russian Interference in the 2016 Presidential Election* 1–2 (2019) (cited at Compl. ¶ 232).[4]  At the same time, the report made clear that Mueller would have cleared plaintiff of obstruction of justice had he been able to do so with "confidence."  *Id.* at 2.  Mueller was "unable to reach that judgment" based on the evidence.  *Id.*  While his report did not affirmatively conclude plaintiff had committed a crime, "it also *does not exonerate him*."  *Id.* (emphasis added).  This conclusion falls far short of a favorable termination on the merits.  *See Union Oil*, 468 So. 2d at 353 ("Where dismissal is on technical grounds, for procedural reasons,

---

[4]  The complaint quotes from Attorney General Barr's letter to Congress summarizing the conclusions of the Mueller Report.  Compl. ¶ 234 & n.63.  But the report itself, and not the Attorney General's summary, is the best evidence of its contents.  That is all the more true here, where Mueller issued his own letter asserting that the Attorney General "did not fully capture the context, nature, and substance" of his conclusions.  *See* Devlin Barrett & Matt Zapotosky, *Mueller Complained that Barr's Letter Did Not Capture "Context" of Trump Probe*, Wash. Post (Apr. 30, 2019) (linking to Mueller response letter).

or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination.").

Plaintiff's claim for malicious prosecution thus fails on four independent grounds—*i.e.*, the judicial proceeding, legal cause, absence of probable cause, and bona fide termination elements—any one of which provides a sufficient basis for dismissal.  As with the injurious falsehood claim, the failure of the underlying malicious prosecution claim dooms the related conspiracy claim against Perkins Coie's former partners (Count VI) and the vicarious liability count against Perkins Coie (Count XI).  *See* p. 9, *supra*; p. 17, *infra*.  These claims, too, should be dismissed.

## V.   Plaintiff Fails to Plead Multiple Elements of the Computer Fraud and Abuse Act Claim.

Although it is "predominately designed as a criminal statute to punish computer hacking," the Computer Fraud and Abuse Act ("CFAA") permits civil actions "under a narrow set of circumstances."  *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1057 (M.D. Fla. 2018).  To state a claim under the CFAA, a plaintiff must allege that (1) "defendant intentionally accessed a protected computer" (2) "without authorization or exceeding authorized access," (3) "defendant thereby obtained information," and (4) "plaintiff suffered damage or loss of at least $5,000.00."  *777 Partners LLC v. Pagnanelli*, No. 20-cv-20172, 2021 WL 2038175, at *4–5 (S.D. Fla. Mar. 8, 2021) (citing 18 U.S.C. § 1030(g)).  The claim (Count VII) should be dismissed because the allegations do not fit the narrow and specific definitions of "unauthorized access" and "damage or loss" under the CFAA.

### A.   The Supreme Court Has Foreclosed the "Unauthorized Access" Theory on Which the CFAA Claim Rests.

The Supreme Court's most recent opinion construing the CFAA forecloses the theory of "unauthorized access" plaintiff sketches in the complaint.  In *Van Buren v. United States*, 141 S.

Ct. 1648 (2021), the Supreme Court interpreted the statutory term "exceeds authorized access" to reach only defendants who access "information located in particular areas of the computer—such as files, folders, or databases—that are off limits" to them. *Id.* at 1662 (citing 18 U.S.C. § 1030(a)(2)).  Critically for present purposes, the Supreme Court held that exploiting existing access to a computer system "for an improper purpose" does *not* violate the statute. *Id.* "CFAA focuses on—and punishes—an individual's unauthorized *access* of information rather than how a defendant *uses* the accessed data." *CareersUSA, Inc. v. Guerrero*, No. 14-cv-80096, 2014 WL 12862259, at *3 (S.D. Fla. Aug. 25, 2014).

