## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

DONALD J. TRUMP,

                Plaintiff,

      v.                          Case No. 2:22-cv-14102-DMM

HILLARY R. CLINTON, et al.,

                Defendants.

**DEFENDANT MICHAEL SUSSMANN'S MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND
<u>MEMORANDUM OF LAW IN SUPPORT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

I.      All Of Plaintiff's Claims Against Mr. Sussmann Are Untimely .......................................2

II.     Plaintiff's Claims Against Mr. Sussmann Are Defectively Pled........................................4

        A.      Counts I, II & VIII: Plaintiff Fails To Allege Viable RICO Predicate Acts,
                Cognizable Damages, Or Proximate Causation........................................................4

        B.      Counts III & IV: Plaintiff Fails To Identify A Sufficient Harm Or Causal
                Link To Support The Injurious Falsehood Claims ...................................................8

        C.      Counts V & VI: There Was No Prosecution To Support The Malicious
                Prosecution Claims ..................................................................................................9

        D.      Count VII: The Computer Fraud and Abuse Act Claim Fails to State a
                Cognizable Claim and Fails For Lack of Qualifying Damages.............................10

III.    All Of Plaintiff's Claims Against Mr. Sussmann Are Barred By The *Noerr-
        Pennington* Doctrine ........................................................................................................11

CONCLUSION............................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alamo Rent-A-Car, Inc. v. Mancusi*,
  632 So. 2d 1352 (Fla. 1994)...................................................................................................9

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)..............................................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................5

*Borough of Duryea, Pa. v. Guarnieri*,
  564 U.S. 379 (2011).............................................................................................................11

*Brown Jordan Int'l, Inc. v. Carmicle*,
  846 F.3d 1167 (11th Cir. 2017) ...........................................................................................10

*Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*,
  831 So. 2d 204 (Fla. Dist. Ct. App. 2002) ..........................................................................2, 9

*Citizens United v. FEC*,
  558 U.S. 310 (2010).............................................................................................................11

*Dreni v. PrinterOn Am. Corp.*,
  486 F. Supp. 3d 712 (S.D.N.Y. 2020)...................................................................................10

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961).....................................................................................................2, 11, 12

*Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003) .............................................................................................8

*Grogan v. Platt*,
  835 F.2d 844 (11th Cir. 1988) ...............................................................................................7

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990)......................................................................................................7

*Int'l Brotherhood of Teamsters, Local 734 Health & Welfare Tr. Fund v.
  Phillip Morris Inc.*,
  196 F.3d 818 (7th Cir. 1999) ................................................................................................12

*Intermatic Inc. v. Toeppen*,
  947 F. Supp. 1227 (N.D. Ill. 1996) ........................................................................................3

*Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*,
   634 F.3d 1352 (11th Cir. 2011) ..........................................................................................6

*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) ( ..................................................................................5, 8

*Kanarick v. GE Credit Retail Bank Care Credit*,
   2013 WL 12092479 (S.D. Fla. Sept. 6, 2013) ...................................................................9

*Klayman v. Clinton*,
   2015 WL 10857500 (S.D. Fl. Aug. 11, 2015) ....................................................................7

*La Grasta v. First Union Secs., Inc.*,
   358 F.3d 840 (11th Cir. 2004) ..........................................................................................4

*Lehman v. Lucom*,
   727 F.3d 1326 (11th Cir. 2013) ........................................................................................2

*McGuire Oil Co. v. Mapco, Inc.*,
   958 F.2d 1552 (11th Cir. 1992) ......................................................................................12

*Melford v. Kahane & Assocs.*,
   371 F. Supp. 3d 1116 (S.D. Fla. 2019) ...........................................................................10

*Olson v. Johnson*,
   961 So. 2d 356 (Fla. Dist. Ct. App. 2007) .....................................................................2, 9

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979).........................................................................................................6

*Rotella v. Wood*,
   528 U.S. 549 (2000).......................................................................................................2, 4

*Rylewicz v. Beaton Servs., Ltd.*,
   698 F. Supp. 1391 (N.D. Ill. 1988) ..................................................................................7

