**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DONALD J. TRUMP,

                    Plaintiff,

        v.

HILLARY R. CLINTON, et al.,

                Defendants.

Case No. 2:22-cv-14102-DMM

**MARC ELIAS'S MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6)
AND INCORPORATED MEMORANDUM OF LAW**

Reid J. Schar*
April A. Otterberg*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
* Admitted *pro hac vice*

Eugene K. Pettis
Debbie P. Klauber
HALICZER, PETTIS & SCHWAMM
One Financial Plaza
100 S.E. 3rd Ave., Seventh Floor
Fort Lauderdale, FL 33394
Tel: (954) 523-9922
Fax: (954) 522-2512

*Counsel for Defendant Marc Elias*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 1

LEGAL STANDARD ...................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.      Counts I, II, IV, and VI Are Time-Barred as a Matter of Law. ........................................... 4

II.     Plaintiff Does Not State a RICO Claim Against Mr. Elias (Count I). .............................. 5

        A.      Plaintiff Fails to State the Enterprise Element. .................................................... 5

        B.      Plaintiff Does Not Allege That Mr. Elias Participated in a Pattern of
                Racketeering Activity Involving At Least Two Predicate Acts............................. 7

                1.      Plaintiff Fails to State At Least Two Predicate Acts. ................................ 7

                2.      Plaintiff Does Not Allege Mr. Elias Engaged in a Pattern of
                        Racketeering Activity. ............................................................................ 9

        C.      Plaintiff Does Not Satisfy RICO's Demanding Causation Standard. ................... 10

III.    Plaintiff Fails to State a RICO Conspiracy Claim Against Mr. Elias (Count II). ............. 11

IV.     Plaintiff's Claim for Conspiracy to Commit Injurious Falsehood Fails (Count IV). ....... 12

V.      Plaintiff Does Not—And Cannot—State a Malicious Prosecution Claim (Count V). ..... 13

VI.     The Claim for Conspiracy to Commit Malicious Prosecution Also Fails (Count VI)...... 15

CONCLUSION ............................................................................................................................. 16

REQUEST FOR HEARING ............................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Aldridge v. Lily-Tulip. Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587 (11th Cir. 1992).... 10

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014) ............................ 12, 15, 16

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ........................................ 4, 11

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ..................................................... 10

*Artubel v. Colonial Bank Grp., Inc.*, No. 8:08-cv-179-T-23MAP, 2008 WL 3411785
   (M.D. Fla. Aug. 8, 2008) ................................................................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 3

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................................ 6

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)..................................... 6

*Cisneros v. Petland, Inc.*, 972 F.3d 1204 (11th Cir. 2020)........................................ 5, 6, 7

*Cole v. Lobello Painting, Inc.*, No. 8:06-CV-2171, 2007 WL 2330860
   (M.D. Fla. Aug. 14, 2007) .............................................................................. 16

*Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL 8431656
   (S.D. Fla. June 6, 2006) ................................................................................ 11

*Cont'l 332 Fund, LLC v. Kozlowski*, No. 2:17-cv-41-FtM-38MRM, 2020 WL 1234808
   (M.D. Fla. Mar. 13, 2020)................................................................................ 7

*Corcel Corp., Inc. v. Ferguson Enters., Inc.*, No. 12-80896, 2016 WL 880557
   (S.D. Fla. Mar. 8, 2016) ................................................................................. 4

*Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354 (8th Cir. 2011)................................... 7

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ........................................................... 14

*Debrincat v. Fischer*, 217 So. 3d 68 (Fla. 2017) .............................................. 13, 14, 15

*Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260 (S.D. Fla. 2004) ...................... 13

*Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239
   (S.D. Fla. 2004).......................................................................................... 6

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989)....................................................... 9

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)....................................... 5, 10

*HSBC Bank USA, Nat'l Ass'n v. Ross*, No. 8:11-cv-02019, 2012 WL 13140776
    (M.D. Fla. Apr. 5, 2012) ........................................................................................................ 16

*In re Takata Airbag Prods. Liability Litig.*, 524 F. Supp. 3d 1266 (S.D. Fla. 2021).............. 10, 11

*Jackson v. BellSouth Telecomm.*, 372 F.3d 1250 (11th Cir. 2004)........................................ 10, 11

*Joseph v. Bernstein*, No. 13–24355–CIV, 2014 WL 4101392 (S.D. Fla. Aug. 19, 2014)........... 14

*Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356 (S.D. Fla. 2010) ....................... 6

*Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350 (M.D. Fla. 2005) ...................... 6, 7

*McMurray v. U-Haul Co., Inc.*, 425 So. 2d 1208 (Fla. 4th DCA 1983).......................................... 4

*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir. 2021) ..................................................... 7

*Nunes v. Fusion GPS*, 531 F. Supp. 3d 993 (E.D. Va. 2021) ............................................... 6, 8, 11

*Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246 (11th Cir. 2001) ....................... 4

*Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237 (S.D. Fla. 2010) .............................................. 13

