**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 2:22-cv-14102-DMM**

DONALD J. TRUMP,

                Plaintiff,

v.

RODNEY JOFFE, et al.,

                Defendants.

**DEFENDANT RODNEY JOFFE'S MOTION TO DISMISS**
**THE COMPLAINT AND MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF PLEADED FACTS .........................................................................................2

ARGUMENT ................................................................................................................................4

I.      ALL CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED ....4

II.     THE RICO CONSPIRACY CLAIM (COUNT II) FAILS ...........................................6

III.   THE REMAINING CLAIMS SHOULD BE DISMISSED AS TO JOFFE BECAUSE THIS COURT LACKS PENDENT PERSONAL JURISDICTION ..................................8

     A.     Joffe Is Not Subject to General Jurisdiction in Florida..........................................9

     B.     This Court Lacks Specific Personal Jurisdiction over Joffe ...................................9

IV.   THE REMAINING CLAIMS FAIL ON THE MERITS AS WELL ..............................11

     A.     Count IV – Conspiracy to Commit Injurious Falsehood .......................................12

     B.     Counts V and VI – Malicious Prosecution and Conspiracy ..................................13

     C.     Count VII – Computer Fraud and Abuse Act ........................................................13

     D.     Count VIII – Theft of Trade Secrets ......................................................................17

     E.     Count IX – Stored Communications Act ("SCA")................................................18

CONCLUSION............................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almanza v. United Airlines, Inc.*,
   851 F.3d 1060 (11th Cir. 2017) ............................................................................8

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ....................................................................6, 7, 8

*Armor Corr. Health Servs., Inc. v. Teal*,
   No. 19-cv-24656, 2021 WL 5834245 (S.D. Fla. Dec. 8, 2021)............................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007)........................................................................................7, 12

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017).........................................................................................9

*Calder v. Jones*,
   465 U.S. 783, 104 S. Ct. 1482 (1984).................................................................11

*CareersUSA, Inc. v. Guerrero*,
   No. 14-cv-80096, 2014 WL 12862259 (S.D. Fla. Aug. 25, 2014) .........................15

*Carter v. MGA, Inc.*,
   189 F. App'x 893 (11th Cir. 2006) .......................................................................7

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ............................................................................6

*Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*,
   309 F. Supp. 3d 1216 (S.D. Fla. 2018) ................................................................3

*In re DoubleClick Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001)..................................................................20

*Falic v. Legg Mason Wood Walker, Inc.*,
   347 F. Supp. 2d 1260 (S.D. Fla. 2004) ...............................................................12

*Fischer v. Debrincat*,
   169 So. 3d 1204, 1209 (Fla. Dist. Ct. App. 2015), *approved*, 217 So. 3d 68
   (Fla. 2017)...........................................................................................................13

*Garcia v. City of Laredo*,
   702 F.3d 788 (5th Cir. 2012) .........................................................................19, 20

*In re Google Inc.*,
   806 F.3d 125 (3d Cir. 2015)...........................................................................18, 20

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .................................................................18

*Honig v. Kornfeld*,
339 F. Supp. 3d 1323 (S.D. Fla. 2018) ..............................................................12, 13

*IPC Sys., Inc. v. Garrigan*,
No. 1:11-CV-3910-AT, 2012 WL 12872028 (N.D. Ga. May 21, 2012) ...............19

*Koch v. Royal Wine Merchants, Ltd.*,
847 F. Supp. 2d. 1370 (S.D. Fla. 2012) .................................................................9

*La Grasta v. First Union Sec., Inc.*,
358 F.3d 840 (11th Cir. 2004) ...............................................................................4

*Leatherback Sea Turtle v. Flagler Cnty. Bd. Of Cnty. Commr's*,
359 F. Supp. 2d 1209 (M.D. Fla. 2004) ..................................................................4

*Lehman v. Dow Jones & Co.*,
783 F.2d 285 (2d Cir.1986)...................................................................................18

*Leon v. Continental AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...............................................................8, 9

*Medici v. Lifespan Corp.*,
239 F. Supp. 3d 355 (D. Mass. 2017) .....................................................................9

*Melgarejo v. Pysca Panama, S.A.*,
537 F. App'x 852 (11th Cir. 2013) ......................................................................10

*Miller v. Gizmodo Media Grp., LLC*,
383 F. Supp. 3d 1365 (S.D. Fla. 2019) .................................................................11

*Nexans Wires S.A. v. Sark–USA, Inc.*,
319 F. Supp. 2d 468 (S.D.N.Y.2004).....................................................................16

*Prou v. Giarla*,
62 F. Supp. 2d 1365 (S.D. Fla. 2014) ....................................................................9

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004).................................................................................18

*Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997...............................................................................8

*Resdev, LLC v. Lot Builders Ass'n, Inc.*,
No. 6:04–CV–1374, 2005 WL 1924743 (M.D. Fla. Aug. 10, 2005)......................16

*Riley v. Cardozo*,
2017 WL 2799900 (M.D. Fla. June 28, 2017)........................................................11

*Sears Authorized Hometown Stores, LLC v. Nationwide Mktg. Grp., LLC*,
No. 19-CV-3403, 2019 WL 5064731 (N.D. Ill. Oct. 9, 2019) ................................9

*Sentry Data Sys. v. CVS Health*,
361 F. Supp. 3d (S.D. Fla. 2018) ..........................................................................17

*Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) ............................................................... 6, 7

*Talwar v. Creative Labs, Inc.*,
No. CV 05-3375 FMC AJWX, 2006 WL 4568797, at *1 (C.D. Cal. Aug. 11,
2006) .................................................................................................................... 3

*Tarasewicz v. Royal Caribbean Cruises Ltd.*,
2015 WL 3970546 (S.D. Fla. June 30, 2015) ...................................................... 10

