UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:22-CV-14102-MIDDLEBROOKS

DONALD J. TRUMP,

    Plaintiff,

v.

HILLARY R. CLINTON, et al.,

    Defendants.

_____/

**DEFENDANT IGOR DANCHENKO'S MOTION TO DISMISS THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant Igor Danchenko, through undersigned counsel, moves to dismiss Plaintiff Donald Trump's claims with prejudice. The Complaint (DE 1) consists of over one hundred pages of Plaintiff's well-publicized grievances and preferred narrative, all the while failing to state a claim as a matter of law. As argued in Defendant Hillary R. Clinton's motion to dismiss ("Clinton Motion") (DE 52),[1] those claims are time-barred and defectively pled. Those failures are particularly apparent as to Mr. Danchenko, who, as discussed below, does not know any of the alleged "RICO Defendants."

**ARGUMENT**

**I.  ALL COUNTS AS TO MR. DANCHENKO ARE TIME-BARRED ON THE FACE OF THE COMPLAINT AND SHOULD BE DISMISSED**

  A.  <u>RICO Conspiracy</u>

Mr. Danchenko joins in and adopts the arguments in Section I of the Clinton Motion that Plaintiff's claims are time-barred. Dismissal under Federal Rule of Civil Procedure 12(b)(6) is

---

[1] Mr. Danchenko joins in and adopts the other Defendants' arguments in support of dismissal.

appropriate where—like here—it "is apparent on the face of the complaint" that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 383 F.3d 840, 845-46 (11th Cir. 2004).

While Plaintiff does not name Mr. Danchenko in Count I, the substantive RICO count, he includes him along with other additional Defendants in Count II for RICO conspiracy. This distinction does not matter for statute of limitations purposes. As explained in the Clinton Motion, the statute of limitations for civil RICO is four years, accruing when the plaintiff knew or should have known of the alleged injury. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (The four-year statute of limitations begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering.") (citation omitted); *White v. Greenpoint Mortg. Funding Inc.*, No. 14-80452-CIV, 2014 U.S. Dist. LEXIS 185973, at *11 (S.D. Fla. June 26, 2014) (dismissing RICO and RICO conspiracy claims because "[k]nowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running for statute of limitations purposes") (citation omitted).

Plaintiff made public his knowledge of the alleged RICO conspiracy and injury in a tweet on October 29, 2017.[2] Accordingly—at the latest—his claims accrued on that date, well over four years before he filed the Complaint. Regarding Mr. Danchenko specifically, Plaintiff's allegations concern the so-called "Steele Dossier." Compl. ¶¶ 81, 88. The Dossier and Plaintiff's allegations

---

[2] Donald J. Trump (@realDonaldTrump), Twitter (Oct. 29, 2017), archived at The Trump Twitter Archive, thetrumparchive.com ("Never seen such Republican ANGER & UNITY as I have concerning the lack of investigation on Clinton made fake Dossier (now $12,000,000?), the Uranium to Russia deal, the 33,000 plus deleted Emails, the Comey fix and so much more. Instead they look at phony Trump/Russia, 'collusion,' which doesn't exist. The Dems are using this terrible (and bad for our country) Witch Hunt for evil politics, but the R's are now fighting back like never before. There is so much GUILT by Democrats/Clinton, and now the facts are pouring out. DO SOMETHING!").

concerning it were public even earlier, as of January 2017.[3] And Mr. Danchenko's own alleged acts began in 2016, Compl. ¶ 79, with the latest allegedly occurring in November 2017, *id.* ¶ 201—all outside of the four-year limitations period. Moreover, Plaintiff has no recourse to make his allegations about these acts timely: He "cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Lehman*, 727 F.3d at 1331. "By extension, when an injury is a continuation of an initial injury, it is not *new and independent*." *Id*. (alteration in original) (internal citation omitted). The RICO conspiracy that Plaintiff complains of is thus irrevocably time-barred and should be dismissed with prejudice.

