UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:22-cv-14102-DMM

DONALD J. TRUMP,

              Plaintiff,

v.

HILLARY R. CLINTON, HFACC, INC.,
DEMOCRATIC NATIONAL COMMITTEE,
DNC SERVICES CORPORATION, PERKINS
COIE, LLC, MICHAEL SUSSMANN, MARC
ELIAS, DEBBIE WASSERMAN SCHULTZ,
CHARLES HALLIDAY DOLAN, JR., JAKE
SULLIVAN, ADAM SCHIFF, JOHN PODESTA,
ROBERT E. MOOK, PHILLIPE REINES,
FUSION GPS, GLENN SIMPSON, PETER
FRITSCH, NELLIE OHR, BRUCE OHR, ORBIS
BUSINESS INTELLIGENCE, LTD.,
CHRISTOPHER STEELE, IGOR DANCHENKO,
NEUSTAR, INC., NEUSTAR SECURITY SERVICES,
RODNEY JOFFE, JAMES COMEY, PETER STRZOK,
LISA PAGE, KEVIN CLINESMITH, ANDREW MCCABE,
ROD ROSENSTEIN, JOHN DOES 1 THROUGH 10
(said names being fictitious and unknown persons),
and ABC CORPORATIONS 1 THROUGH 10 (said
names being fictitious and unknown entities),

              Defendants.

_____

**PLAINITFF'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SET ASIDE THE <u>GOVERNMENT'S CERTIFICATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................ii

ARGUMENT ....................................................................................................................................... 1

    I.    DEFENDANTS ARE NOT ENTITLED TO WESTFALL CERTIFICATION AS THEY ACTED OUTSIDE OF THE SCOPE OF THEIR EMPLOYMENT IN MALICIOUSLY PROSECUTING PLAINTIFF ........................................................................................................ 1

        A.    James Comey................................................................................................................ 3

        B.    Peter Stzrok and Lisa Page............................................................................................ 6

        C.    Kevin Clinesmith......................................................................................................... 7

        D.    Andrew McCabe ......................................................................................................... 8

    II.    PLAINTIFF IS ENTITLED TO ENGAGE IN LIMITED DISCOVERY TO DETERMINE WHETHER THE DEFENDANTS CONDUCT TOOK PLACE WITHIN THE SCOPE OF THEIR EMPLOYMENT ................................................................................................. 8

    III.    THE DISTRICT COURT PROPERLY RETAINS SUBJECT MATTER JURISDICTION IN THE INSTANT MATTER ..................................................................................... 9

CONCLUSION ................................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Vertex, Inc.,*
  2007 U.S. Dist. LEXIS 22850, at *8 (D.D.C. Mar. 29, 2007) ...................................................... 3

*Allaithi v. Rumsfeld*,
  753 F.3d 1327, 1332 (D.C. Cir. 2014) .......................................................................................... 3

*Boykin v. District of Columbia*,
  484 A.2d 560 (D.C. 1984) ........................................................................................................ 6, 7

*Brown v. Argenbright Sec.*,
  782 A.2d 752 (D.C. 2001) ............................................................................................................ 8

*Council on Am. Islamic Relations v. Ballenger,*
  444 F.3d 659 (D.C. Cir. 2006) ................................................................................................. 2, 3

*Flohr v. Mackovjak*,
  84 F.3d 386 (11th Cir. 1996) ........................................................................................................ 2

*Gutierrez de Martinez v. Lamagno*,
  515 U.S. 417 (1995) ............................................................................................................ 2, 8, 9

*Haddon v. United States,*
  68 F.3d 314 U.S. App. D.C. 369 (D.C. Cir. 1995) ............................................................... 3, 5, 6

*Hendrix v. Snow*,
  170 F.App'x 68 (11th Cir. 2006) .................................................................................................. 2

*Hicks v. Office of the Sergeant at Arms for the U.S. Senate,*
  873 F. Supp. 2d 258 (D.D.C. 2012) .............................................................................................. 3

*Kimbro v. Velten*,
  30 F.3d 1501 (D.C. Cir. 1994) ...................................................................................................... 9

*Logue v. United States,*
  412 U.S. 521, 93 S. Ct. 2215, 37 L. Ed. 2d 121 (1973) ................................................................ 4

