IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 2:22-cv-14102-DMM

DONALD J. TRUMP,

       Plaintiff,

v.

HILLARY R. CLINTON, et al.,

       Defendant.

_____

## PLAINTIFFS' RESPONSE TO RODNEY JOFFE'S
## MOTION TO DISMISS AMENDED COMPLAINT

The Plaintiff, DONALD J. TRUMP, by and through his undersigned attorneys hereby submit this, his Response to the Defendant, RODNEY JOFFE's (hereinafter referred to as "Joffe") Motion to Dismiss the Amended Complaint, and in support, state as follows:

1. The Motion to Dismiss should be denied in its entirety, and Joffe should be required to file an Answer, as the Amended Complaint raises a viable cause of action against him.

2. Joffe attempts to escape the Plaintiff's Amended Complaint by arguing a lack of contact with Florida.

3. The sole argument upon which Joffe relies is a lack of personal jurisdiction. However, this argument fails as the alleged actions against Joffe relate to his exploitation of his position within Neustar Inc., and several other data companies to obtain confidential, proprietary, non-public information, data and/or other records relating to Donald J. Trump to create an injurious falsehood to harm Donald J. Trump's political reputation and to attempt to create a connection

between the plaintiff and Alfa Bank. When any connection was inevitably not found, Joffe decided to fake the evidence and information before providing the fraudulent information to the FBI.

4. As a threshold matter, Joffe's personal jurisdiction analysis misses the mark entirely as he ignores the relevant provisions of the RICO statute as they pertain to service. Section 1965(d) of the RICO statute provides for service in any judicial district in which the defendant is found. The Eleventh Circuit has found that "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *See Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Here, Section 1965(d) is the controlling, statutory source of personal jurisdiction over Joffe.

5. In *Republic of Panama*, the Eleventh Circuit reversed a trial court's Rule 12(b)(2) dismissal of a RICO civil lawsuit holding that personal jurisdiction could be exercised over defendants even if they did not have significant contacts with the forum state under RICO's nationwide service provision. 119 F.3d at 948. District courts in this circuit have repeatedly ruled consistently with the holding of Republic of Panama and broadly construed 18 U.S.C. § 1965(d). *See Prou v. Giarla*, 62 F. Supp. 3d 1365, 1373 (S.D. Fla. 2014) (holding that the nationwide service of process provision can be used to exercise personal jurisdiction over claims brought pursuant to the federal RICO statute); *BankAtlantic v. Coast to Coast Contractors*, 947 F. Supp. 480, 484 (S.D. Fla. 1996) (holding that because RICO provides for nationwide service of process, it is the statutory basis for personal jurisdiction in a RICO action, not Florida's long-arm statute).

6. Under RICO's nationwide service provision, a defendant is only required to have minimum contacts with the United States as whole in order to satisfy due process and enable a court to exercise personal jurisdiction over such defendant. *See Prou*, 62 F. Supp. 3d at 1372–73. In other words, there is no requirement that a defendant establish minimum contacts with the forum

district itself, but rather, a defendant's presence within the United States satisfies any due process concerns where nationwide service of process is authorized—unless the defendant satisfies its "burden of demonstrating that assertion of jurisdiction in this forum will make litigation 'so gravely difficult and inconvenient' that he will be at a 'severe disadvantage' in comparison [to Plaintiff]," which Joffe has not attempted to do and cannot do here. *Id*.

7.      Here, Plaintiff has established a prima facie case of personal jurisdiction against Joffe. The Amended Complaint identifies that Joffe resides in Virginia. (D.E. 177 ¶ 37). The Amended Complaint seeks relief from Joffe's wrongful conduct under the RICO statute, which is outlined both below and in Plaintiff's Opposition to Defendants' consolidated motion. Pursuant to RICO's nationwide service of process provision, Joffe, as an individual residing in the United States, has sufficient minimum contacts with the United States to satisfy constitutional due process requirements and thus is subject to the personal jurisdiction of this Court. *See generally* 18 U.S.C. § 1965(d); see also *BankAtlantic*, 947 F. Supp. at 488 ("[A] defendant's mere presence within the United States establishes 'minimum contacts' and satisfies any due process concerns that may exist where nationwide service of process is authorized.")

