IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Donald J. Trump,

              Plaintiff,

    v.

Hillary R. Clinton *et al.*,

              Defendants.

Civil Action No. 2:22-14102-DMM

**HILLARY CLINTON'S, HFACC, INC.'S, JOHN PODESTA'S, ROBERT MOOK'S,
JAKE SULLIVAN'S, DNC'S, DNC SERVICES CORPORATION'S, DEBBIE
WASSERMAN SCHULTZ'S, PERKINS COIE LLP'S, MARC ELIAS'S, MICHAEL
SUSSMANN'S, CHARLES HALLIDAY DOLAN, JR.'S, FUSION GPS'S, GLENN
SIMPSON'S, PETER FRITSCH'S, NELLIE OHR'S, BRUCE OHR'S, IGOR
DANCHENKO'S, RODNEY JOFFE'S, NEUSTAR SECURITY SERVICES'S, AND
NEUSTAR, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

I.  PLAINTIFF'S CLAIMS ARE TIME-BARRED .............................................................. 1

    A.  Plaintiff Is Not Entitled to Equitable Tolling ........................................................... 2

    B.  Plaintiff's RICO and RICO-Conspiracy Claims Are Time-Barred. ......................... 3

        1.  Statutory Tolling Does Not Apply. ............................................................... 3

        2.  Fraudulent Concealment Does Not Apply Because Plaintiff Was Aware of His Claims ..................................................................................... 5

        3.  The Discovery Rule Does Not Toll Plaintiff's RICO Claim. ........................ 5

    C.  Plaintiff's Other Claims Are Time-Barred. .............................................................. 7

II.  EACH OF PLAINTIFF'S CLAIMS FAILS ON THE MERITS ....................................... 7

    A.  Plaintiff's Civil RICO Claim (Count I) and Conspiracy Claim (Count II) Fail on Multiple Independent Grounds. ..................................................................... 7

    B.  Plaintiff Has Not Stated Claims for Injurious Falsehood (Count III) and Conspiracy To Commit Injurious Falsehood (Count IV). ...................................... 15

    C.  Plaintiff Has Not Stated Claims for Malicious Prosecution (Count V) or for the Related Conspiracy Claim (Count VI). ......................................................... 17

    D.  Plaintiff Has Not Stated a Claim Under the Computer Fraud and Abuse Act (Count VII) ........................................................................................................ 18

    E.  Plaintiff Has Not Stated a Claim Under the Defend Trade Secrets Act (Count VIII). .......................................................................................................... 19

    F.  Plaintiff Has Not Stated a Claim Under the Stored Communications Act (Count IX) ............................................................................................................. 19

    G.  Plaintiff's Agency and Respondeat Superior Counts Have Been Abandoned and Should Be Dismissed (Counts X–XVI). ...................................... 20

III.  PLAINTIFF'S REQUEST FOR LEAVE TO AMEND IS IMPROPER AND SHOULD BE DENIED. ................................................................................................... 20

CONCLUSION ......................................................................................................................... 20

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*777 Partners LLC v. Pagnanelli*, No. 20-cv-20172, 2021 WL 2038175 (S.D. Fla. Mar. 8, 2021) ..................................................................................................................................18

*Al-Rayes v. Willingham*, 914 F.3d 1302 (11th Cir. 2019).................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................1

*Asinmaz v. Semrau*, 42 So. 3d 955 (Fla. 4th DCA 2010) ..............................................................17

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols.*, No. 19-cv-00624-RJC, 2021 WL 4198281 (W.D. Pa. Sept. 15, 2021) ..................................................................................18

*Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017)....................................18, 19

*Caplan v. Johnson*, 414 F.2d 615 (5th Cir. 1969)..........................................................................17

*Chappell v. Rich*, 340 F.3d 1279 (11th Cir. 2003)...........................................................................7

*Clinton v. Jones*, 520 U.S. 681 (1997).............................................................................................2

*Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021)........................................17

*Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012).................................................5

*Doty v. ADT, LLC*, 20-cv-60972, 2020 WL 9071421 (S.D. Fla. Dec. 30, 2020) .........................18

*Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260 (S.D. Fla. 2004) .......................15

*Fedance v. Harris*, 1 F.4th 1278 (11th Cir. 2021) ...........................................................................5

*Fischer v. Debrincat*, 169 So. 3d 1204 (Fla. 4th DCA 2015).......................................................17

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) .......................................................................17

*Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211 (S.D. Fla. 2021) ..........................................20

*Hamilton Grp. Funding v. Basel*, 311 F. Supp. 3d 1307 (S.D. Fla. 2018) ....................................19

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941 (8th Cir. 1999) ..............................13

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ...........................................16

*Henry v. Examworks Inc.*, No. 20-cv-12268, 2021 WL 3440698 (11th Cir. Aug. 6, 2021)............2

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Horgan v. Felton*, 123 Nev. 577 (2007)................................................................16

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (1991).........................3

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ............................................................12

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ............................................................5

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)............................................................10

*Leh v. Gen. Petroleum Co.*, 382 U.S. 54 (1965) ............................................................4

*Live Face on Web, LLC v. Tweople, Inc.*, No. 14-cv-44, 2014 WL 12611359 (M.D. Fla. Sept. 29, 2014) ..............................................................19

*Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203 (11th Cir. 2012) .........................20

*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116 (S.D. Fla. 2019) ............................17

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)............................................................16

*Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*, 687 F. Supp. 962 (D.N.J. 1988)..........................................................4

*Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873 (11th Cir. 2016)............................20

*Pro. Real Estate Invs., Inc. v. Columbia Picture Indus., Inc.*, 508 U.S. 49 (1993) .....................11

*Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45 (E.D.N.Y. 2020) ......................................13

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)............................................................13

*Schwartz v. ADP, Inc.*, No. 21-cv-283, 2021 WL 5760434 (M.D. Fla. Dec. 3, 2021)................19

*Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221 (S.D. Fla. 2013) ............................................12

*Taxinet Corp. v. Leon*, No. 16-cv-24266, 2018 WL 3405243 (S.D. Fla. July 12, 2018) ...............9

*Trump v. Comm. on Ways & Means*, 391 F. Supp. 3d 93 (D.D.C. 2019)........................................3

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020) .......................................................3

*Trump v. Vance*, 140 S. Ct. 2412 (2020) .................................................................3

*United States v. Amri*, No. 17-cr-50, 2017 WL 3262254 (E.D. Va. July 31, 2017) .....................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Grubb*, 11 F.3d 426 (4th Cir. 1993)......................................................................12

*United States v. Lee*, 919 F.3d 340 (6th Cir. 2019) ....................................................................12

*United States v. Ronda*, 455 F.3d 1273 (11th Cir. 2006)..........................................................11

*United States v. Ronga*, 682 F. App'x 849 (11th Cir. 2017) ....................................................11

*United States v. Williams*, 571 F. App'x 887 (11th Cir. 2014)..................................................11

*Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039 (11th Cir. 2015) ...............................................20

