UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:22-cv-14102-DMM

DONALD J. TRUMP,

    Plaintiff

v.

HILLARY R. CLINTON, *et al.*,

    Defendants.

_____/

### UNITED STATES' MOTION TO SUBSTITUTE AND DISMISS

The United States hereby moves, pursuant to 28 U.S.C. § 2679(d)(1), to substitute itself as defendant for Adam Schiff and Rod Rosenstein. Further, as substituted defendant, the United States hereby moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Local Rule 7.1, to dismiss the United States for lack of subject matter jurisdiction. The grounds for this motion are more fully set forth in the incorporated memorandum of law, submitted exhibits, all arguments advanced in reply, and any additional arguments or evidence submitted with leave of court.

**I.  INTRODUCTION**

Because plaintiff advances tort claims against current and former federal employees for acts or omissions they committed within the scope of their office or employment, plaintiff's sole remedy is against the United States—not the individual employees—under the Federal Tort Claims Act ("FTCA"). As the United States is the only proper party, the Court should substitute the United States as defendant for the Honorable Adam Schiff and former Deputy Attorney General Rod Rosenstein. The Court should then dismiss the United States because plaintiff

failed to exhaust his administrative remedies under the FTCA.

In his Amended Complaint, plaintiff advances tort claims against Representative Schiff, a Member of Congress, and Mr. Rosenstein, a former Deputy Attorney General. Am. Compl. ¶¶ 22, 43. Plaintiff alleges that Representative Schiff "did [his] best to proliferate the spread of dubious and false claims through press releases, televised interviews, social media, and other public statements." *Id.* ¶ 6. Plaintiff points to Representative Schiff's actions as Chairman of the House Permanent Select Committee on Intelligence ("HPSCI"), *id.* ¶¶ 506–07, and his statements in several media interviews, *id.* ¶¶ 509, 512–14, 644–46, to allege that Representative Schiff committed the tort of injurious falsehoods under Florida law. *See id.* ¶¶ 634–56 (Count III).[1] Because plaintiff's tort claims are based upon conduct within the scope of Representative Schiff's employment as a Member of Congress, the United States is the sole and exclusive defendant for those claims. 28 U.S.C. § 2679(b)(1). The Attorney General's delegate, acting pursuant to 28 C.F.R. § 15.4(b), so certified. Touhey Certification, Ex. A. Accordingly, this action "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The Court should substitute the United States as defendant for Representative Schiff.

As to Mr. Rosenstein, plaintiff claims that as Deputy Attorney General, Mr. Rosenstein oversaw a Federal Bureau of Investigation ("FBI") counterintelligence operation named "Crossfire Hurricane," approved a Foreign Intelligence Surveillance Act ("FISA") application as part of that investigation, and spoke with other members of the Department of Justice about application of the 25th Amendment. Am. Compl. ¶¶ 394, 420, 431–48. Plaintiff claims these actions amounted to malicious prosecution and conspiracy to commit malicious prosecution

---

[1] Representative Schiff is only a defendant in Count III.

under Florida law. *Id.* ¶¶ 667–78 (Count V), 679–92 (Count VI).[2] Because plaintiff's tort claims are based upon conduct within the scope of Mr. Rosenstein's employment with the Department of Justice, the United States is the sole and exclusive defendant for those claims. 28 U.S.C. § 2679(b)(1). The Attorney General's delegate, acting pursuant to 28 C.F.R. § 15.4(b), so certified. Touhey Certification, Ex. A. Accordingly, this action "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The Court should substitute the United States as defendant for Mr. Rosenstein.

Upon substitution, the Court should dismiss the United States for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). To invoke the limited waiver of sovereign immunity contained in the FTCA, plaintiff must first administratively present his claim to the appropriate federal agencies—here, the House of Representatives and the Department of Justice. 28 U.S.C. §§ 1346(b)(1), 2675(a). Plaintiff does not allege that he administratively presented his tort claims, and the House and the Department affirm that neither agency has received any such claims. Because plaintiff has not exhausted his administrative remedies, this Court lacks subject matter jurisdiction over his tort claims against the United States, and it should dismiss the United States after substituting the United States as defendant.

