UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:22-cv-14102-DMM

DONALD J. TRUMP,

    Plaintiff

v.

HILLARY R. CLINTON, *et al.*,

    Defendants.

_____/

**UNITED STATES' COMBINED REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO SUBSTITUTE AND DISMISS, AND ITS OPPOSITION TO
PLAINTIFF'S MOTION TO SET ASIDE THE GOVERNMENT'S CERTIFICATION**

**I.   INTRODUCTION**

James Comey, Andrew McCabe, Peter Strzok, Lisa Page, and Kevin Clinesmith all are former Federal Bureau of Investigation ("FBI") employees. Am. Compl. ¶¶ 38–42 (ECF No. 177). They were named as defendants only in two of the counts of plaintiff's 16-count Amended Complaint, specifically those asserting claims for malicious prosecution and conspiracy to commit malicious prosecution. *Id.* ¶¶ 667-678 (Count V); ¶¶ 679-692 (Count VI). Both of those claims relate to the five named former FBI employees' alleged involvement in an FBI counter-intelligence operation and associated Foreign Intelligence Surveillance Act (FISA) application processes.

Following service of plaintiff's Amended Complaint on the former FBI employees, the United States appeared in this action pursuant to the Westfall Act. 28 U.S.C. § 2679(b)–(e). Based on a certification executed by the Attorney General's delegate certifying that Comey, McCabe, Strzok, Page, and Clinesmith all were acting within the scope of their employment at

the time of the alleged incidents out of which the claims asserted against them in Counts V and VI of the Amended Complaint arose, the United States moved to substitute itself as the defendant in the place of the five former FBI employees with respect to these claims pursuant to the provisions of the Westfall Act, 28 U.S.C. § 2679(d)(1), and to dismiss the action as against the United States for lack of subject matter jurisdiction on the grounds that plaintiff did not exhaust his administrative remedies under the Federal Tort Claims Act (FTCA) before instituting this action, *id.* § 2675(a). U.S. Mot. Subst. and Dismiss ("U.S. Mot.") (ECF No. 224).

By Order dated July 21, 2022, this Court substituted the United States as the defendant in place of Comey, McCabe, Strzok, Page, and Clinesmith. Order (ECF No. 234). In doing so, the Court recognized that "Plaintiff is entitled to 'litigate the question of whether the employee[s] were acting within the scope of [their] employment when the challenged conduct occurred.'" *Id.* at 2 (quoting *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990) (alterations of internal quotation by Court). The Court added that "[i]f [Plaintiff] so chooses, he 'has the burden of altering the status quo by proving that the employee acted outside the scope of employment,' and the certification constitutes *prima facie* evidence that the employees were acting within the scope of their employment.'" *Id.* (quoting *S.J. & W. Ranch, Inc.*); *see also id.* (citing *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022)).

Plaintiff then filed a combined Memorandum in Opposition to Government Defendant's Motion to Dismiss, and in Support of his own Motion to Set Aside the Government's Scope Certification. Opposition ("Opp'n") (ECF No. 238). In this submission, plaintiff argues that Comey, McCabe, Strzok, Page, and Clinesmith all were acting outside the scope of their employment and therefore should be resubstituted as defendants in this action. Plaintiff further argues that even if the five named former FBI employees are not resubstituted as defendants, he

is entitled to take discovery on the issue of whether they in fact were acting within the scope of their employment when they engaged in the conduct that forms the basis for the claims plaintiff asserted against them. Plaintiff does not, however, deny that he instituted this action without first exhausting his administrative remedies under the FTCA, or argue that the action need not be dismissed as against the United States if the Court rejects his challenge to the United States' substitution for the five former FBI employees.

As explained herein, plaintiff's arguments in favor of altering the status quo and resubstituting the five former FBI employees as defendants all fail, as does his argument that he is entitled to discovery. Accordingly, the Court should deny plaintiff's Motion to Set Aside the Government's Scope Certification and grant the United States' Motion to Dismiss the action as against it for lack of subject matter jurisdiction based on plaintiff's failure to exhaust his administrative remedies under the FTCA before instituting the action.

**II.     ARGUMENT**

**A. Plaintiff Has Not Met His Burden to Demonstrate that the Former FBI Employees Were Acting Outside the Scope of Their Employment.**

Plaintiff brings claims of malicious prosecution and conspiracy to commit malicious prosecution against the former FBI employees based on their involvement in the counterintelligence investigation named Crossfire Hurricane and the FISA application process undertaken during that investigation. Am. Compl. ¶¶ 342–448; ¶¶ 667-678 (Count V); ¶¶ 679-692 (Count VI). The former FBI employees were acting within the scope of their employment when engaging in the underlying activities out of which plaintiff's claims are based, as counterintelligence operations and FISA surveillance are core activities of the FBI. U.S. Mot. 7–10.

