UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:22-cv-14102-DMM

DONALD J. TRUMP,

Plaintiff,

v.

HILLARY R. CLINTON, HFACC, INC.,
DEMOCRATIC NATIONAL COMMITTEE,
DNC SERVICES CORPORATION, PERKINS
COIE, LLC, MICHAEL SUSSMANN, MARC
ELIAS, DEBBIE WASSERMAN SCHULTZ,
CHARLES HALLIDAY DOLAN, JR., JAKE
SULLIVAN, ADAM SCHIFF, JOHN PODESTA,
ROBERT E. MOOK, PHILLIPE REINES,
FUSION GPS, GLENN SIMPSON, PETER
FRITSCH, NELLIE OHR, BRUCE OHR, DEFENDANT
BUSINESS INTELLIGENCE, LTD.,
CHRISTOPHER STEELE, IGOR DANCHENKO,
NEUSTAR, INC., NEUSTAR SECURITY SERVICES,
RODNEY JOFFE, JAMES COMEY, PETER STRZOK,
LISA PAGE, KEVIN CLINESMITH, ANDREW MCCABE,
ROD ROSENSTEIN, JOHN DOES 1 THROUGH 10
(said names being fictitious and unknown persons),
and ABC CORPORATIONS 1 THROUGH 10 (said
names being fictitious and unknown entities),

Defendants.

_____

**PLAINITFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
BUSINESS INTELLIGENCE LTD.'S MOTION TO DISMISS AND IN SUPPORT OF
CROSS-MOTION FOR ALTERNATE SERVICE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii, iv, v

PRELIMINARY STATEMENT .................................................... **Error! Bookmark not defined.**

LEGAL ARGUMENT...................................................................................... 1

I.    DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THE
STATE OF FLORIDA........................................................ **Error! Bookmark not defined.**

A. Defendant Has Sufficient Contacts With the United States Under Federal Law.......... 1

B. Florida's Long-Arm Statute Provides for Jurisdiction Over Defendant ..................... 4

II.   SERVICE OF PROCESS HAS BEEN PROPERLY EFFECTUATED UPON
DEFENDANT ............................................................................................ 7

A. The Complaint Was Properly Served Upon Defendant Pursuant to the Haque
Convention................................................................................................... 7

B. Plaintiff Should Be Granted Leave to Serve the Amended Complaint by a More
Practical, Alternative Method....................................................................... 10

III.  PLAINTIFF HAS ASSERTED VALID AND COGNIZABLE CLAIMS AGAINST
DEFENDANT …………………………………………………………………….......12

CONCLUSION............................................................................................ 16

# TABLE OF AUTHORITIES

*Access Telecom, Inc. v. MCI Telecomm. Corp.*
  197 F.3d 694, 718 (5th Cir. 1999), cert. denied, 531 U.S. 917 (2000)......................................... 2

*ADA v. Cigna Corp.*,
  605 F.3d 1283, 1293 (11th Cir. 2010) .................................................................................... 12

*Azalp LLC v. Silverstein*,
  14-10079, 2015 WL 12711232, at *4 (S.D. Fla. Aug. 14, 2015) ............................................. 2

*BankAtlantic v. Coast to Coast Contractors*,
  947 F. Supp at 484) ................................................................................................................ 1

*Belivacqua v. U.S. Bank, NA*,
  194 So.3d 461, 464 (Fla. 3rd DCA 2016) .............................................................................. 8

*Betty K Agencies, Ltd. v. MV/MONADA*,
  432 F.3d 1333, 1341 (11th Cir. 2005) .................................................................................... 8

*Boudloche v. Conoco Oil Corp.*,
  615 F.2d 687, 688-89 (5th Cir.1980) ..................................................................................... 9

*Brookshire Brothers Ltd. v. Chiquita Brands Int'l, Inc.*,
  No. 05-cv-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007) ................................... 10

*Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*,
  No. 15-81062, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016)......................................... 5

*Elandia Int'l, Inc. v. Ah Koy*,
  690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010 ........................................................................... 4

*Hertz Corp. v. Alamo Rent-A-Car, Inc.*,
  16 F.3d 1126, 1133 (11th Cir.1994) ...................................................................................... 9

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,*,
  421 F.3d 1162, 1168 (11th Cir. 2005). .................................................................................. 4

