IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA


CASE NUMBER: 2:22-cv-14102-DMM



DONALD J. TRUMP,

        Plaintiff,

v.

HILLARY R. CLINTON, et al.,

        Defendant.

_____/


**PLAINTIFFS' RESPONSE TO DEFENDANT, CHARLES HALLIDAY DOLAN JR.'S**
**<u>MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................iii, iv

INTRODUCTION ........................................................................ **Error! Bookmark not defined.**

LEGAL STANDARD......................................................................................................................2

LEGAL ARGUMENT....................................................................................................................4

    I.    Plaintiff's Counsel Engaged in a Diligent Pre-Filing Inquiry. ...........
        4

    II.   Plaintiff's Claims Against Defendant Are Non-Frivolous....................................................11

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

*American Dental Ass'n v. Cigna Corp.*,
　605 F.3d 1283, 1293 (11th Cir.) ............................................................................ 12

*Andre v. CCB Credit Services, Inc.*,
　2010 WL 3222500, at *2 (S.D. Fla. July 21, 2010) ................................................ 12

*Cabrera v. The Goodyear Tire & Rubber Co.*,
　2011 U.S. Dist. LEXIS 16655, 2011 WL 535103 at *2 (S.D. Fla., Feb. 8, 2011) .................. 15

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
　370 U.S. 690, 699 (1962) ........................................................................................ 13

*Davis v. Carl*,
　906 F.2d 533, 538 (11th Cir. 1990) ......................................................................... 2

*Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*,
　2008 WL 11333071, at * 1 (S.D. Fla. Dec. 19, 2008) ............................................. 2

*Elie v. Pac. Land Ltd.*,
　2012 WL 13005814, at *3 (S.D. Fla. July 5, 2012) ................................................. 12

*Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*,
　2006 WL 2471522, at *3 (M.D. Fla. Aug. 24, 2006) .............................................. 5

*Hillsborough County v. A & E Road Oiling Service, Inc.*,
　160 F.R.D. 655, 658-659 (M.D. Fla. 1995) ............................................................ 15

*Indus. Risk Insurers v. M.A.N. Gutehoffriungshutte GmbH*,
　141 F.3d 1434, 1448 (11th Cir. 1998) ..................................................................... 3

*Jones v. Int'l Riding Helmets, Ltd.*,
　49 F.3d 692, 694 (11th Cir. 1995) ........................................................................... 1

*Leach v. Northern Telecom, Inc.*,
　141 F.R.D. 420, 429 (E.D.N.C. 1991) ..................................................................... 2

*Manhattan Const. Co. v. Place Props. LP*,
　559 Fed. Appx. 856, 858 (11th Cir. 2014) .............................................................. 1

*Massengale v. Ray*,
　267 F.3d 1298, 1302 (11th Cir. 2001) ..................................................................... 11

iii

*McMahan Sec. Co. L.P. v. FB Foods, Inc.*,
  2006 WL 2092643 at *2 (M.D. Fla. July 27, 2006) .................................................. 2

*O'Bryan v. Joe Taylor Restoration, Inc.*,
  No. 20-cv-80993, 2021 U.S. Dist. LEXIS 1710, at *5 (S.D. Fla. Jan. 6, 2021) ................. 10, 11

*Operating Ena'rs Pension Trust v. A-C Co.*,
  859 F.2d 1336, 1344 (9th Cir. 1988) ................................................................. 1

*Pannonia Farms, Inc. v. USA Cable*,
  426 F.3d 650, 652 (2d Cir. 2005) .................................................................... 2

*Pharma Supply, Inc. v. Stein*,
  2015 WL 11439276, at *1 (S.D. Fla. May 27, 2015) ............................................. 2, 3

*Risk Insurers v. M.A.N. Gutehoffriungshutte GmbH*,
  141 F.3d 1434, 1448 (11th Cir. 1998) ................................................................ 2

*Royal Surplus Lines Ins. Co. v. Coachmen Indus., Inc.*,
  229 F.R.D. 695, 696 (M.D. Fla. 2005) ............................................................. 3, 4

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323, 334 (2d Cir. 1999) .................................................................... 2

*Walker v. Hallmark Bank & Tr., LTD.*,
  2010 WL 3257993, at *2 (S.D. Fla. Aug. 17, 2010) ................................................. 1

*White v. Verizon Florida, LLC*,
  2011 WL 806713, *5 (M.D.Fla. 2011) ............................................................... 15

*Thompson v. RelationServe Media, Inc.*,
  510 F.3d 628 (2010) .................................................................................. 8

*United States v. Sylvestri*,
  409 F.3d 1311, 1328 (11th Cir. 2005) ............................................................... 13

*Walters v. Blankenship*,
  931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006) .................................................... 13

*White v. Verizon Florida, LLC*,
  2011 WL 806713, *5 (M.D.Fla. 2011) ................................................................ 8

*Worldwide Primates, Inc. v. McGreal*,
  87 F.3d 1252, 1254 (11th Cir. 1996) ................................................................. 2

iv

**<u>RULES</u>**

Fed. R. Civ. P. 11(b)(3)................................................................................................................ 1

The Plaintiff, Donald J. Trump, (hereinafter referred to as "Plaintiff"), by and through his undersigned attorneys hereby submits this Response to Defendant, Charles Halliday Dolan, Jr.'s (hereinafter referred to as "Defendant") Motion for Sanctions, and in support, state as follows:

## <u>INTRODUCTION</u>

Without any basis in fact or law, Defendant moves before this Court to sanction Plaintiff pursuant to Rule 11, arguing that the claims asserted against him are premised upon "speculation, rumor, and innuendo." (DE 268 at 1). Defendant's stance is disingenuous and without merit. Most importantly, it is provably false. Indeed, the Amended Complaint was methodically compiled in reliance on official government documents and other authoritative sources. As demonstrated below, the vast majority of Plaintiff's allegations against Defendant were sourced directly from Special Counsel John Durham and, more specifically, his criminal indictment against Igor Danchenko. The indictment—which is the culmination of a large-scale, years-long investigation by a highly-qualified federal agency—is rife with actionable allegations against Defendant and provides ample support for the claims asserted Defendant in this civil action. In addition, Plaintiff's counsel has undertaken significant, diligent, and good-faith steps to assure that the Amended Complaint has a legitimate evidentiary and stands by the adequacy of those efforts.

In short, Defendant's motion is entirely without merit; it lacks specificity, is devoid of factual and evidentiary support, and is comprised of nothing more than thread-bare legal analysis. Plaintiff's claims are rooted in evidentiary support, based on viable legal theories, and present actionable claims against Defendant for his role in furthering the false narrative that Plaintiff colluded with the Russian government to undermine the 2016 Presidential Election. For these reasons, which are set forth at length below, the Motion must be denied.

1

**LEGAL STANDARD**

Rule 11 of the Federal Rules of Civil Procedure provide, in pertinent part, that an "presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). Rule 11 "should not be employed as a discovery device or to test the legal sufficiency of allegations in the pleadings . . . . Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, . . . to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation . . . ." Fed. R. Civ. P. 11, advisory committee notes to 1993 amendment. Further, "the filing of a [Rule 11] motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions," and "the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion." *Id.*; *see* Fed. R. Civ. P. 11(c)(2).

"Rule 11 sanctions are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Manhattan Const. Co. v. Place Props. LP*, 559 Fed. Appx. 856, 858 (11th Cir. 2014) (citing *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). "'Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.'" *Walker v. Hallmark Bank & Tr., LTD.*, 2010

WL 3257993, at *2 (S.D. Fla. Aug. 17, 2010) (quoting *OperatingEna'rs Pension Trust v. A-C Co.*,
859 F.2d 1336, 1344 (9th Cir. 1988)). Indeed, the Second Circuit has expressly cautioned:

> "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to
> enforce ethical standards upon attorneys appearing before them, while being careful
> not to rein in zealous advocacy. Although the imposition of sanctions is within the
> province of the district court, "any such decision [should be] made with restraint
> and discretion."

*Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (quoting *Schlaifer Nance
& Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)).

In order for sanctions to be appropriate, "the filing for which sanctions are imposed must
be frivolous, that is, it must enjoy no factual and legal support in the record." *Indus. Risk Insurers
v. M.A.N. Gutehoffriungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998); *see also Davis v.
Carl*, 906 F.2d 533, 538 (11th Cir. 1990) ("Rule 11 is intended to deter claims with *no* factual or
legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit
dismissal, but not punishment.") (emphasis in original)). "In deciding the propriety of Rule 11
sanctions, a court first determine whether the party's claims are objectively frivolous and then, if
so, whether the signatory to the pleading should have been aware that they were frivolous-whether
he would have been aware of the frivolousness if he had made a reasonable inquiry." *Delaware
Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 2008 WL 11333071, at * 1 (S.D. Fla. Dec. 19,
2008) (citing *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

The party requesting sanctions "bears a heavy burden of demonstrating that sanctions are
warranted, with all doubts resolved in the non-movant's favor." *Pharma Supply, Inc. v. Stein*, 2015
WL 11439276, at *1 (S.D. Fla. May 27, 2015) (citing *McMahan Sec. Co. L.P. v. FB Foods, Inc.*,
2006 WL 2092643 at *2 (M.D. Fla. July 27, 2006)). "[I]n Rule 11 context, 'party moving for
sanctions must demonstrate' underlying facts supporting penalty." *Royal Surplus Lines Ins. Co. v.*

*Coachmen Indus., Inc.*, 229 F.R.D. 695, 696 (M.D. Fla. 2005) (quoting in parenthetical *Leach v. Northern Telecom, Inc.*, 141 F.R.D. 420, 429 (E.D.N.C. 1991)). *See also, Emergency Recovery, Inc. v. Hufnagle,* No. 8:19-cv-329-T-24JSS, 2019 WL 9089594, at * (M.D. Fla. June 12, 2019) ("All doubts regarding whether Rule 11 has been violated should be resolved in favor of the signer of the paper. Thus, the burden of proof as to whether the signer [h]as violated Rule 11 is on the Rule 11 movant.") (quoting Georgene M. Vairo, Rule 11 Sanctions: Case Law, Preventative Measures, 223 (Richard G. Johnson ed., ABA, 3d ed. 2004))).

In applying the above standard to the case *sub judice*, it is readily apparent that Defendant does not come close to satisfying his "heavy burden of demonstrating that sanctions are warranted*." Pharma Supply, Inc.*, 2015 WL 11439276, at *1. Indeed, contrary to Defendant's assertion, Plaintiff diligently and sufficiently established the facts underlying his claim against Defendant and otherwise pleaded an adequate cause of action against Defendant for civil conspiracy.