Yet plaintiff's theory of liability turns entirely on defendants' supposedly improper use of DNS data to which defendant Neustar already had access.  As alleged in the complaint, Neustar is "an information technology company" that "offers various internet-related information, data and analytics services, including Domain Name System ("DNS") resolution services." Compl. ¶ 103. In the ordinary course of business, Neustar allegedly acquired "access to non-public and proprietary internet data," including DNS data from Trump Tower and plaintiff's private New York City apartment. *Id.* ¶ 123.  Neustar also provided "DNS resolution services" to the Executive Office of the President ("EOP") and thereby "c[a]me to access and maintain dedicated servers for the EOP." *Id.* ¶ 124.  According to plaintiff, Perkins Coie and its former partner Sussmann supposedly "tasked Neustar" and its chief executive, Rodney Joffe, "to exploit . . . their access to non-public data to dredge up" compromising information about plaintiff. *Id.* ¶ 109.  Neustar and Joffe then proceeded to "min[e]" executive branch DNS data and "quer[y] their holdings of non-public internet data" against internet protocol and email addresses associated with plaintiff, the Trump Organization, and "numerous Trump associates." *Id.* ¶¶ 125–26.

Taken as true only for purposes of this motion, the allegations demonstrate that Neustar and Joffe did no more than the CFAA allows—they employed data already in their possession to run searches concerning the plaintiff.  Far from gaining unauthorized access to files or systems "off limits" to them, *Van Buren*, 141 S. Ct. at 1662, these defendants allegedly "exploited . . . access" they were otherwise given for supposedly "nefarious purposes," Compl. ¶¶ 102, 122.[5] While plaintiff might find this alleged improper use by Neustar and Joffe objectionable, it plainly does not violate the CFAA.  *See Armor Corr. Health Servs., Inc. v. Teal*, No. 19-cv-24656, 2021 WL 5834245, at *27 (S.D. Fla. Dec. 8, 2021) (holding that executive authorized to access employer's systems with "no meaningful limitations" did not violate CFAA by downloading documents "for the improper purpose of using [them]" to compete with employer).

The CFAA claim also fails to the extent plaintiff alleges (without basis) that defendants "manipulated, falsified, and altered" data to manufacture a connection between plaintiff's computer servers and those of a Russian bank.  Compl. ¶ 392.  The CFAA is "an anti-hacking statute" that penalizes unauthorized access to protected computers.  *IBI Grp. (Fla.) Inc. v. B&S Eng'g Consultants, LLC*, No. 17-cv-246, 2017 WL 7311866, at *3 (M.D. Fla. June 27, 2017). Allegations that defendants "fabricat[ed]" computer-related evidence, Compl. ¶ 110, fall outside the statute's scope.

### B.   Plaintiff Fails to Plead Damage or Loss Compensable Under the CFAA.

The CFAA claim should be dismissed on the alternative basis that plaintiff fails to allege compensable damage or loss in excess of $5,000 in one year.  *See* 18 U.S.C. § 1030(g).  Damages

---

[5]   Although the complaint includes a single, throwaway allegation that Sussmann "commission[ed]" Neustar "to brazenly hack servers," Compl. ¶ 62, it provides no support for this "naked assertion[] devoid of further factual development." *Iqbal*, 556 U.S. at 678.  The allegation, which is also inconsistent with other well-pleaded facts, therefore need not be taken as true even at the motion to dismiss stage. *Id.*

under the CFAA are narrowly confined to two permissible categories:  (1) reasonable costs associated with responding to a breach, such as "assessing the damage done" and "restoring" systems to their prior condition, and (2) revenue lost or costs incurred because of an interruption of service. *Brown Jordan Int'l , Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *see also 777 Partners*, 2021 WL 2038175, at *5 (defining "damage" under the CFAA as "an impairment to the integrity or availability of data, a program, a system, or information").  Other types of foreseeable losses, such as "lost revenue from the possible misappropriation of 'stolen' information," do not count toward the $5,000 statutory minimum. *Schwartz v. ADP, Inc.*, No. 21-cv-283, 2021 WL 5760434, at *2 (M.D. Fla. Dec. 3, 2021).