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
   742 So. 2d 381 (Fla. Dist. Ct. App. 1999) ........................................................................8

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985).........................................................................................................6

*SilverHorse Racing, LLC v. Ford Motor Co.*,
   2016 WL 7137273 (M.D. Fla. Apr. 27, 2016)................................................................12

*Simpson v. Sanderson Farms*,
   744 F.3d 702 (11th Cir. 2014) ..........................................................................................7

iii

*Thaeter v. Palm Beach Cnty. Sheriff's Office*,
    449 F.3d 1342 (11th Cir. 2006..................................................................................8

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965)...................................................................................................12

*United States v. Aguilar*,
    515 U.S. 593 (1995)......................................................................................................6

*United States v. Silverman*,
    745 F.2d 1386 (11th Cir. 1984) ..................................................................................6

*United States v. Starrett*,
    55 F.3d 1525 (11th Cir. 1995) ....................................................................................4

*Valladares v. Bank of Am. Corp.*,
    197 So. 3d 1 (Fla. 2016)............................................................................................10

*Wagner, Nugent, Johnson, Roth, Romano, Erickson & Kupfer, P.A. v. Flanagan*,
    629 So. 2d 113 (Fla. 1993)...........................................................................................2

*Wallace v. Kato*,
    549 U.S. 384 (2007)......................................................................................................3

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................12

*Wichansky v. Zowine*,
    150 F. Supp. 3d 1055 (D. Ariz. 2015) ......................................................................11

### STATUTES

18 U.S.C. § 1030(e)(8)........................................................................................................10

18 U.S.C. § 1030(e)(11)......................................................................................................10

18 U.S.C. § 1030(g) ........................................................................................................2, 10

18 U.S.C. § 1503....................................................................................................................6

18 U.S.C. § 1512....................................................................................................................6

18 U.S.C. § 1515(a)(1)...........................................................................................................6

18 U.S.C. § 1832................................................................................................................4, 5

18 U.S.C. § 1836....................................................................................................................2

18 U.S.C. § 1839(3)...............................................................................................................5

18 U.S.C. § 1839(3)(B)..........................................................................................................5

18 U.S.C. § 1963(c) ..............................................................................................................6

Fla. Stat. § 95.031 ................................................................................................................3

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .............................................................................................................1

## OTHER AUTHORITIES

U.S. Dep't of Justice, Office of the Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (2019).......................................8

**INTRODUCTION**

Defendant Michael Sussmann moves to dismiss Plaintiff's claims against him with prejudice.  Mr. Sussmann  adopts in full the arguments advanced by defendants Hillary R. Clinton and Perkins Coie LLP for dismissal of the Complaint.  *See* Dkt. No. 52 (the "Clinton Brief"); Dkt. No. 143 (the "Perkins Coie Brief").  Mr. Sussmann submits this supplemental brief to highlight the application of those arguments to the allegations against him, and to raise an additional defense under the First Amendment to the United States Constitution.

The Complaint in this case spans 508 paragraphs and names 27 defendants, plus unidentified "John Does" and "ABC Corporations."  Plaintiff's sprawling pleading presents a winding narrative around the 2016 presidential election, alleging that former Secretary of State (and then-candidate) Clinton, together with her campaign (the "Clinton Campaign") and the Democratic National Committee ("DNC"), hatched a multi-pronged "plot" to "vilify" Plaintiff by "fabricat[ing] . . . proof of a sinister link between . . . Trump and Russia."  Compl. ¶¶ 1-3.  So far as Mr. Sussmann is concerned, the Complaint alleges that he conveyed to the government certain "bogus" evidence of a "back channel" between Trump servers and a Russian bank.  *See id.* ¶¶ 5, 101-126, 166-73.  The Complaint further alleges that Plaintiff was harmed when the government decided to investigate his relationship with Russia, suffering damages in the form of unspecified "defense costs, legal fees, and related expenses."  *Id.* ¶¶ 8, 179, 263.