*Rodgers v. Addy*, No. 17-cv-23429, 2021 WL 4487903 (S.D. Fla. Sept. 27, 2021)..................... 7

*Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183 (11th Cir. 2004)......................... 12

*Sterling Nat'l Mortg. Co., Inc. v. Infinite Title Solutions, LLC*, No. 10-22147-CIV,
    2011 WL 13220625 (S.D. Fla. Mar. 3, 2011), *report and recommendation adopted*,
    2011 WL 1222168 (S.D. Fla. Mar. 31, 2011)........................................................................ 9

*Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326
    (S.D. Fla. 2008)..................................................................................................................... 11

*United States v. Davis*, 854 F.3d 1276 (11th Cir. 2017)................................................................ 8

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) ............................................................ 8

*United States v. Goldin Indus., Inc.*, 219 F.3d 1271 (11th Cir. 2000) ........................................... 6

*United States v. McDaniel*, No. 2:13-CR-00015, 2013 WL 8476819 (N.D. Ga. Oct. 2, 2013),
    *report and recommendation adopted*, 2014 WL 2084891 (N.D. Ga. May 16, 2014) ........ 8

*United States v. Young*, 916 F.3d 368 (4th Cir. 2019) .................................................................. 8

*Valladares v. Bank of Am. Corp.*, 197 So. 3d 1 (Fla. 2016) ....................................................... 14

*Wilder v. JP Morgan Chase Bank, N.A.*, No. 18-20820, 2018 WL 5629922
(S.D. Fla. Oct. 30, 2018) ......................................................................... 4

**Statutes**

18 U.S.C. § 1503 ........................................................................................... 8

18 U.S.C. § 1512 ........................................................................................... 8

18 U.S.C. § 1515(a) ....................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 3

Fed. R. Civ. P. 9(b) ...................................................................................... 4

**Other Authorities**

Office of the Inspector General, U.S. Dep't of Justice, *Review of Four FISA Applications
and Other Aspects of the FBI's Crossfire Hurricane Investigation* (2019) ..................... 14

U.S. Dep't of Justice, Office of Special Counsel, *Report on the Investigation into Russian
Interference in the 2016 Presidential Election*, vol. II (2019) .......................................... 15

## INTRODUCTION

Seeking to score political points, Plaintiff has brought a slew of meritless claims against a wide-ranging group of defendants.  One of those defendants is Marc Elias, a lawyer for the Democratic National Committee and Hillary Clinton's 2016 presidential campaign.  As shown below, Plaintiff's claims against Mr. Elias are time-barred as a matter of law and lack the factual and legal content necessary to state any plausible cause of action.  Each of Plaintiff's political grievances, masquerading as legal claims, should be dismissed with prejudice.

## FACTUAL BACKGROUND

On March 24, 2022, Plaintiff filed his 108-page, 508-paragraph Complaint against numerous individuals and entities who purportedly wronged Plaintiff in the lead-up to the 2016 presidential election through a supposed far-reaching conspiracy to connect him and his presidential campaign to Russia.  (*See generally* Dkt. 1, Compl.)  The length and breadth of the Complaint are nothing more than an effort to mask Plaintiff's failure to state any claim.

Plaintiff broadly contends that Mr. Elias, a former partner at the law firm of Perkins Coie, "led an effort to produce spurious 'opposition research' claiming to reveal illicit ties between the Trump Campaign and Russian operatives[.]"[1]  (*Id.* ¶ 3.)  The details specific to Mr. Elias, however, are few and conclusory.  Plaintiff alleges that Mr. Elias, together with his former law partner, Michael Sussmann, was responsible for Perkins Coie's representation of the Democratic National Committee (the "DNC") and Hillary Clinton's presidential campaign (the "Clinton Campaign"), with Mr. Elias serving as both entities' "General Counsel."  (*Id.* ¶ 50.)  Plaintiff alleges that in August 2015, Mr. Elias and Mr. Sussmann negotiated a joint fundraising agreement between the DNC and the Clinton Campaign.  (*Id.* ¶¶ 51–53.)  Plaintiff further alleges, in conclusory fashion,

---

[1] Consistent with the standards that govern this motion, Mr. Elias accepts any well-pled allegations in the Complaint as true, but for purposes of this motion only.

that Mr. Elias was part of a "plan to publicly and falsely denigrate" Plaintiff and to "wrongly implicate him as colluding with Russia." (*Id.* ¶ 60.) Mr. Elias's role, according to Plaintiff, was to work with Fusion GPS, an investigative firm, to develop a dossier showing a link between Plaintiff and Russia. (*Id.* ¶ 61.) Plaintiff alleges Mr. Elias retained the firm in April 2016 and that the firm reported to him thereafter in its work. (*Id.* ¶¶ 66–67, 71–73.)