*TracFone Wireless, Inc. v. Hernandez*,
196 F. Supp. 3d 1289 (S.D. Fla. 2016) ............................................................... 14

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) .......................................................................... 19

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ............................................................................ 9

*Van Buren v. United States*,
141 S. Ct. 1648 (2021) ................................................................................... 14, 15

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) ........................................................................................... 17

*Walden v. Fiore*,
571 U.S. 277 (2014) ...................................................................................... 10, 11

*Walker v. Coffey*,
956 F.3d 163 (3d Cir. 2020) ............................................................................... 19

**Statutes**

18 U.S.C.A. § 2707(f) ................................................................................................ 5

18 U.S.C. § 1030 .............................................................................................. *passim*

18 U.S.C. § 1832 ...................................................................................................... 17

18 U.S.C. § 1836 ........................................................................................................ 5

18 U.S.C. § 1839(3)(B) ............................................................................................ 17

18 U.S.C. § 1962 .............................................................................................. *passim*

18 U.S.C. § 2510(15) ............................................................................................... 19

18 U.S.C. § 2510(17) ............................................................................................... 20

18 U.S.C. § 2701 .............................................................................................. *passim*

**Other Authorities**

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A
Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1214 (2004) .................. 18

U.S. Dept. of Commerce, Nat'l Inst. of Standards & Tech., *Secure Domain Name
System (DNS) Deployment Guide* (September 2013), available at:
https://nvlpubs.nist.gov/nistpubs/specialpublications/nist.sp.800-81-2.pdf .................. *passim*

Rodney Joffe respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Donald J. Trump's Complaint (Dkt. 1) (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff's Complaint advances a sprawling narrative, hurling accusations of wrongdoing at nearly 30 individuals and entities (plus an additional 20 fictitious entities) coming from disparate backgrounds, including a former Presidential candidate, a sitting Member of Congress, the former Director of the Federal Bureau of Investigation ("FBI") and other former FBI Agents, a former Department of Justice ("DOJ") attorney, a respected law firm, and an internet technology company. One of the Defendants, Rodney Joffe, is one of the most highly-respected cyber-security experts in the world and is regularly called upon by the U.S. government to assist, and to recruit other private sector experts to assist, the government in sensitive matters.[1] The alleged conspiracy is similarly nebulous, including allegations regarding the "creation of an incriminating dossier," the use of internet technology information to monitor connections between Plaintiff and a Russian bank, efforts to "mislead federal law enforcement," the spread of a "false narrative through the media," and even efforts by law enforcement during the Crossfire Hurricane FBI investigation. As ably detailed in the numerous Motions to Dismiss filed by other Defendants, which Joffe joins and adopts, as incorporated herein, Plaintiff's Complaint is riddled with legal flaws requiring its dismissal with prejudice.

The claims fail because each is time-barred, coming nearly six years after Plaintiff demanded someone "DO SOMETHING" about the alleged conspiracy. Further, the RICO

---

[1] Joffe received the FBI Director's Award in 2013 based on assistance he provided in the investigation of a network of nearly than 60 cyber-criminals in more than 30 countries. *See* BuisnessWire, *Neustar's Rodney Joffe Receives Prestigious FBI Director's Award*, (Oct. 29, 2013), available: https://www.businesswire.com/news/home/20131029005948/en/Neustar %E2 %80%99s-Rodney-Joffe-Receives-Prestigious-FBI Director%E2%80%99s-Award.

Conspiracy claim (Count II) must be dismissed because Plaintiff has failed to state any substantive RICO claim, and lacks any specific, non-conclusory allegations supporting Joffe's joining of or participation in any conspiracy.  Without RICO as a basis for personal jurisdiction, all the remaining claims should be dismissed because this Court lacks personal jurisdiction over Joffe, a Virginia resident whose actions relating to this case involved no targeted connection to Florida whatsoever.  And, if this Court reaches the merits, each additional claim is time-barred and without merit.  Plaintiff's Complaint consists of nothing more than a rambling airing of grievances, and fails to meet even the most basic elements of his claims.  For these reasons, the Complaint should be dismissed.

## STATEMENT OF PLEADED FACTS

In the wide-ranging conspiracy alleged by Plaintiff, very few facts actually concern Joffe. The only allegations actually relating to Joffe are that, in July 2016, he was "in communication" with unspecified "high-ranking officials of the Clinton Campaign" (Compl. ¶ 106), and was "tasked [] to exploit its information" (Compl. ¶ 109; *see also id*. ¶ 5), searched for a "secret 'back channel'" between Trump and Alfa Bank (Compl. ¶ 110), "manipulated a sales form" (Compl. ¶ 111), had certain correspondence with a "team of researchers" (Compl. ¶¶ 112-115), "drafted" and sent a paper summarizing the allegations, "continued to compile" information regarding the same (Compl. ¶¶ 116, 118, 213), and "exploited his access . . . to unlawfully search, gather and mine internet data" from certain sources (Compl. ¶¶ 122-126; *see also id*. ¶ 177).

All remaining mentions of Joffe relate to conclusory assertions that he "stole trade secrets" (Compl. ¶ 123), "coordinated" with others (Compl. ¶ 177; *see also id*. ¶ 181), "play[ed] his] part in the . . . grand conspiracy" (Compl. ¶ 212), "conspired" with the "RICO Defendants" (Compl. ¶¶ 284, 286-87), "made, disseminated, and/or published false and damaging statements"

(Compl. ¶ 327), was "involved in the fabrication of supposed facts to put into the Dossier" (Compl. ¶ 348), "willfully and knowingly" misled FBI and DOJ officials (Compl. ¶ 357), "concocted a scheme to denigrate" Trump (Compl. ¶ 358), "had a meeting of minds" and "conspired to cause the FBI's investigation to be commenced" (Compl. ¶¶ 369-70), "conspired to do an unlawful act by unlawful means" (Compl. ¶ 372) with "malicious intent" (Compl. ¶ 374), and "exceeded" and "exploited" authority to access certain DNS data (Compl. ¶¶ 386, 388, 398-401, 418-420).