B. Injurious Falsehood and Malicious Prosecution

The remaining claims against Mr. Danchenko—injurious falsehood (Count III), malicious prosecution (Count V), and conspiracy to commit same (Counts IV and VI, respectively)—are time-barred as well. The statute of limitations for the Malicious Prosecution claims is four years, accruing when the last element constituting the cause of the action occurs. *See* Fla. Stat. § 95.11(3)(o); Fla. Stat. § 95.031(1). The Injurious Falsehood claims are subject to only a two-year statute of limitations. Fla. Stat. § 95.11(4)(g); *see ADT LLC v. Vivint, Inc.*, No. 17-cv-80432,

---

[3] *See* https://www.buzzfeednews.com/article/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia (January 10, 2017) (publishing the Steele Dossier); Donald J. Trump (@realDonaldTrump), Twitter (Jan. 11, 2017), archived at The Trump Twitter Archive, thetrumparchive.com ("Russia just said the unverified report paid for by political opponents is 'A COMPLETE AND TOTAL FABRICATION, UTTER NONSENSE.' Very unfair!"); Donald J. Trump (@realDonaldTrump), Twitter (Jan. 13, 2017), archived at The Trump Twitter Archive, thetrumparchive.com ("It now turns out that the phony allegations against me were put together by my political opponents and a failed spy afraid of being sued…. Totally made up facts by sleazebag political operatives, both Democrats and Republicans – FAKE NEWS! Russia says nothing exists. Probably… released by 'Intelligence' even knowing there is no proof, and never will be. My people will have a full report on hacking within 90 days!").

U.S. Dist. LEXIS 123516, at *15 n.8 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.) (two-year statute of limitations for trade slander) (citing *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999)) ("injurious falsehood" encompasses a group of torts under Florida law). A separate statute of limitations for civil conspiracy under Florida law is four years. *Young v. Ball*, 835 So. 2d 385, 386 (Fla. Dist. Ct. App. 2003) (citing Fla. Stat. § 95.11(3)). Accordingly, as with the RICO counts, because all of Defendants' alleged acts, including Mr. Danchenko's, occurred more than four years before Plaintiff filed his Complaint, Counts III–VI are time-barred and should be dismissed with prejudice.

## II. ALL COUNTS AS TO MR. DANCHENKO SHOULD BE DISMISSED AS MERITLESS

### A. RICO Conspiracy

Mr. Danchenko joins in and adopts the arguments advanced in the Clinton Motion that the RICO counts in the Complaint are defectively pled and meritless. *See* Clinton Motion, Section II B. In sum, Plaintiff has failed to satisfy any of the pleading requirements for RICO, and thus his RICO conspiracy claims are necessarily meritless as well. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) ("If the underlying [RICO] cause of action is not viable, the conspiracy claims must also fail.") (citation omitted).

As for Mr. Danchenko specifically, the argument for dismissal is even easier. The Complaint does not allege how Mr. Danchenko supposedly conspired with the RICO Defendants, which the Complaint defines as "Clinton, the Clinton Campaign, the DNC, Perkins Coie, Elias, and Sussmann." Compl. ¶ 268. That is because Mr. Danchenko <u>never met, communicated, or agreed</u> with any of the RICO Defendants about anything, let alone about the alleged predicate acts. This pleading deficiency (and reality) is dispositive of Plaintiff's RICO conspiracy claim against

Mr. Danchenko. "A Plaintiff can establish a RICO conspiracy in one of two ways: (1) by showing the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Here, Plaintiff can show neither.

The only allegations in the Complaint that attempt to allege that Mr. Danchenko "agreed" with a RICO conspiracy is in relation to the alleged predicate act of obstruction of justice. Each of those allegations is as conclusory as the next: "the RICO Defendants *conspired* with Danchenko in connection with his conduct . . . ," *id.* ¶ 307 (emphasis added); "Danchenko stated, *at the direction of and in coordination with* the RICO Defendants . . . ," *id.* ¶ 307.a (emphasis added); "the RICO Defendants *had a meeting of the minds, common intent, were aware of, and conspired with* . . . [lumping Defendants together, including] Danchenko," *id.* ¶ 308 (emphasis added). Such conclusory allegations "unsupported by actual allegations of fact" are obviously insufficient. *Super Vision Int'l v. Mega Int'l Comm. Bank*, 534 F. Supp. 2d 1326, 1343 (S.D. Fla. 2018). Plaintiff can do no better, because, again, Mr. Danchenko does not know any of the RICO Defendants.