*Lyon v. Carey*,
  533 F.2d 649 (D.C. Cir. 1976) ...................................................................................................... 8

*Means v. United States*,
  176 F.3d 1376,  (11th Cir. 1999), 176 F.3d ................................................................................. 4

*Moseley v. Second New St. Paul Baptist Church*,
  534 A.2d 346 (D.C. 1987) .................................................................................................. 7

*Osborn v. Haley*,
  549 U.S. 225, 127 S. Ct. 881, 166 L. Ed. 2d 819 (2007) .............................................. 1, 2

*Penn Central Transp. v. Reddick*,
  398 A.2d 27 (D.C. 1979) ................................................................................................... 7

*Rasul v. Myers*,
  512 F.3d 644 (D.C. Cir. 2008) .......................................................................................... 2

*S.J. & W Ranch, Inc. v. Lethinen*,
  913 F.3d 1538 (11th Cir. 1990) ........................................................................................ 2

*Stokes v. Cross*,
  327 F.3d 1210 (D.C. Cir. 2003) ........................................................................................ 9

*Weinberg v. Johnson*,
  518 A.2d 985 (D.C. Cir. 1986) ......................................................................................... 8

*Wilson v. Libby*,
  535 F.3d 697 (D.C. Cir. 2008) ................................................................................... 3, 6, 7

**Statutes**

28 U.S.C. § 1346(b)(1) ........................................................................................................ 1, 4

28 U.S.C. § 2671 ....................................................................................................................... 1

28 U.S.C. § 2679(d)(1) ............................................................................................................. 1

28 U.S.C. § 2679(d)(3) ............................................................................................................. 1

**Other Authorities**

Restatement (Second) of Agency § 228 (1958) ................................................................... 2, 3

The plaintiff, Donald J. Trump ("Plaintiff")[1], respectfully submits this memorandum of law in opposition to the Motion to Dismiss (the "Motion") filed by the Defendants, James Comey ("Comey"), Andrew McCabe ("McCabe"), Kevin Clinesmith ("Clinesmith"), Peter Strzok (Strzok"), and Lisa Page ("Page") (collectively, the "Defendants"). For the reasons set forth herein, the Plaintiff opposes the Defendants' petition seeking substitution of the United States as the party defendant pursuant to the provisions of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "FTCA"), commonly known as the Westfall Act. *See* 28 U.S.C. § 2679(d)(3).

## ARGUMENT

**I.  DEFENDANTS ARE NOT ENTITLED TO WESTFALL CERTIFICATION AS THEY ACTED OUTSIDE OF THE SCOPE OF THEIR EMPLOYMENT IN MALICIOUSLY PROSECUTING PLAINTIFF.**

The FTCA is a limited waiver of sovereign immunity, making the United States liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (Emphasis added); *see also* 28 U.S.C. § 2671.

Because claims against individual government employees are only prohibited when that employee was acting within the scope of his employment at the time of the alleged wrong, the Westfall Act provides a procedure for the Attorney General to certify that the employee was indeed acting within that scope. 28 U.S.C. § 2679(d)(1). This certification process is commonly referred to as "Westfall Act certification." If the Attorney General so certifies, the action against the employee "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." *Id.*

While this certification is conclusive for purposes of trial, the Westfall Act "does not preclude a district court from resubstituting the federal official as defendant for purposes of trial if the court determines that the Attorney General's scope-of-employment certification was incorrect."

---

[1] All capitalized terms herein shall have the same meaning and shall be defined in the same manner and context as they appear and are pleaded in the Amended Complaint.

1

*Osborn v. Haley*, 549 U.S. 225, 229-30 (2007). That certification is the "first, but not the final word" on whether the federal employee was acting within the scope of his employment; plaintiffs may still seek "judicial review of the Attorney General's scope-of-employment determination." *Id*. at 246. Such review shall be de novo, as the question is a mixed question of fact and law governed by the law of the state where the incident occurred. *S.J. & W Ranch, Inc. v. Lethinen*, 913 F.3d 1538, 1542-43 (11th Cir. 1990). The Attorney General's certification is prima facie evidence of whether the employee's conduct was within the scope of employment, placing the burden of proving that the employee acted outside of that scope on the plaintiff. *Id.* at 1543. This is a "highly fact-specific" inquiry that "turns on the unique circumstances of the case" before the court. *Hendrix v. Snow*, 170 F.App'x 68, 82 (11th Cir. 2006). The Plaintiff is permitted to challenge the Attorney General's certification before the district court. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995). The district court then conducts de novo review. *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990).