8.      Therefore, Joffe has not identified any viable legal impediment to this Court's exercise of personal jurisdiction over him as a defendant in this action.

9.      Notwithstanding, the Court may still exercise personal jurisdiction over Joffe under its traditional "minimum contacts" analysis. "[I]n order to subject a defendant to a judgment in personam*,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

10. Where one state is the focal point both of the story and of the harm suffered, jurisdiction over defendants is proper in that same state based on the "effects" of the defendants conduct in that state even though the conduct occurs in another state. *See Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 1486 (1984). Both a writer and an editor for a publication should reasonably expect to be hauled into court within the state where an article is circulated and published. *Id.* at 789-90. Similarly, one that directly provides a writer and an editor with the information that is used within the published article should also reasonably expect to be sued in the court of the state where the article is distributed and published. A plaintiff, who is injured in Florida, should not have to go to the defendant's home state to redress harm done from the individual who knowingly caused the injury within Florida. *Id.* at 790.

11. "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). See also *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Thus, it is certainly relevant to the jurisdictional inquiry that petitioner is seeking to recover damages suffered in all states in this one suit. The contacts between the respondent and the forum must be judged in the light of that claim, rather than a claim only for damages sustained in New Hampshire. That is, the contacts between respondent and New Hampshire must be such that it is 'fair' to compel respondent to defend a multistate lawsuit in New Hampshire seeking nationwide damages for all copies of the five issues in question, even though only a small portion of those copies were distributed in New Hampshire." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 1478-79 (1984) (establishing that the minimum contacts required for personal jurisdiction can be met for a plaintiff who is seeking to recover damages suffered in all states in one suit even when only a small number of the offending copies were distributed within that state.)

12. "A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory… False statements of fact harm both the subject of the falsehood and the readers of the statement." *Hustler Mag., Inc.*, 465 U.S. at 776, 104 S. Ct. at 1479 (1984) (explaining that false statements harm readers of the statement within the forum state and that one can be liable for those false statements within the state readers are in.).

13. By using his position within Neustar and other data companies, Joffe accessed information, which he should have never accessed, in an attempt to provide Sussman with information to present to the FBI and to include with the dossier created by Christopher Steele to attempt to corroborate the dossier's claims.

14. The information which Joffe provided to Sussman through Neustar was used by Sussman to present false information to the FBI for the purpose of beginning an investigation of Donald J. Trump. Joffe directly assisted Sussman in fabricating evidence that would be used as the basis of the FBI's investigation and which was published in the national media.

15. By providing Sussman with this information, the effects of the FBI investigation and the published dossier were felt within the State of Florida. The document, newspaper articles, online publications, and information about the FBI investigation was subsequently read and published within the State of Florida. This false and baseless investigation harmed both the Plaintiff, Donald J. Trump, and residents of the State of Florida who were subjected to these injurious falsehoods. The minimum contacts necessary to establish personal jurisdiction have been met by Donald J. Trump to haul Joffe into Florida federal court because that information and documents, of which Joffe provided much of the information relied upon within the information presented to the FBI, was published, accessed, and read within the State of Florida.

16. This Court is also able to establish jurisdiction under Florida's long-arm statute. Under § 48.193(1)(a)(2) Florida Statutes, an individual may be subjected to the jurisdiction of courts in Florida if he, whether or not a citizen of Florida, commits a tortious act within the State of Florida. As the harm was incurred in the State of Florida, the tortious acts averred in the Amended Complaint were committed in the State of Florida.

17. Moreover, the federal courts are permitted to establish supplemental jurisdiction over claims that "form part of the same case or controversy." 28 U.S.C. § 1367(a). Joffe's acts and omissions in this lawsuit arise out of or relate to his conduct which affects, among other jurisdictions, Florida. Joffe is a major part of this case and not including him as a party within this case would be immensely prejudicial to the Plaintiff.