*Van Buren v. United States*, 141 S. Ct. 1648 (2021) ................................................................18

*VVIG, Inc. v. Alvarez*, No. 18-cv-23109, 2019 WL 5063441 (S.D. Fla. Oct. 9, 2019) ................9

*Wallace v. Kato*, 549 U.S. 384 (2007) ..................................................................................2, 6

**RULES AND STATUTES**

15 U.S.C. § 16(i)........................................................................................................................3, 4

18 U.S.C. § 1512(b)(3) ...........................................................................................................10, 11

18 U.S.C. § 1512(c)(2)...................................................................................................................12

18 U.S.C. § 1962(c) .........................................................................................................................8

Fed. R. Civ. P. 8 ............................................................................................................................13

Fed. R. Civ. P. 9(b) ..................................................................................................................13, 14

Fed. R. Civ. P. 9(g) .......................................................................................................................16

S.D. Fla. Local Rule 15.1...............................................................................................................20

## INTRODUCTION

Plaintiff's lengthy Opposition largely ignores the legal flaws that Defendants identified in their two rounds of motions to dismiss. In sum, Plaintiff's allegations do not add up to any cognizable claims. As an initial matter, his own tweets confirm his claims are untimely. In an attempt to revive them, Plaintiff urges the Court to invent a novel Presidential tolling doctrine wholly unsupported by case law and belied by his own extracurricular litigation while in office.

Plaintiff's claims fare no better on the merits. He simply reiterates and block-quotes allegations in the Amended Complaint ("AC"), asserting they must be adequate because they are voluminous. But notwithstanding the density of Plaintiff's allegations, each claim is missing necessary legal predicates, devoid of well-pleaded factual allegations, or improperly based on "labels and conclusions or a formulaic recitation of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And where Plaintiff cites cases, they are irrelevant, distinguishable, or—often—contrary to his own position.

Plaintiff's insistence (at 21) that Defendants shared a corrupt motive to harm his "political reputation" and "damag[e] his electability" exposes this suit for what it is: an effort to exact political payback and inflict needless litigation costs on Plaintiff's perceived opponents. But Plaintiff's political grudges are not legally cognizable claims, and nothing in the Opposition overcomes the many deficiencies that require dismissal of the AC with prejudice.

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Plaintiff nowhere acknowledges that his own tweets prove he was on notice of his purported claims, at the very latest, by October 2017. Despite now insisting that he could not have discovered his claims until recently, Plaintiff took to Twitter in 2017 to accuse Clinton, the Democrats, the intelligence community, and others of the very conduct at the heart of the AC: the

alleged fabrication of the Steele Dossier and use of DNS data as part of an effort to build a supposedly false narrative of his connections to Russia.  *See* MTD 3–4.  Because Plaintiff's tweets are judicially noticeable and prove his claims are untimely, the Court should dismiss on statute-of-limitations grounds.  *Henry v. Examworks Inc.*, No. 20-cv-12268, 2021 WL 3440698, at *3 (11th Cir. Aug. 6, 2021).

### A.    Plaintiff Is Not Entitled to Equitable Tolling.

Plaintiff argues (at 2–6) that he is entitled to equitable tolling during his presidential term because "he was preoccupied with carrying out his eminently important presidential duties" and was "tirelessly . . . devoted to serving the Nation and ensuring the well-being of the American people."  *See* Opp. 4, 5.  Plaintiff failed to plead these factual predicates for his latest effort to avoid the statute of limitations.  And any such pleading would be futile, because no authority supports the "rare remedy" of equitable tolling here.  *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

Indeed, the Supreme Court has held that presidential duties do *not* afford a President shelter from civil litigation.  Although Plaintiff relies on language from *Clinton v. Jones*, 520 U.S. 681 (1997), he ignores its holding.  There, the Court rejected a stay of civil litigation during President Clinton's term.  Notwithstanding the burdens of the office, the Court concluded that the President's engagement in civil litigation would not unduly interfere with his responsibilities.  *See* 520 U.S. at 708–10.  It also noted that Congress could provide the President with protections, including "*tolling* or stay of civil claims," *id.* at 709 (emphasis added), but such protection did not exist by default.  *Clinton* therefore confirms that the President enjoys neither an automatic stay of litigation against him, nor, absent Congressional action, tolling of civil claims that may exist during his term.

Plaintiff argues (at 5) that filing suits on his own behalf during his presidency "would have been 'to the detriment . . . of the Nation that the Presidency was designed to serve,'" and would

have prevented him from "fully and faithfully executing his duties as President."  This unpleaded assertion is belied by historical fact:  Plaintiff fails to disclose that he *did* find time during his presidency to file multiple suits "in his personal capacity."  *See, e.g.*, *Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020) (suit brought by "[t]he President, acting in his personal capacity," to enjoin enforcement of a subpoena); *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2028 (2020) (suit brought by "the President in his personal capacity" to challenge subpoenas); *Trump v. Comm. on Ways & Means*, 391 F. Supp. 3d 93, 95 (D.D.C. 2019) (suit brought by Plaintiff "in his personal capacity").  Plaintiff's conduct while in office belies any claim that the equities require his novel theory of tolling, which finds no support in the law or on the facts.

### B.      Plaintiff's RICO and RICO-Conspiracy Claims Are Time-Barred.

### 1.      Statutory Tolling Does Not Apply.

As Plaintiff concedes, the Clayton Act provides for tolling of private suits "[w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations *of any of the antitrust laws*."  15 U.S.C. § 16(i) (emphasis added).  Plaintiff pointedly ignores the critical, limiting prepositional phrase—"of the antitrust laws"—when he paraphrases the provision as providing tolling on the basis of "any civil or criminal proceeding . . . instituted by the United States."  But this statutory language must be construed in light of the phrase limiting which proceedings give rise to statutory tolling.  *See, e.g.*, *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (1991) (construing a subject limited by a prepositional phrase).  Under Section 16(i), private suits are not tolled based on "*any* civil or criminal proceeding"; instead, they are tolled only when the government brings actions to punish violations "of the antitrust laws."  Such tolling would not apply based on government proceedings for violation of other, non-antitrust laws.

3

Thus, even assuming Congress intended to provide analogous tolling when the United States institutes any action to "prevent, restrain, or punish violations of [RICO]"—a proposition with scant support in case law or the text of the statute, *see* MTD 5 n.7—Plaintiff would be entitled to statutory tolling only if he identified a "civil or criminal proceeding . . . instituted by the United States" to punish a RICO violation—not some other alleged violation of law.