## II.   STANDARD OF REVIEW

### A.   Westfall Act Substitution

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."

---

[2] Mr. Rosenstein is only a defendant in Counts V and VI.

*Osborn v. Haley*, 549 U.S. 225, 229 (2007).  When a litigant sues a federal employee for wrongful conduct, the statute empowers the Attorney General or his delegate to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. § 2679(d)(1).  Upon such certification, the United States is substituted as defendant in place of the employee and the litigation is thereafter governed by the FTCA.  *Osborn*, 549 U.S. at 230.

The Westfall Act requires substitution of the United States "unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of his employment."  *Osborn*, 549 U.S. at 252; *see also Matsushita Elec. Co. v. Zeigler*, 158 F.3d 1167, 1169 (11th Cir. 1998) ("[U]nder § 2679(d)(1), the district court was required to substitute the United States as a defendant for Zeigler once the United States Attorney had certified that Ziegler's actions occurred within the scope of his employment.").  "The Attorney General's certification that the defendant was [acting in the scope of his employment] is prima facie evidence of that fact."  *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (citation omitted).  A litigant challenging the validity of the Attorney General's delegate's certification "has the burden of proving that the employee's conduct was not encompassed by the scope of his employment."  *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990), amended, 924 F.2d 1555 (11th Cir. 1991); *accord Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022) (quoting *S.J. & W. Ranch, Inc.*); *Flohr v. Mackovjak*, 84 F.3d 386 (11th Cir. 1996) (same).  To rebut the prima facie evidence that the defendants acted within the scope of their employment, the plaintiff must allege specific facts establishing that the defendants exceeded the scope of their employment.  *Jacobs*, 724 F.3d at 220; *accord Davric Marine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 67 (1st Cir. 2001); *Gutierrez de Martinez v.*

*DEA*, 111 F.3d 1148, 1155 (4th Cir. 1997); *Ezekiel v. Michel*, 66 F.3d 894, 899 (7th Cir. 1995).

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts have limited subject matter jurisdiction, leaving district courts the power to decide only certain types of cases. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000). The burden for establishing subject matter jurisdiction rests with the party bringing the claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). That party "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). When faced with a challenge to the Court's subject matter jurisdiction, "the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1997); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.") (citing *Williamson v. Tucker*, 645 F.2d 404, 415–16 (5th Cir. 1981)). In these circumstances, no presumptive truthfulness attaches to the plaintiff's allegations, and a factual dispute does not preclude the court from evaluating the merits of jurisdictional claims. *Id.*

### III. RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT

In this action, plaintiff, former President Trump, seeks damages because defendants allegedly "falsif[ied] evidence, deceiv[ed] law enforcement, spread[] disinformation through the media, and exploit[ed] access to highly-sensitive data sources" to the detriment of his reputation. Am. Compl. ¶ 1. He further alleges that these acts led to "legal issues and political issues," and

that he incurred "substantial economic harm" responding to those issues. *Id.* ¶ 525. He seeks damages for his costs associated with responding to numerous investigations and his impeachment.

### A. Representative Schiff

Representative Schiff represents the 28th Congressional District of California. *Id.* ¶ 22, 504. At all revenant times, Representative Schiff was a member, and then Chair, of the HPSCI. *Id.* ¶ 506. The HPSCI investigated whether candidate Trump or his campaign colluded with the Russian government with respect to the 2016 election. *Id.* That investigation included interviewing witnesses and holding hearings. *See id.* ¶ 507 (discussing witness transcripts). In part, through HPSCI activities, plaintiff alleges Representative Schiff was "a vocal advocate of the Trump Russia-collision conspiracy story." *Id.* ¶ 504.

Plaintiff also claims that Representative Schiff made false or derogatory statements about plaintiff to the press. *Id.* ¶¶ 509, 512–14, 644–46. In addition to general allegations about unspecified interviews as a "senior congressman . . . with national television news stations," *id.* ¶¶ 644, plaintiff focuses on four press events involving Representative Schiff: a statement to unspecified "press" in March 2019, *id.* ¶ 509; a March 2019 interview on ABC, *id.* ¶ 512; a May 2020 interview on CNN, *id.* ¶ 513; and an April 2021 interview on MSNBC, *id.* ¶ 514. All statements at issue pertain to the Trump campaign's alleged connection to the Russian government during the 2016 Presidential Election. Plaintiff claims Representative Schiff's conduct amounted to injurious falsehoods. *Id*. ¶¶ 634–56 (Count III).