Plaintiff's argument that the scope of employment certification executed by the Attorney

General's delegate should be set aside is unavailing. Although plaintiff acknowledges the appropriate standard of review of a Westfall Act certification, Opp'n 2, he misapprehends and misapplies that standard. The Eleventh Circuit most recently addressed the governing standards in *Omnipol, A.S.*, in which it affirmed the district court's rejection of such a challenge to a certification by the United States Attorney that the defendant government employees had acted within the scope of their employment when they allegedly conspired with others to defraud the plaintiffs. The Eleventh Circuit explained that, if a plaintiff challenges Attorney General's scope of employment certification, the district court must apply *de novo* review, but the certification serves as *prima facie* evidence that government employee was acting within scope of employment, and plaintiff bears the burden of altering the status quo by proving that government employee acted outside scope of his employment. 32 F.4th at 1305.

Despite the plaintiffs' allegations in *Omnipol* that the defendant government employee contracting officers had engaged in a scheme to defraud them through the fraudulent sale of arms and ammunition, the Court of Appeals held that the district court had properly upheld the certification. It concluded that even accepting the plaintiffs' allegations of fraud as true, the complaint alleged that the defendant employees had engaged in precisely the sort of acts they were hired to perform: overseeing the purchase of arms and ammunition for the military. *See id.* ("The District Court was therefore entirely correct in concluding both that no additional discovery was needed on the scope-of-employment issue and that the United States had been properly substituted as Defendant for [the contracting officers]."). Likewise here, even if plaintiff asserts that the former FBI employees engaged in improper conduct, plaintiff's allegations arise from their engagement in core FBI activities. *See* U.S. Mot. 7–10 (explaining how conduct at issue is within employees' scope of employment).

In reviewing the Attorney General's scope certification in *Omnipol*, moreover, the district court held that "to rebut the U.S. Attorney's certification, Plaintiffs must submit 'specific evidence that contradicts the Attorney General's certification decision, not merely conclusory allegations and speculation.'" *Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1339 (M.D. Fla. 2019), *aff'd*, 32 F.4th 1298 (11th Cir. 2022) (quoting *Gutierrez de Martinez v. Drug Enf't Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997). Here, as in *Omnipol,* plaintiff has submitted no specific evidence to contradict the Attorney General's scope certification, and instead relies on nothing more than conclusory allegations and speculation in arguing that the former FBI employees acted outside the scope of their employment when they engaged in the conduct that forms the basis for his claims against them. For that reason alone, his challenge to the scope certification must fail.

Moreover, although plaintiff agrees that the scope of employment inquiry in this case is governed by District of Columbia law, and he correctly recites the elements of the four-prong test under Restatement (Second) of Agency § 228 that District of Columbia courts use to determine when conduct falls within an employee's scope of employment, his arguments are inconsistent with courts' application of the test, particularly in cases involving application of the Westfall Act. *See, e.g., Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014) ("We apply the test 'very expansively,' and in essence ask 'whether the defendant merely was on duty or on the job when committing the alleged tort.'") (quoting *Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008)). For example, in *Council on American Islamic Relations (CAIR) v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006), the District of Columbia Circuit rejected the argument that a member of Congress's allegedly defamatory statement during a telephone interview with a member of the press was outside the scope of his employment because making defamatory

statements is not the kind of conduct he was employed to perform.  Instead, because speaking to the press about matters of public concern falls within the scope of a congressman's authorized duties, "[t]he appropriate question . . . is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the congressman] was employed to perform." *Id.* at 664; *see also Jacobs*, 724 F.3d at 222 (GSA supervisor's allegedly defamatory statements made in response to an inquiry from a prospective employer about his subordinate's job performance were within scope of his employment; "[t]he *type of act* [the supervisor] allegedly took here—responding to a prospective employer's request for a reference—is plainly 'the kind of conduct [the supervisor] was employed to perform.'") (emphasis in original) (quoting *Ballenger*, 444 F.3d at 664).

With regard to the first prong of the Restatement test (which requires that the conduct at issue be "of the kind [the employee] is employed to perform"), the District of Columbia Circuit has explained that "District of Columbia law requires that we focus on the type of act [the defendant employee] took that gave rise to the tort, not the wrongful character of that act." *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013); *see also Smith v. Clinton*, 886 F.3d 122, 126–27 (D.C. Cir. 2018) ("What matters is whether the underlying activity itself was part of the employee's duties."). Plaintiff's conclusory assertions that the former FBI employees acted wrongfully or tortiously misses the mark.  The proper focus is on the nature of the underlying conduct, not on whether that conduct is wrongful, tortious, or even criminal.