*In re Auto. Refinishing Paint Antitrust Litigation*,
  358 F.3d 288, 299 (3d Cir. 2004) ........................................................................................... 2

*In re Chase & Sanborn Corp.*,
  835 F.2d 1341, 1344 (11th Cir. 1988) .................................................................................... 9

*In re S1 Corp. Securities Litigation*,
  173 F. Supp. 2d 1334, 1345 (N.D. Ga. 2001)......................................................................... 2

ii

*J&M Assocs., Inc. v. Romero*,
  88 F. App'x 373, 375–76 (11th Cir. 2012) ................................................................ 5

*Koechli v. BIP Intern., Inc.*,
  861 So.2d 501, 503 (Fla. 1st DCA 2003) ................................................................. 8

*Leon v. Continental AG*,
  176 F.Supp. 1315 (S.D. Fla. 2016) .......................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306, 314 (1950) ......................................................................................... 11

*NHB Advisors, Inc. v. Czyzyk*,
  95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2013) ........................................................... 4

*Night Owl SP, LLC v Dongguan Auhua Elecs. Co., Ltd.*,
  2:19-CV-109-FTM-38NPM, 2020 WL 8768259, at *3 (M.D. Fla., Sept. 9, 2020) ................... 8

*Northrup King Co. v. Compania Productora Semillas Algoneras Selectas S.A.*,
  51 F.3d 1383, 1389 (8th Cir. 1995) ............................................................................ 8

*Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*,
  353 F.3d 916, 921, 927 (11th Cir. 2003). ................................................................. 10

*Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*,
  119 F.3d at 941 ........................................................................................................... 2

*Rio Properties, Inc. v. Rio Int'l*,
  284 F.3d 1007, 1015 (9th Cir. 2002) ....................................................................... 10

*Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.*,
  17- 21815-CV, 2017 WL 7796153 (S.D. Fla., Sept. 21, 2017) ................................ 11

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*
  366 F. Supp. 3d 516, 563 (S.D.N.Y. 2018) ................................................................ 3

*Strax Americas, Inc. v. Tech 21 Licensing Ltd.*,
  16-cv-25369, 2017 WL5953117 (S.D. Fla., Mar. 23, 2017) .................................... 11

*Swift Indus., Inc. v. Husqvarna AB*
  Case No. 07-4631, 2008 WL 11366182, *3 (E.D. Penn. Aug. 4, 2008) .................... 2

*Tavakoli v. Doronin.*,
  No. 18-21592, 2019 WL 1242669, at *11 (S.D. Fla. Mar. 18, 2019). ................... 5, 6

*Tracfone Wireless, Inc. v. Bitton,*
    278 F.R.D. 687, 692 (S.D. Fla. 2012)....................................................................... 10

*Tracfone Wireless Inc. v. Distelec Distribuciones Electronicas, S.A. de DV,*
    268 F.R.D. 687, 691 (S.D. Fla. 2010)....................................................................... 11

*Tracfone Wireless, Inc. v. Hernandez,*
    126 F. Supp. 3d 1357, 1359 (S.D. Fla. 2015)..................................................... 10, 11

*TracFone Wireless, Inc. v. Unlimited PCS Inc.,*
    279 F.R.D. 626, 631 (S.D. Fla. 2012)....................................................................... 11

*Tyco Fire & SEC., LLC v. Alcocer,*
    No. 04-23127, 2005 U.S. Dist. LEXIS 46324, at *14 (S.D. Fla Oct. 6. 2005) ........... 6

*Unite Nat'l Ret. Fund v. Ariela, Inc.,*
    643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008) ................................................................ 8

*United States v. Sylvestri,*
    409 F.3d 1311, 1328 (11th Cir. 2005) ...................................................................... 12

*United States Securities and Exchange Commission v. Carillo,*
    115 F.3d 1540, 1544 (11th Cir. 1997) ........................................................................ 2

*United Techs. Corp. v. Mazer,*
    556 F.3d 1260, 1281 (11th Cir. 2009). ....................................................................... 4

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
    486 U.S. 694, 699 (1988) .......................................................................................... 7

*Walters v. Blankenship,*
    931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) ......................................................... 14

*Water Splash, Inc. v. Menon,*
    137 S. Ct. 1504, 1507 (2017) ..................................................................................... 7

*Wilcox v. Stout,*
    637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) .......................................................... 4

## PRELIMINARY STATEMENT

The plaintiff, Donald J. Trump ("Plaintiff")[1], respectfully submits this memorandum of law in opposition to the motion to dismiss (the "Motion") the Amended Complaint filed by the defendant, Orbis Business Intelligence Ltd. ("Defendant"), and in support of Plaintiff's cross-motion to authorize alternative service pursuant to Rules 4(h)(2) and 4(f)(3) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendant's motion must be denied in its entirety and Plaintiff's cross-motion must be granted.