## **LEGAL ARGUMENT**

### I.   *Plaintiff's Counsel Engaged in a Diligent Pre-Filing Inquiry.*

Upon examination of the Complaint, it is plainly apparent that Plaintiff set forth ample evidentiary support for the factual allegations raised against Defendant. In arguing otherwise, Defendant points to supposed "false statements" contained in the Amended Complaint which, he claims, show that there was "not a scintilla of due diligence on the part of the plaintiff's attorneys." (DE 268 at 5). For the reasons set forth below, this position is demonstrably false.

*First*, Defendant incredulously claims that there is "no factual basis" to support Plaintiff's assertion that he had "previously served as the chairman of a national democratic political organization." Am. Compl. ¶ 96. Despite Defendant's belief, this statement was not merely

surmised as "unfounded speculation" on the part of Plaintiff's attorneys. (DE 268 at 6). Instead, it was directly sourced—and cited **word-for-word**—from an official government pleading drafted by Special Counsel John Durham, who had been appointed by then-Attorney General, William Barr, to commence an investigation into "whether any federal officer, employee, or [] other person or entity violated the law in connection with the intelligence, counter-intelligence, or law-enforcement activates directed at the 2016 presidential campaigns, individuals associated with those campaigns, and individuals associated with the administration of President Donald J. Trump."[1] Namely, Plaintiff relied upon the indictment of Igor Danchenko filed on November 3, 2021 in the criminal matter of *United States v. Danchenko* (the "Indictment"). *See* Declaration of Alina Habba, Esq., **Exhibit A**; *see also United States v. Danchenko,* case no. 1:21-cr-00245-AJT, Eastern District of Virginia (ECF No. 1). The Indictment, which was filed more than one year into a large-scale government investigation and pursuant to grand jury proceedings, stated precisely that Defendant[2] "had served as [] ***chairman of a national Democratic political organization***." *Id.* at ¶ 19 (emphasis added). The Indictment goes on to describe Defendant's "intimate ties" to the Clintons and the Democratic parties, stating that he also served as "state chairman of former President Clinton's 1992 and 1996 presidential campaigns, and [] an advisor to Hillary Clinton's 2008 Presidential campaign" and elaborating that "President Clinton appointed [Defendant] to two four-year terms on an advisory commission at the U.S. State Department" and that Defendant

---

[1] *See* Attorney General Order No. 4878-2020, "appointment of Special Counsel to Investigate Matters Related to Intelligence Activities and investigations Arising Out of the 2016 Presidential Campaigns," October 19, 2020, https://int.nyt.com/data/documenttools/durham-special-counsel/7ff8599351b63336/full.pdf.

[2] The Indictment refers to Defendant as "PR Executive-1"; in his motion papers, Defendant does not contest that "PR Executive-1" is in fact a reference to him.

"actively campaigned and participated in calls and events as a volunteer on behalf of Hillary

Clinton." *Id.*

Indeed, like the above-referenced statements (which were taken word-for-word from the

Indictment) nearly *all* of the allegations pertaining to Defendant were sourced directly from the

Indictment. By way of example, the Amended Complaint contains the following allegations

pertaining to Defendant that were sourced directly from the Indictment:

- "With respect to the 2016 Clinton Campaign, Dolan actively campaigned and participated in calls and events as a volunteer on behalf of Hillary Clinton." Am. Compl. at ¶ 20; *compare to* Indictment at ¶ 19 ("With respect to the 2016 Clinton Campaign, [Dolan] actively campaigned and participated in calls and events as a volunteer on behalf of Hillary Clinton."

- "Dolan, then an employee of public relations firm, Kglobal, was a longtime participant in Democratic politics[.]" Am. Compl. at ¶ 96(b); *compare to* Indictment at ¶ 10 "[Dolan] was a long-time participant in Democratic Party politics and was then a executive at a U.S. public relations firm[.]"

- "In late April 2016, Danchenko began having discussions with Dolan about a potential business collaboration between Orbis Ltd. and Kglobal to create a "dossier" to smear Donald J. Trump and to disseminate the false accusations to the media. Those discussions reflected that Danchenko and Dolan had exchanged information regarding each other's backgrounds and professional activities, including Danchenko's work for Orbis Ltd, and Steele." Am. Compl. at ¶ 96(c); *compare to* Indictment at ¶ 23 "In or about late April 2016, DANCHENKO and [Dolan] engaged in discussions regarding potential business collaboration between PR Firm- I and U .K. Investigative Firm-I on issues relating to Russia. These discussions reflected that DANCHENKO and [Dolan] had exchanged information regarding each other's backgrounds and professional activities, including DANCHENKO's work for U.K. Investigative Firm-I and U.K. Person-I.

- "That same day, Danchenko sent an e-mail to Dolan outlining certain work that Danchenko was conducting with Orbis Ltd. The e-mail attached an Orbis Ltd. Report titled "Intelligence Briefing Note, 'Kompromat' and 'Nadzor' in the Russian Banking Sector."" Am. Compl. at ¶ 96(e); *compare to* Indictment at ¶ 25 "That same day, DANCHENKO sent an email to PR Executive-I outlining certain work that DANCHENKO was conducting with U.K. Investigative Firm-I. The email attached a U.K Investigative Finn-I report titled "Intelligence Briefing Note, 'Kompromat' and 'Nadzor' in the Russian Banking Sector."