Courts within the Eleventh Circuit thus routinely dismiss CFAA claims for failure to plead the type of damages recoverable under the statute. *See, e.g.*, *Schwartz*, 2021 WL 5760434, at *1 (dismissing claim where plaintiff made only "conclusory allegation" of loss in excess of $5,000); *My Energy Monster, Inc. v. Gawrych*, No. 20-cv-2548, 2021 WL 6125579, at *4 (M.D. Fla. Sept. 29, 2021) (dismissing complaint for failure to plead "at least $5,000" in spending "on remedial actions"); *777 Partners*, 2021 WL 2038175, at *5–6 (holding that plaintiff could not recover for defendant's unjust enrichment and failed to allege compensable "cost[s] of responding to the alleged offense"); *Mortg. Now, Inc. v. Stone*, No. 09-cv-80, 2010 WL 11519201, at *5 (N.D. Fla. Sept. 29, 2010) (dismissing claim on ground that "lost profits" untethered to an "interruption of service" "do not constitute loss under the CFAA").

The same result should obtain here.  Although plaintiff asserts damages well in excess of $5,000, those damages—legal fees stemming from federal criminal investigations—do not satisfy the narrow definition of recoverable loss under the CFAA.  Plaintiff's complete failure to detail remedial costs in excess of $5,000 provides an independent basis for dismissal.

#### C. The CFAA Claim Should Be Dismissed to the Extent It Relates to EOP Computers or Systems.

Finally, the CFAA claim should be dismissed to the extent it relies upon Neustar's alleged unauthorized access of computers belonging to the Executive Office of the President. Compl. ¶ 383. Plaintiff cannot recover civil damages as a private plaintiff for unauthorized access to computers owned by the federal government. To the extent any party improperly extracted "valuable, sensitive, and/or proprietary information and data" from EOP computer systems, *id.* ¶ 386, that injury is the government's to vindicate, not plaintiff's. *See Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1125 (11th Cir. 2021) (Newsom, J., concurring) (noting plaintiff can sue for injury to the government only where Congress has authorized a *qui tam* suit).

### VI. The Respondeat Superior Count Against Perkins Coie Should Be Dismissed Because the Underlying Claims Fail.

Plaintiff cannot hold Perkins Coie vicariously liable for the alleged conduct of its former partners Elias and Sussmann (Count XI) because plaintiff has failed to state any viable claim against these defendants. *See* Compl. ¶ 452. "Respondeat superior is not an independent cause of action." *Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-cv-60046, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006). "Rather, it is a legal theory that presupposes the existence of an underlying claim and assesses liability . . . because of a certain status." *Id.* Because the underlying claims against Elias and Sussmann fail on the merits, plaintiff cannot maintain a standalone claim for vicarious liability.

### CONCLUSION

For the reasons explained above and in the Clinton memorandum, the complaint against Perkins Coie should be dismissed in its entirety.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), Perkins Coie respectfully requests a hearing on its motion to dismiss.  Perkins Coie submits that a hearing would benefit the parties and the Court in light of the sheer length of the complaint and the large number of claims and defendants.  Perkins Coie estimates that a hearing for all parties requesting oral argument would last one hour.


Dated:  May 11, 2022                              Respectfully submitted,

Nancy E. Hart (*pro hac vice*)                    */s/ Eleni Kastrenakes Howard*
GIBSON, DUNN & CRUTCHER LLP           Eleni Kastrenakes Howard (Fla. Bar No. 0073073)
200 Park Avenue                                    Howard J. Harrington (Fla. Bar No. 0118719)
New York, NY 10166-0193                       AKERMAN LLP
                                                        777 South Flagler Drive
F. Joseph Warin (*pro hac vice*)               Suite 1100, West Tower
Geoffrey M. Sigler (*pro hac vice*)           West Palm Beach, FL 33401
Katherine Moran Meeks (*pro hac vice*)    Telephone:  (561) 653-5000
GIBSON, DUNN & CRUTCHER LLP           Fax:  (561) 659-6313
1050 Connecticut Avenue, N.W.                 eleni.kastrenakeshoward@akerman.com
Washington, DC 20036-5306                     jay.harrington@akerman.com


*Attorneys for Perkins Coie LLP*