The Complaint asserts eight counts against Mr. Sussmann, numbered I through VIII, each of which should be dismissed with prejudice for at least three independent reasons.  *First*, all of the claims against Mr. Sussmann are time-barred.  *Second*, Plaintiff's vague and conclusory allegations are insufficient to sustain his pleading burden as to any such claim.  *Third*, to the extent Plaintiff's alleged injuries derive from governmental action based on purported statements and

information provided by Mr. Sussmann, his claims target constitutionally protected petitioning activity and must be dismissed under *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and its progeny.  For these and the reasons detailed in the Clinton and Perkins Coie Briefs, Plaintiff's claims against Mr. Sussmann should be dismissed in their entirety.

## I.      ALL OF PLAINTIFF'S CLAIMS AGAINST MR. SUSSMANN ARE UNTIMELY

As a threshold matter, each of the claims asserted against Mr. Sussmann is untimely.  For purposes of applying the relevant statutes of limitations, the counts naming Mr. Sussmann are divisible into two categories: (i) claims that accrue upon the *occurrence* of the alleged injury; and (ii) claims that accrue when Plaintiff *discovered* (or reasonably should have discovered) the fact of the injury.  The first category includes Counts III (Injurious Falsehood) and IV (Conspiracy to Commit Injurious Falsehood).[1]  And Counts I (RICO), II (RICO Conspiracy), VII (Computer Fraud and Abuse Act), and VIII (Theft of Trade Secrets) fall into the second category.[2]

In Mr. Sussmann's case, the triggering events relevant to *either* standard occurred over five years ago.  And as the Clinton Brief explains, Plaintiff's claims carry, *at most*, a four-year

---

[1]      *See Wagner, Nugent, Johnson, Roth, Romano, Erickson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114-15 (Fla. 1993) (discussing defamation actions); *see also Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. Dist. Ct. App. 2002) (noting that the same limitations period governs defamation and injurious falsehood claims); *Olson v. Johnson*, 961 So. 2d 356, 359-60 (Fla. Dist. Ct. App. 2007) ("A conspiracy cause of action accrues when the plaintiff suffers damages as a result of the acts performed pursuant to the conspiracy.").

[2]      *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) (RICO); *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (RICO conspiracy); 18 U.S.C. § 1030(g) (stating the limitations period for a Computer Fraud and Abuse Act violation begins to run upon "the act complained of or the date of discovery of the damage"); 18 U.S.C. § 1836 (stating a claim for theft of trade secrets accrues when "the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered").  Regarding Counts V and VI, a malicious prosecution claim accrues, if at all, when the underlying action terminates in the plaintiff's favor.  *See Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007).  Here, because Plaintiff does not allege that he was ever the subject of criminal prosecution, his purported claim never accrued at all.  *See infra* Section II.C.

2

limitations period running from the time of accrual—with several of the claims against Mr. Sussmann subject to an even shorter limitations period.  *See* Clinton Br. at 3-5.  As a result, *all* of the claims against Mr. Sussmann are stale and should be dismissed on that basis alone.

*First*, for claims accruing upon the occurrence of the asserted injury, the sole question is when Mr. Sussmann took the alleged action that resulted in Plaintiff's purported harm—*i.e.*, the last alleged act needed to give Plaintiff "a 'complete and present cause of action.'"  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation omitted); *see also* Fla. Stat. § 95.031 ("A cause of action accrues when the last element constituting the cause of action occurs.").[3]  The Complaint alleges that Plaintiff was injured "[a]s a result" of Mr. Sussmann conveying purportedly sensitive "internet data" to the FBI in September 2016.[4]  Compl. ¶¶ 7, 109-26, 165-82, 215, 339.[5]  Because that communication occurred nearly six years before Plaintiff filed suit in March 2022, Counts III and IV are time-barred.  *See* Clinton Br. at 4 (discussing two- and four-year limitations periods for injurious falsehood and conspiracy claims, respectively); *see also* Perkins Coie Br. at 8-9 (discussing two-year limitations period for injurious falsehood claim).