According to the Complaint, while Mr. Elias was working with Fusion, Mr. Sussmann was working with Neustar, Inc., an information technology company, to search for a connection between Plaintiff and a Russian bank. (*Id.* ¶ 5.) Plaintiff asserts that Neustar executive Rodney Joffe unlawfully "search[ed], gather[ed], and mine[d] internet data . . . to obtain derogatory information" about Plaintiff, and that this was done in "furtherance" of work he was doing with Mr. Elias and Mr. Sussmann. (*Id.* ¶ 122.) Aside from this conclusory statement, Plaintiff fails to allege any facts explaining how Mr. Elias was involved in the claimed data violations, which Plaintiff contends constituted a theft of trade secrets.

Plaintiff's remaining allegations pertaining to Mr. Elias rely on vaguely described excerpts of client billing records to suggest that Mr. Elias was somehow involved in efforts to spread a false narrative about Plaintiff through the media. Plaintiff alleges that Mr. Elias met with Mr. Sussmann and Fusion GPS on July 29, 2016; met and had calls with Mr. Sussmann and Mr. Joffe on several occasions in August 2016; and spoke to Mr. Sussmann on the phone on September 12, 2016. (*Id.* ¶¶ 166, 168.) Plaintiff further asserts that shortly before Mr. Sussmann met with the FBI in September 2016 to provide the agency with allegedly false information about Plaintiff's ties to Russia, Mr. Elias exchanged emails with Jake Sullivan and other Clinton Campaign staff. (*Id.* ¶ 169.) According to Plaintiff, after the meeting with the FBI, Mr. Sussmann "coordinate[d]" with Mr. Joffe, Mr. Elias, and Fusion GPS to "disseminate" allegations about Plaintiff's ties to a Russian bank to the media. (*Id.* ¶ 181.) Plaintiff also contends, without elaboration, that Mr. Elias allegedly

"assisted" Mr. Sullivan with a written statement about Plaintiff's ties to Russia that was published on October 31, 2016.  (*Id.* ¶¶ 185–87.)  Plaintiff does not allege what this "assistance" entailed or even any specific actions by Mr. Elias in the days leading up to this date.  There are no assertions regarding Mr. Elias's conduct after October 31, 2016.

Although Plaintiff attempts to paint Mr. Elias as part of a wide-ranging conspiracy, he alleges that Mr. Elias interacted with only a limited group: Mr. Sussmann, Perkins Coie, Fusion GPS and its co-founders, Mr. Joffe, and Clinton Campaign staff.  The Complaint does not allege that Mr. Elias had any contact with the FBI or any other agency during the relevant timeframe, nor does the Complaint allege that Mr. Elias spoke to the press about Plaintiff's ties to Russia.

Based on these razor-thin allegations, Plaintiff asserts claims against Mr. Elias for: a violation of RICO, 18 U.S.C. § 1962(c) (Count I); RICO conspiracy, 18 U.S.C. § 1962(d) (Count II); conspiracy to commit injurious falsehood (Count IV); malicious prosecution (Count V); and conspiracy to commit malicious prosecution (Count VI).  Each of these claims fails for the reasons explained below, and for the reasons set forth in the motions to dismiss filed by Secretary Clinton, Perkins Coie, and other defendants, which Mr. Elias joins to the extent applicable to him.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, where, as here, a plaintiff's claims are based on an alleged pattern of fraudulent conduct, the complaint must also comply with Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (applying Rule 9(b) to RICO claims).

**ARGUMENT**

## I.     Counts I, II, IV, and VI Are Time-Barred as a Matter of Law.

Plaintiff's delay in filing suit makes four of his claims against Mr. Elias—the two RICO claims (Counts I and II) and the two state-law conspiracy claims (Counts IV and VI)—untimely as a matter of law.[2]  Each of these claims has a four-year limitations period.[3]  *See, e.g., Pac. Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001) (RICO claim); *Wilder v. JP Morgan Chase Bank, N.A.*, No. 18-20820, 2018 WL 5629922, at *3 (S.D. Fla. Oct. 30, 2018) (conspiracy claims under Florida law); *Corcel Corp., Inc. v. Ferguson Enters., Inc.*, No. 12-80896, 2016 WL 880557, at *4–5 (S.D. Fla. Mar. 8, 2016) (RICO conspiracy claim).  As Secretary Clinton showed in her motion, which Mr. Elias joins and incorporates (Dkt. 52 at Section I), Plaintiff's own Complaint shows that four-year period expired long before he filed this lawsuit.

Plaintiff's sparse allegations specific to Mr. Elias prove the point, as they all involve events from long ago.  The allegations date back to "mid-2015," when the DNC and the Clinton Campaign retained Perkins Coie, and August 2015, when Mr. Elias and Mr. Sussman purportedly negotiated a joint fundraising agreement between the two clients.  (Compl. ¶¶ 49–51.)  Otherwise, *all* of Plaintiff's allegations regarding conduct by Mr. Elias date back to 2016 (*id.* ¶¶ 166, 168–69, 181, 187)—more than five years before Plaintiff filed this lawsuit—with not a single allegation identifying any supposed activity by Mr. Elias after October 31, 2016.

---

[2] For Count V (malicious prosecution), Plaintiff was never prosecuted (*see* Part V, below), so no such claim ever accrued in the first place.  *See, e.g., McMurray v. U-Haul Co., Inc.*, 425 So. 2d 1208, 1211 (Fla. 4th DCA 1983).