Plaintiff's claims against Joffe rest on the facially false premise that accessing DNS data equates to "exploit[ing] access to non-public and proprietary internet data" (Compl. ¶ 123) and "mining" DNS traffic (Compl. ¶ 125).  Plaintiff further alleges that "DNS internet traffic data houses highly proprietary, sensitive and confidential data" (Compl. ¶ 285).  This factually and legally inaccurate, and conclusory, characterization of DNS data is the root of Count VII (Computer Fraud and Abuse Act), Count VIII (Theft of Trade Secrets), and Count IX (Stored Communications Act).

The reality is that the Domain Name System (DNS) is a "distributed computing system that enables access to Internet resources by user-friendly domain names rather than IP addresses, by translating domain names to IP addresses and back."  U.S. Dept. of Commerce, Nat'l Inst. of Standards & Tech., Secure Domain Name System (DNS) Deployment Guide (September 2013) at (iii), available at:   https://nvlpubs.nist.gov/nistpubs/specialpublications/nist.sp.800-81-2.pdf ("*DNS Deployment Guide*").[2]  "The domain name data provided by DNS is intended to be

---

[2] Courts routinely take judicial notice of government publications, including from the U.S. Department of Commerce. *See Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials."); *Talwar v. Creative Labs, Inc.*, No. CV 05-3375 FMC AJWX, 2006 WL 4568797, at *1 n.2 (C.D. Cal. Aug. 11, 2006) (granting request to take judicial

available to any computer located anywhere in the Internet." *Id*. Notably, "DNS data is meant to be public," just like IP addresses. *Id*.  Security efforts involving DNS data typically do not involve obscuring this data, but rather "[t]he primary security goals for DNS are data integrity and source authentication, which are needed to ensure the authenticity of domain name information and maintain the integrity of domain name information in transit." *Id*.  And, when DNS components are "attacked" these attacks entail disruption of "access to the resources whose domain names are handled by the attacked DNS components." *Id*.  Said differently, security concerns regarding DNS data do not relate to its access, but rather, relate to its disruption.

## **ARGUMENT**

### I.     ALL CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED

Joffe joins in and adopts the arguments in Section I of Hillary Clinton's Motion to Dismiss (Dkt. 52) (the "Clinton Motion"),[3] that Plaintiff's claims are time-barred and should be dismissed. *See La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845-46 (11th Cir. 2004).

Plaintiff's claims relate to events that occurred in 2016 and 2017, for which the statute of limitations has long since expired.  *See* Dkt. 52 at 1-5.  Indeed, the factual allegations as to Joffe relate to activity that allegedly occurred in July 2016, email communications dating back to August–September 2016, and "compil[ing] data" through early 2017. Compl. ¶¶ 109, 111-121, 213.  As noted in the Clinton Motion, *all* of Plaintiff's claims accrued no later than October 29,

---

notice of (1) United States Department of Commerce, National Institute of Standards and Technology ("NIST"), "Guide for the Use of the International System of Units"; and (2) NIST, "The International System of Units."); *Leatherback Sea Turtle v. Flagler Cnty. Bd. of Cnty. Commr's*, 359 F. Supp. 2d 1209, 1214 & n.2 (M.D. Fla. 2004) (taking judicial notice of "current forecast" of hurricane path and intensity projected by the National Hurricane Center).

[3] Joffe also joins in and adopts the statute of limitations arguments raised by John Podesta (Dkt. 124 at Section I), Nellie Ohr (Dkt. 144 at Section I), Michael Sussmann (Dkt. 146 at Section I) Marc Elias (Dkt. 147 at Section I), and the forthcoming Motion by Neustar (at Section II).

2017.   Here, even the longest applicable statute of limitations is the four-year period for the

RICO conspiracy (Count II), conspiracy to commit injurious falsehood (Count IV), conspiracy to

commit malicious prosecution (Count VI), and malicious prosecution claims (Count V).  *See id.*

at 3-5; Dkt. 144 at 2-3.  As such, all claims have been time barred since, at the very latest,

October 2021.  In fact, others were time barred before then.[4]

Plaintiff's only claim against Joffe not already addressed by other Defendants is Count

IX, asserted against Joffe and Neustar, for violating the Stored Communications Act (18

U.S.C. § 2701-12) ("SCA").  Like Plaintiff's other claims, the SCA claim is clearly time-barred,

as the statute of limitations is two years "after the date upon which the claimant first discovered

or had a reasonable opportunity to discover the violation." 18 U.S.C.A. § 2707(f).  Again,

although Plaintiff asserts that the acts were not discoverable until September 2021 (Compl. ¶

393), Plaintiff's other allegations—which state that the DNS lookup information was publicly

known in October 2016—contradict this conclusion. *See* Compl. ¶¶ 183-89. Moreover, as other

Defendants have explained, Plaintiff's own Complaint and his tweets demonstrate he has been

---

[4] The statute of limitations under the Computer Fraud and Abuse Act ("CFAA") (Count VII) is two years from the violation or discovery of the violation, and although Plaintiff asserts that the acts were not discoverable until September 2021, Plaintiff's other allegations—which state that the DNS lookup information was publicly known in October 2016—contradict this conclusion. *See* Dkt. 52 at 4.  *See also, e.g.,* Eric Lichtblau and Steven Lee Myers, *Investigating Donald Trump, F.B.I. Sees No Clear Link to Russia,* N.Y. Times, (October 31, 2016), available: https://www.nytimes.com/2016/11/01/us/politics/fbi-russia-election-donald-trump.html ("Computer logs obtained by The New York Times show that two servers at Alfa Bank sent more than 2,700 'look-up' messages—a first step for one system's computers to talk to another—to a Trump-connected server beginning in the spring."). The statute of limitations for a civil action for theft of trade secrets under the Defend Trade Secrets Act ("DTSA") (Count VIII) is three years from the date "on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." *See* Dkt. 52 at 5 (quoting 18 U.S.C. § 1836).  Here, again, Plaintiff's claims accrued upon public knowledge of his DNS traffic in October 2016.

aware of his purported injuries for years.  *See* Dkt. 52 at 2-5; Dkt. 124 at 2-3 ("the facts are pouring out.  DO SOMETHING!"). As such, the statute of limitations ran in October 2018.