Finally, the predicate act of obstruction of justice requires the obstruction of an "official proceeding." 18 U.S.C. § 1512. Plaintiff complains only of obstruction of FBI and CIA "investigations," Compl. ¶ 297, which do not qualify as an official proceeding. *See United States v. Peterson*, 544 F. Supp. 2d 1363, 1376 (M.D. Ga. 2008) (explaining that obstruction under 18 U.S.C. § 1512 requires "an official proceeding [that] is pending or about to be instituted at the time of the obstructive act" and finding that a federal investigation is neither); 18 U.S.C. § 1515(a)(1)

(defining "official proceeding"); Clinton Motion at 9-10. Here, no official proceeding ever even occurred. Count II for RICO conspiracy should be dismissed with prejudice as to Mr. Danchenko.[4]

### B. Injurious Falsehood and Malicious Prosecution Claims

As set forth in the Clinton Motion, and joined and adopted herein, the Complaint fails to state a claim for injurious falsehood, or a conspiracy thereto. *See* Clinton Motion, Sections II C and D. A claim for injurious falsehood requires Plaintiff to show "(1) a falsehood; (2) published or communicated to a third party; (3) the Defendant know that the falsehood would likely induce others not to deal with the Plaintiff; (4) the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff; and (5) special damages." *Kanarick v. GE Credit Retail Bank Care Credit*, No. 13-80039-CIV, 2013 U.S. Dist. LEXIS 201958, at *9-10 (S.D. Fla. Sept. 6, 2013) (Middlebrooks, J.). Focusing on the third and fourth elements, Plaintiff has not alleged what false statements Mr. Danchenko made that he knew would "likely induce others not to deal with the Plaintiff," and that "did play a material and substantial part in inducing others not to deal with the Plaintiff." *Id*. Instead, Plaintiff alleges "discussions," with no specifics, Compl. ¶ 79, and "assistance," with no specifics, *id*. ¶ 81.

One statement Plaintiff *implies* Mr. Danchenko made concerned Paul Manafort's departure from Plaintiff's presidential campaign, which Plaintiff alleges was provided to Mr. Danchenko by Charles Dolan and then allegedly made its way to the Dossier. Compl. ¶¶ 94-95. As a threshold matter, such attenuated and unspecified allegations cannot satisfy any pleading standard. More pertinently, Plaintiff does not allege this information about Manafort's resignation was false; and he conveniently overlooks that it was widely reported prior to when he alleges Mr. Danchenko

---

[4] Plaintiff asserts no allegations against Mr. Danchenko regarding the other predicate act of theft of trade secrets. Compl. ¶¶ 284-95, 395 (Count VIII).

6

received an email about it.[5]  As a matter of commonsense, communication of already public information cannot serve as a basis for materially and substantially inducing others to act on that same information.  Furthermore, just as the media's reporting on the goings-on of Plaintiff's political campaign was political speech protected by the First Amendment, so it would have been for Mr. Danchenko.  *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-72 (1971) (First Amendment protection applies especially to statements about political campaigns).

Plaintiff also has not satisfied the fifth element of injurious falsehood, which requires him to allege *special damages* "directly attributed" to Mr. Danchenko's alleged conduct, which "[can]not . . . be explained by other considerations."  *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, No. 19-62078-CIV, U.S. Dist. LEXIS 20919 (S.D. Fla. Jan. 28, 2022).  Such attributed special damages require Plaintiff "to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales," *Salit*, 742 So. 2d at 388, that are "specifically stated" in the Complaint, Fed. R. Civ. P. 9(g).  Here, the Complaint alleges damages in the form of $24 million in "legal fees" and related expenses in relation to various "federal investigations and/or official proceedings," but does not apportion among or explain which investigations or proceedings.  The FBI's Crossfire Hurricane investigation, mentioned throughout the Complaint, cannot possibly serve as a vehicle for materiality, causation, or special damages with regard to the Steele Dossier or any alleged connection Mr. Danchenko had to it.  This is so for several reasons.

---

[5] *Compare* Compl. ¶ 96 (alleged email dated Aug. 20, 2016) *with* https://thehill.com/blogs/ballot-box/presidential-races/291414-lewandowskis-tweets-report-on-manaforts-ukraine-ties/ (Aug. 14, 2016); https://www.politico.com/story/2016/08/corey-lewandowski-paul-manafort-trump-winning-227198 (Aug. 19, 2016); https://www.nbcnews.com/politics/2016-election/trump-campaign-chair-paul-manafort-resigns-n634366 (Aug. 19, 2016).