For Westfall Act purposes, state law determines whether a federal employee was acting within the scope of his employment at the time of an alleged incident. *See Flohr v. Mackovjak,* 84 F.3d 386, 390 (11th Cir. 1996) ("The question of whether an employee's conduct was within the scope of his employment 'is governed by the law of the state where the incident occurred'"). It is agreed that the District of Columbia's laws apply here. Generally, the District of Columbia courts "look[] to the Restatement (Second) of Agency"in determining whether an employee's actions fall within the scope of employment. *Rasul v. Myers*, 512 F.3d 644, 655 (D.C. Cir. 2008).

> The Restatement provides [that]: '(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master[;] and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (per curiam) (quoting Restatement (Second) of Agency § 228 (1958)). (Emphasis added.)

As noted above, it is not enough to establish that one is a "servant" of some other to qualify for substitution under the Westfall Act. Not all "[c]onduct of a servant" is "within the scope of employment"; instead, "[c]onduct of a servant is within the scope of employment if, but only if,"

2

three things are true: (1) "'[I]t is of the kind he is employed to perform;'" (2) "'[I]t occurs substantially within the authorized time and space limits;'" and (3) "'[I]t is actuated, at least in part, by a purpose to serve the master.'" *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). (Emphases added.); quoting Restatement (Second) of Agency § 228(1)).

The first factor weighs heavily against a finding that the Defendants' conduct was within the scope of their employment. The first prong of the District of Columbia scope-of-employment test "has two disjunctive parts: To qualify as conduct of the kind [an employee] was employed to perform, the defendant's actions must have either been of the same general nature as that authorized or incidental to the conduct authorized." *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664, 370 U.S. App. D.C. 314 (D.C. Cir. 2006) (internal quotation marks omitted; emphasis in original) (quoting *Haddon v. United States*, 68 F.3d at 1424, 314 U.S. App. D.C. 369 (D.C. Cir. 1995)). "Conduct is 'incidental' so long as it is 'foreseeable,'" and it is "foreseeable" if it is a "direct outgrowth of the employee's instructions or job assignment." *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1332 (D.C. Cir. 2014) (quoting *Haddon*, 68 F.3d at 1424). However, "[I]f the employee's tort did not arise directly from performance of an authorized duty and the job merely provided an *opportunity* to act, courts have found such conduct to be outside the scope of employment." *Hicks v. Office of the Sergeant at Arms for the U.S. Senate*, 873 F. Supp. 2d 258, 266 (D.D.C. 2012). (Emphasis added.). While illegal or unauthorized conduct, by itself, may not automatically prevent conduct from "serving the master" to some extent, *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008)), an employee who is acting only for his own "independent malicious or mischievous purpose" is, as a matter of law, *not* intending to serve the employer. *Adams v. Vertex, Inc.*, 2007 U.S. Dist. LEXIS 22850, at *8 (D.D.C. Mar. 29, 2007).

Here, the conduct at issue cannot be "the kind" of conduct the Defendants were employed to perform because it was neither incidental to authorized conduct nor of the same general nature as authorized conduct. Indeed, as detailed below, each individual Defendant acted in a manner that was not manner that was not intended to further any legitimate law enforcement objectives, but rather, to further his or her own personal interests in impeding Plaintiff's presidential campaign, and later, undermining his presidency.

### A. James Comey

As a threshold matter, Comey is not entitled to Westfall Certification because he was not a government employee when he committed the acts that subject him to liability—namely his

3

willful and unlawful leaking of internal FBI memos and subsequent dissemination through the mainstream media—which was done with the express purpose of instigating the appointment of Special Counsel and commence a prosecution of Plaintiff.