18. Although based on *Calder* and *Keeton* there is clearly enough for this Court to deny Defendant's motion, should the Court consider otherwise, it is respectfully requested that the Court deny Dolan's motion to dismiss for lack of personal jurisdiction without prejudice, and Plaintiff be granted jurisdictional discovery into the relationship between Defendant and Florida with the scope to be set by the Court.

19. "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984); *see also Jessop v. Penn Nat'l Gaming, Inc.*, No. 618CV1741ORL37DCI, 2019 WL 960031, at *2 (M.D. Fla. Jan. 25, 2019) ("Jurisdictional discovery is appropriate when there is a dispute about the 'facts that would support [the plaintiff's] allegations of jurisdiction.'").

20. The Eleventh Circuit has also held that "federal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to

6

jurisdiction." *RMS Titanic, Inc. v. Kingsmen Creatives*, Ltd., 579 F. App'x 779, 790 (11th Cir. 2014). The Eleventh Circuit also held that a plaintiff has a qualified right to conduct jurisdictional discovery when the facts are intertwined with the merits of the case:

> The upshot of these hydraulic pressures is that, when facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a "qualified right to jurisdictional discovery," meaning that a district court abuses its discretion if it completely denies a party jurisdictional discovery, unless that party unduly delayed in propounding discovery or seeking leave to initiate discovery.

*Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017)

21. Because resolution of the issues presented before the Court goes to the merits as well as to personal jurisdiction, jurisdictional discovery would be appropriate under the controlling Eleventh Circuit precedent. *Id.*

22. "A motion to dismiss is designed to test the legal sufficiency of the complaint, not to determine factual issues, and the allegations of the complaint must be taken as true and all reasonable inferences therefrom construed in favor of the nonmoving party. *See, e.g.*, *Ralph v. City of Daytona Beach*, 471 So. 2d 1, 2 (Fla. 1983) ("For the purposes of a motion to dismiss . . . allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff."). *Fla. Bar v. Greene*, 926 So. 2d 1195, 1199 (Fla. 2006).

23. The Defendant argues that insufficient evidence has been presented to show that Joffe engaged in intentional conduct in Florida, yet Joffe directly contributed to the information that was presented to the FBI and ultimately distributed in Florida, among other areas. It is irrelevant that Joffe has never traveled to or conducted business in Florida because his alleged actions and contributions to Sussman directly led to the dissemination of false information within Florida that harmed the Plaintiff.

24. Joffe knew that the publication of the injurious falsehoods he helped to conjure were going to be published in publications which are published throughout the United States, in every state and territory. He also knew that Florida is a state in the United States which was an important one in which the false information was to be published.

25. Joffe was used by Michael Sussman for Joffe's position in Neustar for the purpose of obtaining damaging information against the Plaintiff. (DE 177 ¶ 5).

26. Joffe was operating within the scope of his employment with Neustar during the time he was committing these acts and omissions. (DE 177 ¶ 37).

27. Through Neustar, Joffe had access to numerous data sources, including non-public and proprietary data, because of his position and he was in communication with high-ranking officials of the Clinton Campaign and/or the DNC up to the 2016 Presidential election. (DE 177 ¶ 129-131).

28. Joffe was given the task of exploiting his access to the information gathering services and non-public data of Neustar and his interest in other Tech and Data Companies to dredge up confidential, proprietary, non-public information, data and /or records relating to Donald J. Trump, the Trump Campaign, and the Trump organization to reveal wrongdoing that could be the basis of an injurious falsehood to harm Donald J. Trump's political reputation. (DE 177 ¶ 134). If no damaging information could be found, then the data would be falsified and/or presented in a fraudulent manner to create an "inference" of wrongdoing. (DE 177 ¶ 135).

29. Both Sussman and Joffe agreed to simultaneously and surreptitiously present evidence to law enforcement to self-corroborate their respective efforts which is a tactic known as "circular reporting.". (DE 177 ¶ 139, 172).