None of the suits Plaintiff identifies (at 9–13) were instituted to punish a violation of RICO or any RICO predicate act.  Plaintiff relies (at 9) on *Leh v. General Petroleum Co.*, 382 U.S. 54 (1965), for the proposition that tolling applies as long as the plaintiff's suit is "based in whole or in part on any matter complained of," or bears a "real relation" to the subject matter of the government suit.  But that rule applies only if the predicate under Section 16(i) is met—that is, if the government suit was a proceeding to enforce the antitrust laws (or, here, RICO).  In *Leh*, the parallel government action alleged that companies had conspired to violate the Sherman Act—an antitrust violation.  382 U.S. at 60.  The predicate for Section 16(i) tolling was satisfied, so the Court evaluated whether the private plaintiff's complaint was "based in whole or in part on any matter complained of" in the government's antitrust complaint.  *Id.*

Here, by contrast, the government has not instituted any proceedings to punish a RICO violation, or any predicate act.  No statutory tolling therefore applies, regardless of whether Plaintiff's suit bears a "real relation" to *other* proceedings.  Plaintiff's three out-of-circuit district court cases are not to the contrary.  There, each parallel government suit appeared to involve a RICO predicate.[1]  Plaintiff urges the Court to adopt a tolling rule that not only rewrites the text of

---

[1] *See* Mot. for Jud. Notice, DE 16, *Gianelli v. Schoenfield*, No. 2:21-cv-477 (E.D. Cal. Apr. 15, 2021) (parallel government charges of money laundering and conspiracy to commit wire fraud); Compl. ¶¶ 207–10, DE 1, *Pres. Petrified Forrest v. Renzi*, No. 12-cv-8140 (D. Ariz July 12, 2012) (parallel government indictment for money laundering, wire fraud, extortion, and racketeering); *Pension Fund Mid Jersey Trucking Indus. v. Omni Funding Grp.*, 687 F. Supp. 962, 963 (D.N.J. 1988) (referring to "parallel criminal litigation").

the statute, but which would effectively render the limitations period for RICO claims so expansive as to be meaningless.

### 2. Fraudulent Concealment Does Not Apply Because Plaintiff Was Aware of His Claims.

Plaintiff next argues (at 13–14) that his RICO claim should be tolled due to supposed fraudulent concealment. But as Defendants already noted, MTD 4, "the concealment requirement is satisfied only if the plaintiff shows that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195–96 (1997). In other words, "when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012). The case Plaintiff himself cites reiterates this principle: "The defendant must have actively concealed facts such that the plaintiff remained 'ignoran[t] of a potential claim,' not 'merely ignoran[t] of evidence.'" *Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021) (rejecting tolling and citing *Credit Suisse*).

Plaintiff's own tweets—which describe the Steele Dossier as "put together by my political opponents and a failed spy afraid of being sued," "Clinton made," and connected to "the Comey fix" and "phony Trump/Russia . . . collusion," *see* MTD 3–4—make that clear he was aware of the theory underlying his alleged RICO conspiracy no later than October 29, 2017, notwithstanding any supposed concealment. At most, Plaintiff's arguments (at 13–14) suggest that he may have been ignorant "of evidence," not ignorant "of a potential claim"—exactly what his own authority rejects as a basis for tolling. *See Fedance*, 1 F.4th at 1287.

### 3. The Discovery Rule Does Not Toll Plaintiff's RICO Claim.

Plaintiff asserts (at 15–16) that he alleges "three subsets of categories" of damages that supposedly reset the clock on his RICO claim: (1) "attorneys' fees and costs of defense" related

to "numerous federal investigations"; (2) "losses Plaintiff sustained to his business and political reputation"; and (3) "loss of trade secrets."

As to the first two categories—attorneys' fees and costs of defense, and harm to reputation[2]—Plaintiff asserts (at 15, 16) that he could not have been aware of "the true extent" of these injuries until late in the Mueller Investigation. But "the statute of limitations commences to run[] when the wrongful act or omission results in damages," and a "cause of action accrues *even though the full extent of the injury is not then known or predictable*." *Wallace*, 549 U.S. at 391 (emphasis added). To the extent Plaintiff claims costs associated with government investigations, he concedes (at 15) those costs would have begun no later than May 2017, after the initiation of the Mueller Investigation. To the extent Plaintiff claims reputational harms from media coverage of his alleged connection with Russia, such harms would have begun in October 2016, with the "media blitz" regarding connections between the Trump Organization and Alfa Bank. AC ¶¶ 226–29, 261–69, 274–77. That Plaintiff's injuries supposedly worsened over time does not delay the accrual of his claims.

Plaintiff also asserts (at 16) that he "was not aware that his sensitive, confidential, and proprietary data had been stolen and misappropriated until September 16, [2021]."[3] But the release of DNS information, on which his claims are predicated, was public in October 2016. AC ¶¶ 124–30, 253–77. Plaintiff's own allegations are therefore fatal to his tolling argument.

---

[2]  The second category—damages to Plaintiff's reputation—contradicts the AC's assertion that "Plaintiff does not claim nor seek any compensation for damage to his reputation." AC ¶ 656.

[3]  Plaintiff's Opposition says "September 16, 2017," which would render his claim untimely, but the paragraph cited in his AC says 2021.

C.      **Plaintiff's Other Claims Are Time-Barred.**

Plaintiff argues (at 16) that his malicious prosecution and conspiracy claims are timely. But because Plaintiff was not prosecuted, his claims do not exist at all.  *Infra* pp. 17–18; MTD 6.

Plaintiff also asserts (at 17) that his injurious falsehood and conspiracy claims are timely based on equitable tolling, or because some statements were made within two years of his filing. With regard to the more recent statements, his claims fail for other reasons.  *See* MTD 19–22; *infra* pp. 15–17.  And by his silence, Plaintiff concedes that the statements more than two years old are time-barred if the Court (correctly) rejects his equitable tolling theory.

Finally, Plaintiff asserts (at 17–18) that his CFAA, SCA, and trade secrets claims are timely under the discovery rule.  This assertion fails for the same reason described above—the AC confirms Plaintiff was on notice of his alleged injury no later than October 2016.  *See* AC ¶ 324. Because both the CFAA and SCA have two-year limitations periods, and the trade secret claim has a three-year limitations period, these claims are untimely and must be dismissed.[4]  MTD 6–7.

II.     **EACH OF PLAINTIFF'S CLAIMS FAILS ON THE MERITS.**

A.      **Plaintiff's Civil RICO Claim (Count I) and Conspiracy Claim (Count II) Fail on Multiple Independent Grounds.**

***Plaintiff Has Not Alleged a RICO Enterprise.***  Plaintiff devotes six pages of his Opposition to irrelevant arguments concerning the enterprise element, Opp. 19–24, while largely ignoring Defendants' actual argument:  that Plaintiff was required—but failed—to plead a RICO enterprise with a shared purpose to engage in illegal activity.  To the extent Plaintiff addresses this point at all, his arguments lack merit.