### B. Mr. Rosenstein

Mr. Rosenstein was the Deputy Attorney General between 2017 and 2019. *Id.* ¶ 43. In 2016, the FBI initiated a counterintelligence operation named "Crossfire Hurricane" that

investigated potential illicit ties between members of the Trump Campaign and the Russian Government. *Id.* ¶ 170. Because of then-Attorney General Sessions's recusal from matters involving the Trump Campaign, Mr. Rosenstein served as Acting Attorney General with respect to Crossfire Hurricane. *Id.* ¶ 434. In that role, plaintiff claims Mr. Rosenstein "overzealously targeted" plaintiff, failed to disclose material information, proceeded to oversee the investigation despite an alleged conflict of interest, failed to "expose the truth," failed to question the motives and activities of members of the Crossfire Hurricane team, and failed to terminate the investigation. *Id.* ¶¶ 432–33, 436–37, 439–41. As part of the Crossfire Hurricane operation, the team engaged in the FISA application process. As Acting Attorney General, Mr. Rosenstein approved a FISA application requested by the Crossfire Hurricane team. *Id.* ¶ 394, 435. Plaintiff alleges that Mr. Rosenstein's involvement in that process was tortious. *Id.* ¶¶ 433, 438. Finally, plaintiff also alleges that Mr. Rosenstein discussed the 25th Amendment (regarding presidential succession) with FBI Deputy Director McCabe and "a handful of other Justice Department officials." *Id.* ¶ 420. Plaintiff alleges the foregoing conduct amounted to malicious prosecution, *id.* ¶¶ 667–78 (Count IV), and conspiracy to commit malicious prosecution, *id.* ¶¶ 679–92 (Count VI).

IV. **ARGUMENT**

    A. **The Court Should Substitute the United States as Defendant for Schiff and Rosenstein.**

As the Supreme Court explained, "[w]hen a federal employee is sued for wrongful or negligent conduct, the [Westfall] Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn*, 549 U.S. at 229–30 (quoting 28 U.S.C. § 2679(d)(2)). Once the Attorney General certifies that the defendant federal officer was acting within the scope of

his office at the relevant time, the statute itself provides that the United States "shall" be substituted as the sole defendant in the action. 28 U.S.C. § 2679(d)(2); *see also Osborn,* 549 U.S. at 230 ("Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee.") *accord Matsushita Elec. Co.*, 158 F.3d at 1169 (same). "[T]he Westfall Act certification must be respected unless and until the District Court determines that [the federal officer], in fact, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 251 (original italics omitted).

Here, the Director of the Torts Branch of the Civil Division of the United States Department of Justice, acting pursuant to 28 C.F.R. § 15.4(a), issued a Westfall Act certification that Representative Schiff and Mr. Rosenstein were acting within the scope of their office or employment at the time of the incidents out of which plaintiff's injurious falsehoods (Count III), malicious prosecution (Count V), and conspiracy to commit malicious prosecution (Count VI) claims arose. Touhey Certification, Ex. A. The Westfall Act accordingly requires the substitution of the United States as defendant in this action.

### 1. Both Representative Schiff and Mr. Rosenstein are Employees of the Government.

If plaintiff challenges the Attorney General's delegate's certification, the Court should reject any such challenge. Plaintiff himself acknowledges that Representative Schiff is a Member of Congress. Am. Compl. ¶ 22. He names Mr. Rosenstein as a defendant because he was "the United States Deputy Attorney General." *Id.* ¶ 43. Thus, each is an "employee of the government." 28 U.S.C. § 2671.