Similarly, with regard to the Restatement test's third prong (which requires that the employee "be actuated, at least in part, by a purpose to serve the [employer]"), the District of Columbia Circuit repeatedly has held that "only a *partial* desire to serve the [employer]" is required. *Jacobs*, 724 F.3d at 222 (emphasis in original); *see also Allaithi*, 753 F.3d at 1333

("[District of Columbia] law requires an employee be *solely* motivated by his own purposes for consequent conduct to fall outside the scope of employment.") (emphasis in original). As with the Restatement test's first prong, moreover, the District of Columbia Circuit has held that under its third prong "we examine 'the underlying dispute or controversy, not . . . the nature of the tort.'" *Jacobs*, 724 F.3d at 222 (quoting *Weinberger v. Johnson*, 518 A.2d 985, 992 (D.C. 1986)). "[T]he test 'is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf.'" *Id.* (quoting *Johnson*).[1]

Applying these principles here, the alleged conduct of the five former FBI employees relating to the FBI's counterintelligence investigation and associated FISA application processes all fits comfortably within the scope of their employment. Counterintelligence operations and FISA surveillance are activities that are undertaken by FBI employees on behalf of their employer. The alleged underlying activities out of which plaintiff's claims for malicious prosecution and conspiracy to commit malicious prosecution arose relate to an FBI counterintelligence operation and associated FISA application processes and were therefore part of the former employees' assigned duties. Accordingly, the substitution of the United States for Comey, McCabe, Strzok, Page, and Clinesmith was entirely proper.

Plaintiff's arguments relating specifically to each of the five former employees fare no better. With regard to Comey, plaintiff points to allegations concerning conduct that occurred after his termination as the FBI Director. Specifically, plaintiff alleges that Comey leaked

---

[1] Plaintiff does not dispute that the FBI employee's all satisfy the Restatement test's second prong, that all relevant conduct at issue occurred substantially within the authorized time and space limits. *See generally* Opp'n (not mentioning this element of the scope of employment test). Nor does plaintiff contend that his claims involve the use of force and that, therefore, the Restatement test's fourth prong "is not relevant here." *Kelley v. FBI*, 67 F. Supp. 3d 240, 285 n.34 (D.D.C. 2014).

internal FBI memos after his employment with the FBI ended. But that alleged leak does not form the basis for plaintiff's malicious prosecution and conspiracy to commit malicious prosecution claims against Comey. Instead, these claims against Comey are solely based on his conduct in conjunction with Crossfire Hurricane while he remained the Director of the FBI: alleged falsification of evidence; alleged reliance on knowingly false information; allegedly withholding "pertinent and material information from FISA applications;" and allegedly making "false and/or misleading statements to the FISC, Congress, and/or the Plaintiff." Am. Compl. ¶ 676, *accord* ¶ 686.. Even if the alleged leaks occurred, they have nothing to do with plaintiffs' malicious prosecution and conspiracy to commit malicious prosecution claims, and thus do not preclude the substitution of the United States for Comey with respect to those claims. *See Jacobs*, 724 F.3d at 224 ("[W]e note that [the plaintiff's] complaint includes several allegations against [the defendant employee] that have nothing to do with her claims . . . . Whether [the defendant employee] was acting outside the scope of his employment in taking the[se] actions . . . is irrelevant because they do not relate to [the plaintiff's] claims.").

Concerning Strzok and Page, plaintiff argues that a series of text messages they exchanged show that they held him in "utter disdain" and "engaged in a concerted effort to sabotage his presidential campaign." Pl.'s Br. at 6. But, as we have explained, whether an employee acts within the scope of his or her employment does not turn on the allegedly wrongful character of the acts at issue. *Jacobs*, 724 F.3d at 221. Here, plaintiff's allegations concerning Strzok and Page—that they participated in Crossfire Hurricane and were involved in the FISA application processes, Am. Compl. ¶¶ 342–448, *see also* Opp'n 6–7 (arguing only that Strzok and Page allegedly acted with an improper purpose)—relate to underlying activities that were part of their assigned duties as FBI employees. Moreover, even if Strzok and Page were only

partially motivated by a desire to serve their employer (and plaintiff has not alleged that they were motivated solely by animus toward him or a personal political agenda), their conduct would still be within the scope of their employment. *See Allaithi*, 753 F.3d at 1333 (conduct must be solely motivated by employee's personal purposes in order to take it outside scope of employment).