## LEGAL ARGUMENT

**I.    DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION IN THE STATE OF FLORIDA**

As set forth below, Plaintiff properly alleges that this Court maintains personal jurisdiction over Defendant under both the RICO act and Florida's long-arm statute. As such, Defendant's Motion must be denied because the requirements for exercising personal jurisdiction are satisfied here.

### A.   *Defendant Has Sufficient Contacts with the United States Under Federal Law*

As an initial matter, Defendant incorrectly contends that it cannot be subject to personal jurisdiction in the state of Florida because it is a foreign corporation based outside of the United States and, therefore, not subject to Florida's long arm statute. Contrary to Defendant's contention, the relevant analysis is not whether its conduct falls within Florida's long arm statute, but rather, whether Defendant has sufficient contacts with the United States under federal law. Properly framed, Defendant's jurisdictional attack cannot succeed, because it has more than enough contacts with the United States to satisfy these constitutional requirements.

---

[1] All capitalized terms herein shall have the same meaning and shall be defined in the same manner and context as they appear and are pleaded in the Amended Complaint.

It is well established that "if a federal statute provides for service of process, then the court must use the federal statutory provision rather than a state long-arm statute." *BankAtlantic v. Coast to Coast Contractors*, 947 F. Supp at 484; *see also* Fed. R. Civ. P. 4(e); *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1344 (11th Cir. 1988) (rev'd on other grounds). Relevant here is 18 U.S.C. § 1965, which provides that nationwide service of process is permitted in actions brought pursuant to RICO. Specifically, § 1965(d), "Venue and Process," states that "all other process in any action or proceeding under this chapter . . . may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). Since Plaintiff has asserted a claim against Defendant under the civil RICO statute, 18 U.S.C.  §§ 1961-1968, service must be done in accordance with this federal statute and, therefore, the question of jurisdiction must be analyzed under federal law as opposed to Florida's long arm statute.

When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry turns to "whether the respondent has had sufficient minimum contacts with the United States." *In re S1 Corp. Securities Litigation*, 173 F. Supp. 2d 1334, 1345 (N.D. Ga. 2001); *see also United States Securities and Exchange Commission v. Carillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) ("We agree with the rule applied by the other circuits and hereby hold that the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process."); *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."); *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999), cert. denied, 531 U.S. 917 (2000); *In re Auto. Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 299 (3d Cir. 2004)

("We hold that personal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole."); *Azalp LLC v. Silverstein*, 14-10079, 2015 WL 12711232, at *4 (S.D. Fla. Aug. 14, 2015) ("Finding that 18 U.S.C. § 1965 permits service, the Court must now determine whether the Fifth Amendment's Due Process Clause constrains [the] federal court's power to exercise personal jurisdiction via nationwide service of process.") (analyzing RICO statute's comparable nationwide service of process provision) (citation and internal marks omitted); *Swift Indus., Inc. v. Husqvarna AB*, Case No. 07-4631, 2008 WL 11366182, *3 (E.D. Penn. Aug. 4, 2008) ("When a claim is based on a federal statute authorizing nationwide service of process, personal jurisdiction may be assessed on the basis of the defendant's national contacts."). "The rationale underlying this national contacts approach is that when the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation." *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 563 (S.D.N.Y. 2018).