- "Another allegation, contained in Report 111 of the Dossier, claiming that the Russian government withdrew a Russian from his job at the Russian Embassy in Washington, D.C.

due to fears relating to the diplomat's purported role in meddling in the U.S. Presidential Election, had clearly originated from Dolan." Am. Compl. at ¶ 115; *compare to* Indictment at ¶ 66 "Another allegation in the Company Reports that demonstrated the materiality of DANCHENKO's lies regarding PR Executive-I was dated September 14, 2016 and claimed that the Russian government withdrew Russian Diplomat- I from his job at the Russian Embassy in Washington, D.C. due to fears relating to the diplomat's purported role in meddling in the U.S. presidential election."

- "Certain information contained in the Dossier, which Danchenko provided to Steele, mirrors and/or reflects information that Dolan had conveyed to Danchenko." Am. Compl. ¶ 113; *compare to* Indictment at ¶ 11 "Indeed, and as alleged below, certain allegations that DANCHENKO provided to U.K. Person-I, and which appeared in the Company mirrored and/or reflected information that [Dolan] himself also had received through his own interactions with Russian nationals.

- "Moreover, Dolan was undoubtedly a source for an allegation in the Dossier regarding Paul Manafort's departure from the Trump Campaign." Am. Compl. at ¶ 117; *compare to* Indictment at ¶ 45 "At least one allegation contained in a Company Report dated August 22, 2016, reflected information that DANCHENKO collected directly from PR Executive- I. In particular, that Company Report detailed the August 2016 resignation of Trump's Campaign Manager ("Campaign Manager-I") and his allegedly strained relationship with another campaign staff member ("Campaign Staff Member- I").

- "[O]n August 20, 2016, Dolan e-mailed Danchenko the following: I had a drink with a GOP friend of mine who knows some of the players and got some of what is in this article, which provides even more detail. She also told me that [Campaign Staff Member-1], who hates [Paul Manafort] and still speaks to Trump regularly played a role. He is said to be doing a happy dance over it." Am. Compl. at ¶ 119; *identical to* Indictment at ¶ 48.

- "Later that same day, Danchenko replied to Dolan, expressing his appreciation for the information, adding that their "goals clearly coincide[d]" with respect to gathering derogatory information about Trump. Dolan responded, stating "Thanks! I'll let you know if I hear anything else."" Am. Compl. at ¶ 120 *identical to* Indictment at 49, 50.

It cannot be seriously argued that Plaintiff lacked a reasonable evidentiary basis for the allegations put forth in the Amended Complaint since said allegations were made in reliance upon, and in deference to, official government pleadings filed by the Office of Special Counsel (OSC). The OSC is a highly-qualified federal agency that wields immense investigatory authority has access to state-of-the-art resources in carrying out its investigations. As such, the OSC is

undoubtedly in a better position than Plaintiff's counsel to substantiate the veracity of such a claim, particularly at this initial stage of litigation, when Plaintiff is operating without the benefit of discovery. Defendant's claim that Plaintiff's counsel should have viewed Defendant's online "resume," (DE 268 at 1), as a more credible source than the Indictment which culminated from the OSC's years-long investigation flies in the face of reason and is inconsistent with the relevant Rule 11 standard. *See*, *e.g.*, *Thompson v. RelationServe Media, Inc.*, 510 F.3d 628 (2010) ("A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis.") (citing *Davis v. Carl,* 906 F.2d 533, 535-37 (11th Cir. 1990));

*Second*, Defendant takes issue with the allegation in the Amended Complaint that he was the source of the "salacious sexual activity" rumor contained in the Dossier and argues that "nowhere does [the Indictment] identify [Defendant] as the source of such allegation." In doing so, Defendant fails to recognize that the Indictment specifically identifies him as a "source of information for the [Dossier]" and further claims that "certain allegations that Danchenko provided to [Steele], and which appeared in the [Dossier], mirrored and/or reflected information that [Defendant] himself also had received through his own interactions with Russian nationals." Indictment at ¶ 57. When discussing the report of the "salacious sexual activity" contained in the Dossier—which, per the Dossier, were sourced from staff members of a Moscow Hotel—the Indictment recounts that this allegation "reflected facts that [Defendant] and Organizer-1 [] learned during" his stay at a Moscow Hotel, including that, at such time, Defendant had "received a tour of the Moscow Hotel Presidential Suite; [] met with the general manager and other staff of the Moscow Hotel" and that a Moscow Hotel staff member told Defendant that Plaintiff "had stayed in the Presidential Suite." *Id.* at ¶¶ 58-61. While Defendant points out that the Indictment states that Defendant told investigators that "the staff member did not mention any sexual or salacious

activity," this statement was expressly referenced in the Amended Complaint, *see* Am. Compl. ¶ 114(d) ("Dolan ultimately admitted that no one at the hotel mentioned anything to him about Trump's supposed 'sexual or salacious' activity."), and, regardless, such a self-interest statement does nothing to dimmish the likelihood that Defendant *himself* was the one who concocted the "salacious sexual activity" rumor, particularly in light of the fact that he has admitted to providing other "fabricated" information to Danchenko. *Id.* at ¶ 52.