*Second*, with respect to those claims accruing upon discovery of the injury, Plaintiff concedes that "multiple media outlets" reported on the alleged link between the Trump Organization and Alfa Bank servers "in or about late October 2016."  Compl. ¶ 183.  Plaintiff

---

[3]   For purposes of this motion, Mr. Sussmann assumes that Florida law governs Plaintiff's common law claims.

[4]   As detailed in the Clinton Brief, the data purportedly at issue—"DNS internet traffic data"—is "created automatically when computers connect to each other across the internet," and is part of the underlying "architecture" of the internet.  Clinton Br. at 8 (citing *Intermatic Inc. v. Toeppen*, 947 F. Supp. 1227, 1231 (N.D. Ill. 1996)).

[5]   Plaintiff also alludes in passing to an alleged meeting between Mr. Sussmann and "two CIA employees," Compl. ¶ 215-17, but the Complaint does not link that meeting to any injury that Plaintiff purportedly suffered.  Regardless, any claim arising from that meeting—which occurred in February 2017—also would be untimely.

specifically points to public reports "that U.S. government authorities had received and were investigating allegations concerning a purported secret channel of communications between the Trump Organization and a . . . Russian Bank," *id.*—the source of Plaintiff's alleged injury attributed, in part, to Mr. Sussmann.  Plaintiff was thus aware of the injury underlying his claims against Mr. Sussmann by no later than October 2016.  And that is sufficient to start the clock for Counts I, II, VII, and VIII—with the statutes of limitations on those claims having expired between 2018 and 2020.  *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[D]iscovery of the injury, not discovery of the other elements of the claim, . . . starts the clock"); Clinton Br. at 3-5 (discussing applicable limitations periods).

The untimeliness of the claims against Mr. Sussmann is reason alone to dismiss them.  *See La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (confirming that dismissal is appropriate where untimeliness is "apparent from the face of the complaint").

## II.    PLAINTIFF'S CLAIMS AGAINST MR. SUSSMANN ARE DEFECTIVELY PLED

### A.    Counts I, II & VIII: Plaintiff Fails To Allege Viable RICO Predicate Acts, Cognizable Damages, Or Proximate Causation

As further detailed in the Clinton Brief, *see* Clinton Br. at 7-10, Plaintiff fails to adequately allege any "predicate act" supporting his RICO and RICO conspiracy claims (let alone "two or more," as the law requires, *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995))—and the same pleading failure equally forecloses his standalone theft of trade secrets claim.[6]  On top of that, Plaintiff's complained-of harms do not constitute cognizable economic injuries; and the Complaint fails to establish that Mr. Sussmann's alleged actions proximately caused those purported injuries in any event.

---

[6]    Plaintiff asserts theft of trade secrets under 18 U.S.C. § 1832 as both a predicate to his RICO claim (Count I) and as a standalone claim (Count VIII).  The standalone claim fails for the same reasons discussed *infra*.

*First*, both of the two RICO "predicate acts" cited in Counts I and II are deficiently pled as to Mr. Sussmann.[7]  The first—theft of trade secrets under 18 U.S.C. § 1832—alleges that Mr. Sussmann "conspired" with Neustar, Inc. to utilize the company's lawful access to DNS data which, Plaintiff contends, comprised "trade secrets."  In order to qualify as a "trade secret," however, Plaintiff would need to plausibly allege that the data "derives independent *economic* value . . . from not being generally known to . . . another person who can obtain *economic* value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(B) (emphasis added).  Yet Plaintiff offers *no* account—plausible or otherwise—of the economic value of DNS information either to himself or to Mr. Sussmann or Neustar.  (Indeed, it is unclear how Plaintiff could plausibly claim even to have "owned" data generated automatically as a routine function of internet communications.  *See* Clinton Br. at 8.)  Instead, he spends 65 pages describing the data's supposed *political* utility before abruptly switching gears and making a conclusory assertion that it also conveys "significant economic value."  Compl. ¶¶ 288-89.[8]  That factually unsupported, talismanic invocation of the statutory language is insufficient to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S.