[3] If any state-law claims survive this motion, Mr. Elias reserves the right to argue that a law other than Florida law governs the claims.

Plaintiff also does not and cannot allege he did not know of his claims within the limitations period. Plaintiff was quite aware, no later than at least October 29, 2017, of what he characterized as a conspiracy by those associated with Secretary Clinton and the Democratic Party to connect him to Russia. (Dkt. 52 at Section I.) Even that (generous) date is more than four years before Plaintiff filed this suit. Counts I, II, IV, and VI are untimely and should be dismissed.

## II. Plaintiff Does Not State a RICO Claim Against Mr. Elias (Count I).

Plaintiff's untimely RICO allegations also do not state a viable claim against Mr. Elias. Under § 1962(c), Plaintiff was required to "plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Plaintiff cannot state a RICO claim by lumping individual defendants together. Rather, he was required to plead "that *each defendant* engaged in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity involving at least two predicate criminal acts." *Id.* at 1207 (emphasis added). RICO claims also are subject to a heightened causation standard: a plaintiff must demonstrate both proximate and but-for causation, showing a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). Plaintiff does not state these elements against any of the RICO defendants, but the deficiencies are particularly pronounced in his effort to sue Mr. Elias.

### A. Plaintiff Fails to State the Enterprise Element.

Plaintiff does not allege the existence of a cognizable RICO enterprise, and Mr. Elias joins and incorporates the arguments made by Secretary Clinton and Perkins Coie on this point. (Dkt. 52 at 7; Dkt. 143 at 2–3.) Plaintiff attempts to plead that Mr. Elias was part of an "association-in-fact" enterprise, which requires three structural components: "a purpose, relationships among those

associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiff does not allege the existence of an enterprise with these features; instead, the Complaint "merely recite[s] the elements of an association-in-fact enterprise and allege[s] only conclusory facts." *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1006 (E.D. Va. 2021). This is far from what is required to plausibly allege the existence of an enterprise for purposes of a RICO claim. *Id.*

Plaintiff also does not allege that Mr. Elias is "separate and distinct from" the alleged RICO enterprise. *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1378 (S.D. Fla. 2010). RICO requires such distinctiveness "because liability 'depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Id.* (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (original emphasis)). "The crucial factor" is whether each defendant "'is free to act independently and advance its own interests contrary to those' of the other entities" in the enterprise. *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1365 (M.D. Fla. 2005) (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1277 (11th Cir. 2000)); *see also Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1261–62 (S.D. Fla. 2004) (dismissing Florida RICO claim where "each and every one of the listed [defendants] is or was a DuPont employee or agent"). Thus, "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Cisneros*, 972 F.3d at 1215 (quotation and citation omitted). Accordingly, in both *Kelly* and *Florida Evergreen*, the plaintiffs failed to state claims where the alleged RICO enterprise consisted in part of an entity and the counsel who represented and served as agents of the entity. *Kelly*, 681 F. Supp. 2d at 1378; *Fla. Evergreen*, 336 F. Supp. 2d at 1261–62.

6

Mr. Elias's co-defendants to Count I are his former Perkins Coie colleague (Mr. Sussmann); his former law firm (Perkins Coie); two former clients of Perkins Coie (the Clinton Campaign and the DNC); and Secretary Clinton herself.  This group of defendants lacks the separation and distinctiveness required for a RICO claim.  As a partner at Perkins Coie who allegedly was providing legal services to these clients at the time of his alleged conduct in violation of RICO, Mr. Elias was *not* "free to act independently and advance [his] own interests contrary to those of the other [defendants]."  *See Lockheed Martin Corp.*, 357 F. Supp. 2d at 1365.  "A complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c)."  *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698–99 (7th Cir. 2021).  Plaintiff's attempt to plead a RICO enterprise fails, and Count I should be dismissed.

### B.   Plaintiff Does Not Allege That Mr. Elias Participated in a Pattern of Racketeering Activity Involving At Least Two Predicate Acts.

Plaintiff's allegations concerning Mr. Elias's participation in a pattern of racketeering activity, involving at least two predicate acts, also fall short.  *See Cisneros*, 972 F.3d at 1215 ("each defendant" must have "participated" in the pattern of racketeering activity).

### 1.   Plaintiff Fails to State At Least Two Predicate Acts.

Plaintiff does not allege that Mr. Elias, specifically, participated in at least two RICO predicate acts.  *See, e.g.*, *Cisneros*, 972 F.3d at 1217 (affirming dismissal where defendant was not alleged to have participated in two predicate acts); *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 354, 358 (8th Cir. 2011) (affirming dismissal for failure to plead "at least two predicate acts committed by each defendant"); *Rodgers v. Addy*, No. 17-cv-23429, 2021 WL 4487903, at *3–4 (S.D. Fla. Sept. 27, 2021) (dismissing RICO claim where the plaintiffs failed to plead "two predicate acts for each defendant"); *Cont'l 332 Fund, LLC v. Kozlowski*, No. 2:17-cv-41-FtM-38MRM, 2020 WL 1234808, at *3–5 (M.D. Fla. Mar. 13, 2020) (same result).