## II.    THE RICO CONSPIRACY CLAIM (COUNT II) FAILS

Beyond being time-barred, the RICO conspiracy claim fails on every level.  Joffe joins in and adopts the arguments in Sections II.A and II.B of the Clinton Motion, as well as other motions filed by defendants in this case, that the Complaint does not satisfy the requirements to establish the underlying RICO claim (Count I) or the claim for RICO conspiracy (Count II).  *See* Dkt. 52 at 6-14; Dkt 143 (Perkins Coie) at 2; Dkt. 141 (DNC) at 4; Dkt. 145 (Mook) at 3-6; Dkt. 146 at 4-8; Dkt. 147 (Elias) at 5-11, and the forthcoming Neustar Motion (Section III.A.1).

First, Count II, alleging a RICO conspiracy, fails because the substantive Section 1962(c) RICO claim in Count I fails.  As the Motions to Dismiss filed by the defendants named in Count I ably explain, and Joffe adopts herein, Plaintiff's substantive RICO claim fails at every level:  it does not allege any cognizable RICO enterprise, a viable RICO predicate act (let alone two), a pattern of continuing racketeering activity, cognizable damages, proximate cause, or RICO standing.  *See* Dkt. 52 at 6-14; Dkt. 141 at 4; Dkt. 143 at 2-4; Dkt. 146 at 4-8; Dkt. 147 at 5-10. Because Plaintiff's claim for civil RICO fails, his "RICO conspiracy claim necessarily fails" and Count II also must be dismissed.  *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.,* 534 F. Supp. 2d 1326, 1342 (S.D. Fla. 2008); *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020) ("[A] complaint that 'simply concludes that the defendants conspired and confederated to commit conduct which in itself does not constitute a RICO violation' must be dismissed.")

Even assuming the Complaint adequately pleaded a substantive RICO claim (it did not), Count II fails for additional reasons.  To survive a motion to dismiss, Plaintiff must either "show[] that the defendant agreed to the overall objective of the conspiracy" or "show[] that the

defendant agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). As part of its review, the Court's "first task is to eliminate any allegations in Plaintiff['s] complaint that are merely legal conclusions." *Id.* As shown in the Statement of Pleaded Facts, the Complaint's support for a conspiracy is mere say-so. Simply repeating multiple times an accusation that "[e]ach of the RICO Conspiracy Defendants" "agreed to facilitate the Enterprise's scheme" (Compl. ¶ 321), or that Joffe "coordinated" or "conspired" with the "RICO Defendants" (*e.g.* Compl. ¶¶ 177, 181, 284, 286-87), fails to meet Plaintiff's burden. *See Carter v. MGA, Inc.,* 189 F. App'x 893, 895 (11th Cir. 2006) ("But plaintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiffs' conclusory allegations that Defendants conspired with each other are insufficient to survive a motion to dismiss."). These allegations are mere "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement,'" which do not suffice to state a claim upon which relief can be granted and are not enough to survive a motion to dismiss (particularly under the demanding Rule 9(b) standard). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)); *see also Super Vision*, 534 F. Supp. 2d at 1342–43.

Nor do the Complaint's allegations plausibly plead that Joffe "agreed" to the overall objective of the conspiracy, or to commit two predicate acts. All the Complaint claims is that, at Sussmann's request, (Compl. ¶ 109), Joffe (who was employed by Neustar at that time) and an unidentified "team of researchers" engaged in allegedly inappropriate use of access to DNS data (*e.g.* Compl. ¶¶ 110-126), and then worked on a White Paper with Sussmann (Compl. ¶ 116) allegedly at the "behest" of Clinton, Sullivan, Elias and/or Sussmann (Compl. ¶ 122). This does not allege a viable predicate act, nor does it show any agreement by Joffe to participate in the

overall alleged conspiracy.  Indeed, it shows no actual connection between Joffe and any other Defendant, other than his employer and his counsel at Perkins Coie.  No factual allegation supports that Joffe had any awareness (much less agreed to be involved in a conspiracy) with other alleged actors, like Steele, the FBI employees, or even Clinton.  Moreover, there is no fact pled to support Joffe's knowledge of, or involvement, in any other alleged part of the conspiracy, including the Steele Dossier, or any conduct by officials in the Crossfire Hurricane investigation.

Further, to successfully allege a conspiracy, a complaint must give the court a basis for inferring that defendants were conspiring and not simply engaging in "unknowingly parallel conduct." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 (11th Cir. 2017). And, the Supreme Court and Eleventh Circuit have cautioned courts not to infer an agreement where there is an "obvious alternative explanation." *Am. Dental Ass'n*, 605 F.3d at 1294-95.  Even assuming that the Complaint pleads parallel conduct by different groups of actors (it does not), it completely fails to plead a non-conclusory connection between them.  At most, it shows that Joffe and a group of researchers were concerned about the possibility that publicly-accessible DNS information would show a connection between a Presidential candidate and a Russian bank owned by oligarchs with close ties to Vladimir Putin.

Because the underlying substantive RICO claim fails, and because the Complaint fails to plead factual assertions sufficient to show Joffe's knowledge, agreement, and participation in any RICO conspiracy, Count II should be dismissed.