First, Plaintiff specifically alleges that Mr. Danchenko did not draft the Dossier, but rather only "assembled and provided" information that was relied on to draft it. Compl. ¶ 88. In other words, by the Complaint's own telling, Mr. Danchenko did not make statements in the Dossier or decide which statements it would include. Second, the Crossfire Hurricane investigation was not an investigation into Plaintiff but "into whether individuals associated with the Donald J. Trump for President campaign were coordinating, wittingly or unwittingly, with the Russian government's efforts to interfere in the 2016 U.S. presidential election." Office of the Inspector General, U.S. Department of Justice ("IG"), Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation ("IG Report") (Dec. 2019 Rev.) (Exhibit 1), at i; *see also id.* at 1, 50, 56 (same).[6] It is not clear how allegedly providing information that made it into an investigation aimed at individuals besides the Plaintiff "play[ed] a material and substantial part in inducing others not to deal with the Plaintiff," *Kanarick*, 2013 U.S. Dist. LEXIS 201958, at *9-10, or caused special damages to Plaintiff "directly attributable" to anyone, especially Mr. Danchenko. Third, and rendering all else academic, the IG found "no evidence the Steele election reporting was known to or used by FBI officials involved in the decision to open the Crossfire Hurricane investigation." Ex. 1, IG Report at 56 n.169. As the IG found, the "articulable factual basis" for the investigation was information received from a Friendly Foreign Government ("FFG") and known Russian efforts to interfere in the 2016 elections. *Id.* at 351. Mr. Danchenko was unconnected to any of this, and is not alleged to have been.

The Complaint further references the Foreign Intelligence Surveillance Act ("FISA") applications regarding Carter Page as part of the Crossfire Hurricane investigation but does not

---

[6] Exhibit 1 includes only the cited pages of the report, which is voluminous. However, the full IG Report can be found at: https://www.justice.gov/storage/120919-examination.pdf.

allege that Mr. Danchenko provided any information regarding Carter Page, or that he had any awareness of or anything to do with any FISA application. Compl. ¶¶ 98-99.[7] Furthermore, as with Manafort, statements about Page would have been political speech protected by the First Amendment. And again, Mr. Danchenko is not alleged to have made any statements in the Dossier. Apart from these defective allegations, Plaintiff fully surrenders to vagueness and absurdity:

> The different opportunities which evaporated are too many to list, but as an example, Donald J. Trump has been banned from different social media platforms, including Twitter. Most of this was due to the misinformation campaign waged by Hillary Clinton, whereby truth was deemed false and lies were deemed to be truth.

Compl. ¶ 263 n.78. As stated, there is no factual basis for Mr. Danchenko having conspired with Defendant Hillary R. Clinton or the Clinton Campaign (or any other RICO Defendant), and the fact that Plaintiff was banned from Twitter in relation to his own conduct on January 6, 2021, is beyond argument. None of this can serve as a basis for special damages "directly attributed" to Mr. Danchenko. Finally, as with Plaintiff's RICO claims, there is no non-conclusory allegation that Mr. Danchenko agreed with anyone to commit injurious falsehood. Compl. ¶ 348. *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (among other things, a civil conspiracy requires "an agreement"); *Super Vision Int'l*, 534 F. Supp. 2d at 1343 (requiring "allegations of fact"). Counts III and IV should be dismissed with prejudice.

As for Plaintiff's malicious prosecution claims, they end before they begin, as Plaintiff has failed to plead the first element of "an original judicial proceeding against the present plaintiff." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1123-24 (S.D. Fla. 2019) (citing *Alamo Rent-*

---

[7] Plaintiff alleges that the allegations regarding "salacious sexual activity" in the Steele Dossier were "derived from Dolan." ¶¶ 90-91. This insufficiently pled allegation is also no basis for materiality, causation, or special damages: "These allegations, which have come to be known publicly as the 'salacious and unverified' portion of the reporting, were not included in the original Carter Page FISA application or any of the renewal applications." Ex. 1, IG Report at 4 n.7.

9

*A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)).  The Complaint explicitly states that its malicious prosecution claims relate to "the commencement of the FBI's Investigation."  Compl. ¶ 359.  As with the obstruction of justice allegation, *supra*, pp. 5-6, an investigation does not qualify as a proceeding, let alone a "judicial" one.  This lacking substantive count cannot support a conspiracy claim, and, as before, there is no non-conclusory allegation that Mr. Danchenko *agreed* with anyone to commit malicious prosecution.  Counts V and VI should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Igor Danchenko respectfully moves the Court to dismiss Counts II, III, IV, V, and VI of Plaintiff's Complaint with prejudice.

Dated:  May 20, 2022

Respectfully submitted,

By: */s/ Diana Marie Fassbender*

Franklin Monsour Jr. (admitted *pro hac vice*)
fmonsour@orrick.com
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Tel: (212) 506-3512
Fax: (212) 506-5151

Diana Marie Fassbender
Fla Bar ID #17095
dszego@orrick.com
Orrick, Herrington & Sutcliffe LLP
1152 15th Street N.W.
Washington, DC  20005-1706
Tel: (202) 339-8853
Fax: (202) 339-8500

*Attorneys for Defendant Igor Danchenko*