The plaint text of the FTCA makes is clear that the waiver of sovereign immunity based on an "injury . . . caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment . . . if a private person would be liable to the claimant." 28 U.S.C. § 1346(b)(1) (Emphasis added). Further, federal courts employ the "control test" to determine whether an individual is an employee for FTCA purposes. *Means v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999), 176 F.3d at 1379. "Under th[at] test, a person is a not an 'employee of the government' for FTCA purposes unless the government controls and supervises the day-to-day activities of the individual." *Id*. (*citing Logue v. United States*, 412 U.S. 521, 526-32, 93 S. Ct. 2215, 37 L. Ed. 2d 121 (1973)

As duly alleged in the Complaint, Comey was fired from his position of Director of the FBI on May 9, 2017. Am. Compl. ¶449. Prior to his termination, Comey memorialized his interactions and meetings with Plaintiff in a series of memos. Specifically, Comey engaged in a total of nine one-on-one conversations with the Plaintiff, seven of which were documented in Comey's memos. Comey elected to disseminate the contents of these memos to one of his lawyer friends, who he specifically directed to leak to a *New York Times* reporter, with the intention of prompting the appointment of a special counsel to investigate a special counsel to investigate the Plaintiff's alleged coordination with the Russian government. A damning report[2] issued by the Office of the Inspector General condemned Comey for the "unauthorized disclosure of sensitive investigative information, obtained during the course of FBI employment, in order to achieve a ***personally desired outcome***." Am. Compl. ¶452 (emphasis added). As a direct result of Comey's unauthorized conduct, Robert Mueller was appointed as Special Counsel and initiated the Mueller Investigation.

The facts pled in the Amended Complaint unambiguously establish that the Government could not have possibly controlled Comey's day to day operations as he was terminated *prior to*

---

[2] U.S. Dep't of Justice, Office of the Inspector General, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation at 96 (2019) (hereinafter "IG Report"). It is appropriate for the Court to take judicial notice of the IG Report, as it is both incorporated in Plaintiff's Amended Complaint and constitutes a government publication.

4

committing the conduct alleged in the Complaint. Nor was he authorized to leak such information as was made abundantly clear by the Inspector General's independent determination. As cited in the Inspector General's report, Comey expressly agreed to be bound by an FBI Employment Agreement which included the following provisions that Comey would later violate:

- An acknowledgment that all information acquired by him in connection with his official duties and all official material to which he has access to remain the property of the United States;
- An agreement to surrender, upon separation from the FBI, all materials containing FBI information in his possession;
- A commitment not "to reveal, by any means, any information or material from or related to FBI files or any other information acquired by virtue of his official employment to any unauthorized recipient without official written authorization by the FBI";
- An agreement to "seek determination whether…information may be disclosed" prior to any disclosure, using the guidelines found in the FBI Manual of Administrative Operations and Procedure; and
- An agreement to be bound by the FBI's guidelines governing prepublication review, with the understanding that the term 'publication' includes the disclosure of information to anyone by any means; and
- An acknowledgement that these provisions are "conditions of…employment" and apply "both during [his' employment in the FBI and following termination of such employment."

*See* IG report at 15.

The Office of the Inspector General reviewed Comey's conduct and found that he materially violated the provisions of the FBI Employment Agreement and FBI departmental policies, including: (1) Comey's decision to retain the memos without express authorization of the FBI; (2) Comey's unauthorized dissemination of the memos to his attorneys with instructions to provide the contents to a reporter; and (3) his failure to immediately alert the FBI to the unauthorized disclosure of classified information. *Id*. at 54.

It is therefore axiomatic that Comey's conduct was not within the scope of his employment with the FBI since his tortious conduct occurred *after* he was terminated from his position as Director of the FBI and since his decision to retain classified memos without notifying the FBI was not authorized by the United States Government. *See Haddon v. United States*, 68 F.3d 1420, 1424 (D.C. Cir. 1995) (employee's acts are only foreseeable to employer if they are "a 'direct outgrowth' of the performance of an employee's instructions or job assignment") (quoting *Boykin*

5

*v. District of Columbia*, 484 A.2d 560, 562 (D.C. 1984). Indeed, Comey's conduct could not have possibly been authorized by the FBI since it was not in any way foreseeable that Comey would both retain said memos and distribute them to the New York Times to spur the appointment of Special Counsel. Even members of Comey's senior leadership team expressed shock and surprise upon learning that Comey disseminated the contents of the memos to a reporter to advance his own goal of maligning the Plaintiff. *See* IG Report at 57. Therefore, as a matter of law, Comey was not acting within the scope of his employment when he set into motion the Mueller Investigation and advanced the malicious prosecution of Plaintiff.