30. Joffe used his access to non-public data sources to search for a link between Donald J. Trump or the Trump Organization and Alfa Bank. (DE 177 ¶ 140).

31. Joffe unlawfully searched, gathered, and mined internet data to obtain derogatory information on Donald J. Trump. (DE 177 ¶ 141). Joffe accessed including without limitation, domain name system (DNS) internet traffic of (i) a healthcare provider, (ii) Trump Tower, (iii) Donald Trump's private apartment, and (iv) the Executive Office of the President of the United States. (DE 177 ¶ 142). Joffe also spoofed the information by disguising the origin of the computer communications and making them appear falsely to originate from a particular IP address. (DE 177 ¶ 142(c)).

32. Neustar had come to access and maintain dedicated servers for the Executive office of the United States through its DNS resolution services, and Joffe had access to those systems and exploited this arrangement by mining the Executive office of the United States' DNS internet traffic and other data to attempt to gather derogatory information about Donald J. Trump. (DE 177 ¶ 143-144).

33. On July 29, 2016, Elias, Sussman, Joffe, Fritsch and Laura Seago, had an in-person meeting at the office of Perkins Coie to discuss allegations of communications between the Trump organization and Alfa Bank for the "Clinton" matter, and Christopher Steele was also present the same day for a meeting with Sussman. (DE 177 ¶ 175-176).

34. Sussman had another meeting with Elias and Joffe and billed the meeting to the Clinton Campaign. (DE 177 ¶ 180). A conference call with Joffe in attendance was also billed to the Clinton Campaign. (DE 177 ¶ 181). On August 19, 2016, Sussman again met with Joffe and billed his time to the Clinton campaign once again. (DE 177 ¶ 183).

35. Email correspondence has been documented which indicates that Joffe regularly sent research requests for data to see if any information relating to Trump or Alfa Bank could be found. (DE 177 ¶ 185-186).

36. On August 20, 2016, Joffe manipulated a sales form on two different websites to fake the email-addresses and make them appear to communicate with each other. (DE 177 ¶ 187). Joffe believed this fake inference was sufficient enough that any opposition, professional governments, or investigative journalists would come up with the same thing. (DE 177 ¶ 187(a)).

37. Joffe admitted that the narrative they were trying to prove, which he regularly urged his team of researchers to pursue, was merely a "red herring" with no factual basis regarding a connection between Trump and Alfa Bank. (DE 177 ¶ 189-190). Knowing that the data relating to Trump and Alfa Bank was false and a "red herring," Joffe, with others, began drafting multiple "White Papers" summarizing the false allegations around September 5, 2016. (DE 177 ¶ 193).

38. Joffe sent the white paper to his team on or about September 14, 2016. (DE 177 ¶ 200). His team reviewed the white paper and sent comments back to Joffe for his review. (DE 177 ¶ 201).

39. After Sussman's meeting with the FBI on September 19, 2016, Sussman continued to coordinate with Joffe to disseminate Russian bank allegations to the media and to law enforcement. (DE 177 ¶ 205, 216).

40. On or about October 2, 2016, Joffe contacted the FBI Special Agent (SA) Tom Grasso and provided them with "information relating to communications between the Trump Campaign and some entity in Russia." (DE 177 ¶ 218). Joffe provided at least one IP address, pertaining to an individual connected to Alfa Bank, to SA Grasso. (DE 177 ¶ 219). At the time Joffe contacted SA Grasso, Joffe was a confidential human source (CHS) for the FBI. (DE 177 ¶

220). Joffe requested SA Grasso to not disclose his identity to other people within the FBI. (DE 177 ¶ 222). Joffe also failed to disclose to SA Grasso the source of the data he was providing to the FBI, and failed to disclose his connections to Fusion GPS, Perkins Coie, the DNC, or the Clinton Campaign. (DE 177 ¶ 223).