Plaintiff first argues (at 22) that an illegal purpose is "not required."  But Plaintiff and his

---

[4]  *Chappell v. Rich*, 340 F.3d 1279 (11th Cir. 2003), is inapposite.  That case involved claims under 42 U.S.C. §§ 1983 and 1985, and has no relation to the CFAA or SCA.

campaign sang a different tune when *they* were sued as RICO defendants, arguing that "[a] RICO plaintiff must allege not just a common purpose, but an *unlawful* common purpose." Mot. to Dismiss, DE 212, at 17, *DNC v. Russian Fed'n*, No. 18-cv-3501 (S.D.N.Y. Dec. 7, 2018); Mot. to Dismiss, DE 65, at 26, *Doe v. Trump Corp.*, No. 18-cv-9936 (S.D.N.Y. Jan. 14, 2019) (associates "must share a common purpose to engage in a particular fraudulent course of conduct."). Plaintiff was right the first time: a RICO plaintiff must allege an unlawful common purpose. *See* MTD 8.

Plaintiff next argues (at 19) that he has satisfied any improper purpose requirement by alleging the "unlawful goal" of "corruptly and wrongfully harming [his] political reputation, damaging his electability . . . , impeding his ability to effectively govern, and otherwise sabotaging his political career." But Plaintiff needs more than pejorative descriptors like "corrupt" and "wrongful" to transform lawful, constitutionally protected political goals into a "shared purpose of engaging in illegal activity." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1308 (11th Cir. 2019).

**Plaintiff Has Not Alleged Any RICO Predicate Acts.** Plaintiff argues (at 24) that his allegations establish that each RICO Defendant "conducted or participated" in the enterprise's affairs. But that is not sufficient: instead, Plaintiff must show that such participation took place through "a pattern of racketeering activity," 18 U.S.C. § 1962(c), involving at least two predicate acts by each defendant, MTD 9. His allegations do not establish a single act of trade secrets theft, witness tampering, or wire fraud, let alone a pattern of such activity by each Defendant.

<u>No Theft of Trade Secrets</u>. Plaintiff bases his DTSA predicate act on the alleged theft of DNS data, an IP address record that is automatically generated and shared whenever a server communicates with another server. MTD 10–11. Plaintiff argues (at 32) that DNS data is a trade secret because it "reveals a comprehensive view" into his website and email traffic, and thus holds "potential value" to "a rival candidate." But "potential value" in a political campaign does not

render DNS data a trade secret.  As Plaintiff concedes, the information must have "independent *economic* value," and he must take "reasonable steps" to keep it secret.  Opp. 30 (emphasis added).  Plaintiff, however, fails to allege that he has any plans to commercially exploit DNS data, that the data is a secret, or that he even owns or possesses it.  MTD 9–11.

Rather than confront these defects, Plaintiff asks the Court to punt the question of whether DNS data is a trade secret until after discovery, arguing (at 30) that "whether a particular type of information constitutes a trade secret is a question of fact."  But to survive a motion to dismiss, Plaintiff must plead facts establishing that DNS data satisfies the essential elements of a protectable trade secret.  Here, Plaintiff's allegation that DNS data *could* reveal "contacts, client lists, business dealings, financial dealings, communications" or other potentially valuable information, Opp. 30 (quoting AC ¶ 545), provides nothing more than the type of vague, conclusory description courts routinely reject as insufficient.  *See VVIG, Inc. v. Alvarez*, No. 18-cv-23109, 2019 WL 5063441, at *4 (S.D. Fla. Oct. 9, 2019) ("General allegations of 'business affairs, products, marketing systems technology, customers, end users, [and] financial affairs' . . . are insufficient" to adequately allege trade secrets); *Taxinet Corp. v. Leon*, No. 16-cv-24266, 2018 WL 3405243, at *3 (S.D. Fla. July 12, 2018) (rejecting "'broad categories of information,'" as insufficient to adequately allege trade secrets).

Further, Plaintiff does not dispute that DNS data is "public" or that companies that provide DNS resolution services have access to this information.  MTD 10–11.  He tries to get around this by asserting (at 31) that trade secrets "need not be wholly private," and that "a unique compilation" of publicly available information may qualify as a trade secret.  That is true, but unhelpful to Plaintiff.  As alleged in the AC, the only person who undertook any "compilation" or "distillation" of information was Rodney Joffe, who allegedly accessed "Neustar" databases to pull DNS data.

AC ¶¶ 35, 36, 134.  Even if this "compilation" had economic value, there is no allegation that Plaintiff knew the compilation existed or planned to commercially exploit it, nor that he would have any right to do so (because the compilation was not "his" in the first place).

Plaintiff likewise fails to plausibly allege he owned or possessed the DNS data.  He gets no traction from *Kremen v. Cohen*, which involved a domain name (www.sex.com) that was registered to the plaintiff and that had the status of property for purposes of a conversion claim under California law.  337 F.3d 1024, 1029 (9th Cir. 2003).  The court's only passing reference to "DNS" came in its discussion of whether the plaintiff's domain-name rights were reflected in "a document."  *Id.* at 1034–35.  Nowhere did *Kremen*, or any other case Plaintiff cites, discuss whether an individual DNS lookup record was *itself* proprietary in nature, and thus independently subject to a conversion claim.  *Kremen* thus does not stand for the idea "that an individual has ownership rights in his DNS data," Opp. 31, nor does it address whether DNS data is a trade secret.

<u>No Obstruction of Justice</u>.  Plaintiff argues (at 27–28) that Defendants violated the federal witness tampering statute, 18 U.S.C. § 1512(b)(3), by making "false and misleading statements" and providing "falsified and fabricated" records to "federal law enforcement officers."  These alleged misrepresentations include (1) certain reports within the Steele Dossier, Opp. 28, which Steele allegedly provided to the FBI, AC ¶ 158, 169; (2) Sussmann's statement to the FBI that he was not acting "on behalf of a client or company" when he presented information suggesting a suspicious pattern of activity between Trump servers and those of a notorious Russian Bank, Opp. 28 (citing AC ¶¶ 204–14); and (3) the "deceptive analysis" of the Trump–Alfa Bank activity supposedly contained in white papers Sussmann provided to the FBI, Opp. 28 (citing AC ¶ 206). But Steele is not a RICO Defendant, and Sussmann was acquitted by a unanimous jury of making

a false statement to the FBI—a fact Plaintiff conspicuously omits from the AC.  MTD 12 n.12.[5]

Providing false statements directly to federal agents does not, in any event, fit within the text of § 1512(b)(3), which proscribes "knowingly" engaging in "misleading conduct toward *another person*" with intent to "hinder, delay, or prevent the communication *to a law enforcement officer* . . . of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3) (emphases added).  By its plain text, this subsection requires misleading conduct "toward someone besides the investigating federal law enforcement agents themselves." *United States v. Amri*, No. 17-cr-50, 2017 WL 3262254, at *14 (E.D. Va. July 31, 2017); *see also United States v. Williams*, 571 F. App'x 887, 890–91 (11th Cir. 2014) (applying 18 U.S.C. § 1001 to statements made directly to FBI and § 1512(b)(3) to interference with third-party witness).  The cases on which Plaintiff relies are inapposite because they involve false or misleading evidence conveyed to federal law enforcement officers through third parties—*state* law enforcement officers.  *See United States v. Ronda*, 455 F.3d 1273, 1285 (11th Cir. 2006) (defendants planted evidence and made false statements to state investigators prior to a federal investigation); *United States v. Ronga*, 682 F. App'x 849, 851–52, 855 (11th Cir. 2017) (defendant police officer lied to state investigators before being federally prosecuted).  Because the AC asserts that the RICO Defendants provided misleading information directly to federal law enforcement officers, Plaintiff fails to allege conduct indictable under § 1512(b)(3).[6]

---

[5]  Plaintiff repeats his allegations elsewhere in his Opposition that Danchenko made false statements to the FBI.  *E.g.*, Opp. 25–26.  But like Sussmann, Danchenko will face trial on the 18 U.S.C. § 1001 allegations, and like Steele, Danchenko is not a RICO Defendant.