### 2. District of Columbia Scope of Employment Law Applies.

To assess whether each employee was acting within the scope of his or her employment,

the FTCA instructs the district court to apply "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), not the law of the state where the alleged tort had its "operative effect," *Richards v. United States*, 369 U.S. 1, 10, 82 S. Ct. 585, 591 (1962). As noted by the Eleventh Circuit, the issue is "governed by the law of the state where the incident occurred." *S.J. & W. Ranch, Inc.*, 913 F.2d at 1542. The FTCA does not define "scope of employment," but rather asks the district court, as in the case of tort claims generally, to look to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Williams v. United States*, 350 U.S. 857, (1955) (per curiam) (finding a tort case "controlled by the California doctrine of respondeat superior").

Here, District of Columbia respondeat superior law applies to the scope of employment analysis for both Representative Schiff and Mr. Rosenstein. As to Representative Schiff, Congress is located in the District of Columbia and all relevant HPSCI activities occurred in the District of Columbia. Plaintiff does not allege that any of Representative Schiff's media interviews occurred anywhere else than the District of Columbia, and, in any event, Courts look to the place of employment in circumstances such as this. *Harbury v. Hayden*, 552 F.3d 413, 417 (D.C. Cir. 2007). Representative Schiff's place of employment is the District of Columbia.

As to Mr. Rosenstein, he served as Deputy Attorney General in the District of Columbia and all of his alleged acts or omissions at issue in the Amended Complaint occurred in the District of Columbia. His oversight of Crossfire Hurricane occurred in the District of Columbia. The United States Foreign Intelligence Surveillance Court is located in the District of Columbia. Thus, all relevant acts or omissions pertaining to Mr. Rosenstein occurred in the District of Columbia.

    **3. Under District of Columbia Law, Both Representative Schiff and Mr. Rosenstein Acted Within the Scope of their Employment.**

Under District of Columbia law, an employee's conduct falls within the scope of his employment if: (1) "'it is of the kind he is employed to perform'"; (2) "'it occurs substantially within the authorized time and space limits'"; and (3) "'it is actuated, at least in part, by a purpose to serve" the employer. *Jacobs*, 724 F.3d at 221 (quoting Restatement (Second) of Agency § 228 (1958)).³ In applying District of Columbia law to challenges to Westfall Act certifications, the United States Court of Appeals for the District of Columbia Circuit "appl[ies] [this] test 'very expansively,' and in essence ask[s] 'whether the defendant merely was on duty or on the job when committing the alleged tort.'" *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014) (quoting *Harbury*, 522 F.3d at 422 n.4). "[T]he District [of Columbia] has broadly interpreted the test." *Jacobs*, 724 F.3d at 221.

First, "[t]o qualify as conduct of the kind an employee was to perform, his or her actions must have either been of the same general nature as that authorized or incidental to the conduct authorized." *Allaithi*, 753 F.3d at 1332 (internal quotation and alteration marks omitted, emphasis omitted). Under this inquiry, a court must look broadly to "the type of act" the defendant undertook, rather than its alleged "wrongful character." *Jacobs*, 724 F.3d at 221-22; *see also Wilson v. Libby*, 535 F.3d 697, 711–12 (D.C. Cir. 2008) (explaining that courts must "look beyond alleged intentional torts themselves to the underlying conduct," and therefore, an "employee's scope of employment is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf") (internal quotation marks omitted). This test "is not a particularly rigorous one." *Allaithi*, 753 F.3d at 1332. Even

---

³ This test includes a fourth factor to be considered if an employee intentionally uses force against another. Plaintiff does not allege that any of the former employees used force against him; "therefore that factor is not relevant here." *Kelley v. FBI*, 67 F. Supp. 3d 240, 285 n.34 (D.D.C. 2014).

criminal conduct can fall within the scope of a defendant's employment. *See generally* Restatement (Second) of Agency § 231 ("An act may be within the scope of employment although consciously criminal or tortious."). Indeed, the District of Columbia Circuit has repeatedly affirmed Westfall Act substitution in cases involving allegations of criminal or otherwise wrongful conduct. *See*, *e.g.*, *Jacobs*, 724 F.3d at 219 (defamation and interference with prospective employment); *Wilson*, 535 F.3d at 711–12 (public disclosure of covert CIA agent's identity); *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659, 664–66 (D.C. Cir. 2006) (defamation).