With respect to Clinesmith, plaintiff argues that Clinesmith's alteration of an email during the FISA application process constituted intentionally criminal conduct that should not be considered within the scope of Clinesmith's employment as an FBI attorney. Again, plaintiff misconstrues District of Columbia scope of employment law as it is applied in cases involving Westfall Act certifications. *See Smith*, 886 F.3d at 126 ("Extensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment— including specific allegations of defamation or of potentially criminal activities—does not take that conduct outside the scope of employment."). Indeed, under District of Columbia law, intentional or criminal conduct can be within the scope of employment. *See*, *e.g.*, *Johnson v. Weinberg*, 434 A.2d 404, 408–09 (D.C. 1981) (laundromat employee who shot and wounded plaintiff who had complained that his shirts were missing could be within scope of employment). The cases plaintiff relies upon all turned not on the fact that the conduct at issue was criminal, but instead on the fact that the conduct at issue had no relation whatsoever to the employee's job. *See Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 349 (D.C. 1987) (janitor who posed as security guard, imprisoned minors, and sexually assaulted them was not acting within scope); *Boykin v. D.C.*, 484 A.2d 560, 562 (D.C. 1984) (school official's sexual assault of disabled child was in no degree committed to serve the school's interest and not within scope); *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 32 (D.C. 1979) (railroad employee who

assaulted cab driver was in no degree committed for employer's benefit and not within scope). Here, plaintiff alleges Clinesmith—a former FBI attorney— altered a work e-mail that he transmitted as part of his job functions. Indeed, Plaintiff acknowledges that Clinesmith worked to prepare FISA applications and that he received this email from a governmental agency and forwarded it to the FBI Supervisory Special Agent. Opp'n 7. Moreover, in imposing a sentence of probation on Clinesmith for his offense, the United States District Court for the District of Columbia concluded that Clinesmith "had not acted with any political bias or any desire to harm the Trump campaign, or anyone affiliated with it, in forwarding the e-mail." Sentencing Tr. 51:19–25 in *United States v. Clinesmith*, No. 1:20-cr-165 (D.D.C. Feb. 22, 2021) (ECF No. 48). Accordingly, Clinesmith's conduct was "actuated, at least in part, by a purpose to serve" the United States. *Jacobs*, 724 F.3d at 221.

Finally, plaintiff argues that McCabe acted outside the scope of his employment by approving FISA applications he knew were uncorroborated and false. Approving FISA applications was undeniably part of McCabe's assigned duties as the Deputy Director of the FBI. As such, they clearly were within the scope of his employment as a matter of law. *Smith*, 886 F.3d at 126–27.

### B. Plaintiff Is Not Entitled to Any Discovery Relating to Whether the Former FBI Employees Were Acting Within the Scope of Their Employment.

"[N]othing mandates that a district court allow discovery and hold an evidentiary hearing before ruling on a [Westfall Act] certification." *Glover v. Donahoe*, 626 F. App'x 926, 930 (11th Cir. 2015). Where plaintiff fails "to forecast sufficient evidence to warrant further discovery" to contradict the Westfall Act certification, the Court should not permit discovery. *Castellanos v. Pfizer, Inc.*, 555 F. Supp. 2d 1343, 1348 (S.D. Fla. 2008); *see also Omnipol, A.S.*, 421 F. Supp. 3d at 1339 (same), *aff'd*, 32 F.4th 1298 (11th Cir. 2022). A plaintiff may only

obtain limited discovery if he meets his initial burden to point to "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Gutierrez de Martinez*, 111 F.3d at 1155. Here, plaintiff fails to meet that burden for the reasons stated above. Plaintiff has not pointed to any specific evidence that contradicts the certification decision and instead relies on conclusory allegations which, even if true, would not show that the FBI defendants acted outside of the scope of their employment. Thus, the Court should deny plaintiff's request for discovery, which would "effectively deny" these former employees their "absolute immunity afforded by the Westfall Act." *Wuterich*, 562 F.3d at 382.

### C. The Court Should Dismiss the United States.

Plaintiff concedes he has not exhausted his administrative remedies under the FTCA. Opp'n 9. The appropriate remedy therefore is to dismiss the action as against the United States for lack of subject matter jurisdiction. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## V. CONCLUSION

The Court should reject plaintiff's challenge to the Westfall Act certification and dismiss the United States for lack of subject matter jurisdiction.

Dated: August 18, 2022

Respectfully submitted,

JUAN ANTONIO GONZALEZ
United States Attorney

ANTHONY ERICKSON-POGORZELSKI
Assistant U.S. Attorney

JAMES G. TOUHEY, JR.
Director, Torts Branch

 s/ Stephen R. Terrell
STEPHEN R. TERRELL
Trial Attorney
Torts Branch, Civil Division

United States Department of Justice
P.O. Box 888
Washington, DC 20044
Stephen.Terrell2@usdoj.gov
(202) 353-1651

- 12 -