Here, there is no question that the Amended Complaint alleges that Defendant has sufficient minimum contacts with the United States. This case is primarily focused on the RICO enterprise established by several defendants who engaged in a concerted plot to undermine the 2016 Election and, subsequently, Plaintiff's presidential administration, and to otherwise sabotage Plaintiff's political career through fraudulent and illicit means. The Amended Complaint thoroughly establishes the significant contacts between Defendant (and its agents, including Steele) and the United States. For instance, the Amended Complaint details how Defendant was retained by a United States presidential candidate, Clinton, her campaign, the Clinton Campaign, and their prominent associates, the DNC, Perkins Coie, and Fusion GPS, to develop seventeen fraudulent anti-Trump memoranda known as the "Steele Dossier." Am. Compl. ¶ 81. The Amended Complaint

3

further details how Defendant, and its co-founder, Steele, shared the overarching goal of the Defendant's conspiracy, *id.* ¶ 80, and committed numerous acts in coordination with these US-based co-defendants, including, but not limited to: the development of the fraudulent Dossier which was replete with false information, misrepresentations, and blatant lies and was designed to malign Plaintiff, a U.S. presidential candidate and, eventually, sitting President, *id.* ¶ 70; the dissemination of the Dossier to mislead numerous federal law enforcement agencies, including the FBI and the Department of State, which provoked several unfounded national investigations, *id.* ¶¶ 84-100; and the distribution of the Dossier to major U.S. media outlet—such as *The New York Times*, *The Washington Post*, *CNN*, *Yahoo News*, and *Mother Jones*—in an effort to spark a nationwide media frenzy, *id.* ¶¶ 166, 272-275.

Given that Defendant's conduct was targeted at many high-level U.S. based actors—including a presidential candidate and eventual sitting president, top-ranking federal law enforcement officials, and major U.S. media outlets—coupled with the pervasive, negative impact that Defendant's actions had upon the country as a whole, there is simply no question that the Amended Complaint sufficiently alleges that Defendant has made sufficient contacts with the United States. Therefore, personal jurisdictional has been properly established over Defendant.

### B. Florida's Long-Arm Statute Provides for Jurisdiction Over Defendant

Even assuming *arguendo* that the Court's analysis were to turn on application of Florida's long arm statute, Fla. Stat. § 48.193(1)(a)(2), personal jurisdiction has been adequately established over Defendant all the same. Indeed, as a separate and independently sufficient basis for jurisdiction, this Court has personal jurisdiction over Defendant in accordance with the 'co-conspirator' theory.

It is well established that the "tortfeasor's physical presence in Florida is not required . . . jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that

produces an injury in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass*, P.A., 421 F.3d

1162, 1168 (11th Cir. 2005). With regard to inchoate offenses such as conspiracy, the Eleventh

Circuit has explained:

> Florida courts have held that the state's long-arm statute can support personal jurisdiction
> over any alleged conspirator where any other co-conspirator commits an act in Florida in
> furtherance of the conspiracy, **even if the defendant over whom personal jurisdiction is
> sought individually committed no act in, or had no relevant contact with, Florida**.

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009). (emphasis added).

It follows that, if a plaintiff successfully states a cause of action for conspiracy to commit a

tortious act and alleges that any member of the conspiracy committed the tortious act in Florida in

furtherance of the conspiracy, then all of the conspirators are subject to jurisdiction. *NHB Advisors,*

*Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2013) ("if a plaintiff has successfully alleged

a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff,

and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious

acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the

jurisdiction of Florida through its long-arm statute."); *see Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla.

Dist. Ct. App. 1994) (finding that all co-conspirators are subject to the jurisdiction of the state of

Florida through its long arm statute).

As described in the Amended Complaint and the within memoranda of law, Plaintiff

sufficiently pleads that Defendant participated in a RICO conspiracy with other co-conspirators that

caused harm in the state of Florida. While the harm perpetrated by the RICO conspiracy impacted

the nation as a whole, it has also been alleged that certain co-conspirators produced an injury within

State of Florida. In particular, the DNC and Perkins Coie both maintain a continuous presence in the

state of Florida, and these two entities commissioned the creation of the Dossier. *See generally* Am.

Compl. The DNC operations and conducts substantial and continuous business in the State of

Florida, and Perkins Coie maintains a registered agent in Tallahasee Florida. *Id.* ¶¶ 15-16. As such, Plaintiff adequately demonstrates that Defendant must be subject to personal jurisdiction in the state of Florida.