Indeed, the theory that Defendant was the source of the "salacious sexual activity" rumors was explicitly raised by the OSC in the Indictment when it claimed that Dolan received allegations regarding the rumor during the 2016 time period. *See* Indictment at 67 "This allegation - like the allegation concerning the Presidential Suite of the Moscow Hotel - bore substantial similarities to information that [Dolan] received during the 2016 time period." The Indictment further states that, had the FBI known about Defendant's relationship with Dolan, it likely would have interviewed him about whether he "spoke with Danchenko about Trump's stay and alleged activity in the Presidential Suite of the Moscow Hotel." *Id*. at ¶ 65. This theory remains relevant in the Special Counsel's case against Danchenko to date. For instance, as recently as September 16, 2022, in discussing the materiality of the relationship between Dolan and Danchenko, the OSC noted that "Dolan was present with [Danchenko] in June 2016 at the Ritz Carlton Moscow when the defendant allegedly personally gathered information on Donald Trump's purported salacious sexual activity at th[at] hotel" and argues that "had the FBI known that Dolan was a source for the Steele Reports – in addition to his ties to some of the key protagonists – the FBI logically would have interviewed Dolan." *See* Habba Dec., **Ex. B** at 14, Government's Opposition to Defendant's Motion to Dismiss the Indictment, *United States v. Danchenko,* case no. 1:21-cr-00245-AJT, Eastern District of Virginia (Sept. 16, 2022) (ECF No. 83). Therefore, Plaintiff's allegation that

Defendant was the source of the "salacious sexual activity" rumor has a legitimate factual basis and is based upon a well-reasoned theory that may well be proven correct during the OSC's upcoming trial of Danchenko.

*Finally*, beyond questioning the veracity of statements that were expressly set forth in the Indictment, Defendant's only remaining gripe is that the Amended Complaint purportedly misstates his state of residence, claiming that he is a resident of Virginia, not New York. Nonetheless, Plaintiff's counsel did indeed exercise diligence prior to making this assertion. Initially, it must be noted that Charles Dolan is an incredibly common name, and Plaintiff counsel's traditional search methods identified countless individuals with said name across the country, many of whom reside in New York. To narrow the field, Plaintiff's counsel looked towards other sources and ultimately relied upon several news articles which claimed that Defendant currently works for Ketchum, Inc., a public relations firm headquartered in New York.[3] Thus, Plaintiff's counsel made a reasonable inquiry into the state of Defendant's residence and had a good faith basis for believing that Defendant was a resident of New York. Even to the extent this assertion was inaccurate, it was merely the result of inadvertence or mistake, after reasonable inquiry, and Defendant has failed to show how he was prejudiced by this purported error, nor how this statement alone could serve as a basis to issue sanctions against Plaintiff. *See O'Bryan v. Joe Taylor Restoration, Inc.*, No. 20-cv-80993, 2021 U.S. Dist. LEXIS 1710, at *5 (S.D. Fla. Jan. 6, 2021)

---

[3] Isaac Stanley-Becker, *A spin doctor with ties to Russia allegedly fed the Steele dossier before fighting to discredit it*, Washington Post, November 6, 2021, https://wapo.st/3rBmv1z ("According to the indictment, Dolan, who helped handle global public relations for the Russian Federation for eight years ending in 2014, fed the dossier before he fought against it. And his contacts and credibility in both instances rested on his extensive work for Russia, much of which he performed when he was affiliated with Ketchum, *a public relations firm headquartered in New York*." (emphasis added); *See also* Josh Gerstein, Kyle Cheney And Betsy Woodruff Swan, *Steele dossier source arrested in Durham probe*, Politico, November 4, 2021,  https://politi.co/3Cy7ZOe ("Dolan, a former congressional staffer, worked more recently as a senior vice president at the public affairs firms Ketchum, Prism and kglobal.")

10

("Far from frivolous, the mistaken citation in the initial Complaint is a hyper-technical violation that is not cognizable under Rule 11. Clearly, Rule 11 is not a "gotcha rule." Instead, it was designed to sanction lawyers who sign and file patently frivolous pleadings or motions."); *see also*, *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) ("[Rule 11] sanctions are reserved as punishment for those litigants who blatantly abuse the Court's resources — they will not be imposed lightly against every failing litigant.").

Based on the foregoing, it is overwhelmingly clear that Plaintiff conducted a reasonable and diligent inquiry and relied upon legitimate and authoritative sources in verifying the factual basis for his claims against Defendant.

## II.   *Plaintiff's Claims Against Defendant Are Non-Frivolous*

Defendant has not submitted any substantial, competent evident to support his contention that Plaintiff's claims are "utterly deficient" and based upon "unfounded speculation." (DE 268 at 6). Instead, Defendant sees fit to make sweeping accusations such as "there is no basis for that fallacious leap of logic" and "[t]his is an issue as to lack of factual basis for a claim, but also the lack of legal basis." For the reasons set forth herein, Defendant's arguments are entirely without merit.