---

[7]      Even if Plaintiff alleged that Mr. Sussmann participated in at least two predicate acts – which he did not – the RICO claims still fail for the additional reason that these acts did not constitute a pattern of racketeering activity.  *See* Clinton Br. at 11-12.  The Complaint's specific allegations as to Mr. Sussmann span approximately eight months from July 2016 to February 2017, *see* Compl. ¶¶ 109, 215-17,  which Courts have categorically rejected as being too brief a period of time for a pattern of racketeering activity.  *See, e.g., Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1266 (11th Cir. 2004).  And the Complaint does not plead with any specificity how Mr. Sussmann's conduct remains ongoing or that the predicate acts were a "regular way of doing business."  *See* Compl. ¶¶ 270, 273-76.

[8]      Tellingly, Plaintiff in one instance adds the word "political" to his otherwise parroted definition of "trade secrets."  *Compare* Compl. ¶ 289 ("This . . . information . . . constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3) where [it] constitute[s] business *and/or political methods* . . ." (emphasis added)), *with* 18 U.S.C. § 1839(3) ("[T]he term 'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information.").  This alteration to Plaintiff's otherwise rote recitation of the statutory language betrays his attempt to reframe political sensitivities as trade secrets.

662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also* Clinton Br. at 8-9.

The other purported predicate—for obstruction of justice under 18 U.S.C. §§ 1503 and 1512, *see* Compl. ¶ 302—is likewise deficiently pled.  Plaintiff alleges that Mr. Sussmann made misstatements about Plaintiff's ties with Russia and Mr. Sussmann's affiliation with the Clinton Campaign in meetings with the FBI and CIA, and thereby "obstructed . . . the due administration of justice and/or one or more official proceedings, namely" those agencies' investigations.  Compl. ¶¶ 300, 302.  In their statutory context, however, the terms "due administration of justice" and "official proceedings" refer to *adjudicative* proceedings—not investigations.  *See* 18 U.S.C. § 1515(a)(1) (defining "official proceeding"); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995) ("[U]ttering false statements to an investigating agent . . . who might or might not testify before a grand jury" does not constitute obstruction of the "due administration of justice."); *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir. 1984) (defining "due administration of justice" as "judicial procedure").  As Plaintiff admits, the investigation supposedly stemming from Mr. Sussmann's government disclosures never materialized into a prosecution or other judicial proceeding, *see, e.g.*, Compl. ¶ 232—so his claim also necessarily fails, *see* Clinton Br. at 9-10.

*Second*, the Complaint fails to allege that either predicate act injured Plaintiff's "business or property."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985); 18 U.S.C. § 1963(c) (restricting civil RICO relief to persons "injured in [their] business or property by reason of a violation of section 1962").  The requirement that civil RICO plaintiffs plead "an injury to business or property . . . has [] 'restrictive significance.'"  *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352, 1361 (11th Cir. 2011) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).  But here, Plaintiff makes only broad-brushed assertions that the

predicate acts somehow harmed his "political career and . . . ability to effectively govern," Compl.

¶ 296, and that he later incurred "defense costs, legal fees, and related expenses" in connection

with his own "effort to defend against" the "various" investigations and other unidentified

"proceedings" that purportedly "arose" from "Defendants' actions," *id.* ¶ 314.[9]  Those alleged

harms in no sense reflect injuries to Plaintiff's "business or property," and therefore cannot convey

standing to bring civil RICO claims.  *See Rylewicz v. Beaton Servs., Ltd.*, 698 F. Supp. 1391, 1395-

96 (N.D. Ill. 1988) ("The phrase 'business and property' excludes . . . political damages."); *Grogan*

*v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("'[I]njured in his business or property' excludes

personal injuries, including the pecuniary losses therefrom.").