Plaintiff's allegations concerning the purported theft of trade secrets, one of his claimed predicate acts, fail generally for the reasons set forth in Secretary Clinton's brief.  (Dkt. 52 at 8–9.)  As to Mr. Elias specifically, the allegations are strikingly sparse.  Plaintiff merely states, without further explanation, that Mr. Joffe "unlawfully search[ed], gather[ed] and mine[d] internet data" in "furtherance of" his purported efforts "with" Mr. Sussmann and Mr. Elias to disseminate false allegations about Plaintiff.  (Compl. ¶ 122.)  This single conclusory statement does not provide the detail necessary to show that Mr. Elias participated in the supposed theft of trade secrets.[4]

Nor does Plaintiff allege Mr. Elias participated in the Complaint's second asserted predicate act, involving witness tampering.[5]  At the outset, 18 U.S.C. § 1512 requires an "official proceeding," and there was no such proceeding here.  As Secretary Clinton explained (Dkt. 52 at 9–10), by statute, an "official proceeding" includes a federal court or grand jury proceeding, a proceeding before Congress, a proceeding "before a federal government agency which is authorized by law," or a proceeding involving insurance business.  18 U.S.C. § 1515(a).  The Complaint focuses on the FBI's investigation into ties between Plaintiff and Russia, but "an FBI investigation is *not* an official proceeding under the obstruction of justice statute."  *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013) (emphasis added); *accord United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (reaching the same conclusion); *United States v. McDaniel*, No. 2:13-CR-00015, 2013 WL 8476819, at *12 (N.D. Ga. Oct. 2, 2013) (same), *report and recommendation adopted*, 2014 WL 2084891 (N.D. Ga. May 16, 2014).  Nor does Plaintiff allege

---

[4] Indeed, Plaintiff does not even attempt to plead his independent claim for the theft of trade secrets (Count VIII) against Mr. Elias.

[5] To the extent Plaintiff intended to allege a predicate act of obstruction of justice under 18 U.S.C. § 1503, that claim, too, fails because that statute requires a pending *judicial* proceeding.  *See United States v. Davis*, 854 F.3d 1276, 1290 (11th Cir. 2017); *Nunes*, 531 F. Supp. 3d at 1009.  No such proceeding is alleged here.

any way in which Mr. Elias withheld or destroyed evidence, another requirement of § 1512. Instead, he asserts Mr. Elias contributed to the *creation* of allegedly false documents. (*See, e.g.*, Compl. ¶ 61 ("Elias would work with Fusion GPS and a host of others to *develop* a dossier"); *id.* ¶ 63 (the "first phase of the Defendants' conspiracy" involved "the *creation* of an incriminating dossier") (emphases added).) Section 1512 does not cover this alleged conduct. (Dkt. 52 at 10.)

In short, Plaintiff's failure to allege Mr. Elias's participation in at least two predicate acts dooms his RICO claim. *See Sterling Nat'l Mortg. Co., Inc. v. Infinite Title Solutions, LLC*, No. 10-22147-CIV, 2011 WL 13220625, at *5 (S.D. Fla. Mar. 3, 2011) (each RICO element must be established "as to each individual defendant without exception"), *report and recommendation adopted*, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011).

### 2. Plaintiff Does Not Allege Mr. Elias Engaged in a Pattern of Racketeering Activity.

Even if Plaintiff had alleged that Mr. Elias participated in at least two predicate acts, his RICO claim still fails because he does not allege these acts constituted a pattern of racketeering activity by Mr. Elias. A "pattern" means the alleged predicate acts demonstrate ongoing racketeering activity or a "threat" of "continuing" racketeering activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis omitted). Mr. Elias joins and incorporates Secretary Clinton's arguments showing that Plaintiff has not pled either "closed-ended" or "open-ended" continuity of the alleged racketeering. (Dkt. 52 at 11–12.) As to Mr. Elias in particular, the Complaint's few allegations specific to his alleged conduct span a very short period of just six months, from April 2016 (when Mr. Elias met with Fusion GPS's co-founders and retained the firm) to October 31, 2016 (when Mr. Sullivan published a statement with which Mr. Elias allegedly "assisted"). (Compl. ¶¶ 66–67, 185–87.) Courts have categorically rejected closed-ended continuity for periods of less than nine months. *See, e.g., Jackson v. BellSouth Telecomm.*, 372

F.3d 1250, 1266 (11th Cir. 2004); *see also Aldridge v. Lily-Tulip. Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992) (period of six months was insufficient). And there are no facts alleged in the Complaint, let alone facts specific to Mr. Elias, to show open-ended continuity—that the predicate acts were part of his "regular way of doing business" or that they may recur in the future. *Jackson*, 372 F.3d at 1267 (quotations and citations omitted). The lack of a pattern of racketeering activity is another reason Plaintiff's RICO claim should be dismissed.