## III.   THE REMAINING CLAIMS SHOULD BE DISMISSED AS TO JOFFE BECAUSE THIS COURT LACKS PENDENT PERSONAL JURISDICTION

Plaintiff's only plausible basis for personal jurisdiction over Joffe is the statutory personal jurisdiction under Section 1962(d)'s nationwide service of process provision. *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  But,

"Plaintiff['s] RICO claim must survive a 12(b)(6) analysis if it is to serve as the basis for the Court's personal jurisdiction." *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1231-32 (S.D. Fla. 2017). As noted above, it does not. Without any statutory basis, Plaintiff must establish that this Court has general or specific jurisdiction over Joffe in order to proceed on the remaining claims. *See Prou v. Giarla*, 62 F. Supp. 3d 1365, 1375-76 (S.D. Fla. 2014).[5] He cannot; so the remaining claims may be dismissed under Rule 12(b)(2). *See Leon*, 301 F. Supp. 3d at 1236; *Koch v. Royal Wine Merchants, Ltd.*, 847 F. Supp. 2d 1370, 1378 (S.D. Fla. 2012).

### A.     Joffe Is Not Subject to General Jurisdiction in Florida

This Court does not have general jurisdiction over Joffe because he is not domiciled in this State, nor has Plaintiff asserted that general jurisdiction over Joffe is appropriate. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).

### B.     This Court Lacks Specific Personal Jurisdiction over Joffe

Plaintiff also does not adequately allege specific jurisdiction over Joffe. He seeks to do so by asserting that "Joffe's acts and omissions as identified in this lawsuit arise out of or relate to his conduct in and/or affecting, among other jurisdictions, Florida." *See* Compl. ¶ 34. But these generalized, conclusory jurisdictional allegations fail to satisfy Plaintiff's burden of alleging "sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Moreover, the exercise of specific jurisdiction

---

[5] Importantly, like the state law claims (Counts IV-VI), the remaining federal claims under the CFAA, DTSA and SCA (Counts VII-IX) do not have nationwide service of process provisions. *See Sears Authorized Hometown Stores, LLC v. Nationwide Mktg. Grp., LLC*, No. 19-CV-3403, 2019 WL 5064731, at *1 (N.D. Ill. Oct. 9, 2019) ("[T]he CFAA and DTSA do not have nationwide service of process," and accordingly, plaintiff "must establish personal jurisdiction under state law."); *Medici v. Lifespan Corp.*, 239 F. Supp. 355, 367 (D. Mass. 2017) "The Stored Communications Act does not authorize nationwide jurisdiction.").

over Joffe would violate the Due Process Clause of the U.S. Constitution. *See Melgarejo v. Pysca Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013).

A forum state's exercise of jurisdiction over an out-of-state defendant "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). It is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." *Id.* Instead, for long-arm jurisdiction in Florida to comport with due process, the plaintiff must show that the defendant engaged in conduct tied to the asserted causes of action by which he "purposively avail[ed himself of] the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws" such that he "should reasonably anticipate being haled into court there." *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-civ-60885, 2015 WL 3970546, at *19 (S.D. Fla. June 30, 2015).

This standard is not met here. The complaint alleges only one attenuated link between the events in question and Florida, and it does not involve conduct by Joffe: "Clinton appeared on MSNBC's Morning Joe . . . when she stated to MSNBC's audience, *which included the general public of the State of Florida* and the rest of the United States: 'We don't have Trump as spokesperson for Putin, anymore'" (Compl. ¶ 260 (emphasis added); *see also id.* ¶ 335). This is not an act by Joffe, let alone one allegedly causing injury specifically in Florida, and it therefore does not establish personal jurisdiction over Joffe. *See Walden*, 571 U.S. at 286.

Here, there is simply no intentional conduct by Joffe that occurred in Florida, or was targeted at Florida. As in *Walden*, "[i]t is undisputed that no part of [defendant's] course of conduct occurred in [Florida]." 571 U.S. at 288. Likewise, Joffe never "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to [Florida]," *id.* at 289, in

10

connection with the events at issue.  Instead, Joffe's actions are all alleged to have occurred or been targeted at locations *outside* of Florida. According to the Complaint, the servers in question relate to the Trump Organization in New York, Trump Tower in New York, and the Executive Office of the President in Washington, D.C., involving contacts with Alpha Bank in Russia (e.g. Compl. ¶ 110, 123). Moreover, there is no basis to assert that Joffe intentionally harmed Plaintiff in Florida because Plaintiff did not live there at the time of Joffe's alleged tortious conduct.  At the time of the alleged conduct (2016-2017), Plaintiff resided in New York and did not become a Florida resident until September 27, 2019.  *See* Declaration of Domicile, Recorded 10/04/2019 Palm Beach County, Florida. CFN 20190364271 (attached as Exhibit A). Plaintiff's later-acquired residence (and purported injury) in Florida is merely a "random, fortuitous" contact that is insufficient to satisfy due process.  *See Walden*, 571 U.S. at 286; *see also Riley v. Cardozo*, No. 3:16-cv-961-J-34MCR, 2017 WL 2799900, at *6 (M.D. Fla. June 28, 2017).[6]

Nor can Plaintiff rely on the *Calder* effects test to establish jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984).  It is not enough that the information was accessible in Florida. There is no credible allegation that Joffe "targeted" Florida, and no evidence that Joffe had "reason to believe the 'brunt' of Plaintiff's injury would be felt in Florida."  *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1373 (S.D. Fla. 2019).  For these reasons, the remaining claims against Joffe should be dismissed because this Court lacks personal jurisdiction over him.