### B. Peter Stzrok and Lisa Page

In that same vein, Strzok and Page's conduct similarly disqualifies them from Westfall Certification. Among others, Stzrok and Page were tasked with leading the FBI's Crossfire Hurricane Investigation. *See* Am. Compl. ¶ 385. Yet, as the Plaintiff has demonstrated, Strzok and Page did not act to further the legitimate law enforcement goals of that investigation, but rather to fulfill their personal political agenda – namely, Strzok and Page sought to prevent the Plaintiff from attaining the Presidency. As evidenced by a series of text messages between the two, Strzok and Page had utter disdain for the Plaintiff and engaged in a concerted effort to sabotage his presidential campaign. In particular, on August 8, 2016, Page texted Strzok, "[Trump's] not ever going to become president right? Right?!." Strzok replied, "No. No he's not. We'll stop it." *Id*. (Emphasis added.) It is of particular note that the two also discussed the implementation of an "insurance policy" that would be instituted in the event that the Plaintiff did win the election. On August 15, 2016, Strzok texted Page: "I want to believe the path you threw out for consideration in Andy's (Andrew McCabe, Deputy Director of the FBI) office that there's no way Trump gets elected—but I'm afraid we can't take that risk. It's like an insurance policy in the unlikely event you die before you're 40 …" *Id*. As noted in the Amended Complaint, this reference to an "insurance policy" further substantiates that Strzok and Page intended to "ensure that, if Donald. J. Trump did indeed win the presidential election, that he would be quickly removed from office or, at a minimum, unable to effectively govern." *Id.*

Considering the totality of facts alleged in the Amended Complaint, there is ample investigation that this investigation exceeded the bounds of a legitimate criminal investigatory process, and that both Strzok and Page were driven by their own political animus in overseeing and continuing the Crossfire Hurricane into Plaintiff and his campaign. It was certainly not

6

foreseeable that they would engage in investigatory action to fulfill their shared personal desire to prevent and undermine Plaintiff's presidency. *Wilson*, 535 F.3d 697 (an employee who is acting only for his own "independent malicious or mischievous purpose" is *not* intending to serve the employer).

Therefore, Strzok and Page are not entitled to receive Westfall Certification.

### C. Kevin Clinesmith

As alleged in the Complaint, Clinesmith was assigned to provide legal support to FBI officials who were working on Crossfire Hurricane. Clinesmith worked with the National Security Division of the United States Department of Justice to prepare FISA application and obtain authority from the United States Foreign Intelligence Surveillance Court. However, Clinesmith intentionally altered an e-mail he received from a "government agency," by adding the words "not a source," and then forwarded the e-mail to the FBI Supervisory Special Agent. *Id.* at 484. Subsequently thereafter, on June 29, 2017, the FBI relied on the altered email and submitted a FISA application which allowed them to conduct surveillance on Carter Page. As a result, Clinesmith was criminally indicted for making a false statement to the FBI. He subsequently pled guilty to one count of making a false statement within both the jurisdiction of the executive branch and judicial branch of the U.S. government.

Under both § 229 and § 231 of the Restatement, the intentionally criminal nature of Clinesmith's acts strongly militates against such acts being within the scope of his employment. Indeed, in other cases applying D.C. law, specific intentional torts have been determined as a matter of law *no*t to have been committed within the scope of employment. *E.g.*, *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346 (D.C. 1987); *Boykin v. Dist. Of Columbia*, 484 A.2d 560, 563 (D.C. 1984), 484 A.2d at 562-63; *Penn Central Transp. V. Reddick*, 398 A.2d 27 (D.C. 1979). Thus, since Clinesmith's conduct was specifically designed to mislead other FBI officials to apply for an unwarranted FISA application and otherwise impede the Crossfire Hurricane investigation, it cannot be reasonably argued that it was within the scope of his employment within the FBI. This criminal conduct, on its face, was not authorized, nor was it foreseeable.