41. The same day Joffe spoke with Grasso, he sent and email- to Sussman to arrange an in-person meeting the following day. (DE 177 ¶ 224). The Clinton Campaign, the DNC, Perkins Coie, and Fusion GPS were well aware of Joffe's intention to feed false information to the FBI. (DE 177 ¶ 225).

42. Throughout late 2016 and early 2017, Joffe continued to be a part of this conspiracy, and he continued to compile additional information regarding the Alfa Bank allegations and gathered more false data allegedly involving Donald J. Trump's computer networks which they claimed tied him to Russia. (DE 177 ¶ 297-298).

43. Daniel Jones testified that he "worked with Sussman and the DNC to obtain information from Rodney Joffe, about alleged computer communications between a Trump server and the Alfa Bank in Russia." (DE 177 ¶ 320). Daniel Jones also testified that he received 37 million DNS lookups from Sussman that he quickly determined had been provided to Sussman by the computer executive Rodney Joffe. (DE 177 ¶ 321).

44. On October 8, 2018, Rodney Joffe sat down for a New Yorker article and admitted that he had continued to monitor the Plaintiff's private, non-public information, and that he had been to one to provide Daniel Jones with the 37 million Internet records to be examined. (DE 177 ¶ 324). With the false information brought to the by Joffe, the New Yorker article concluded that the Alfa Bank Trump collusion allegations were legit, and the general public was led to believe,

11

falsely, that there was a connection between Trump and Alfa Bank when no connection existed. (DE 177 ¶ 325).

45. Joffe, through his position at Neustar, continued exploiting his access to non-public data sources throughout 2017, and confirmed in an email to Steve De Jong, that he had four jobs that searched for Trump data and included a list of the related queries. (DE 177 ¶ 327-328).

46. Ultimately, Joffe's role within the conspiracy was to lead a cyber-based, data-driven attack against the Plaintiff. (DE 177 ¶ 534).

47. Joffe was a part of the various types of conspiracies to bring false accusations against the Plaintiff, and any attempt to claim that his actions in searching through private data sources and later fabricating false information to provide to the FBI had no effect on the Plaintiff here in Florida is misleading.

48. Dismissing Joffe from the Amended Complaint would be immensely prejudicial to the Plaintiff, and the Motion to Dismiss the Amended Complaint should be denied.

49. Joffe personally fabricated information and personally went to the FBI with the false information as his part in the conspiracy.

50. The Plaintiff has felt the effects of Joffe's actions within the State of Florida, and had it not been for Joffe's actions, then the damages would not have been felt within Florida.

51. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222


 /s/ Pete*r Ticktin*
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
Our Matter No.: 22-0062

and

**HABBA MADAIO & ASSOCIATES LLP**
1430 US Highway 206
Suite 240
Bedminster, New Jersey 07921
ALINA HABBA, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 018592010
MICHAEL T. MADAIO, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 070752013
Our Matter No.: 4500-74

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 4th day of August, 2022, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

    /s/ *Peter Ticktin*

| | |
|---|---|
| **THE TICKTIN LAW GROUP**<br>Peter Ticktin, Esquire<br>Florida Bar No.: 887935<br>Serv512@LegalBrains.com<br>Jamie Alan Sasson, Esquire<br>Florida Bar No.: 10802<br>Serv513@LegalBrains.com<br>270 SW Natura Avenue<br>Deerfield Beach, Florida 33441-1610<br>Telephone: (954) 570-6757<br>*Attorneys for the Plaintiff* | **HABBA MADAIO & ASSOCIATES**<br>Alina Habba, Esquire<br>ahabba@habbalaw.com<br>Michael T. Madaio, Esquire<br>mmadaio@habbalaw.com<br>1430 US Highway 206 Suite 240<br>Bedminster, New Jersey 07921<br>Telephone: (908) 869-1188<br>*Attorneys for the Plaintiff* |