[6]  Plaintiff argues (at 29) that Sussmann's communications with federal authorities do not qualify as protected petitioning activity because they fall within the "sham" exception to the *Noerr-Pennington* doctrine.  But Plaintiff's own allegations foreclose the application of that narrow exception.  Central to Plaintiff's theory is that Sussmann and others allegedly took steps which resulted in the federal investigations that purportedly caused Plaintiff's injuries, AC ¶ 524, and "a successful effort to influence governmental action . . . certainly cannot be characterized as a sham," *Pro. Real Estate Invs., Inc. v. Columbia Picture Indus., Inc.*, 508 U.S. 49, 58 (1993).

Plaintiff separately argues that Defendants' alleged provision of false information to FBI agents violates 18 U.S.C. § 1512(c)(2), which prohibits conduct that "corruptly . . . obstructs, influences, or impedes any official proceeding."   But neither of the cases Plaintiff cites supports his position that the FBI's Crossfire Hurricane investigation constitutes an "official proceeding" (it does not).   *See* MTD 12.   In *United States v. Grubb*, 11 F.3d 426 (4th Cir. 1993), the defendant lied to FBI agents in the context of a federal grand jury proceeding.   *Id.* at 437–38.   And in *United States v. Lee*, 919 F.3d 340 (6th Cir. 2019), the parties never briefed, and the court never decided, whether an FBI investigation qualifies as an official proceeding.   The only issue before the court was whether the government had presented sufficient evidence of intent.   *Id.* at 358–59.

*No Wire Fraud*.   Plaintiff does not dispute that the federal wire fraud statute is "limited in scope to the protection of property rights."   *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1254 (S.D. Fla. 2013).   He asserts instead (at 34) that Defendants betrayed their "ignorance" of the law by arguing that wire fraud encompasses schemes "to obtain" money or property but not schemes "to deprive" another of money or property.   But this mischaracterizes the point.   "Obtaining" money or property and "depriving" another of it describe the same action from the perspectives of the perpetrator (who obtains money or property) and the victim (who is deprived of it).   What Plaintiff mischaracterizes as "ignorance" is actually a quote from the Supreme Court, which held that a valid wire fraud claim exists "*only if* an object of the[] dishonesty was *to obtain* . . . money or property."   *Kelly v. United States*, 140 S. Ct. 1565, 1568 (2020) (emphases added).

Ultimately, this quibbling gets Plaintiff nowhere, because he has not alleged either that Defendants obtained money or property or deprived anyone else of it.   Instead, Plaintiff claims (at 34, 36) that he suffered collateral damage in the form of lost "political and/or business reputation" and lost business opportunities when Defendants "defraud[ed]" reporters and law enforcement

officers with a "false narrative" that Plaintiff colluded with Russia.  But "[d]amage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."  *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (collecting cases).  For that reason, "federal courts routinely and soundly reject" attempts "to spin an alleged scheme to harm a plaintiff's reputation into a RICO claim." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73–74 (E.D.N.Y. 2020) (collecting cases).

Even if lost business opportunities stemming from reputational injury could in theory qualify as lost "property" for wire fraud purposes, Plaintiff has not identified his business injuries with the required specificity.  His conclusory allegations that he suffered "loss of competitive position, . . . loss of business revenue, loss of goodwill, loss of trade secrets, and/or loss of contractual relations" do not suffice under Rule 8's bare notice-pleading standard, let alone Rule 9(b)'s particularity standard.

***Plaintiff Has Not Pleaded a Pattern of Racketeering Activity.***  Plaintiff argues (at 37) that he has shown open-ended continuity with his allegations that Clinton engaged in political commentary concerning Plaintiff's relationship with Putin in 2019, 2021, and 2022; that former campaign official Podesta runs the Moscow Project; and that Podesta, Sussmann, Joffe, Sullivan, and Fusion GPS worked with the Democracy Integrity Project to "continue exposing Russian Interference in the 2016 election."  But none of these First-Amendment-protected political activities establishes open-ended continuity because none involves a RICO predicate act.  Nor has Plaintiff pleaded any facts from which the Court could infer that these Defendants were attempting to further "the enterprise's affairs," as opposed to "their own affairs," when they joined these disparate organizations and efforts.  *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993). Podesta and Sullivan, indeed, are not alleged to be part of the RICO enterprise at all.  AC ¶ 530.

13

Nor has Plaintiff shown closed-end continuity, which requires "a series of related predicates extending over a substantial period of time." MTD 14. Here, the alleged predicate acts were tightly clustered around the 2016 election. *Id.* Although Plaintiff speculates (at 38) that "it is a near certainty that RICO Defendants engaged in many more fraudulent acts" through the present, he fails to describe a single one with the "particularity" he acknowledges Rule 9(b) requires. Nor is there any merit to his position (at 39) that these fraudulent acts remain unknown to him because Defendants concealed them behind the veil of attorney-client privilege; Plaintiff has not identified any conduct or communications over which privilege has been asserted.

***Plaintiff Fails To Allege RICO Standing or Causation.*** Plaintiff argues (at 40) that he pleaded "at least nine independent and distinct harms to his business and property," whereas Defendants challenged only two—attorneys' fees and loss of business opportunities. But all of Plaintiff's alleged injuries, from "loss of business revenue" to "loss of contractual relations," merely describe some variety of lost business opportunity. Opp. 40. And all suffer from the same fatal defect: Plaintiff has not specified a single example of a lost contract, lost business revenue, or loss of goodwill resulting from the alleged racketeering.

Plaintiff also has not established that the legal fees stemming from various investigations constitute an injury to business or property for purposes of the RICO statute. Plaintiff protests (at 40) that it is "false" for Defendants to assert that he "did not pay the claimed fees out of his own pocket." But candidates may use campaign funds to cover legal fees related to charges of official misconduct, and Plaintiff had the burden of pleading not only that he "incurred" these fees, but that he personally paid them. There are no such allegations.