Second, the challenged conduct needs to be "'substantially within the authorized time and space limits.'" *Jacobs*, 724 F.3d at 221 (quoting Restatement (Second) of Agency § 228). But many high-level government officials and staff members have no set "business hours," and can perform official conduct at all hours and locations. High-level officials and staff members do not "punch[] out of work at the end of the day or when [they] leave[]" government property. *Wilson*, 535 F.3d at 712 n.2.

Third, the employee's conduct should be "actuated, at least in part, by a purpose to serve the" United States. *Jacobs*, 724 F.3d at 221 (quoting Restatement (Second) of Agency § 228). To be outside of scope, District of Columbia law "requires [that] an employee be solely motivated by his own purposes for consequent conduct to fall outside the scope of employment." *Allaithi*, 753 F.3d at 1333 (emphasis omitted). "[T]he fact that an agent may be motivated by self-interest, or interests other than those of its principal, is not dispositive. The issue instead is whether there is a complete absence of a desire to serve the principal's interests . . . ." *Klayman v. Obama*, 125 F. Supp. 3d 67, 84 (D.D.C. 2015); *see also Kelley*, 67 F. Supp. 3d at 286 ("[D]efendant Joyce—in directing an investigation—acted with at least a partial desire to serve

the FBI, even if, according to the plaintiffs, he did so in a manner that was insufficiently solicitous of their privacy or their rights as complainants.").

### a. Representative Schiff

All of plaintiff's allegations against Representative Schiff pertain to his actions as a member and Chair of the HPSCI, clearly activity within the scope of his office, or statements made by Representative Schiff to the press. As a rule, courts have universally recognized that Members of Congress act within the course of their office when they communicate with their constituents on matters of public concern. "Comments by elected officials on an event of widespread public interest" fall within the scope of their employment for purposes of the FTCA. *Does 1–10 v. Haaland*, 973 F.3d 591, 600 (6th Cir. 2020).

Courts have applied this rule broadly, applying District of Columbia law as well as respondeat superior laws of other states. For example, *Ballenger* arose from the claim that a Member of Congress defamed a Muslim advocacy organization by telling a reporter his wife was "uncomfortable" living across from the headquarters of a "fund-raising arm" of a "foreign terrorist organization." 444 F.3d at 662. The Congressman made the statement in addressing his separation from his wife, and the District of Columbia Circuit rejected the plaintiff's argument that these statements were "purely private" as "at odds with reality" given the "level of public interest" in the matter. *Id.* at 665–66. The Court thus held that the comments fell with the Congressman's scope of employment. *Id.* at 664. In *Wuterich v. Murtha*, the District of Columbia Circuit upheld the Westfall Act certification in a case arising out of a Marine's claims that a Congressman falsely stated for "his own private purposes" that the Marine's squad "deliberately murdered innocent Iraqi civilians in a cold-blooded massacre" and committed "war crimes." 562 F.3d 375, 378–79 (D.C. Cir. 2009). In *Haaland*, the Sixth Circuit affirmed

substitution, holding that social media posts made from Members of Congress' official Twitter accounts that asserted that high school students displayed "blatant hate, disrespect, and intolerance" toward a Native American Veteran fell within the scope of their employment. 973 F.3d at 594, 599–602. In *Chapman v. Rahall*, the court upheld certification where a Congressman responded to a reporter's allegations by calling him a "bigoted, right wing, redneck, racist wacko," concluding that the response "was clearly in the scope of his employment as a legislator, and was necessary to ensure his effectiveness as a legislator and maintain the support of his constituents." 399 F. Supp. 2d 711, 715 (W.D. Va. 2005). And in *Operation Rescue National v. United States*, the court upheld certification in a lawsuit alleging that a Senator defamed an anti-abortion organization at a fundraising luncheon, noting that "personal and public motives are often closely related" and that "[i]t is natural for public officials to believe that their own success, and that of their political parties, is inextricably linked with the public interest." 975 F. Supp. 92, 108 (D. Mass. 1997).

Thus, even if they were false or misleading as plaintiff alleges, all of Representative Schiff's media statements identified in the Amended Complaint were made within the scope of his employment as a Member of Congress. They all pertained to the investigation of the Trump campaign, a matter he was investigating as a Member of Congress, and all addressed a matter of widespread public interest.