Defendant argues that the Court's jurisdiction over him would not comport with due process owing to his purported lack of Florida contacts. However, this argument is misguided since Defendant fails to acknowledge that there are instances where a court can impose jurisdiction over a foreign defendant under a conspiracy-liability theory. Indeed, the acts of a conspiracy in the forum may be imputed to non-resident defendants to establish minimum contacts. *Tavakoli v. Doronin*, No. 18-21592, 2019 WL 1242669, at *11 (S.D. Fla. Mar. 18, 2019).

In *Tavakoli*, the Court considered whether jurisdiction over a non-resident defendant was appropriate based on its involvement in a civil conspiracy, despite the non-resident defendant's lack of direct forum contacts. *See id*. In analyzing whether jurisdiction over the non-resident defendant would comport with due process, the Court first explained that the plaintiff had sufficiently alleged a civil conspiracy between the non-resident defendants and other co-conspirators who committed substantial acts in furtherance of the conspiracy in Florida. *See id*. The Court then concluded that "[t]he acts of the conspiracy in Florida may be imputed to [the non-resident defendant] to establish minimum contacts." *Id*. (*citing J&M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375–76 (11th Cir. 2012); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016); other citations omitted). Finally, the Court determined that exercising jurisdiction over the non-resident was consistent with traditional notions of fair play and substantial justice because the non-resident defendant did not establish that defending the suit in Florida would unduly burden it, and because Florida had a significant interest in resolving the dispute due to the tortious conduct occurring in the forum. *Tavakoli*, 2019 WL 1242669, at *12.

Here, it is irrefutable that Defendant has had minimum contacts with the United States; thus, its conduct satisfies the minimum contacts requirement under RICO's nationwide service of process provision. The burden shifts to the Defendant to prove that litigation in the Southern District of Florida would be so gravely difficult and inconvenient that they will suffer a severe disadvantage in comparison to Plaintiff, an argument which Defendant has failed to even raise in its motion papers. *See Tyco Fire & SEC., LLC v. Alcocer*, No. 04-23127, 2005 U.S. Dist. LEXIS 46324, at *14 (S.D. Fla Oct. 6. 2005) (noting "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern… the burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient' that [the defendant] unfairly is at severe disadvantage in comparison to his opponent.").

Based on the foregoing, Florida's long arm statute serves as a separate and independent basis for this Court to maintain personal jurisdiction over Defendant.

## II.      SERVICE OF PROCESS HAS BEEN PROPERLY EFFECTUATED UPON DEFENDANT

### A. The Complaint Was Properly Served Upon Defendant Pursuant to the Hague Convention

Defendant spends a significant portion of its motion arguing that the Amended Complaint should be dismissed—with prejudice no less—due to purported "insufficient" service. In putting forth this argument, Defendant is either wholly misinformed as to facts surrounding Plaintiff's method of service or is blatantly misleading the Court as to circumstances of same. Simply stated, Plaintiff has properly effectuated service upon Defendant through the United Kingdom's Central Authority, in full compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hauge Convention") and the Federal Rules of Civil Procedure.

In its motion, Defendant correctly notes that service upon a foreign corporation defendant

must be done in accordance with Fed. R. Civ. P. 4(h), which incorporates by reference Fed. R. Civ. P. 4(f). FRCP 4(f) states, in relevant part, that a foreign defendant "may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[.]" Fed. R. Civ. P. 4(f)(1).

The Hague Convention established rules for when "there is occasion to transmit a judicial or extrajudicial document for service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988) (citation omitted). These rules "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1507 (2017) (citations omitted). Article 2 of the Hague Convention mandates that each contracting country "designate a Central Authority which [] undertake[s] to receive requests for service coming from other" countries to the agreement. *Id.* art. 2. Once a Central Authority receives a request, it should serve documents "by a method prescribed by [its] internal law[s]." *Volkswagenwerk,* 486 U.S. at 699. After the Central Authority serves the person named in the request, it must "complete a certificate . . . that the document has been served." Hague Convention art 6., 20 U.S.T. 361.

Here, as required under the Hague Convention, Plaintiff, by and through an authorized vendor (Crowe Foreign Services), submitted a request to the Central Authority of the United Kingdom[2] on April 19, 2022, requesting service upon Defendant of the following documents: (i) Hague "Summary" with Warning Page; (ii) Summons in a Civil Action; (iii) Complaint for Damages; and (iv) Civil Cover Sheet. *See generally* Declaration of Alina Habba, Esq., **Exhibit A**. Thereafter, on July 19, 2022, an authorized official with the Senior Court of England and Wales, Foreign Process Section, served the documents upon Defendant at its registered business. *Id.* The

---

[2] The request was submitted to The Senior Master, Royal Courts of Justice, LONDON WC2A 2LL, which is the designated Central Authority for the United Kingdom. *See* https://bit.ly/3e3sHMa.