To start, Defendant merely submits a one-page affidavit to rebuff Plaintiff's claims. Yet, the affidavit does nothing to disprove any of the substantive facts contained in the Amended Complaint but, rather, only disputes the state of Defendant's residency and his purported employment credentials, which, as explained above, were sourced both from independent fact gathering and authoritative third-party sources such as the Indictment. (DE 268-2). Thus, the affidavit does nothing to undercut the veracity of Plaintiff's allegations and, on its own, is insufficient to support Defendant's request for sanctions under Rule 11. *See Royal Surplus Lines*

11

*Ins. Co.*, 229 F.R.D. at 696 (quoting *Leach*, 141 F.R.D. at 429) ("[I]n Rule 11 context, 'party moving for sanctions must demonstrate' underlying facts supporting penalty."); *see, e.g., Andre v. CCB Credit Services, Inc.*, 2010 WL 3222500, at *2 (S.D. Fla. July 21, 2010) ("The record is devoid of any evidence to establish that plaintiff's counsel was aware that this claim was frivolous at the time he signed the complaint."); *Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, 2006 WL 2471522, at *3 (M.D. Fla. Aug. 24, 2006) ("Blue Sea submitted no information or evidence with its initial motion to support its contention that 'Plaintiff and its attorneys knew or, through a reasonable inquiry, should have known, that none of the asserted grounds upon which Plaintiffs seeks declaratory relief have any basis in fact.'"). Even if Defendant's assertions were factual and on point—which they are not—such conclusory statements lack the requisite specificity required under Rule 11. *See, e.g., Elie v. Pac. Land Ltd*., 2012 WL 13005814, at *3 (S.D. Fla. July 5, 2012) ("The conclusory statements contained in the District's Motion fall short of the requirement specifically enunciated in Rule 11 that a motion for sanctions 'describe the specific conduct that allegedly violates rule 11(b).'"). Accordingly, Defendant's barebones affidavit is clearly insufficient to support a ruling for sanctions.

Moreover, Defendant's argument that the Amended Complaint fails to effectively plead Dolan's participation in a conspiracy is flawed on several levels. First, Defendant acknowledges that there are three conspiracy-related causes of action asserted against him, but he fails to delineate between the elements of each claim. For example, a RICO conspiracy has an entirely different standard than a civil conspiracy claim and can be established by "showing that Defendant agreed to the overall objective of the conspiracy; or [] by showing that Defendant agreed to commit two predicate acts," *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir.), and can be based on "circumstantial evidence, including 'inferences from the conduct of the alleged

participants or from circumstantial evidence of a scheme.'" *United States v. Sylvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (citation omitted). Since Defendant does not contest the validity of Plaintiff's RICO Conspiracy claim, only the civil conspiracy claims of injurious falsehood malicious prosecution, the RICO Conspiracy cause of action is not at issue.

Civil conspiracy requires a showing of "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006). Critically, the "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

Here, woven into the large-scale conspiracy alleged between many of the Defendants, Plaintiff adequately pleaded the existence of a civil conspiracy between Defendant and, at a minimum, Danchenko, Clinton, and the Clinton Campaign. To briefly summarize, the Amended Complaint recounts that Defendant and Danchenko were in frequent communication since April 2016, had gone on a trip together, and attended numerous meetings and conferences together, Am. Compl. ¶ 335, and that they agreed that their "*goals clearly coincided*" with respect to gathering derogatory information about Trump, i*d.* ¶ 120 (emphasis added). It also states that Defendant has "long held deep ties to the Democratic Party" and has been a "close associate and advisor to Hillary Clinton." *Id.* at ¶ 336. The Amended Complaint further details that Defendant was in regular communication with one of Danchenko's other sources for the Dossier, Olga Galinka, and that they frequently discussed their support for their Democratic party and, more particularly, Hillary Clinton. It goes on to state that Dolan was a "contributor of information to the Dossier," *id.* and

alleges that Defendant "knowingly provided false information to Danchenko, who relayed it to Steele, who reported it in the Steele Dossier and eagerly fed the deceptions to both the media and the FBI." Am. Compl. at ¶ 4. The Amended Complaint alleges that Defendant had a "meeting of the minds" with the other defendants and emphasizes that many of the allegations contained within the dossier came directly from Defendant, who, among other things, played a highly relevant role as a contributor of information to the Dossier because he maintained pre-existing and ongoing relationships with numerous individuals named or described within the Dossier, maintained historical and ongoing involvement in Democratic politics, and allowed Danchenko to gather information contained in the Dossier at events in Moscow organized by Defendant and others that Danchenko attended at Dolan's invitation. *Id.* at 111-120, 334-340. Indeed, it is established that much of the information contained in the Dossier mirrored information that Defendant received through his interactions with Russian nationals and, more damning, information that he had intentionally "fabricated." Indictment at ¶ 52. Per the Amended Complaint, this false information was provided in accordance with Defendant's "understanding regarding the true nature of the Dossier – it would contain unverified, falsified, and fraudulent information which would be fed to law enforcement to perpetuate a false narrative that Donald J. Trump was colluding with Russia." Am. Compl. ¶ 104.