     *Finally*, even had Plaintiff pled a cognizable economic injury, he failed to allege or explain

how Mr. Sussmann's alleged acts—statements made to the FBI, CIA, and unspecified

"reporters"—proximately *caused* that purported harm.  *See generally* Clinton Br. at 12-14.  "When

a court evaluates a RICO claim for proximate causation, the central question it must ask is whether

the alleged violation led *directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547

U.S. 451, 461 (2006); *see also Simpson v. Sanderson Farms*, 744 F.3d 702, 705 (11th Cir. 2014).

Here, setting aside Plaintiff's bald assertion that he was injured "[a]s a direct and proximate result

of Defendants' actions," Compl. ¶ 313, the Complaint makes clear that Plaintiff's public-image

challenges and legal costs stemmed from reports, investigations, and proceedings by third

---

[9]    Plaintiff makes a cursory reference to "the loss of existing and future business opportunities for himself, the Trump Campaign, and the Trump Organization."  Compl. ¶ 314.  Leaving aside the troubling question of what "existing and future business opportunities" Plaintiff's political campaign might pursue, it is clear that such speculative allegations of unspecified business losses are insufficient to support a claim.  *Accord Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990); *Klayman v. Clinton*, 2015 WL 10857500, at *6 (S.D. Fl. Aug. 11, 2015) (Middlebrooks, J.) (holding allegation that conduct "may have compromised Plaintiff's ability to earn a living" was too speculative to support RICO standing).

parties—not Mr. Sussmann directly.  And that intervening factor—the independent decisions by

*other* individuals acting on their own volition to publish articles, commence investigations, and

file lawsuits—breaks any causal link between Mr. Sussmann's alleged actions and Plaintiff's

asserted harm.  *See Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308

(11th Cir. 2003) (affirming dismissal where plaintiffs could not establish "obstruction of justice

and witness tampering" as "the proximate cause of their alleged injury").  Indeed, Plaintiff himself

acknowledges that the "Crossfire Hurricane" investigation cited throughout the Complaint pre-

dated Mr. Sussmann's alleged meetings with the government, *see* Compl. ¶ 134 (alleging the FBI

"opened" its investigation on July 31, 2016); *id.* ¶ 170 (discussing Mr. Sussmann's alleged FBI

meeting on September 19, 2016); and an official report referenced in the Complaint makes clear

that intel from a friendly foreign government—*not* the DNS information Mr. Sussmann allegedly

shared—"was relied upon to predicate the opening of the Crossfire Hurricane investigation."[10]

These pleading failures—among others, *see* Clinton Br. at 6-15—are fatal to both the

substantive RICO count (Count I) as well as the conspiracy claim (Count II), *see Jackson v.*

*BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (holding that dismissal of "a

substantive RICO claim" also requires dismissal of related "RICO conspiracy claims").

### B.      Counts III & IV: Plaintiff Fails To Identify A Sufficient Harm Or Causal Link To Support The Injurious Falsehood Claims

Plaintiff's injurious falsehood claims similarly fail as to Mr. Sussmann because the

Complaint is devoid of facts showing that Mr. Sussmann interfered with any of Plaintiff's

"*economic* relations," as Florida law requires.  *Salit v. Ruden, McClosky, Smith, Schuster &*

---

[10]      U.S. Dep't of Justice, Office of the Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* at 346 (2019), *available at* https://www.justice.gov/storage/120919-examination.pdf; *see also Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006) (considering investigative report that was "incorporate[d] by reference" into complaint); Compl. ¶ 3 n.1.

*Russell, P.A.*, 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999) (emphasis added); *see also* Perkins Coie Br. at 7-8.  Plaintiff asserts only that Mr. Sussmann's alleged actions led to "legal issues and political issues."  Compl. ¶¶ 339, 345.  But those purported harms cannot support an injurious falsehood cause of action.  *See Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. Dist. Ct. App. 2002) (limiting scope of injurious falsehood claims to "protect[ing] economic interests of the injured party against pecuniary loss," as distinct from losses to the "personal reputation of the plaintiff"); Clinton Br. at 18 (noting that the Complaint challenges statements which "deal entirely with Trump's presidency and fitness for office," not Plaintiff's "business interests").  Furthermore, even if Plaintiff did identify a sufficient harm, he fails to plead whether and how Mr. Sussmann's statements in particular played "a material and substantial part in inducing others not to deal with the Plaintiff," *Kanarick v. GE Credit Retail Bank Care Credit*, 2013 WL 12092479, at *4 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.)—an essential element of the claim.  For these (among other) reasons, *see generally* Perkins Coie Br. at 4-9; Clinton Br. at 17-19, Counts III and IV should be dismissed.