### C. Plaintiff Does Not Satisfy RICO's Demanding Causation Standard.

Plaintiff also does not allege standing (causation) under RICO. RICO involves a heightened "direct causation" standard; a plaintiff must demonstrate both proximate and "but-for" causation. In evaluating a RICO claim, the "'central question'" on causation is "'whether the alleged violation led directly to the plaintiff's injuries.'" *In re Takata Airbag Prods. Liability Litig.*, 524 F. Supp. 3d 1266, 1283 (S.D. Fla. 2021) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). Thus, Plaintiff must show a "*direct relation* between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268 (emphasis added).

Even assuming Plaintiff has adequately pled an injury recognized under RICO (he has not, *see* Dkt. 52 at 14), Plaintiff's allegations are too attenuated to satisfy this demanding causation standard. He does not allege facts demonstrating that his alleged $24 million in "defense costs" and lost business opportunities (Compl. ¶ 314) are the direct result of the alleged RICO violation. Plaintiff offers nothing more than a vague statement that proceedings "arose" from Defendants' conduct—again, failing to set forth any allegations specific to Mr. Elias, and grouping him together with other defendants. (*Id.*) As Secretary Clinton showed in her motion to dismiss (Dkt. 52 at 13–14), other agencies' and litigants' independent judgment about whether to pursue such proceedings cannot be attributed to any conduct by Mr. Elias (or any of the other RICO defendants) that is alleged in the Complaint. Plaintiff asks the Court to take multiple steps beyond Mr. Elias's and

other defendants' alleged conduct and award damages for costs allegedly incurred in connection with proceedings initiated by third parties who (a) are not part of the claimed RICO enterprise and (b) exercised their own judgment in determining whether to bring such proceedings.  Indeed, another court recently held that similar allegations regarding legal and political expenses purportedly arising from the Steele Dossier were insufficient to state a RICO claim.  *See Nunes*, 531 F. Supp. 3d at 1012–13.  Plaintiff's asserted causal link between the alleged misconduct and his supposed damages is too remote, contingent, and indirect to support a RICO claim.  *See, e.g.*, *Takata*, 524 F. Supp. 2d at 1283–85 (dismissing RICO claim for lack of causation).

## III.  Plaintiff Fails to State a RICO Conspiracy Claim Against Mr. Elias (Count II).

Plaintiff cannot salvage his RICO allegations by labeling them as a "RICO conspiracy." Not only is this claim untimely (*see* Part I, above), but Plaintiff also cannot proceed on a RICO conspiracy claim where his underlying RICO charge does not itself state a claim.  *E.g.*, *Jackson*, 372 F.3d at 1269; *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008).  Mr. Elias joins and incorporates Secretary Clinton's arguments showing the insufficiency of Plaintiff's RICO conspiracy claim.  (Dkt. 52 at Section II.B.)

Plaintiff also does not plead that Mr. Elias "agreed" either to "the overall objective of the conspiracy" or "to commit two predicate acts."  *See Am. Dental Ass'n*, 605 F.3d at 1291.  Plaintiff pleads only the insufficient conclusion that a conspiracy existed. (Compl. ¶¶ 319–21.) These allegations are not specific to Mr. Elias, nor do they demonstrate that he, in particular, entered "an illegal agreement to violate a substantive provision of the RICO statute."  *Jackson*, 372 F.3d at 1269; *see Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL 8431656, at \*5 (S.D. Fla. June 6, 2006) (dismissing conclusory RICO conspiracy claim).  And just as Plaintiff fails to plead that Mr. Elias committed two predicate acts (*see* Part II.B, above), he does not allege Mr. Elias *agreed* to do so either.  The RICO conspiracy claim should be dismissed.

**IV.      Plaintiff's Claim for Conspiracy to Commit Injurious Falsehood Fails (Count IV).**

Plaintiff does not assert a claim for injurious falsehood against Mr. Elias, but he does lump Mr. Elias together with other defendants in an amorphous (and untimely) claim for "conspiracy to commit injurious falsehood" (Count IV).  Conspiracy is not an independent cause of action under Florida law, *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014), so such a claim fails where the underlying cause of action fails, *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004).  Secretary Clinton and Perkins Coie have provided a multitude of reasons why Plaintiff does not state his injurious falsehood claim—including Plaintiff's improper focus on political speech that is protected under the First Amendment and his failure to plead malice, economic injuries, that any statement induced any person or entity not to deal with Plaintiff, or that Plaintiff himself incurred special damages.  (Dkt. 52 at Section II.C; Dkt. 143 at 4–8.)  Mr. Elias joins and incorporates all these arguments.

Plaintiff otherwise cannot rely on some ill-defined "conspiracy" to expand his defective injurious falsehood claim to include Mr. Elias.  (*See* Dkt. 52 at Section II.D; Dkt. 143 at 9.)  Conspiracy requires "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Alhassid*, 60 F. Supp. 3d at 1316 (quotation and citation omitted).