## IV.   THE REMAINING CLAIMS FAIL ON THE MERITS AS WELL

In addition to being unable to establish personal jurisdiction over Joffe—which should dispose of this action—Plaintiff's remaining claims are also meritless.  Beyond being time-

---

[6] Even if Plaintiff did reside in Florida at the time, it would not permit the exercise of specific jurisdiction over Joffe because "the plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 285.  "[M]ere injury to a forum resident is not a sufficient connection to the forum" to establish specific jurisdiction. *Id*. at 290.

barred as discussed in Section I, *supra*, the claims fail to plead facts to support any cognizable cause of action and instead rest on "formulaic recitation[s] of the elements" of the claims and "legal conclusion[s]" this Court must reject.  *Twombly*, 550 U.S. at 555.

A.      **Count IV – Conspiracy to Commit Injurious Falsehood**

In Count IV, Plaintiff claims that Joffe conspired to commit injurious falsehood by his creation of a "false narrative that the Plaintiff was colluding with Russia." Compl. ¶ 350.  As explained in Section II.C of the Clinton Motion, Section II.B of the Sussmann Motion, and Section III.A of the Perkins Coie motion, which Joffe joins and adopts, the substantive injurious falsehood claim fails on the merits for multiple reasons, chief among them that injurious falsehood protects "economic interests" and not "personal reputation." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004).  Ignoring this requirement, the Complaint fails to plead "economic" injuries.  *See* Dkt. 143 at 4-7.  As explained in Sections II.C-D of the Clinton Motion and Section III.A of the Perkins Coie Motion, the Complaint's references to lost "business opportunities" are conclusory recitations of the elements of a claim, and bear no connection to Trump's overall narrative of harm to his *political* fortunes (a puzzling narrative, as we all know that 2016 ended with Trump's election to the highest office in the United States of America).  Further, Plaintiff has failed to plead special damages, a "crucial element" of the tort.  *See* Dkt. 143 at 6-7. Finally, as explained by other Defendants, Plaintiff's injurious falsehood claim fails because, as a public official, he has failed to plead actual malice as required by the First Amendment. *See* Dkt. 52 at 16-17; Dkt. 141 at 6-9; Dkt. 144 at 5-6.

Because the underlying claim fails, Count IV alleging conspiracy to commit injurious falsehood must also fail.  *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018).

Further, as discussed in Section II, *supra*, each conspiracy claim fails because the Complaint fails to plausibly plead Joffe's agreement or participation in any conspiracy.

### B.     Counts V and VI – Malicious Prosecution and Conspiracy

In Counts V and VI, Plaintiff claims that Joffe committed malicious prosecution by "willfully and knowingly misle[ading] FBI and DOJ officials with the intention of inducing the FBI to commence an investigation of the Plaintiff and his alleged collusion with Russia" (Compl. ¶ 357), and by conspiring to do the same. As explained in Section II.E of the Clinton Motion, Section IV of the Perkins Coie Motion, and Section V of the Elias Motion, which Joffe joins, Plaintiff fails to plead any of the required elements for his malicious prosecution claim. *See* Dkt. 52 at 19; Dkt. 143 at 9-13; Dkt. 147 at 13-16. Specifically, Count V fails on the merits because Plaintiff has not alleged (1) there was a judicial proceeding; (2) that it terminated in his favor; and (3) that there was an absence of probable cause.  Indeed, the Complaint actually pleads that there *was no* judicial proceeding as the FBI "concluded that there was insufficient evidence" to pursue a further investigation.  Compl. ¶ 180; *see also* Dkt. 146 at 9-10.  "An action for malicious prosecution . . . [can] never occur outside the context of litigation." *Fischer v. Debrincat*, 169 So. 3d 1204, 1209 (Fla. Dist. Ct. App. 2015), *approved*, 217 So. 3d 68 (Fla. 2017). For these reasons, and those advanced in the Clinton and Perkins Coie Motions, Count V should be dismissed.  And, the conspiracy claim alleged in Count VI must fail too because the underlying claim is meritless, (Dkt. 52 at 19-20; Dkt. 143 at 9-13; *Honig*, 339 F. Supp. 3d at 1345), and fails to plausibly plead Joffe's participation and agreement, *see* Section II, *supra*.

### C.     Count VII – Computer Fraud and Abuse Act

In Count VII, Plaintiff alleges that Joffe violated the Computer Fraud and Abuse Act ("CFAA") insofar as he (and Neustar) "knowingly, intentionally and unlawfully accessed and/or

exceeded their authority to access the computers" (Compl. ¶¶ 386, 388).  As explained in Section II.F of the Clinton Motion, Section III.C of the forthcoming Neustar Motion, and Section V of the Perkins Coie Motion, which Joffe adopts, the substantive CFAA claim fails on the merits for multiple reasons, including that Joffe's alleged activity does not "exceed authorized access," nor does Plaintiff allege compensable loss.    To succeed on a claim for a violation of the CFAA, Plaintiff must allege that (1) the defendant "accessed a protected computer;" "(2) without authorization or by exceeding authorized access;" "(3) knowingly and with intent to defraud;" and (4) the defendant's "access furthered the intended fraud and obtained anything of value." *See TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1300 (S.D. Fla. 2016).

In this matter, Joffe's alleged actions did not "exceed[] authorized access," and therefore are not prohibited by the CFAA. *See Van Buren v. United States*, 141 S. Ct. 1648, 1649 (2021). In *Van Buren*, a police sergeant was asked by a civilian to use his police credentials to access a license plate database used by law enforcement to obtain information about a woman in exchange for a payment of approximately $5,000.  *See id*. at 1653.  Van Buren did so, using his valid credentials, and offered to provide the information he obtained from the database in exchange for the cash payment.  *See id*. The Supreme Court, holding that the police sergeant did not "exceed authorized access" under the CFAA, narrowed the application of the statute and clarified that the CFAA only extends to an individual who obtains information "located in particular areas of the computer . . . that are off limits to him," and *does not extend* to those "who had improper motives for obtaining information that was otherwise available to them." *Id*. at 1652, 1662.  Critically for present purposes, the Supreme Court held that exploiting existing

access to a computer system "for an improper purpose" does *not* violate the statute.  *Id.* at 1662[7]
The "CFAA focuses on—and punishes—'an individual's unauthorized *access* of information
rather than how a defendant' *uses* the accessed data." *CareersUSA, Inc. v. Guerrero*, No. 14-cv-
80096, 2014 WL 12862259, at *3 (S.D. Fla. Aug. 25, 2014).