Based on the foregoing, it would be improper to substitute the United States as defendant for Clinesmith.

### D. Andrew McCabe

McCabe similarly acted outside the scope of his employment in advancing and continuing the Crossfire Hurricane investigation by approving FISA warrants he knew were uncorroborated and false. With respect to Crossfire Hurricane, McCabe knew that Michael Sussman was working on behalf of Hillary Clinton and other democratic operatives when he provided information regarding a purported Alfa Bank connection with the Plaintiff. Am. Compl. ¶ 415. As alleged in the Amended Complaint, the FBI heavily relied upon the Steele Dossier in issuing the subject FISA warrants. However, McCabe was fully aware that the Dossier was not legitimate, and it therefore did not serve as a proper basis for the FISA warrants. Indeed, McCable testified before the House Intelligence Committee that the FBI was unable to "prove the accuracy" of the Dossier, nor was he able to verify whether Steele's reporting on Page was true or not. *Id*. at 421. Indeed, McCabe further admitted before the Senate Judiciary Committee in 202 that the subject FISA warrant would not have been obtained without the Dossier. *Id*. at 428.

McCabe's conduct in continuing the Crossfire Hurricane investigation despite knowing that it lacked a legitimate basis, as well obtaining FISA warrants with information that he knew to be false, indicate that he acted outside the scope of his employment in maliciously prosecuting the Plaintiff. Like the other Defendants, McCabe repeatedly acted in bad faith and sought to pursue his own personal political agenda while disregarding the interests of the FBI. As such, it cannot be found that McCabe was acting within the scope of his employment in relation with his oversight of Crossfire Hurricane.

## II. PLAINTIFF IS ENTITLED TO ENGAGE IN LIMITED DISCOVERY TO DETERMINE WHETHER THE DEFENDANTS CONDUCT TOOK PLACE WITHIN THE SCOPE OF THEIR EMPLOYMENT

At the very least, dismissal on this ground would be improper and Plaintiffs are entitled to discovery on the scope of employment. It is well-established that the scope of a defendant's employment is an issue of fact that generally cannot be determined at the motion to dismiss stage. *Weinberg v. Johnson*, 518 A.2d 985, 988-89 (D.C. Cir. 1986) (question of scope of employment properly submitted to jury); *see also Lyon v. Carey*, 533 F.2d 649, 651 (D.C. Cir. 1976) (same); *Brown v. Argenbright Sec.*, 782 A.2d 752, 757 (D.C. 2001). The Attorney General's certifications are not afforded any particular evidentiary weight, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), since they merely state, in conclusory terms and without elaboration, that

Defendants' conduct was within the scope of employment. To survive a motion to dismiss, Plaintiffs need only allege facts that, if true, would establish that the defendant acted outside the scope of his employment. *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Plaintiff have done so. *See Generally,* Am. Compl. Because there is, at a minimum, a material dispute as to whether Defendants were acting within the scope of their employment, this Court cannot dismiss these claims at this stage. *Stokes*, 327 F.3d at 1214 (*citing Kimbro v. Velten*, 30 F.3d 1501, 1508 (D.C. Cir. 1994)).

### III. THE DISTRICT COURT PROPERLY RETAINS SUBJECT MATTER JURISDICTION IN THE INSTANT MATTER

For the reasons stated above, it is not proper for the United States to be substituted for the federal defendants under the Westfall Act as the defendants were not acting within the scope of their employment. As such, the exhaustion requirement contained in the Federal Torts Claims Act is irrelevant to the District Court's jurisdiction. However, in the event that the Court determines that the Plaintiff has not exhausted administrative remedies, Plaintiff requests that any dismissal be a dismissal without prejudice to allow the Plaintiff to pursue administrative remedies.

### CONCLUSION

For the foregoing reasons, the Defendants' motion must be denied in its entirety.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 4th day of August, 2022, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222


 /s/ Pete*r Ticktin*
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
Our Matter No.: 22-0062

and

**HABBA MADAIO & ASSOCIATES LLP**
1430 US Highway 206
Suite 240
Bedminster, New Jersey 07921
ALINA HABBA, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 018592010
MICHAEL T. MADAIO, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 070752013
Our Matter No.: 4500-74