## SERVICE LIST

| | |
|---|---|
| Anthony Erickson-Pogorzelski, Esquire<br>Fla. Bar No. 619884<br>Anthony.Pogorzelski@usdoj.gov<br>**Assistant U.S. Attorney**<br>99 N.E. 4th Street, Suite 300<br>Miami, Florida 33132<br>Telephone: 305- 961-9296<br>*Attorneys for Defendant*<br>*United States of America*<br><br>David E. Kendall, Esquire<br>dkendall@wc.com<br>**Williams & Connolly, LLP**<br>725 12th Street NW<br>Washington, DC 20005-3901<br>Telephone: 202-434-5000<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Hillary R. Clinton*<br><br>David Oscar Markus, Esquire<br>dmarkus@markuslaw.com<br>**Markus/Moss, LLP** | 40 N.W. Third Street<br>Penthouse 1<br>Miami, Florida 33128<br>Telephone: 305-379-6667<br>*Attorneys for the Defendant*<br>*Hillary R. Clinton*<br><br>Katherine M. Turner, Esquire<br>kturner@wc.com<br>**Williams & Connolly, LLP**<br>725 12th Street NW<br>Washington, DC 20005-3901<br>Telephone: 202-434-5000<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Hillary R. Clinton*<br><br>Michael J. Mestitz, Esquire<br>mmestitz@wc.com<br>**Williams & Connolly, LLP**<br>725 12th Street NW<br>Washington, DC 20005-3901 |

Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*

Jonathan Edward Levine, Esquire
Jonathan.levine@levinepllc.com
**Levine & Associates, PLLC**
5311 Lee Highway
Arlington, Virginia 22207
Telephone: 703-525-2668
*Attorney for Defendant*
*Charles Halliday Dolan, Jr.*

George R.A. Doumar, Esquire
gdoumar@doumarmartin.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
Telephone: 703-352-1300
*PRO HAC VICE*
*Attorney for Defendant*
*Charles Halliday Dolan, Jr*

Franklin G. Monsour, Jr., Esquire
fmonsour@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
51 West 52nd Street
New York, New York 10019
Telephone: 202-339-8533
*PRO HAC VICE*
*Attorney for Defendant*
*Igor Danchenko*

Diana Marie Fassbender, Esquire
dszego@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
1152 15th Street NW
Washington, D.C. 20005
*PRO HAC VICE*
*Attorney for Defendant*
*Igor Danchenko*

Jennifer Olmedo-Rodriguez, Esquire
Florida Bar No.: 605158
Jennifer.olmedo@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
2 South Biscayne Boulevard, Suite 1500
Miami, Florida 33131
Telephone: 305-347-4080
*Attorney for the Defendant*
*Neustar, Inc.*

Samantha L. Southall, Esquire
Samantha.southall@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
50 South 16th Street, Suite 3200
Two Liberty Place
Philadelphia, PA 19102
Telephone: 215-665-3884
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar, Inc*

Adam Seth Fels, Esquire
afels@ffslawfirm.com
Florida Bar No.: 0114917
**Fridman Fels & Soto, PLLC**
2525 Ponce de Leon Blvd., Ste 750
Coral Gables, FL 33134
Telephone: 305-569-7701
*Attorney for the Defendant*
*Bruce Ohr and Nellie Ohr*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

Kevin P. Crenny, Esquire
kcrenny@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