Far from bolstering his RICO claim, Plaintiff's Opposition conclusively shows he cannot trace his alleged legal fees back to any act of racketeering. Although the AC alleges the FBI

"debunked" both the Steele Dossier and the Alfa Bank allegations no later than January 2017, AC ¶¶ 344, 444, Plaintiff now asserts (at 15) that he incurred all of his alleged legal fees "between September 2017 and 2020," incurring "the vast majority" after "April 2018." Moreover, he attributes these fees to "the Mueller Investigation." Opp. 15. But the AC does not allege that the RICO Defendants are responsible for the Mueller Investigation, and the Mueller Report itself (at 1) attributes the investigation to causes having nothing to do with Defendants. In short, Plaintiff has no basis to seek recovery of these fees from Defendants.[7]

### B. Plaintiff Has Not Stated Claims for Injurious Falsehood (Count III) and Conspiracy To Commit Injurious Falsehood (Count IV).

With respect to the injurious falsehood claim (Count III) and the related conspiracy claim (Count IV), Plaintiff relies on a series of inapposite authorities and only highlights his failure to plead several necessary elements.

First, Plaintiff summarily asserts (at 47) that the AC identifies "a bevy of falsehoods," but does not identify what the statements are, where the Court can find them in the AC, or why they are untrue. Nor does he address Defendants' observation that the AC's sole allegations of falsity are entirely conclusory. *See* MTD 20.

Second, Plaintiff does not identify any harm to his "*economic* interests," *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (emphasis added), pointing only to unspecified "loss of business opportunities, loss of competitive position, loss of business revenue," and the like, Opp. 47, 49. But the AC does not name a single business opportunity or relationship that was harmed, nor tie Defendants' statements to any economic injury.[8]

---

[7] The RICO conspiracy claim fails for the reasons given in Defendants' motion. MTD 19.

[8] Plaintiff's claim (at 49) that the "Supreme Court" has held that "legal fees constitute special damages in trade libel claims" is entirely irrelevant (and non-controlling). That appeal to the

Third, Plaintiff's response to Defendants' arguments about special damages also falls flat. He cites nothing in the AC explaining how each statement contributed to or precipitated attorney's fees, as is required to plead special damages.  Instead, Plaintiff merely points the Court to the generalized allegation that he was "forced to incur expenses in an amount to be determined at trial."  Opp. 49 (quoting AC ¶ 655).  As already explained, *see* MTD 20–21, this does not satisfy the rule that special damages be specifically stated.  *See* Fed. R. Civ. P. 9(g).

Fourth, Plaintiff's response to Defendants' First Amendment arguments is unavailing. Plaintiff relies (at 47–48) on the incorrect notion that Defendants enjoy only a "qualified privilege" to engage in political speech that may be overcome by a showing of actual malice.  But Plaintiff fundamentally misunderstands the type of "malice" needed to overcome the robust First Amendment protections for political speech. Spite, "ill will," or malice in the common-law sense of the term do not suffice.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989).  Defendants have an untrammeled right to criticize Plaintiff unless he plausibly alleges *constitutional* actual malice—that is, that Defendants published a false statement of fact "with knowledge that it was false or with reckless disregard of whether it was false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  And Plaintiff cannot possibly make that showing here because the statements he challenges consist of rhetorical hyperbole or political opinion not provably true or false.  *See* MTD 21–22.

The case law Plaintiff cites in support of his argument does not involve the First Amendment or political speech at all, but rather addresses the question whether statements made to an investigator are subject to an absolute or qualified privilege under Florida state law.  *See*

---

*Nevada* Supreme Court raised the issue whether attorney's fees had been properly awarded in a real property dispute, and was not a case in which the fees pre-dated the litigation.  *See Horgan v. Felton*, 123 Nev. 577, 581 (2007).

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992).[9]  Even if the case law Plaintiff relies on did

apply, and Defendants' statements could be shown to be true or false, Plaintiff has attempted to

plead actual malice in only the vaguest of terms, which is "insufficient" to state a claim.  *Corsi v.*

*Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123 (S.D. Fla. 2021).

### C.   Plaintiff Has Not Stated a Claim for Malicious Prosecution (Count V) or for the Related Conspiracy Claim (Count VI).

Plaintiff fails to allege malicious prosecution because he does not allege any judicial

proceeding brought "against the present plaintiff."  *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d

1116, 1123–24 (S.D. Fla. 2019).  He argues (at 50) that "[t]he Mueller Investigation qualifies as a

criminal proceeding" for purposes of his malicious prosecution claim.  But he fails to identify any

authority for his proposition that an investigation that does not lead to any judicial process against

the plaintiff is somehow a "judicial proceeding."  To the contrary, Florida law is clear that "[a]n

action for malicious prosecution . . . [can] never occur outside the context of litigation."  *Fischer*

*v. Debrincat*, 169 So. 3d 1204, 1209 (Fla. 4th DCA 2015).  The only case that Plaintiff cites (at

50) is *Caplan v. Johnson*, 414 F.2d 615 (5th Cir. 1969), which is inapposite.  There, the Fifth

Circuit held that the issuance of arrest warrants can suffice for malicious prosecution.  *Caplan*,

414 F.2d at 618.  But here, no judge issued a warrant for Plaintiff's arrest, nor did the Mueller

Investigation result in any judicial process against him.

Plaintiff also fails to satisfy any of the remaining five elements of a malicious prosecution

claim.  *See* MTD 23–25.  He now argues (at 50), but fails to plausibly allege, *see* AC ¶¶ 456 &

671, that the Crossfire Hurricane investigation and Mueller Investigation are one and the same.

---

[9]   To the extent that Plaintiff focuses on statements-to-investigators case law to argue that the alleged statements made to the FBI, *see* AC ¶¶ 649–50, are not subject to First Amendment protection, the authorities are distinguishable because they involve criminal activity, not legitimate political speech.  *See Asinmaz v. Semrau*, 42 So. 3d 955, 958 (Fla. 4th DCA 2010) (reported theft of diamonds); *Fridovich*, 598 So. 2d at 66 (alleged murder).

But even were that true, Crossfire Hurricane was not a judicial proceeding, either.  And Plaintiff fails plausibly to allege that Defendants caused either investigation.  MTD 17, 24.  Plaintiff also fails to show the Mueller Investigation terminated either "on the merits" or "favorabl[y]" to him. *Id.* at 25.  With no malicious prosecution claim, the conspiracy claim also fails.  *See* MTD 25.