### b. Mr. Rosenstein

Mr. Rosenstein's actions as Deputy Attorney General and Acting Attorney General were also within the scope of his employment. The allegations pertaining to Mr. Rosenstein in the Amended Complaint arise out of his involvement with Crossfire Hurricane and the associated FISA application processes. His supervision of the Crossfire Hurricane team was of the same

general nature as that authorized or incidental to the conduct authorized. In fact, it was his job to provide "overall supervision and direction to all organizational units of the Department." 28 C.F.R. § 0.15(b). He also was responsible, as Acting Attorney General, for approving applications for surveillance under FISA. 50 U.S.C. § 1804(a). Accordingly, his role in obtaining the FISA warrants at issue in plaintiff's Amended Complaint was also of the same general nature as that authorized or incidental to the conduct authorized.

There are no allegations in the Amended Complaint that Mr. Rosenstein took any acts at issue outside of the normal hours or place of his business. Nonetheless, high-level government officials have no set "business hours," and can perform official conduct at all hours and locations. High-level officials, such as the Deputy Attorney General, do not "punch[] out of work at the end of the day or when [they] leave[]" government property. *Wilson*, 535 F.3d at 712 n.2. Thus, all alleged conduct occurred substantially within the authorized time and space limits of Mr. Rosenstein's job.

Finally, objectively, all acts or omissions Mr. Rosenstein undertook to oversee Crossfire Hurricane or authorize FISA applications were actuated, at least in part, by a purpose to serve the United States. The test is an objective one, based on all the facts and circumstances of the case. It focuses on the "underlying dispute or controversy, not on the nature of the tort." *Ballenger*, 444 F.3d at 664 (quoting *Weinberg v. Johnson*, 518 A.2d 985, 992 (D.C. 1986)). All pertinent allegations in the Amended Complaint pertain to Mr. Rosenstein's oversight of Crossfire Hurricane as Deputy Attorney General, which were acts actuated to serve the interest of the Department of Justice, or to the FISA application process associated with Crossfire Hurricane, also conduct actuated to serve the interest of the Department of Justice. With respect to internal discussions with other Department of Justice employees about the 25th Amendment, that, too, is

actuated to serve the United States because the Department of Justice expects its employees to discuss and collaborate on legal issues. Thus, all of Mr. Rosenstein's acts or omissions at issue in the Amended Complaint were within the scope of his employment.

### B. The Court Should Dismiss the United States as Substituted Defendant for Lack of Subject Matter Jurisdiction.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (citations omitted, alteration in original). The FTCA contains a limited waiver of sovereign immunity, subject to numerous exceptions. *See* 28 U.S.C. § 2680 (exceptions). To advance a tort claim against the United States, plaintiff must establish that he complied with the administrative presentment requirements of the Act, 28 U.S.C. § 2675. *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (district court lacks subject matter jurisdiction over FTCA action where plaintiff failed to exhaust his administrative remedies). A "federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency." *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006).

Where such a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff does not allege he presented his injurious falsehoods, malicious prosecution, or conspiracy to commit malicious prosecutions claims to the House of Representatives or Department of Justice. Further, both the House of Representatives and the Department of Justice have confirmed that they have not

received any such claims.  Clouse Decl. ¶ 3, Ex. B; Jenkins Decl. ¶ 3, Ex. C.  Accordingly, the Court should dismiss the substituted United States for lack of subject matter jurisdiction.

## V. CONCLUSION

In light of the Attorney General's delegate's Westfall Act certification, the Court should substitute the United States as defendant for Representative Schiff and Mr. Rosenstein.  The Court should then dismiss the United States as defendant for lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies under the FTCA.

Dated: August 18, 2022                                   Respectfully submitted,

JUAN ANTONIO GONZALEZ
United States Attorney

ANTHONY ERICKSON-POGORZELSKI
Assistant U.S. Attorney

JAMES G. TOUHEY, JR.
Director, Torts Branch

 s/ Stephen R. Terrell
STEPHEN R. TERRELL
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 888
Washington, DC 20044
Stephen.Terrell2@usdoj.gov
(202) 353-1651