Central Authority subsequently provided a certification of service dated August 12, 2022, confirming that service was effectuated upon Defendant. *Id.* The certification was filed by Plaintiff in the instant action on September 1, 2022, thereby completing service upon Defendant. *See* Habba Dec., **Ex. A**; *see also* ECF Doc. No. 261.

Significantly, the "return of the central authority's completed certificate of service is prima facie evidence of service by the central authority." *Belivacqua v. U.S. Bank, NA*, 194 So.3d 461, 464 (Fla. 3rd DCA 2016) (quoting *Koechli v. BIP Intern., Inc.,* 861 So.2d 501, 503 (Fla. 1st DCA 2003)); *see also Northrup King Co. v. Compania Productora Semillas Algoneras Selectas S.A.,* 51 F.3d 1383, 1389 (8th Cir. 1995) (Noting that the "return of a completed certificate of service is prima facie evidence that the [Central] Authority's service on [a defendant] was made in compliance with the [Hague] Convention."); *Night Owl SP, LLC v Dongguan Auhua Elecs. Co., Ltd.*, 2:19-CV-109-FTM-38NPM, 2020 WL 8768259, at *3 (M.D. Fla., Sept. 9, 2020) ("[A] certificate of service from China's central authority would have been conclusive."); *Unite Nat'l Ret. Fund v. Ariela, Inc.,* 643 F. Supp. 2d 328, 334 (S.D.N.Y. 2008) ("It is well settled that the return of a completed certificate of service by a Central Authority establishes prima facie evidence that the Central Authority's service on Defendants was made in compliance with the convention.").

Defendant has not offered any evidence to rebut the prima facie showing of proper service. Indeed, if anything, Defendant's proofs confirm that the Complaint was properly served at Defendant's "registered office" on July 19, 2022, while further demonstrating that Christopher Burrows, the Director and Joint Founder of Defendant, has actual notice of the instant action.

Based on the foregoing, there is no question that Plaintiff has properly effectuated service of the Complaint upon Defendant in accordance with the Hague Convention and the Federal Rules of Civil Procedure. Accordingly, Defendant has been joined as a party to this action and has no basis

for arguing ineffectual service of process.

As an aside, Defendant's request that the Amended Complaint be dismissed with prejudice is patently improper. Even if Plaintiff's service of the Complaint was defective—which it was not—it is well-established that a dismissal for improper service may only be done *without prejudice*. *See* Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days . . . [the court] shall dismiss the action *without prejudice* as to that defendant or direct that service be effected.") (emphasis added); *Betty K Agencies, Ltd. v. MV/MONADA*, 432 F.3d 1333, 1341 (11th Cir. 2005) ("[W]e remain unable to discern how failure to serve the [defendant] under the peculiar circumstances of this case could warrant a dismissal with prejudice . . . if the district court actually lacked jurisdiction over the [defendant], the court would have lacked the power to dismiss [the plaintiff's] claims against the [defendant] *with prejudice*."); *see also Hertz Corp. v. Alamo Rent-A-Car, Inc.,* 16 F.3d 1126, 1133 (11th Cir.1994) (holding that a district court's order of dismissal with prejudice was a nullity because the court lacked jurisdiction); *Boudloche v. Conoco Oil Corp.,* 615 F.2d 687, 688-89 (5th Cir.1980) ("Since the court lacked jurisdiction over the action, it had no power to render a judgment on the merits.").

### B. Plaintiff Should Be Granted Leave to Serve the Amended Complaint by a More Practical, Alternative Method

While Defendant has been properly served with the Complaint, service of the Amended Complaint has yet to be effectuated. This process remains underway, but—given that Defendant has already entered an appearance in this action and has confirmed that it has actual notice of the filing of the Amended Complaint—Plaintiff respectfully requests leave to effect service of process of the Amended Complaint upon Defendant via alternative methods pursuant to Rules 4(h)(2) and 4(f)(3). Particularly, Plaintiff seeks to serve Defendant via international courier.