Ultimately, Plaintiff alleges sufficient facts to demonstrate that Defendant was a part of the several different types of conspiracies to bring false accusations against the Plaintiff and attempts to claim his minimal or nominal role in the conspiracy are inherently misleading[4]. It is not enough

---

[4] It is important to note that, while this Court's Order dismissed Plaintiff's Complaint as to all Defendants, it did not specifically analyze the claims against Defendant, and limited its analysis to Plaintiff's argument that Defendant is subject to this Court's personal jurisdiction.

that Defendant disagrees with Plaintiff's interpretation of the relevant facts. *See Cabrera v. The Goodyear Tire & Rubber Co.*, 2011 U.S. Dist. LEXIS 16655, 2011 WL 535103 at *2 (S.D. Fla., Feb. 8, 2011) (finding the parties conflicting accounts of what happened demonstrated factual disputes that did not justify Rule 11 sanctions); *see also Hillsborough County v. A & E Road Oiling Service, Inc.*, 160 F.R.D. 655, 658-659 (M.D. Fla. 1995) (finding a factual dispute does not warrant Rule 11 sanctions).  Indeed, the mere fact that the claims against Defendant were dismissed does not serve, on its own, as an appropriate basis to award sanctions. *See White v. Verizon Florida, LLC*, 2011 WL 806713, *5 (M.D.Fla. 2011) (finding that even a conspiracy claim that was "weak and subject to doubt" was "not objectively frivolous" and did not curtail "conduct by counsel so egregious as to be tantamount to bad faith.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion must be dismissed in its entirety.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed this 5th day of October, 2022, with the Clerk of Court using CM/ECF, which will send a

notice of electronic filing to all Parties listed on the Service List.


____/s/ *Peter Ticktin*____

**THE TICKTIN LAW GROUP**
Peter Ticktin, Esquire
Florida Bar No.: 887935
Serv512@LegalBrains.com
Jamie Alan Sasson, Esquire
Florida Bar No.: 10802
Serv513@LegalBrains.com
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757
*Attorneys for the Plaintiff*

**HABBA MADAIO & ASSOCIATES**
Alina Habba, Esquire
ahabba@habbalaw.com
Michael T. Madaio, Esquire
mmadaio@habbalaw.com
1430 US Highway 206 Suite 240
Bedminster, New Jersey 07921
Telephone: (908) 869-1188
*Attorneys for the Plaintiff*

## SERVICE LIST

Anthony Erickson-Pogorzelski, Esquire
Fla. Bar No. 619884
Anthony.Pogorzelski@usdoj.gov
**Assistant U.S. Attorney**
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Telephone: 305- 961-9296
*Attorneys for Defendant*
*United States of America*


David E. Kendall, Esquire
dkendall@wc.com
**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*


David Oscar Markus, Esquire
dmarkus@markuslaw.com

**Markus/Moss, LLP**
40 N.W. Third Street
Penthouse 1
Miami, Florida 33128
Telephone: 305-379-6667
*Attorneys for the Defendant*
*Hillary R. Clinton*


Katherine M. Turner, Esquire
kturner@wc.com
**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*


Michael J. Mestitz, Esquire
mmestitz@wc.com

**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*

Jonathan Edward Levine, Esquire
Jonathan.levine@levinepllc.com
**Levine & Associates, PLLC**
5311 Lee Highway
Arlington, Virginia 22207
Telephone: 703-525-2668
*Attorney for Defendant*
*Charles Halliday Dolan, Jr.*

George R.A. Doumar, Esquire
gdoumar@doumarmartin.com
**Mahdavi, Bacon, Halfhill & Young, PLLC**
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
Telephone: 703-352-1300
*PRO HAC VICE*
*Attorney for Defendant*
*Charles Halliday Dolan, Jr*

Franklin G. Monsour, Jr., Esquire
fmonsour@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
51 West 52nd Street
New York, New York 10019
Telephone: 202-339-8533
*PRO HAC VICE*
*Attorney for Defendant*
*Igor Danchenko*

Diana Marie Fassbender, Esquire
dszego@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
1152 15th Street NW
Washington, D.C. 20005
*PRO HAC VICE*
*Attorney for Defendant*

*Igor Danchenko*

Jennifer Olmedo-Rodriguez, Esquire
Florida Bar No.: 605158
Jennifer.olmedo@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
2 South Biscayne Boulevard, Suite 1500
Miami, Florida 33131
Telephone: 305-347-4080
*Attorney for the Defendant*
*Neustar, Inc.*

Samantha L. Southall, Esquire
Samantha.southall@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
50 South 16th Street, Suite 3200
Two Liberty Place
Philadelphia, PA 19102
Telephone: 215-665-3884
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar, Inc*

Adam Seth Fels, Esquire
afels@ffslawfirm.com
Florida Bar No.: 0114917
**Fridman Fels & Soto, PLLC**
2525 Ponce de Leon Blvd., Ste 750
Coral Gables, FL 33134
Telephone: 305-569-7701
*Attorney for the Defendant*
*Bruce Ohr and Nellie Ohr*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

Kevin P. Crenny, Esquire
kcrenny@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*

*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

Joshua Levy, Esquire
jal@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

Rachel Clattenburg, Esquire
rmc@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*

Joshua Berman, Esquire
Joshua.Berman@cliffordChance.com
**Clifford Chance US, LLP**
2011 K. Street, NW
Washington, D.C., 20006-1001
Telephone: 202-912-5000
*PRO HAC VICE*
*Attorney for Defendants*
*Nellie Ohr and Bruce Ohr*

Benjamin Peacock, Esquire
Benjamin.Peacock@cliffordChance.com
**Clifford Chance US, LLP**
2011 K. Street, NW
Washington, D.C., 20006-1001
Telephone: 202-912-5000
*PRO HAC VICE*