C. **Counts V & VI: There Was No Prosecution To Support The Malicious Prosecution Claims**

Plaintiff's malicious prosecution claims fail for the basic reason that Plaintiff was never *prosecuted*.  A cause of action for malicious prosecution arises, if at all, upon termination of an underlying action in the plaintiff's favor.  *See Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007).  But there is no allegation that Mr. Sussmann's purported statements to the government resulted in *any* kind of "original criminal or civil judicial proceeding," *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)—much less one resolved in Plaintiff's favor, *see* Perkins Coie Br. at 9-10.  On the contrary, Plaintiff himself asserts that "[t]he FBI's

9

investigation of [Mr. Sussmann's] allegations [] concluded that there was insufficient evidence to" warrant taking legal action.  Compl. ¶ 180.

Additionally, the requisite causal link is once again missing.  Even if the FBI's investigation could be deemed an "original criminal or judicial proceeding" (and it cannot),[11] Plaintiff has not demonstrated how Mr. Sussmann could possibly have been the "legal cause" of a matter that preceded his alleged actions.  *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123-24 (S.D. Fla. 2019).  These and other pleading deficiencies require dismissal of Counts V and VI.  *See* Perkins Coie Br. at 9-13; Clinton Br. at 19.

### D.     Count VII: The Computer Fraud and Abuse Act Claim Fails to State a Cognizable Claim and Fails For Lack of Qualifying Damages

For reasons detailed in the Perkins Coie brief, *see* Perkins Br. at 13-17, Plaintiff has not plausibly alleged a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g) regarding Mr. Sussmann.  Notably, the Supreme Court has foreclosed the "unauthorized access" theory on which the CFAA claim rests, and a CFAA claim cannot be based on alleged unauthorized access by Neustar to computers belonging to the Executive Office of the President.

Plaintiff's CFAA claim against Mr. Sussmann also fails to allege a cognizable harm.  Under the CFAA, civil claimants can recover as "damage or loss" only those costs "necessary to assess and remedy damage" to a protected computer.  *Dreni v. PrinterOn Am. Corp.*, 486 F. Supp. 3d 712, 735 (S.D.N.Y. 2020); *see also Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); 18 U.S.C. §§ 1030(e)(8), (11) (defining "damage" and "loss").  But here, the damages allegedly resulting from the use of Plaintiff's DNS information—"defense costs, legal

---

[11] As noted in the Perkins Coie Brief, the FBI's investigation was not a criminal proceeding, *see* Perkins Coie Br. at 10 (citing *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 10 (Fla. 2016) (rejecting malicious prosecution claim because plaintiff was "never arrested or prosecuted")), and Plaintiff does not allege that Mr. Sussmann's statements contributed to any other qualifying prosecution.

fees, and related expenses," Compl. ¶ 392—bear no relation whatsoever to identifying or remedying a computer intrusion, *see Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1071-72 (D. Ariz. 2015) ("[L]itigation expenses . . . are not a cognizable loss under the CFAA."). Thus, even had Plaintiff plausibly alleged a CFAA violation (and he has not), dismissal of Count VII would be warranted.

### III. ALL OF PLAINTIFF'S CLAIMS AGAINST MR. SUSSMANN ARE BARRED BY THE *NOERR-PENNINGTON* DOCTRINE

Plaintiff's claims are predicated on the same core theory of liability: that Mr. Sussmann conveyed to representatives of the federal government allegations about Plaintiff's links to Russia, and that Plaintiff was injured by the FBI's purportedly related investigation. Taking Plaintiff's allegations as true, such governmental communications fall squarely within the protections afforded to this kind of "petitioning" activity; they are foreclosed by the *Noerr-Pennington* doctrine; and Mr. Sussmann accordingly cannot be held civilly liable for the harms stemming from any resulting governmental action.