Once again, the allegations against Mr. Elias are extraordinarily thin.  Plaintiff alleges *no* facts showing Mr. Elias's agreement to participate in the publication or communication of any falsehoods.  Indeed, he does not identify any connection between Mr. Elias and all but one of the supposedly false statements quoted in the Complaint.  As to that single statement, all Plaintiff alleges is the legal conclusion that Mr. Elias "assisted" Mr. Sullivan with his October 31, 2016 statement about a link between Plaintiff and Russia.  (Compl. ¶¶ 185–7.)  Plaintiff provides no

description of Mr. Elias's supposed "assistance," nor does he allege that Mr. Elias and Mr. Sullivan even communicated in the days just before the statement was published. (*See id.*) Plaintiff's threadbare allegations fall far short of pleading conspiracy. *See, e.g.*, *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1244 (S.D. Fla. 2010) (dismissing civil conspiracy claim where the plaintiff alleged merely that the defendant "knew, allowed, encouraged, and/or participated" in the unlawful act). In all events, the alleged falsehood attributed to Mr. Sullivan is protected, non-actionable political expression. (*See* Dkt. 52 at 15–16.) And there are no allegations that Mr. Sullivan's statement, and Mr. Elias's supposed participation in a conspiracy as to that statement, caused Plaintiff damages—let alone the required special damages that "directly and immediately" flowed from the statement itself. *See Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268–69 (S.D. Fla. 2004); *see also* Dkt. 143 at 4–8.

## V.     Plaintiff Does Not—And Cannot—State a Malicious Prosecution Claim (Count V).

Plaintiff's malicious prosecution claim fares no better. To state such a claim under Florida law, a plaintiff must allege that: (1) "an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued"; (2) the defendant was "the legal cause of the original proceeding"; (3) there was "a bona fide termination of that proceeding" in the plaintiff's favor; (4) the original proceeding lacked probable cause; (5) the defendant acted with malice; and (6) "the plaintiff suffered damage as a result of the original proceeding." *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (quotation marks and citation omitted). Secretary Clinton and Perkins Coie have demonstrated numerous defects in this claim, and Mr. Elias joins and incorporates these arguments. (Dkt. 52 at Section II.E; Dkt. 143 at 9–13.) As to Mr. Elias specifically, however, the flaws in Plaintiff's claim are glaring.

*First*, Plaintiff does not—and cannot—allege that *Mr. Elias* "commenced or continued" an "original criminal or civil judicial proceeding" against him. *See Debrincat*, 217 So. 3d at 70.

Plaintiff does not distinguish Mr. Elias from any other defendant, choosing instead to lump groups of defendants together and allege that they "misled" agency officials with the "intention of inducing the FBI to commence an investigation." (Compl. ¶¶ 357–62.) This group pleading is itself improper, *see, e.g.*, *Joseph v. Bernstein*, No. 13–24355–CIV, 2014 WL 4101392, at *3, 6 (S.D. Fla. Aug. 19, 2014), but even more fundamentally, as a matter of law, an agency investigation is not a "judicial proceeding" that can support a malicious prosecution claim. An action for malicious prosecution can "never occur outside the context of litigation," *Debrincat*, 217 So. 3d at 70, and Plaintiff was "never arrested, nor was he prosecuted," *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 8 (Fla. 2016). Additionally, as Perkins Coie has shown (Dkt. 143 at 10–11), Plaintiff has not even alleged that *he* was the target of the FBI's investigation. Instead, the Complaint asserts that the Crossfire Hurricane investigation focused on individuals "associated with" Plaintiff's presidential campaign. (Compl. ¶¶ 136–37.) Thus, Plaintiff's malicious prosecution claim fails right out of the gate: There was no "prosecution" of Plaintiff, and certainly not a "malicious" one initiated by Mr. Elias.

*Second*, Plaintiff does not allege *any* facts demonstrating that Mr. Elias was a "legal cause" of the Crossfire Hurricane investigation. *See Debrincat*, 217 So. 3d at 70. To the contrary, as the Department of Justice's Office of Inspector General concluded, the FBI launched Crossfire Hurricane on July 31, 2016, based on a tip from a friendly foreign government. (*See* Dkt. 143-1, Office of the Inspector General, U.S. Dep't of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, at 49–51, 53–54, 346–48, 350 (2019).)[6] Plaintiff does not allege that any defendant, much less Mr. Elias specifically, had any

---

[6] Plaintiff relies on this report to make various allegations in his Complaint (*see* Compl. ¶¶ 3 n.1, 80 n.23, 132 n.41, 166 n.51), and its authenticity cannot be disputed. As such, the Court may properly consider this report on this Motion. *See, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

involvement with that tip.  Rather, as Plaintiff admits in his own Complaint, the FBI had *already* launched its investigation nearly *two months before* Mr. Sussmann met with the FBI and long before any of the Steele Dossier's contents were provided to the FBI.  (Compl. ¶¶ 141, 170, 197, 360.)  Moreover, there is no allegation whatsoever that Mr. Elias met with, spoke to, or interacted in any way with *any* individual who then decided to initiate the Crossfire Hurricane investigation. Plaintiff's meager allegations do not show that Mr. Elias was a "legal cause" of any proceeding (let alone a judicial one) against Plaintiff.