Plaintiff's claim for violation of the CFAA cannot be squared with *Van Buren*.  It turns
entirely on Joffe's purportedly improper use of DNS data, to which, as Plaintiff alleges in the
Complaint, Joffe (and others) already had authorized access.  Plaintiff alleges that (1) Neustar is
"an information technology company" that "offers various internet-related information, data and
analytics services, including Domain Name System ("DNS") resolution services," and
(2) Neustar provided "DNS resolution services" (Compl. ¶ 103) to the Executive Office of the
President and thereby "*c[a]me to access* and maintain dedicated servers for the EOP." Compl.
¶ 124 (emphasis added). According to Plaintiff, Joffe allegedly was tasked "to exploit . . . *[his]
access* to non-public data to dredge up" compromising information about Trump. Compl. ¶ 109
(emphasis added).  Joffe then proceeded to "min[e]" executive branch DNS data. Compl. ¶ 125.
Even if these allegations were true, which they are not, they do not establish that Joffe ran afoul
of the CFAA.  Far from gaining unauthorized access to files or systems "off limits" to them, *Van
Buren*, 141 S. Ct. at 1662, Plaintiff's own rendition of the facts state that Joffe was *given* access,
albeit allegedly using this access for supposedly "nefarious purposes," Compl. ¶¶ 102, 122.  And,

---

[7] Further, there is nothing "improper" about Joffe's motives. Joffe joins in and adopts the
arguments in Section III of the Sussmann Motion— that all of Plaintiff's claims against Joffe are
barred by the *Noerr-Pennigton Doctrine. See* Dkt. 146 at 11-13. Plaintiff's claims are each based
on the same theory of liability: that Joffe conveyed information about Trump's links to Russia to
Sussmann, who then provided it to representatives of the federal government and, accordingly,
that Plaintiff was injured by the FBI's allegedly related investigation. If true, such governmental
communications fall squarely within the protections afforded to this kind of "petitioning"
activity; they are foreclosed by the *Noerr-Pennington* doctrine; and Joffe accordingly cannot be
held civilly liable for the alleged harms from any resulting governmental action.

importantly, DNS Data "is meant to be public." *DNS Deployment Guide*, at (iii).  As such, the CFAA does not extend to Joffe, as the information was "otherwise available" due to its public nature.  Although this alleged behavior may cause discomfort to Plaintiff, it plainly does not violate the CFAA. *See Armor Corr. Health Servs., Inc. v. Teal*, No. 19-cv-24656, 2021 WL 5834245, at *27 (S.D. Fla. Dec. 8, 2021) (holding that executive authorized to access employer's systems with "no meaningful limitations" did not violate CFAA by downloading documents "for the improper purpose of using [them]" to compete with employer).

Further, Plaintiff does not allege any compensable "loss" under the CFAA. Absent an allegation that Plaintiff sustained compensable damage or loss in excess of $5,000 in one year, the CFAA claim should be dismissed.  *See* 18 U.S.C. § 1030(g).  Under § 1030(e)(11) "loss" means "any reasonable cost … including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Plaintiff does not claim an interruption of service; rather, he seeks legal expenses and compensation relating to "harm to his business." Compl. ¶ 394. Accordingly, the Complaint fails to plead the kind of "loss" required by the CFAA. *See Nexans Wires S.A. v. Sark–USA, Inc.*, 319 F. Supp. 2d 468, 477–78 (S.D.N.Y. 2004) (because § 1030(e)(11) limits "loss" to costs incurred because of interruption of service, loss of business due to defendant's use of proprietary information was not covered by the CFAA); *Resdev, LLC v. Lot Builders Ass'n, Inc.*, No. 6:04–CV–1374, 2005 WL 1924743 *2–5 (M.D. Fla. Aug. 10, 2005) (rejecting the argument that "loss" can cover a trade secret's exclusivity value).[8]

---

[8] Finally, Joffe joins in and adopts the arguments in Section V.C of the Perkins Coie motion that the CFAA claim should be dismissed to the extent it relies upon allegedly unauthorized access to servers belonging to the Executive Office of the President ("EOP").  Compl. ¶ 383.  Plaintiff is

### D.    Count VIII – Theft of Trade Secrets

In Count VIII, Plaintiff alleges that Joffe engaged in theft of trade secrets, violating the DTSA by "exploit[ing] access to non-public data sources and/or servers, and unlawfully acquir[ing], st[ealing] and exploit[ing] sensitive, proprietary and confidential internet data" (Compl. ¶ 398).  Joffe joins in and adopts the arguments in Section A (pages 8-9) of the Clinton Motion and Section III.D of the forthcoming Neustar Motion regarding theft of trade secrets, which demonstrate that this claim must also fail on the merits.[9]

As a primary matter, a trade secret "derives independent economic value" from "not being generally known to" others.  *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d, 1279, 1292 (S.D. Fla. 2018) (citing 18 U.S.C. § 1839(3)(B)).  Yet Plaintiff offers no account— plausible or otherwise—of the independent economic value of DNS information either to himself or to Joffe.  Nor could he plausibly claim that DNS data "derives" its value "from not being generally known."  As explained at pages 8-9 of the Clinton Motion and Section III.A.1 & D of the Neustar Motion, DNS data is not a "trade secret."  For a user, each resource on this network is identified by a unique name: the domain name.  For network equipment (e.g., routers), the unique resource identifier is the IP address.  To access Internet resources in a user-friendly way, rather than by strings of numbers (IP addresses), users need a system that translates these domain names to IP addresses and then back again: this translation is the Domain Name System (DNS).  *See DNS Deployment Guide* at 2.1.  "The single most important factor in determining whether