| | |
|---|---|
| Joshua Levy, Esquire<br>jal@levyfirestone.com<br>**Levy Firestone Muse, LLP**<br>900 17th Street NW, Suite 1200<br>Washington, D.C., 20006<br>Telephone: 202-845-3215<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Fusion GPS*<br>*Glenn Simpson*<br>*Peter Fritsch* | Eugene K. Pettis, Esquire<br>cmarr@hpslegal.com<br>Service@hpslegal.com<br>**Haliczer Pettis & Schwamm P.A.**<br>100 SE 3rd Avenue, 7th Floor<br>Fort Lauderdale, FL 33394<br>Telephone: 954-523-9922<br>*Attorneys for Defendant*<br>*Marc Elias* |
| Rachel Clattenburg, Esquire<br>rmc@levyfirestone.com<br>**Levy Firestone Muse, LLP**<br>900 17th Street NW, Suite 1200<br>Washington, D.C., 20006<br>Telephone: 202-845-3215<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Fusion GPS*<br>*Glenn Simpson*<br>*Peter Fritsch* | Debra P. Klauber, Esquire<br>dklauber@hpslegal.com<br>Service@hpslegal.com<br>**Haliczer Pettis & Schwamm P.A.**<br>100 SE 3rd Avenue, 7th Floor<br>Fort Lauderdale, FL 33394<br>Telephone: 954-523-9922<br>*Attorneys for Defendant*<br>*Marc Elias* |
| Joshua Berman, Esquire<br>Joshua.Berman@cliffordChance.com<br>**Clifford Chance US, LLP**<br>2011 K. Street, NW<br>Washington, D.C., 20006-1001<br>Telephone: 202-912-5000<br>*PRO HAC VICE*<br>*Attorney for Defendants*<br>*Nellie Ohr and Bruce Ohr* | April A. Otterberg, Esquire<br>aotterberg@jenner.com<br>**Jenner & Block, LLP**<br>353 N. Clark Street<br>Chicago, Il 60654-3454<br>Telephone: 312-222-9350<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Marc Elias* |
| Benjamin Peacock, Esquire<br>Benjamin.Peacock@cliffordChance.com<br>**Clifford Chance US, LLP**<br>2011 K. Street, NW<br>Washington, D.C., 20006-1001<br>Telephone: 202-912-5000<br>*PRO HAC VICE*<br>*Attorney for Defendants*<br>*Nellie Ohr and Bruce Ohr* | Reid J. Schar, Esquire<br>rschar@jenner.com<br>**Jenner & Block, LLP**<br>353 N. Clark Street<br>Chicago, Il 60654-3454<br>Telephone: 312-222-9350<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Marc Elias*<br><br>Roberto Martinez, Esquire<br>Bob@colson.com<br>becky@colson.com<br>Florida Bar No.: 305596<br>**Colson Hicks Eidson, P.A.,** |

16

255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*

Zachary Lipshultz, Esquire
zach@colson.com
Florida Bar No.: 123594
**Colson Hicks Eidson, P.A.,**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*

Michael S. Bosworth, Esquire
Michael.Bosworth@lw.com
**Latham & Watkins, LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-916-1221
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Michael F. Houlihan, Esquire
Michael.Houlihan@lw.com
**Lathem & Watkins, LLP**
200 Clarendon Street
Boston, MA 02116
Telephone: 617-880-4642
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Sean M. Berkowitz, Esquire
Sean.Berkowitz@lw.com
**Latham & Watkins, LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Stephen P. Barry, Esquire
Stephen.Barry@lw.com
**Latham & Watkins, LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Eleni Kastrenakes Howard, Esquire
Eleni.kastrenakeshoward@akerman.com
Florida Bar No.: 73073
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

Howard Jay Harrington, Esquire
Jay.harrington@akerman.com
Florida Bar No.: 0118719
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