### D.      Plaintiff Has Not Stated a Claim Under the Computer Fraud and Abuse Act (Count VII).

Plaintiff's Opposition reveals that his CFAA claim fundamentally misunderstands the "without authorization" element, as well as the types of damages recoverable under the statute. *777 Partners LLC v. Pagnanelli*, No. 20-cv-20172, 2021 WL 2038175, at *4-5 (S.D. Fla. Mar. 8, 2021).  Indeed, Plaintiff alleges only that certain Defendants accessed DNS data to which they had legitimate access, and the CFAA does not extend liability to individuals who "have [allegedly] improper motives for obtaining information that is otherwise available to them."  *Van Buren v. United States*, 141 S. Ct. 1648, 1652, 1662 (2021); MTD 26–27.  Moreover, DNS data is neither secret nor confidential, and is shared automatically with a wide array of entities.[10]

Similarly, damages under the CFAA are limited to: (1) reasonable costs associated with responding to a breach, such as "assessing the damage done" and "restoring" systems to their prior condition, and (2) revenue lost or costs incurred because of an interruption of service.  *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *see also 777 Partners LLC*, 2021 WL 2038175, at *5 (defining "damage" under the CFAA as "an impairment to the integrity or availability of data, a program, a system, or information").  Other types of losses, such as "lost revenue from the possible misappropriation of 'stolen' information," do not count toward the

---

[10]  Plaintiff's citation to *Bessemer Sys. Fed. Credit Union v. Fiserv Sols.*, No. 19-cv-00624-RJC, 2021 WL 4198281 (W.D. Pa. Sept. 15, 2021), is puzzling.  There, the court declined to dismiss a breach of contract claim, but there was no CFAA claim before the court.  And courts in this district routinely grant motions to dismiss CFAA claims.  *See Doty v. ADT, LLC*, 20-cv-60972, 2020 WL 9071421, at *8 (S.D. Fla. Dec. 30, 2020).

$5,000 statutory minimum.  *Schwartz v. ADP, Inc.*, No. 21-cv-283, 2021 WL 5760434, at *2 (M.D. Fla. Dec. 3, 2021) (citation omitted).  Plaintiff is therefore flatly wrong when he argues (at 55) that the CFAA covers "any reasonable cost to any victim."

      **E.**    **Plaintiff Has Not Stated a Claim Under the Defend Trade Secrets Act (Count VIII).**

Plaintiff relies (at 55) on the discussion of DNS information in his RICO claims to defend his trade secrets claim.  But DNS information is not a trade secret.  *Supra* p. 8–10; MTD 10–11.

      **F.**    **Plaintiff Has Not Stated a Claim Under the Stored Communications Act (Count IX).**

Plaintiff argues (at 52) that he has stated a claim for violation of the SCA because he alleged that Defendants "intentionally and improperly exceeded their authority to access servers belonging to the EOP and Trump Organization to access non-public, proprietary, and confidential information."  This argument misses the point for at least two reasons.

First, Plaintiff has not sufficiently alleged facts to support his contention that Defendants accessed "private data."  As explained *supra* at 9, the information allegedly accessed—IP addresses, "internet domains," e-mail addresses, and "domains that related to Donald J. Trump, the Trump Organization, and numerous Trump associates"—is not private.  Opp. 52–53; MTD 10–11.  Thus, it does not fall within the purview of the SCA.  *Live Face on Web, LLC v. Tweople, Inc.*, No. 14-cv-44, 2014 WL 12611359, at *3 (M.D. Fla. Sept. 29, 2014).

Second, the "facilities" identified in the AC and Opposition—"computer servers, networks or systems" belonging to the EOP and Trump Organization, not Plaintiff himself—are not covered by the SCA.  *See* MTD 28–29.  Plaintiff's reliance upon *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017), and *Hamilton Group Funding v. Basel*, 311 F. Supp. 3d 1307 (S.D. Fla. 2018), is unavailing.  In those cases, the defendant improperly accessed and reviewed the content of password-protected emails of co-employees.  They offer no support to Plaintiff's claims.

G.   **Plaintiff's Agency and Respondeat Superior Counts Have Been Abandoned and Should Be Dismissed (Counts X–XVI).**

Plaintiff has abandoned his agency and vicarious liability counts in the AC by failing to present any argument in support of those counts, or otherwise oppose Defendants' arguments for dismissal of those counts. *See Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1218 (S.D. Fla. 2021). Those counts should also be dismissed for failure to state a claim. *See* MTD 29–30.

## III.   PLAINTIFF'S REQUEST FOR LEAVE TO AMEND IS IMPROPER AND SHOULD BE DENIED.

Plaintiff cursorily requests further leave to amend in a tacked-on paragraph (at 55). But the Eleventh Circuit has rejected such contingent requests smuggled into opposition briefs, explaining that a litigant must formally move to amend and provide an explanation and proposed amendment, to state a valid request. *See, e.g.*, *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 882–83 (11th Cir. 2016); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 n.14 (11th Cir. 2015); *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1208 (11th Cir. 2012); *see also* S.D. Fla. Local Rule 15.1.

Moreover, Plaintiff has already amended once, with the benefit of Defendants' initial motions to dismiss. As the arguments in both rounds of extensive briefing demonstrate, the failings in the AC are not fixable. His claims are untimely and otherwise legally defective, and his allegations depend largely on government documents, including the Mueller Report and the IG Report on Crossfire Hurricane, whose contents he misrepresents and which no amount of discovery can change. Any motion to amend, even if properly brought, would be futile. This Court should accordingly dismiss the AC with prejudice.

## CONCLUSION

For the reasons given above and in Defendants' Motion to Dismiss, the AC should be dismissed with prejudice in its entirety.

Dated:  August 11, 2022                                  Respectfully submitted,


/s/ David Oscar Markus                          /s/ David E. Kendall
David Oscar Markus                              David E. Kendall (pro hac vice)
MARKUS/MOSS PLLC                                Katherine M. Turner (pro hac vice)
40 NW 3rd Street, PH 1                           Michael J. Mestitz (pro hac vice)
Miami, FL 33128                                 WILLIAMS & CONNOLLY LLP
Tel:  (305) 379-6667                            680 Maine Avenue, S.W.
                                                Washington, DC 20024
                                                Tel:  (202) 434-5000
                                                Fax:  (202) 434-5029
                                                dkendall@wc.com
                                                kturner@wc.com
                                                mmestitz@wc.com

                    *Attorneys for Defendant Hillary Rodham Clinton*


/s/ Robert P. Trout
Robert P. Trout (pro hac vice)
Paola Pinto (Florida Bar Number 1013933)
SCHERTLER ONORATO MEAD & SEARS
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Phone:  (202) 628-4155
rtrout@schertlerlaw.com
ppinto@schertlerlaw.com

                    *Attorneys for Defendants HFACC, Inc. and John Podesta*


/s/ Gerald Edward Greenberg                     /s/ Roberta A. Kaplan
Gerald Edward Greenberg                         Roberta A. Kaplan (pro hac vice)
GELBER SCHACHTER & GREENBERG PA                 Shawn G. Crowley (pro hac vice)
One Southeast Third Avenue                       Maximillian L. Feldman (pro hac vice)
Suite 2600                                      KAPLAN HECKER & FINK LLP
Miami, FL 33131-1715                            350 Fifth Avenue, 63rd Floor
Tel: (305) 728-0950                             New York, NY 10118
ggreenberg@gsgpa.com                            Tel: (212) 763-0883
                                                rkaplan@kaplanhecker.com
                                                scrowley@kaplanhecker.com
                                                mfeldman@kaplanhecker.com


           *Attorneys for Defendants Democratic National Committee, DNC Services Corporation, and*
                            *Debbie Wasserman Schultz*

/s/ Eleni Kastrenakes Howard
Eleni Kastrenakes Howard (Fla. Bar No.
0073073)
Howard J. Harrington (Fla. Bar No. 0118719)
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel:  (561) 653-5000
Fax:  (561) 659-6313
eleni.kastrenakeshoward@akerman.com
jay.harrington@akerman.com