Service upon a foreign corporation must be done in accordance with Rule 4(h), which

provides for service "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h). Rule 4(f), in turn, "provides three methods for serving an individual in a foreign country: (1) by internationally agreed means, such as those authorized by the Hague Convention on Service of Process; (2) by a method that is reasonably calculated to give notice; or (3) by other means committed to a court's discretion that are not prohibited by international agreement." *Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1359 (S.D. Fla. 2015). Importantly, "[t]he plain language of [Rule 4(f)] does not indicate any hierarchy among the several acceptable methods." *Tracfone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. 2012); *see also Brookshire Brothers Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-cv-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007) (citing *Rio Properties, Inc. v. Rio Int'l*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing.").

A court has "broad discretion" to direct alternative means of service under Fed. R. Civ. P. 4(f)(3) when the requested method of service is consistent with due process and not prohibited by international agreement. *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003). To comply with due process, the method of service employed must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Further, "[t]he notice must . . . reasonably . . . convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Id.*

Courts have consistently deemed international courier, such as FedEx, an acceptable method of service that complies with the requirements of due process and is otherwise permissible under

Rule 4(f)(3). *See, e.g., Tracfone Wireless Inc. v. Distelec Distribuciones Electronicas, S.A. de DV,* 268 F.R.D. 687, 691 (S.D. Fla. 2010); *Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.,* 17-21815-CV, 2017 WL 7796153 (S.D. Fla., Sept. 21, 2017); *Strax Americas, Inc. v. Tech 21 Licensing Ltd.,* 16-cv-25369, 2017 WL5953117 (S.D. Fla., Mar. 23, 2017); *Tracfone Wireless v. Hernandez,* 126 F. Supp. 3d 1357, 1362 (S.D. Fla. 2015); *Leon v. Continental AG,* 176 F.Supp. 1315 (S.D. Fla. 2016); *TracFone Wireless, Inc. v. Unlimited PCS Inc.,* 279 F.R.D. 626, 631 (S.D. Fla. 2012). Further, since the United Kingdom has not objected to Article 10(a) of the Hague Convention, this method of service of not prohibited by international agreement.[3]

Here, service by international courier is especially appropriate in light of the fact that Defendant has actual notice of the instant action, has already been joined as a party, and is well aware of the allegations contained in the Amended Complaint. Further, considering the extraordinary number of defendants in this action and the immense amount of discovery that will need to be completed in a limited amount of time, judicial economy weighs heavily in favor of permitting Plaintiff to serve Defendant with the Amended Complaint by a more expeditious method of process—such as international courier—as opposed to delaying the prosecution of this action while Plaintiff awaits service to be effectuated upon Defendant by the United Kingdom's Central Authority.

For the foregoing reasons, Plaintiff respectfully seeks leave to serve Defendant by international courier, namely FedEx, in accordance with Rules 4(h)(2) and 4(f)(3).

### III.   PLAINTIFF HAS ASSERTED VALID AND COGNIZABLE CLAIMS AGAINST DEFENDANT

In arguing that the Amended Complaint fails to state a viable cause of action, Defendant

---

[3] *See Table Reflecting Applicability of Articles 8(2), 10(a)(a) and (c), 15(2) and 16(3) of the Hague Service Convention,* https://bit.ly/3AwLxmr.

largely relies upon the arguments set forth in his co-defendants' Consolidated Motion to Dismiss dated July 24, 2022 (ECF Doc. No. 226). Plaintiff, in turn, will rely upon the corresponding counter-arguments set forth in his Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint dated August 4, 2022 (ECF Doc. No. 237), which is hereby incorporated by reference.

Moreover, as previously explained, there is simply no question that Plaintiff has pleaded valid and cognizable claims against Defendant. With respect to Count II (RICO conspiracy), Plaintiff undoubtedly puts forth a cognizable claim against Defendant. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that Defendant agreed to the overall objective of the conspiracy; or (2) by showing that Defendant agreed to commit two predicate acts." *American Dental Assn.*, 605 F.3d at 1293 (citation omitted). Such a claim may be shown through circumstantial evidence, including "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *United States v. Sylvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005); *see also ADA v. Cigna Corp.,* 605 F.3d 1283, 1293 (11th Cir. 2010*)*, 605 F.3d at 1293 (noting that a plaintiff need not offer direct evidence of a RICO agreement; existence of a conspiracy "may be inferred from the conduct of the participants.").