*Attorney for Defendants*
*Nellie Ohr and Bruce Ohr*

Eugene K. Pettis, Esquire
cmarr@hpslegal.com
Service@hpslegal.com
**Haliczer Pettis & Schwamm P.A.**
100 SE 3rd Avenue, 7th Floor
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
*Attorneys for Defendant*
*Marc Elias*

Debra P. Klauber, Esquire
dklauber@hpslegal.com
Service@hpslegal.com
**Haliczer Pettis & Schwamm P.A.**
100 SE 3rd Avenue, 7th Floor
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
*Attorneys for Defendant*
*Marc Elias*

April A. Otterberg, Esquire
aotterberg@jenner.com
**Jenner & Block, LLP**
353 N. Clark Street
Chicago, Il 60654-3454
Telephone: 312-222-9350
*PRO HAC VICE*
*Attorney for the Defendant*
*Marc Elias*

Reid J. Schar, Esquire
rschar@jenner.com
**Jenner & Block, LLP**
353 N. Clark Street
Chicago, Il 60654-3454
Telephone: 312-222-9350
*PRO HAC VICE*
*Attorney for the Defendant*
*Marc Elias*

Roberto Martinez, Esquire
Bob@colson.com
becky@colson.com
Florida Bar No.: 305596
**Colson Hicks Eidson, P.A.,**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*

Zachary Lipshultz, Esquire
zach@colson.com
Florida Bar No.: 123594
**Colson Hicks Eidson, P.A.,**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*

Michael S. Bosworth, Esquire
Michael.Bosworth@lw.com
**Latham & Watkins, LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-916-1221
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Michael F. Houlihan, Esquire
Michael.Houlihan@lw.com
**Lathem & Watkins, LLP**
200 Clarendon Street
Boston, MA 02116
Telephone: 617-880-4642
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Sean M. Berkowitz, Esquire
Sean.Berkowitz@lw.com
**Latham & Watkins, LLP**
330 North Wabash Avenue, Suite 2800

Chicago, IL 60611
Telephone: 312-876-7700
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Stephen P. Barry, Esquire
Stephen.Barry@lw.com
**Latham & Watkins, LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Eleni Kastrenakes Howard, Esquire
Eleni.kastrenakeshoward@akerman.com
Florida Bar No.: 73073
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West
Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

Howard Jay Harrington, Esquire
Jay.harrington@akerman.com
Florida Bar No.: 0118719
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West
Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

F. Joseph Warin, Esquire
fwarin@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*

19

*Attorney for the Defendant*
*Perkins Coie, LLP*

Geoffrey M. Sigler, Esquire
gsigler@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Katherine M. Meeks, Esquire
kmeeks@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Nancy E. Hart, Esquire
nhart@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Gerald E. Greenberg, Esquire
ggreenberg@gsgpa.com
Florida Bar No.: 440094
**Gelber Schachther & Greenberg, P.A.**
One South East Third Avenue, Suite 2600
SunTrust International Center
Miami, Florida 33131
Telephone: 305-728-0950
*Attorney for the Defendant*
*Democratic National Committee*
*DNC Services Corporation*

*Debbie Wasserman Schultz*

Shawn G. Crowley, Esquire
scrowley@kaplanhecker.com
**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Maximillian Feldman, Esquire
mfeldman@kaplanhecker.com
**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Roberta A. Kaplan, Esquire
rkaplan@kaplanhecker.com
**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Edward Soto, Esquire
Edward.soto@weil.com
Florida Bar No.: 0265144
**Weil Gotshal & Manges, LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: 305-577-3100
*PRO HAC VICE*
*Attorney for the Defendant*
*Rodney Dolane*

20

Steven Tyreell, Esquire
Steven.tyrrell@weil.com
**Weil, Gotshal & Manges, LLP**
2001 M St. NW, Suite 600
Washington, D.C. 20063
Telephone:
*PRO HAC VICE*
*Attorney for the Defendant*
*Rodney Dolane*

Noah Brozinsky, Esquire
nbrozinsky@kaiserDillon.com
Florida Bar No.: 010470
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Christopher Muha, Esquire
CMuha@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

William Pittard, Esquire
Wpittard@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Paola Pinto, Esquire
ppinto@schertlerlaw.com
Florida Bar No.: 1013933
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.

Suite 500 West
Washington, D.C. 20004
Telephone: 202-628-4155
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

Robert P. Trout, Esquire
Rtrout@schertlerlaw.com
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Telephone: 202-628-4155
*PRO HAC VICE*
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

William R. Barzee, Esquire
williambarzee@barzeeflores.com
**Barzee Flores**
Courthouse Center, Penthouse One
40 NW Third Street
Miami, Florida 33128
Telephone: 3025-374-3998
*Counsel for the Defendants*
*Robert E. Mook*
*Jack Sullivan*

Andrew J. Ceresney, Esquire
aceresney@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Isabela M. Garcez, Esquire
imgarcez@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022

21

Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Wendy B. Reilly, Esquire
wbreilly@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Brian L. Stekloff, Esquire
bstekloff@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

Sarah E. Neuman, Esquire
sneuman@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

James E. Gillenwater, Esquire
gillenwaterj@gtlaw.com,
**Greenberg Traurig, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
*Attorney for the Defendant*
*Neustar Security Services*

Allison S. Eisen, Esquire

aeisen@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

Kathryn E. Garza, Esquire
kgarza@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

John M. McNichols, Esquire
jmcnichols@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*