The right to petition is "integral to the democratic process." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). It "allows citizens to express their ideas, hopes, and concerns to their government." *Id.* And where, as here, that right is exercised in the form of "speech uttered during a campaign for political office," the First Amendment's protections are at their "fullest." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).

The *Noerr-Pennington* doctrine preserves this constitutional right by protecting petitioners from civil liability for governmental action stemming from their petitions. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961) ("[N]o violation . . . can be predicated upon [] attempts to influence the . . . enforcement of laws."). *Noerr-Pennington* thus allows a party to present grievances to the government—"regardless of intent or purpose"—

11

without fear that those affected by any resulting governmental action can obtain civil redress against them. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *see also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("*Noerr-Pennington* is a label for a form of First Amendment protection; to say that one does not have *Noerr-Pennington* immunity is to conclude that one's petitioning activity is unprotected by the First Amendment.").

Because of its constitutional rooting, courts have applied *Noerr-Pennington* to reject both federal and state-law claims based on the results of a party's governmental petitioning. *See, e.g.*, *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559, 1559-1562 (11th Cir. 1992) (citing the doctrine's "First Amendment underpinnings" and applying it to dismiss a state-law claim); *Int'l Brotherhood of Teamsters, Local 734 Health & Welfare Tr. Fund v. Phillip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999) (dismissing a RICO action); *SilverHorse Racing, LLC v. Ford Motor Co.*, 2016 WL 7137273, at *2-3 (M.D. Fla. Apr. 27, 2016) (collecting cases).

Here, Plaintiff's claims against Mr. Sussmann are all based on a singular theory that (1) Mr. Sussmann presented to the federal government evidence concerning potential ties between Plaintiff and a Russian bank; (2) the government investigated Plaintiff based (at least in part) on those allegations; and (3) Plaintiff suffered damages in defending against those investigations. *See, e.g.*, Compl. ¶ 179 (alleging that, "as a result of" the meeting between Mr. Sussmann and the FBI, "the FBI opened an investigation of the Trump-Alfa Bank allegations"); *id.* ¶ 263 (describing Plaintiff's damages as the result of "the various federal investigations and official proceedings that arose" from Defendants' alleged actions). Plaintiff thus seeks to hold Mr. Sussmann liable for classic petitioning activity; indeed, assuming the truth of Plaintiff's allegations, the actions he purports to target are not unlike the "publicity campaign to influence governmental action" addressed in *Noerr* itself. 365 U.S. at 140-41; *see also id.* at 129 (describing a campaign "to create

12

an atmosphere of distaste for [rivals] among the general public"). Accordingly, even beyond the Complaint's pleading deficiencies, the *Noerr-Pennington* doctrine forecloses Plaintiff's claims against Mr. Sussmann.

**CONCLUSION**

For the foregoing reasons and the additional bases detailed in the Clinton and Perkins Coie Briefs, the Court should dismiss Counts I through VIII as to Mr. Sussmann, in their entirety.

Date: May 11, 2022

Respectfully submitted,

By: */s/ Roberto Martínez*

**COLSON, HICKS, EIDSON, P.A.**

Roberto Martínez (Florida Bar No. 305596)
bob@colson.com
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
(305) 476-7400

**LATHAM & WATKINS LLP**

Sean M. Berkowitz*
sean.berkowitz@lw.com
330 N. Wabash, Suite 2800
Chicago, IL 60611
(312) 876-7700

Michael S. Bosworth*
michael.bosworth@lw.com
1271 Avenue of the Americas
New York, NY 10020
(212) 916-1221

Stephen P. Barry*
stephen.barry@lw.com
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Michael F. Houlihan*
michael.houlihan@lw.com
200 Clarendon Street
Boston, MA 02116
(617) 880-4642

*Admitted pro hac vice*

*Attorneys for Defendant Michael Sussmann*

14