*Third*, Plaintiff does not allege—because he cannot—that the Crossfire Hurricane investigation resulted in a "bona fide termination" in his "favor."  *See Debrincat*, 217 So. 3d at 70. Whatever that standard might mean for an investigation (rather than the judicial proceeding that is required to state a claim), there was no termination favorable to Plaintiff here.  Special Counsel Robert Mueller's report—which Plaintiff himself cites (Compl. ¶¶ 232–34)—is far from the necessary "favorable decision on the merits" or "good faith *nolle prosequi* or declination to prosecute."  *See Artubel v. Colonial Bank Grp., Inc.*, No. 8:08-cv-179-T-23MAP, 2008 WL 3411785, at *14 (M.D. Fla. Aug. 8, 2008).  To the contrary, the Mueller report explicitly states that it "'does not exonerate'" Plaintiff.  *See* U.S. Dep't of Justice, Office of Special Counsel, *Report on the Investigation into Russian Interference in the 2016 Presidential Election*, vol. II at 1–2, 182 (2019) (excerpt provided at Exhibit A); *see also* Dkt. 143 at 11–13.[7]  Count V should be dismissed.

## VI.   The Claim for Conspiracy to Commit Malicious Prosecution Also Fails (Count VI).

Plaintiff's claim for conspiracy to commit malicious prosecution cannot stand without an underlying malicious prosecution claim, so this claim fails for the same reasons that Count V fails. *See Alhassid*, 60 F. Supp. 3d at 1317 (dismissing conspiracy claim where underlying tort claims

---

[7] Plaintiff explicitly invokes and relies on the Mueller report to support the allegations of his Complaint (Compl. ¶¶ 232–34), so the Court may consider it here.  *See supra* n.5.

were also dismissed). Mr. Elias joins and incorporates the arguments made in Section II.E of Secretary Clinton's motion to dismiss and in Section IV of Perkins Coie's motion.

In addition, the conspiracy claim fails of its own accord as to Mr. Elias. Count VI contains no allegations showing that *Mr. Elias* agreed to participate in an alleged conspiracy to maliciously prosecute Plaintiff. Instead, Plaintiff throws Mr. Elias in with a host of other defendants and alleges that they all "had a meeting of the minds" and "conspired." (Compl. ¶¶ 369–72.) These threadbare allegations fall short of establishing that Mr. Elias, individually, "agree[d]" with any other party to "do an unlawful act or to do a lawful act by unlawful means." *Alhassid*, 60 F. Supp. 3d at 1316; *see also Cole v. Lobello Painting, Inc.*, No. 8:06-CV-2171, 2007 WL 2330860, at *5 (M.D. Fla. Aug. 14, 2007) (dismissing conspiracy claim that was "bereft of any factual allegations that the [defendants] were part of a conspiratorial agreement"). Nor does Plaintiff identify any "overt act" that Mr. Elias purportedly undertook "in furtherance of the conspiracy" to maliciously prosecute Plaintiff. *See Alhassid*, 60 F. Supp. 3d at 1316. Plaintiff's "formulaic recitation of the elements for civil conspiracy" is not enough, and his claim should be dismissed. *See HSBC Bank USA, Nat'l Ass'n v. Ross*, No. 8:11-cv-02019, 2012 WL 13140776, at *2 (M.D. Fla. Apr. 5, 2012).

## CONCLUSION

For the foregoing reasons, Mr. Elias respectfully requests that the Court dismiss, with prejudice, all counts asserted against him in the Complaint (Counts I, II, IV, V, and VI).

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), Mr. Elias respectfully requests a hearing on this Motion. He believes a hearing would benefit the parties and the Court given the length of Plaintiff's Complaint, the large number of claims and defendants, and the numerous motions to dismiss being filed. Mr. Elias estimates that a hearing for all parties requesting oral argument would last approximately one hour.

Dated: May 11, 2022                          Respectfully submitted,

                                          */s/ Eugene K. Pettis*
                                      Eugene K. Pettis (Fla. Bar #508454)
                                      Debbie P. Klauber (Fla. Bar #55646)
                                      HALICZER, PETTIS & SCHWAMM
                                      One Financial Plaza
                                      100 S.E. 3rd Ave., Seventh Floor
                                      Fort Lauderdale, FL 33394
                                      Tel: (954) 523-9922

                                      Reid J. Schar (admitted *pro hac vice*)
                                      April A. Otterberg (admitted *pro hac vice*)
                                      JENNER & BLOCK LLP
                                      353 N. Clark St.
                                      Chicago, IL 60654
                                      Tel: (312) 222-9350

                                      *Attorneys for Defendant Marc Elias*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2022, I caused to be filed electronically the foregoing Defendant Marc Elias's Motion to Dismiss the Complaint and Memorandum of Law in Support with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

/s/ Eugene K. Pettis
Eugene K. Pettis