---

[9] Joffe also adopts the DNC's argument that 18 U.S.C. § 1832(a)(5) does not afford a private right of action.  *See* Dkt. 141 at 14-15.

not permitted to recover civil damages as a private plaintiff for unauthorized access to computers owned by the federal government.  Even if a party improperly extracted "valuable, sensitive and/or proprietary information and data" from EOP computer systems (*id*. ¶ 386), which no party did, that injury is the government's to vindicate, not Trump's.  *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000).

particular information is a trade secret is whether the information is kept secret." *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 418 (2d Cir. 2004) (citing *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 298 (2d Cir.1986)).  DNS data is publicly available and therefore cannot, by any stretch of the imagination, be a "trade secret."

Further, as discussed above, DNS data, which is public, is not information "owned" by the Plaintiff.  Thus, as with IP information, individuals lack a protected privacy interest in DNS data.  Dkt. 52 at 8; *Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020); *see also Register.com*, 356 F.3d at 418 ("WHOIS information"—an internet record listing that identifies who owns a domain and how to get in contact with them—"cannot be copyrighted … patented, … or protected as a trade secret or confidential information under state law.").

## E.     Count IX – Stored Communications Act

The Stored Communications Act ("SCA") has a "narrow scope" and is "not a catch-all statute designed to protect the privacy of stored Internet communications." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1214 (2004).  To succeed on a claim alleging a violation of the SCA, Plaintiff must allege that the defendant "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *In re Google Inc.*, 806 F.3d 125, 145-46 (3d Cir. 2015).

As with other claims, Plaintiff simply repeats the elements of the SCA, claiming that Joffe violated the statute by exceeding access to "numerous facilities through which an electronic communication is provided" including private computers, those at the EOP, and those of the

Trump Organization. *See* Compl. ¶ 418.  Plaintiff, however, fails to allege a cognizable SCA

violation for several reasons.  First, as described above, the Complaint fails to plausibly plead

that Joffe accessed or "intruded" into any non-public or private information because DNS data is

public, or that Joffe "exceeded" his authorized access.  *See* Sections IV.C and IV.D, *supra*; *see*

*also Walker v. Coffey*, 956 F.3d 163, 168 (3d Cir. 2020) ("[a]ccessing a facility as defined by

section 2701 requires an intrusion into an electronic communication system").[10]

Second, Plaintiff's SCA claim fails because the "facility through which an electronic

communication service is provided" includes internet or network service providers, not

Plaintiff's personal computers, or computers/servers belonging to the EOP or the Trump

Organization.  *See United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) ("The SCA,

however, does not appear to apply to the source's hacking into Steiger's computer to download

images and identifying information stored on his hard-drive because there is no evidence to

suggest that Steiger's computer maintained any 'electronic communication service' as defined in

18 U.S.C. § 2510(15)."). As the Fifth Circuit explained in *Garcia v. City of Laredo*, 702 F.3d

788, 790 (5th Cir. 2012), the "home computer of an end user is not protected by the [Stored

Communications Act]."   Rather, "[t]he statute envisions a *provider* (the [Internet service

provider] or other network service provider) and a *user* (the individual with an account with the

provider), with the *user's communications in the possession of the provider*." *Id.* at 793.

Likewise, the Northern District of Georgia has held that the SCA did not apply to accessing the

computers of a business to obtain trade secrets because, despite the fact that the company

"provides telephone, internet, and email services to its employees," it was not a "provider of

'electronic communication service'" within the meaning of the SCA.  *IPC Sys., Inc. v. Garrigan*,

---

[10] With regard to this argument, Joffe also joins Section III.E of the forthcoming Neustar Motion.

No. 1:11-CV-3910-AT, 2012 WL 12872028, at *9 (N.D. Ga. May 21, 2012).  Other courts are in accord.  *See In re Google Inc.*, 806 F.3d at 146 (dismissing SCA claim regarding "illicit access [] to the plaintiffs' personal web browsers"); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001).  Indeed, it appears that *no court* has held that the SCA applies to anyone but service providers (such as internet service providers, phone companies, or social network service providers, such as Facebook or Myspace, which host private messaging).  Accordingly, because Plaintiff fails to plead that there was an intrusion into a "facility" (a network service provider), the SCA is inapplicable.

Relatedly, DNS data is not "in electronic storage". The SCA defines "electronic storage" as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17); *see also Garcia*, 702 F.3d at 792.  Despite the conclusory assertion that Joffe "obtained wire or electronic communications from the Computers that were in electronic storage in such systems," (Compl. at ¶ 419), the actual pleaded allegations relate only to obtaining public DNS data.  Moreover, "electronic storage" "encompasses only the information that has been stored by an electronic communication service provider," and does not include "[e]mails stored on the laptop computer" nor the Trump or EOP servers here. *See Garcia*, 702 F.3d at 793.  The Complaint simply fails to allege any facts showing the use of a facility, electronic communications, or electronic storage.  For these reasons, Count IX must fail.

## CONCLUSION

For all of the foregoing reasons, and those advanced by his co-Defendants, Joffe respectfully requests that the Court grant his Motion to Dismiss.

Dated:  May 20, 2022

Respectfully submitted,

*/s/ Edward Soto*

Edward Soto (FBN 0265144)
**WEIL GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Steven A. Tyrrell, *admitted pro hac vice*
**WEIL GOTSHAL & MANGES LLP**
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Attorneys for Rodney Joffe*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Edward Soto
Edward Soto (FBN 0265144)
**WEIL GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159

Steven A. Tyrrell, *admitted pro hac vice*
**WEIL GOTSHAL & MANGES LLP**
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Attorneys for Rodney Joffe*