F. Joseph Warin, Esquire
fwarin@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

| | |
|---|---|
| Geoffrey M. Sigler, Esquire<br>gsigler@gibsondunn.com<br>**Gibson Dunn & Crutcher, LLP**<br>1050 Connecticut Avenue NW<br>Washington, D.C., 20036-5306<br>Telephone: 202-887-3609<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Perkins Coie, LLP* | Shawn G. Crowley, Esquire<br>scrowley@kaplanhecker.com<br>**Kaplan Hecker & Fink, LLP**<br>350 5th Avenue, 63rd Floor<br>New York, New York 10118<br>Telephone: 212-763-0883<br>*PRO HAC VICE*<br>*Attorney for the Defendants*<br>*Democratic National Committee*<br>*DNC Services Corporation* |
| Katherine M. Meeks, Esquire<br>kmeeks@gibsondunn.com<br>**Gibson Dunn & Crutcher, LLP**<br>1050 Connecticut Avenue NW<br>Washington, D.C., 20036-5306<br>Telephone: 202-887-3609<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Perkins Coie, LLP* | Maximillian Feldman, Esquire<br>mfeldman@kaplanhecker.com<br>**Kaplan Hecker & Fink, LLP**<br>350 5th Avenue, 63rd Floor<br>New York, New York 10118<br>Telephone: 212-763-0883<br>*PRO HAC VICE*<br>*Attorney for the Defendants*<br>*Democratic National Committee*<br>*DNC Services Corporation* |
| Nancy E. Hart, Esquire<br>nhart@gibsondunn.com<br>**Gibson Dunn & Crutcher, LLP**<br>1050 Connecticut Avenue NW<br>Washington, D.C., 20036-5306<br>Telephone: 202-887-3609<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Perkins Coie, LLP* | Roberta A. Kaplan, Esquire<br>rkaplan@kaplanhecker.com<br>**Kaplan Hecker & Fink, LLP**<br>350 5th Avenue, 63rd Floor<br>New York, New York 10118<br>Telephone: 212-763-0883<br>*PRO HAC VICE*<br>*Attorney for the Defendants*<br>*Democratic National Committee*<br>*DNC Services Corporation* |
| Gerald E. Greenberg, Esquire<br>ggreenberg@gsgpa.com<br>Florida Bar No.: 440094<br>**Gelber Schachther & Greenberg, P.A.**<br>One South East Third Avenue, Suite 2600<br>SunTrust International Center<br>Miami, Florida 33131<br>Telephone: 305-728-0950<br>*Attorney for the Defendant*<br>*Democratic National Committee*<br>*DNC Services Corporation*<br>*Debbie Wasserman Schultz* | Edward Soto, Esquire<br>Edward.soto@weil.com<br>Florida Bar No.: 0265144<br>**Weil Gotshal & Manges, LLP**<br>1395 Brickell Avenue, Suite 1200<br>Miami, Florida 33131<br>Telephone: 305-577-3100<br>*PRO HAC VICE*<br>*Attorney for the Defendant*<br>*Rodney Joffe* |

Steven Tyreell, Esquire
Steven.tyrrell@weil.com
**Weil, Gotshal & Manges, LLP**
2001 M St. NW, Suite 600
Washington, D.C. 20063
Telephone:
*PRO HAC VICE*
*Attorney for the Defendant*
*Rodney Joffe*

Noah Brozinsky, Esquire
nbrozinsky@kaiserDillon.com
Florida Bar No.: 010470
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Christopher Muha, Esquire
CMuha@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

William Pittard, Esquire
Wpittard@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Paola Pinto, Esquire
ppinto@schertlerlaw.com
Florida Bar No.: 1013933
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004

Telephone: 202-628-4155
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

Robert P. Trout, Esquire
Rtrout@schertlerlaw.com
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Telephone: 202-628-4155
*PRO HAC VICE*
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

William R. Barzee, Esquire
williambarzee@barzeeflores.com
**Barzee Flores**
Courthouse Center, Penthouse One
40 NW Third Street
Miami, Florida 33128
Telephone: 3025-374-3998
*Counsel for the Defendants*
*Robert E. Mook*
*Jack Sullivan*

Andrew J. Ceresney, Esquire
aceresney@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Isabela M. Garcez, Esquire
imgarcez@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*

19

*Robert E. Mook*

Wendy B. Reilly, Esquire
wbreilly@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Brian L. Stekloff, Esquire
bstekloff@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

Sarah E. Neuman, Esquire
sneuman@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

James E. Gillenwater, Esquire
gillenwaterj@gtlaw.com,
**Greenberg Traurig, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
*Attorney for the Defendant*
*Neustar Security Services*

Allison S. Eisen, Esquire
aeisen@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

Kathryn E. Garza, Esquire
kgarza@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

John M. McNichols, Esquire
jmcnichols@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*