/s/ F. Joseph Warin
F. Joseph Warin (pro hac vice)
Geoffrey M. Sigler (pro hac vice)
Katherine Moran Meeks (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
fwarin@gibsondunn.com
gsigler@gibsondunn.com
kmeeks@gibsondunn.com

/s/ Nancy E. Hart
Nancy E. Hart (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
nhart@gibsondunn.com

*Attorneys for Perkins Coie LLP*

/s/ Eugene K. Pettis
Eugene K. Pettis (Fla. Bar #508454)
Debbie P. Klauber (Fla. Bar #55646)
HALICZER, PETTIS & SCHWAMM
One Financial Plaza
100 S.E. 3rd Ave., Seventh Floor
Fort Lauderdale, FL 33394
Tel:  (954) 523-9922

/s/ Reid J. Schar
Reid J. Schar (pro hac vice)
April A. Otterberg (pro hac vice)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel:  (312) 222-9350

*Attorneys for Defendant Marc Elias*

/s/ Roberto Martinez
Roberto Martínez (Florida Bar No. 305596)
Zachary Lipschultz (Florida Bar No. 123594)
COLSON, HICKS, EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel:  (305) 476-7400
bob@colson.com
zach@colson.com

/s/ Sean M. Berkowitz
Sean M. Berkowitz (pro hac vice)
LATHAM & WATKINS LLP
330 N. Wabash, Suite 2800
Chicago, IL 60611
Tel:  (312) 876-7700
sean.berkowitz@lw.com

/s/ Stephen P. Barry
Stephen P. Barry (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel:  (202) 637-2200
stephen.barry@lw.com

/s/ Michael F. Houlihan
Michael F. Houlihan (pro hac vice)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Tel:  (617) 880-4642
michael.houlihan@lw.com

*Attorneys for Defendant Michael Sussmann*

/s/ Jonathan Edward Levine
Jonathan Edward Levine (FBN 937711)
Levine & Associates, PLLC
5311 Lee Highway
Arlington, VA 22207
Tel:  (703) 525-2669

/s/ George R.A. Doumar
George R.A. Doumar (pro hac vice)
Mahdavi, Bacon, Halfhill & Young PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel:  (703) 352-1300

*Attorneys for Charles Halliday Dolan, Jr.*

/s/ Brian L. Stekloff
Brian L. Stekloff (pro hac vice)
Sarah E. Neuman (pro hac vice)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  (202) 847-4000
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com

/s/ William R. Barzee
William R. Barzee (Florida Bar No. 158720)
BARZEE FLORES
Courthouse Center, Penthouse One
40 NW Third Street
Miami, FL 33128
Tel:  (305) 374–3998
williambarzee@barzeeflores.com

*Attorneys for Defendant Jake Sullivan*

23

/s/ Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
Andrew J. Ceresney (pro hac vice)
Wendy B. Reilly (pro hac vice)
Isabela M. Garcez (pro hac vice)
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
aceresney@debevoise.com
wbreilly@debevoise.com
imgarcez@debevoise.com

/s/ William R. Barzee
William R. Barzee (Florida Bar No. 158720)
BARZEE FLORES
Courthouse Center, Penthouse One
40 NW Third Street
Miami, FL 33128
Tel:  (305) 374-3998
williambarzee@barzeeflores.com

*Attorneys for Defendant Robert E. Mook*

/s/ Adam S. Fels
Adam S. Fels
FRIDMAN FELS & SOTO PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
Tel:  (305) 569-7701
afels@ffslawfirm.com

/s/ Joshua A. Levy
Joshua A. Levy (pro hac vice)
Rachel Clattenburg (pro hac vice)
Kevin P. Crenny (pro hac vice)
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Suite 1200
Washington, D.C. 20006
Tel:  (202) 845-3215
Fax:  (202) 595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com

*Attorneys for Defendants Fusion GPS, Peter Fritsch, and Glenn Simpson*

/s/ Joshua Berman
Joshua Berman
CLIFFORD CHANCE US LLP
2011 K Street, NW
Washington, D.C.  20006
Tel:  (202) 912-5000
Fax:  (202) 912-6000
Joshua.Berman@CliffordChance.com

/s/ Adam Fels
Adam Fels (Florida Bar No. 0114917)
FRIDMAN FELS & SOTO, PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL  33134
Tel:  (305) 569-7701
Afels@ffslawfirm.com

/s/ Benjamin Peacock
Benjamin Peacock
CLIFFORD CHANCE US LLP
New York, New York 10019
Tel:  (212) 878-8000
Fax:  (212) 878-8375
Benjamin.Peacock@CliffordChance.com

*Attorneys for Bruce Ohr and Nellie Ohr*

/s/ Franklin Monsour Jr.
Franklin Monsour Jr. (pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel:  (212) 506-3512
Fax:  (212) 506-5151
fmonsour@orrick.com

/s/ Diana Marie Fassbender
Diana Marie Fassbender (Fla Bar ID #17095)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street N.W.
Washington, DC  20005-1706
Tel:  (202) 339-88533
Fax:  (202) 339-8500
dszego@orrick.com

*Attorneys for Igor Danchenko*

/s/ Samantha L. Southall
Samantha L. Southall (pro hac vice)
Pennsylvania Bar No. 80709
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel:  (215) 665 8700
Fax:  (215) 667 8760
samantha.southall@bipc.com

/s/ Jennifer Olmedo Rodriguez
Jennifer Olmedo Rodriguez (Florida Bar No. 605158)
BUCHANAN INGERSOLL & ROONEY PC
2 South Biscayne Blvd., Suite 1500
Miami, Florida 33131
Tel:  (305) 347 4080
Fax:  (305) 347 4089
jennifer.olmedo-rodriguez@bipc.com

*Attorneys for Defendant Neustar, Inc.*

/s/ John M. McNichols
John M. McNichols (pro hac vice)
Allison S. Eisen (pro hac vice)
Kathryn E. Garza (pro hac vice)
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Tel:  (202) 434-5000
Fax:  (202) 434-5029
jmcnichols@wc.com

/s/ James E. Gillenwater
James E. Gillenwater (Bar No. 1013518)
GREENBERG TRAURIG P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel:  (305) 579-0500
Fax:  (305) 579-0717
gillenwaterj@gtlaw.com

*Attorneys for Neustar Security Services*

/s/ Edward Soto
Edward Soto (FBN 0265144)
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel:  (305) 577-3100
Fax:  (305) 374-7159

/s/ Steven A. Tyrrell
Steven A. Tyrrell (pro hac vice)
WEIL GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Tel:  (202) 682-7000
Fax:  (202) 857-0940

*Attorneys for Rodney Joffe*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2022, I caused a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss to be served on all counsel of record via CM/ECF.  All parties required to be served have been served.

<u>  /s/ David Oscar Markus                    </u>
David Oscar Markus