Here, Defendant baselessly claims that the RICO Conspiracy allegations asserted against it in the Amended Complaint are "conclusory." Def. Mem. at 18. This characterization is simply disingenuous. Indeed, the Amended Complaint sets forth a vast number of facts which extensively demonstrate that Steele—who, at all relevant times, was acting within the scope of his employment with Defendant and in service of same—both agreed to the agreed to the overall objective of the conspiracy *and* agreed to commit two predicate acts.

First, with regard to Steele's agreement with the overall objective of the conspiracy, the Amended Complaint provides that "Defendant Ltd. was chosen to partake in the scheme because

Steele's interests were aligned with the Defendants' overarching conspiracy," Am. Compl. ¶ 95, including, but not limited to, the allegations that: Steele was 'desperate that Donald Trump not get elected' and "was passionate about [Donald J. Trump] not being president," *id.*; in accepting his assignment to collect intelligence regarding a purported Trump-Russia connection, Steele was aware that "Democratic Party Associates" were paying for his and Fusion GPS's "research" and that the "ultimate client" was "the leadership of the Clinton Presidential Campaign," *id.* ¶ 99; Steele testified that "the purpose of [his] work was to prevent [Plaintiff] from becoming president," *id.* ¶ 105; Steele admitted that the FBI was an "intended audience" of his reporting, *id.*; Steele confirmed that he shared the DNC and Clinton Campaign's goal of having the information "come to light" prior to election day, *id.* ¶ 239; Steele acknowledged that he met with a journalist from *Mother Jones* on October 31, 2016 because he "wanted [Corn] to publish that the US Government was investigating Trump" and was "aware that Mr. Corn was likely to be publishing an article after the interview." *id.* ¶¶ 272-273.

Second, it can also be inferred from Steele's conduct that he agreed to commit numerous predicate acts, including obstruction of justice and wire fraud. This much can be gleaned from the contents of the Amended Complaint, including the allegations that: Steele drafted the fraudulent Dossier which was "intended to not only harm Trump's political career and candidacy, but more importantly, it was fabricated to induce the FBI to commence an investigation into alleged ties between Russia and [Plaintiff]," *id.* ¶ 106; Steele met with numerous major media outlets to discuss his falsified reporting concerning the alleged Trump-Russia collusion, *id.* ¶ 227; Steele repeatedly disseminated copies of his Dossier reports to the FBI, *id.* ¶¶ 158, 226, 651; Steele met with the FBI's Crossfire Hurricane team and failed to disclose the identities of his client, thereby furthering the RICO conspiracy, *id.* ¶ 233; and Steele met with David Kramer, an affiliate of Senator John McCain,

and showed him the Dossier in the hopes that McCain would share his findings with his "colleagues on the various committees in the Senate," including "his committees in Congress, the Homeland Security Committee and the Intelligence Committee," as well as "other agencies", *id.* ¶ 291.

Taken as a whole, the operative facts outlined above far surpass the minimum standard necessary to plead a cognizable claim under 18 U.S.C. § 1962(d). Further, these same facts also support the validity of Plaintiff's claim for Conspiracy to Commit Injurious Falsehood since the Amended Complaint thoroughly establishes that Steele conspired with several other defendants to sabotage Plaintiff's political career through fraudulent and unlawful means, and that he committed numerous overt acts in furtherance of this goal. *See Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) ("The elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.").

Based on the foregoing, Plaintiff's has adequately pleaded claims of RICO Conspiracy and Conspiracy to Commit Injurious Falsehood against Defendant.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 1st day of September, 2022, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222


 /s/ Pet*er Ticktin*
PETER TICKTIN, ESQUIRE
Florida Bar No. 887935
JAMIE ALAN SASSON, ESQUIRE
Florida Bar No. 10802
Our Matter No.: 22-0062

and

**HABBA MADAIO & ASSOCIATES LLP**
1430 US Highway 206
Suite 240
Bedminster, New Jersey 07921
ALINA HABBA, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 018592010
MICHAEL T. MADAIO, ESQUIRE (*Pro Hac Vice*)
New Jersey Bar No. 070752013
Our Matter No.: 4500-74