IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Donald J. Trump,

Plaintiff,

v.

Hillary R. Clinton *et al.*,

Defendants.

Civil Action No. 2:22-14102-DMM

**HILLARY CLINTON'S, HFACC, INC.'S, JOHN PODESTA'S, ROBERT MOOK'S, DNC'S, DNC SERVICES CORPORATION'S, DEBBIE WASSERMAN SCHULTZ'S, CHARLES HALLIDAY DOLAN, JR.'S, FUSION GPS'S, GLENN SIMPSON'S, PETER FRITSCH'S, NELLIE OHR'S, BRUCE OHR'S, IGOR DANCHENKO'S, RODNEY JOFFE'S, NEUSTAR SECURITY SERVICES'S, NEUSTAR INC.'S, AND ORBIS BUSINESS INTELLIGENCE LTD.'S JOINT MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ................................................................................................................4

I.      DEFENDANTS ARE ENTITLED TO COSTS AND FEES UNDER 28 U.S.C.
        § 1927 FOR MOVING TO DISMISS THE AMENDED COMPLAINT. ..........................4

        A.      Plaintiff's counsel engaged in unreasonable and vexatious conduct by
                pursuing and persisting with an untimely, factually unsupported, and
                legally unwarranted suit. .............................................................................5

        B.      Plaintiff's counsel unreasonably and vexatiously multiplied the
                proceedings by their conduct. .....................................................................11

        C.      This Court should award costs and fees associated with moving to dismiss
                the Amended Complaint and moving for sanctions. ...................................12

II.     THE COURT SHOULD IMPOSE SANCTIONS UNDER ITS INHERENT
        AUTHORITY. ..........................................................................................................12

III.    THE COURT SHOULD IMPOSE SANCTIONS UNDER THE DEFEND
        TRADE SECRETS ACT. ........................................................................................17

IV.     DEFENDANTS' ATTORNEYS' FEES WERE REASONABLE. ..................................19

CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230 (11th Cir. 2007) ...............................4, 5

*Barash v. Kates*, 585 F. Supp. 2d 1368 (S.D. Fla. 2008) .......................................................16

*Barmapov v. Amuial*, 986 F.3d 1321 (11th Cir. 2021) ..................................................10

*Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998) ..................................................8, 13

*Bettis v. Toys R Us*, 646 F. Supp. 2d 1273 (S.D. Fla. 2009) .........................................16

*Bivins v. Wrap It Up Inc.*, 548 F.3d 1348 (11th Cir. 2008) ........................................19

*B.K.B. v. Maui Police Dep't*, 276 F.3d 1091 (9th Cir. 2002) ......................................13

*Calder v. Jones*, 465 U.S. 783 (1984) ...............................................................................6

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, No. 21-80740-CV, 2022 WL 3568042 (S.D. Fla. July 19, 2022) ...............................................................6, 8, 19, 20

*Chambers v. NASCO*, 501 U.S. 32 (1991) ................................................................12, 13

*Cramer v. State of Fla.*, 117 F.3d 1258 (11th Cir. 1997) .............................................11

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) ...................11

*Dude v. Cong. Plaza, LLC*, No. 17-80522-CIV, 2018 WL 3432714 (S.D. Fla. July 16, 2018) ................................................................................................................................16

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017)....................................16

*Greenberg Farrow Architecture, Inc. v. Perkins Eastman Architects, P.C.*, 1:12-CV-1435, 2014 WL 12694260 (N.D. Ga. July 2, 2014)...................................................18

*In re Evergreen Sec., Ltd.*, 570 F.3d 1257 (11th Cir. 2009) ....................................13, 16

*Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, No. CV420-322, 2022 WL 987945 (S.D. Ga. Mar. 31, 2022) ........................................................................18

*Jones v. Campbell Univ.*, 322 F. Supp. 3d 106 (D.D.C. 2018).....................................10

*Macort v. Prem, Inc.*, 208 F. App'x 781 (11th Cir. 2006).......................................4, 12

*Mallory v. Harkness*, 923 F. Supp. 1546 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997) ..................................................................................................................19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326 (11th Cir. 2001)..............................................18

*Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010)..............................................5, 8, 12, 15

*Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) ....................20

*O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 3400671 (D. Colo. Aug. 3, 2021)............................................................................................................10

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017) ...................13

*Sciaretta v. Lincoln Nat'l Life Ins. Co.*, No. 9:11-CV-80427-DMM, 2013 WL 11317858 (S.D. Fla. May 6, 2013), *aff'd*, 778 F.3d 1205 (11th Cir. 2015)..............................................16

*Temurian v. Piccolo*, No. 18-CV-62737, 2021 WL 1520588 (S.D. Fla. Mar. 3, 2021), *report and recommendation adopted in part*, No. 18-62737-CIV, 2021 WL 1121003 (S.D. Fla. Mar. 24, 2021) ............................................................................................17, 18

*TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 19CV3283 (DLC), 2022 WL 2119344 (S.D.N.Y. May 31, 2022)................................................................................18

*Wallace v. Kato*, 549 U.S. 384 (2007) .........................................................................................6

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996) .........................................8

**STATUTES**

18 U.S.C. § 1515(a) ......................................................................................................................6

18 U.S.C. § 1836(b)(3)(D).............................................................................................................17

28 U.S.C. § 1927................................................................................................................ *passim*

**OTHER CITATIONS**

"Biden Again Slams Republicans," Transcript from FOX: Hannity, Sept. 10, 2022 (attached hereto as Exhibit 1) ...............................................................................................15

*Trump Sues Clinton, Steele for 'False Narrative' About Russia Collusion*, Habba Madaio & Associates LLP – News (March 25, 2022), https://habbalaw.com/news/trump-sues-clinton-steele-for-false-narrative-about-russian-collusion/......................................................14

*Trump Suing Hillary Clinton Over Russia Hoax*, Habba Madaio & Associates LLP – News (March 31, 2022), https://habbalaw.com/news/trump-suing-hillary-clinton-over-russia-hoax/..........................................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Twitter, *Permanent suspension of @realDonaldTrump* (8 Jan. 2021),
https://blog.twitter.com/en_us/topics/company/2020/suspension ...........................................10

## INTRODUCTION

After dismissing Plaintiff's suit in a thorough opinion, this Court retained jurisdiction to determine issues related to sanctions.  The exercise of that jurisdiction is appropriate here: Plaintiff's suit was unwarranted on the facts, unsupported by the law, and imposed substantial burdens both on Defendants and this Court.  Despite being alerted to the many deficiencies in the initial Complaint by one round of motions to dismiss, Plaintiff and his counsel pressed forward on an Amended Complaint that fixed none of the problems, and instead simply added more invective and irrelevant factual allegations to what was already a "shotgun" pleading.  The Court should not countenance the abuse of its resources—or allow significant burdens to be imposed on Defendants, many of them individuals who have devoted their careers to public service—in service of Plaintiff's political stunt.

Under these circumstances, sanctions against both Plaintiff and his counsel are appropriate.  Under 28 U.S.C. § 1927, this Court may order Plaintiff's counsel to reimburse Defendants for the fees and costs associated with their motions to dismiss the Amended Complaint and the instant motion for sanctions.  Under the Court's inherent authority as well as the Defend Trade Secrets Act, the Court may impose sanctions on Plaintiff himself and require Plaintiff to reimburse Defendants for all the fees and costs incurred as a result of his suit, including those associated with responding to the initial Complaint and Amended Complaint, and with the instant motion for sanctions.[1]

---

[1] Defendants believe the objectively unreasonable conduct of Plaintiff and his counsel as described below would also support Rule 11 sanctions.  However, Defendants, with the exception of Charles Halladay Dolan, Jr. did not previously serve Plaintiff with a sanctions motion under Rule 11.  Thus, Defendants are not moving for Rule 11 sanctions, although such sanctions might be imposed on the Court's own initiative.  Dolan has filed his previously served motion (DE 268).

## BACKGROUND

Plaintiff's pleadings and theories were obviously and fatally defective from the very inception of this action. Plaintiff's initial Complaint spanned 108 pages and 508 paragraphs. DE 1 (March 24, 2022). It named 28 individual defendants, as well as 10 John Does and 10 ABC Corporations. *Id.*

Less than a month after the Complaint was filed, Hillary Clinton moved to dismiss it with prejudice. DE 52 (Apr. 20, 2022). Defendant Clinton's motion identified many of the fundamental factual deficiencies and legal flaws that would ultimately lead this Court to dismiss the Amended Complaint: namely, (1) that Plaintiff's claims were untimely on their face, DE 52 at 1–5; (2) that Plaintiff's own tweets confirmed his knowledge of his supposed claims no later than October 2017, DE 52 at 2–3; (3) that Plaintiff's Complaint was replete with inadequate and conclusory allegations, DE 52 at 6; (4) that Plaintiff failed to allege a RICO enterprise, DE 52 at 7; (5) that Plaintiff failed to allege the predicate act of theft of trade secrets based on DNS information, DE 52 at 8–9; (6) that Plaintiff failed to allege the predicate act of obstruction of justice in part because he identified no "official proceeding," DE 52 at 9–10; (7) that Plaintiff failed to allege a pattern of racketeering activity, DE 52 at 11–12; (8) that Plaintiff failed to adequately allege RICO standing because his supposed injuries were almost entirely undescribed, DE 52 at 12–14; (9) that Plaintiff's injurious falsehood claim was barred by the First Amendment, DE 52 at 15–17; (10) that Plaintiff failed to allege almost every necessary element of injurious falsehood under Florida law, DE 52 at 17–18; (11) that Plaintiff failed to allege a malicious prosecution claim as to any official proceeding and, in particular, as to the properly predicated Crossfire Hurricane investigation, DE 52 at 19–20; and (12) that Plaintiff failed to allege a claim for "agency" because it is not an independent cause of action under Florida law.

In response, Plaintiff's counsel indicated that they planned to amend the Complaint.  DE 66 (Apr. 21, 2022).  Defendant Clinton did not oppose counsel's request for an extension of time in which to amend.  *See, e.g.*, DE 102 (Apr. 27, 2022).  In the intervening period, other Defendants joined Clinton's motion to dismiss and filed their own motions alerting Plaintiff and his counsel to additional fatal defects in the Complaint.  *See* DE 124 (John Podesta), 139 (Peter Fritsch, Fusion GPS, Glenn Simpson); 141 (DNC Services Corporation, Democratic National Committee, Debbie Wasserman Schultz); 143 (Perkins Coie); 144 (Nellie Ohr); 145 (Robby Mook); 146 (Michael Sussmann); 147 (Marc Elias); 149 (HFACC); 157 (Rodney Joffe); 159 (Igor Danchenko); 160 (Neustar, Inc.); 162 & 163 (Charles Halliday Dolan, Jr.); 165 (Jake Sullivan).  With respect to each motion, Plaintiff's counsel indicated that they planned to amend in response to the motions, and Defendants did not oppose extensions of time to allow them to do so.  *See* DE 153 (May 17, 2022).[2]

Plaintiff's counsel filed the Amended Complaint approximately two months after receiving Defendant Clinton's motion to dismiss and with the benefit of Defendants' additional motions in the interim.  DE 177 (June 21, 2022).  "But despite this briefing, Plaintiff's Amended Complaint failed to cure any of the deficiencies."  DE 267 at 63–64 (Sept. 8, 2022) ("Op.").  "Instead, Plaintiff added eighty new pages of largely irrelevant allegations that did nothing to salvage the legal sufficiency of his claims."  Op. at 64.  The Amended Complaint is "193 pages in length, with 819 numbered paragraphs," and "contains 14 counts, names 31 defendants, 10 'John Does' described as fictitious and unknown persons, and 10 'ABC Corporations' identified as fictitious and unknown entities."  Op. at 4.

---

[2] In addition to challenging the sufficiency of Plaintiff's allegations to state substantive claims, three defendants—Charles Halliday Dolan, Jr., Rodney Joffe, and Orbis Business Intelligence, Ltd.—challenged the Court's exercise of personal jurisdiction over them.

**ARGUMENT**

**I.    DEFENDANTS ARE ENTITLED TO COSTS AND FEES UNDER 28 U.S.C.
§ 1927 FOR MOVING TO DISMISS THE AMENDED COMPLAINT.**

Title 28, Section 1927 provides that any attorney who "multiplies court proceedings unreasonably and vexatiously" may be required by the court to satisfy personally the excess costs, expenses, and reasonable attorneys' fees imposed by their conduct.  Sanctions under Section 1927 are warranted where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where their "conduct is so egregious that it is tantamount to bad faith."  *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1241–42 (11th Cir. 2007).

To impose sanctions under Section 1927, "three essential requirements" must be satisfied. "First, the attorney must engage in unreasonable and vexatious conduct."  *Amlong*, 500 F.3d at 1239.  "Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings."  *Id.*  "Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Id.*

Each requirement is satisfied here, and an award under Section 1927 is appropriate.  An unpublished opinion of the Eleventh Circuit concluded that Section 1927 "only applies to unnecessary filings after the lawsuit has begun."  *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006).  Thus, this Court should award costs and fees taxed against Plaintiff's counsel to compensate Defendants for responding to the Amended Complaint and bringing this motion.

4

**A.      Plaintiff's counsel engaged in unreasonable and vexatious conduct by pursuing and persisting with an untimely, factually unsupported, and legally unwarranted suit.**

Plaintiff's counsel engaged in unreasonable and vexatious conduct first by filing, and then by amending, a factually and legally defective suit.  An award of costs and fees under Section 1927 is appropriate when an attorney's conduct is so egregious that it is "tantamount to bad faith." *Amlong*, 500 F.3d at 1241–42.  "[F]or purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct."  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010).  "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently."  *Id.* (quoting *Amlong*, 500 F.3d at 1241). Under this standard, the Court "compare[s] the conduct at issue with how a reasonable attorney would have acted under the circumstances."  *Id.*

A reasonable attorney would never have filed this suit, let alone continued to prosecute it after multiple Defendants' motions to dismiss highlighted its fundamental and incurable defects. As this Court recognized in dismissing the Amended Complaint, "[a]t its core, the problem with Plaintiff's Amended Complaint is that Plaintiff is not attempting to seek redress for any legal harm; instead, he is seeking to flaunt a two-hundred-page political manifesto outlining his grievances against those that have opposed him, and this Court is not the appropriate forum."  Op. at 64.  "It is not simply that" the Amended Complaint "is 'inadequate in any respect'; it is inadequate in nearly *every* respect."  *Id.* at 63 (emphasis in original).

1.  For one, as this Court held, "the claims presented in the Amended Complaint are not warranted under existing law.  In fact, they are foreclosed by existing precedent, including decisions of the Supreme Court."  Op. at 4.  This is not a case where counsel presented a good-faith argument for the expansion of existing precedent.  Instead, they recklessly advanced claims that "clearly contravene binding case law," *id.*, which the most basic legal research would have

5

revealed. Moreover, even after Defendants' motions to dismiss identified the many deficiencies in the Complaint, Plaintiff's counsel persisted in pursuing these defective allegations by filing an Amended Complaint that repeated the same errors, and an Opposition defending it.

In the preface to its dismissal on the merits, the Court identified two examples of how Plaintiff's claims are clearly foreclosed by governing law, and noted "[t]here are many others." Op. at 4. These include that Plaintiff's theory of personal jurisdiction, based on the allegation that certain Defendants "knew that Florida is a state in the United States which was an important one," contravenes the Supreme Court's binding "effects" test in *Calder v. Jones*, 465 U.S. 783, 789 (1984). *Cf.* Op. at 19–20. Plaintiff's argument that his claims did not accrue until he incurred the majority of his damages contravenes the Supreme Court's binding decision in *Wallace v. Kato* that a "cause of action accrues even though the full extent of the injury is not then known or predictable." 549 U.S. 384, 391 (2007); Op. at 30. Plaintiff's argument that Defendants impeded an "official proceeding" contravenes the statutory definition, which limits the term to federal judicial cases or proceedings before Congress or a federal agency. 18 U.S.C. § 1515(a); Op. at 32. "[M]any of the statements that Plaintiff characterizes as injurious falsehoods qualify as speech plainly protected by the First Amendment." Op. at 49. Plaintiff's Computer Fraud and Abuse Act theory "is squarely foreclosed by *Van Buren*." Op. at 55. And Plaintiff's seven counts for "Agency" or "Respondeat Superior" are foreclosed by binding Florida precedent holding that neither are independent causes of action. Op. at 62. The list goes on.

2. Even had Plaintiff's counsel not recognized the deficiencies in their legal theories *before* filing the Complaint—which would itself be unreasonable, and a violation of their duties to investigate the legal bases for their claims—"[t]he fatal flaws in Plaintiff's case should have been apparent at least from the date on which Defendants filed their motion to dismiss." *Celsius*

*Holdings, Inc. v. A SHOC Beverage, LLC*, No. 21-80740-CV, 2022 WL 3568042, at *3 (S.D. Fla. July 19, 2022) (Middlebrooks, J.) (awarding fees under Section 1927).   Upon receiving Defendants' initial motions to dismiss, a reasonable attorney would have determined whether there was any way to cure the legal deficiencies and, finding none, withdrawn the suit.

That, at great cost to the Court and Defendants, is not what happened here.  Plaintiff's counsel clung to the deficient allegations and theories in the Amended Complaint, even as to points upon which no reasonable attorneys could disagree.  Indeed, the Amended Complaint not only failed to fix the deficiencies identified by the first round of motions to dismiss, but also compounded the problem by adding additional irrelevant and frivolous allegations.  And Plaintiff's counsel also compounded their unreasonable approach in their Opposition to Defendants' renewed motions to dismiss the Amended Complaint, where Plaintiff's counsel failed to reasonably and forthrightly address Defendants' factual and legal arguments and failed to acknowledge binding precedent on point and either explain why it did not apply or argue for its expansion.

Moreover, the Opposition was replete with misleading citations to the case law it *did* discuss.  *See* Op. at 27 ("*Clinton v. Jones* . . . arrived at the opposite conclusion than that which Plaintiff urges."); *id.* at 32 ("Plaintiff cites *United States v. Grubb* as supporting the contrary position . . . .  But that case doesn't say so, and it actually hurts Plaintiff's position."); *id.* at 54 n.20 ("Plaintiff puzzlingly cites to *Sewell* with respect to his statute of limitations argument for the SCA, despite that *Sewell* contradicts his argument with respect to his CFAA claim.").

3. The Complaint, Amended Complaint, and Opposition are also replete with misleading citations of fact.  These, too, render Plaintiff's counsel's conduct objectively unreasonable.  "Attorneys are charged with knowing more about their case, about their client's various stories, about the contradictions in their client's testimony, and about the testimony of all the potential

witnesses than a busy district court judge with a heavy docket can be expected to know." *Norelus*, 628 F.3d at 1287.  As such, they may not "relentlessly" pursue claims while "blind[ing] themselves to as much of the contradictory evidence as they could," nor "stubbornly ignore[]" the gaps in their factual theories.  *Id.* at 1283.  Sanctions are appropriate where counsel either fails to make a reasonable inquiry into the facts on which the claim is based, or where materials incorporated by reference flatly contradict plaintiff's factual assertions.  *See Celsius*, 2022 WL 3568042, at *3 (granting sanctions); *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (affirming sanctions); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (same).

Here, Plaintiff "annotated the Amended Complaint with 293 footnotes containing references to various public reports and findings."  Op. at 5.  "[I]f a party chooses to include such references, it is expected that they be presented in good faith and with evidentiary support. Unfortunately, that is not the case here."  *Id.*  As the Court observed, Plaintiff's counsel selectively cited portions of the sources they invoked, or ignored their conclusions outright.  For example, they "misrepresent[ed]" and "misconstrue[d]" the Inspector General Report regarding Crossfire Hurricane.  Op. at 6, 51.  Similarly, they falsely asserted that "Special Counsel Mueller went on to exonerate Donald J. Trump and his campaign with his finding that there was no evidence of collusion with Russia."  DE 177 (Am. Compl.) ¶ 7; *cf.* Op. at 52.  Despite the fact that Defendants pointed out these inaccurate assertions in their initial motions to dismiss, counsel reiterated them in the Amended Complaint—and added new and additional misleading statements.  For example, although Plaintiff's counsel repeatedly cited unproven allegations from Special Counsel Durham's indictment of Michael Sussmann, they omitted that Sussmann was acquitted or that many of those allegations were never the subject of an offer of proof at trial.  Op. at 32 n.9.

Plaintiff's Opposition reiterated many of these misleading factual claims, despite the fact that Defendants pointed out that they were unwarranted interpretations of the cited materials.  *See, e.g.*, Trump Opp'n at 16 (alleging that Defendants were "ultimately successful in . . . provoking the commencement of the FBI's Crossfire Hurricane investigation, and by extension, the Mueller Investigation"); *id.* at 51 (asserting that "[i]n the Mueller Report, Special Counsel Mueller found that there was no evidence that either Plaintiff or his campaign colluded with the Russian Government to undermine the 2016 presidential election.").[3]

4.   In addition to Plaintiff's misleading citations to public documents, counsel also unreasonably larded the Complaint, Amended Complaint, and Opposition with outright false, unsupported, and inflammatory assertions.  As this Court already noted, "[m]any of the Amended Complaint's characterizations of events are implausible because they lack any specific allegations which might provide factual support for the conclusions reached."  Op. at 5.  "What the Amended Complaint lacks in substance and legal support it seeks to substitute with length, hyperbole, and the settling of scores and grievances."  Op. at 6.

For example, as part of his damages claim, Plaintiff alleged that "[t]he different [business] opportunities which evaporated are too many to list, but as an example, Donald J. Trump has been banned from different social media platforms, including Twitter."  Am. Compl. 524 n.277.  According to the Amended Complaint, "[m]ost of this was due to the misinformation campaign waged by Hillary Clinton, whereby truth was deemed false and lies were deemed to be truth."  *Id.*  Setting aside counsel's failure to allege *any* concrete business harm—contrary to the requirements of *Twombly*, *Iqbal*, RICO, and Federal Rule of Civil Procedure 9(g) regarding special damages—

_____

[3] After citing extensively from the Sussmann indictment, Plaintiff does admit, in a footnote in his Opposition, that Sussmann was acquitted.  Trump Opp'n 12 n.5.  This makes the omission of that fact from the Amended Complaint all the more striking.

this assertion is demonstrably false.  Plaintiff was permanently suspended from Twitter not in connection with anything Clinton did, nor with any alleged Russia connection, but because Twitter concluded Plaintiff violated its ban of "Glorification of Violence" after the riot at the U.S. Capitol on January 6, 2021.  *See* Twitter, *Permanent suspension of @realDonaldTrump* (8 Jan. 2021), https://blog.twitter.com/en_us/topics/company/2020/suspension.

5.  In addition to the lack of legal merit to the substantive claims, sanctions are warranted because—absent a viable RICO claim—there was no legal basis to argue for personal jurisdiction over certain defendants.  As this Court recognized, "Plaintiff has not alleged that Defendants 'aimed' any conduct at Florida" and indeed, Plaintiff "was a resident of New York at the time of the occurrences giving rise to Plaintiff's claims."  Op. at 20.  Plaintiff's argument cannot be reconciled with governing law.  And courts routinely impose sanctions where, as here, the plaintiff "continu[es] pressing [a] frivolous assertion of jurisdiction" without a good faith basis to do so.  *Jones v. Campbell Univ.*, 322 F. Supp. 3d 106, 109 (D.D.C. 2018); *see also O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 3400671 (D. Colo. Aug. 3, 2021) (same).

6.  Finally, the form of the Complaint and Amended Complaint are as defective as their substance.  Both the original and amended complaints are "quintessential shotgun pleadings" of the type the Eleventh Circuit has consistently rejected.  Op. at 7.  "Besides violating the rules, shotgun pleadings also 'waste scarce judicial resources . . . and undermine the public's respect for the courts.'"  *Barmapov v. Amual*, 986 F.3d 1321, 1324 (11th Cir. 2021).

As particularly relevant here, shotgun pleadings shift the burden of untangling a plaintiff's allegations and legal theories onto the defendants and the Court.  As a result of the prolix Complaint and Amended Complaint, Defendants have *twice* been forced to comb through the complaints to try to parse what Plaintiff was attempting to plead and to ensure that each allegation

was adequately addressed in their motions to the Court.  Here, too, Plaintiff's decision to ignore the issues raised in the first round of motion to dismiss briefing is particularly unreasonable, because it required Defendants to bear the costs of beginning the whole process anew.

Plaintiff's shotgun pleadings have also required this Court to devote significant time and attention to resolving this case—as evidenced by the Court's lengthy opinion.  Indeed, in addition to causing "undue expense" to Defendants, shotgun complaints like these "lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 982 (11th Cir. 2008).  By putting the Court to the burden of piecing together allegations and scrutinizing the chaos for cognizable claims, "[s]hotgun pleadings . . . exact an intolerable toll on the trial court's docket . . . and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).

### B.  Plaintiff's counsel unreasonably and vexatiously multiplied the proceedings by their conduct.

This Complaint should never have been filed—and certainly, after the initial round of motions to dismiss, Plaintiff was on notice that his claims were deficient in several fundamental and independent respects.  Plaintiff nevertheless filed a shotgun Amended Complaint that repeated the same deficiencies at greater length—necessitating a second round of motion briefing—and then opposed the motion to dismiss in a prolix Opposition that wrongly contended the Amended Complaint stated a viable claim, while repeating the same factual misrepresentations and unfounded legal theories.  This conduct required Defendants, and this Court, to expend additional and unnecessary time and resources in untangling and responding to Plaintiff's allegations.

C.      **This Court should award costs and fees associated with moving to dismiss the Amended Complaint and moving for sanctions.**

The award of costs and fees under Section 1927 cannot exceed those incurred as a result of counsel's vexatious conduct due to "unnecessary filings after the lawsuit has begun." *Macort*, 208 F. App'x at 786.  Thus, although the Court's inherent powers as well as the DTSA can authorize sanctions as to the filing of the initial Complaint, Section 1927 cannot.  *Id.*

In light of this, this Court should enter an order awarding Defendants their attorneys' fees and costs incurred in responding to the Amended Complaint, as well as the costs and fees associated with seeking the instant sanctions, to be paid by Plaintiff's counsel.  "Because the costs arising from the sanctions proceedings were 'occasioned by the objectionable conduct,' a district court may include costs arising from the sanctions proceedings in the sanctions award." *Norelus*, 628 F.3d at 1298.  The appropriate measure of fees and costs is described below and in Appendix A.  *See infra*, pp. 19–20 & App'x A.

II.    **THE COURT SHOULD IMPOSE SANCTIONS UNDER ITS INHERENT AUTHORITY.**

Because of the particularly vexatious and frivolous nature of the Complaint and Amended Complaint in this case, the Court should use its inherent authority to go beyond Section 1927, and impose sanctions on Plaintiff himself for the filing of both the original and amended Complaints. Under its inherent authority, the Court may order Plaintiff to pay Defendants' costs and fees associated with the defense of the entire action, which would not have been incurred absent Plaintiff's bad-faith pursuit of these frivolous claims.

In *Chambers v. NASCO*, 501 U.S. 32, 43–45 (1991), the Supreme Court stated that "tampering with the administration of justice . . . involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public." *Id.*  Thus, the Supreme Court acknowledged that district courts have the inherent powers to assess sanctions,

without an explicit grant of statutory authority against both parties and their attorneys.  *Id.* at 46.

A court may exercise this power "to sanction the willful disobedience of a court order, and to

sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).

In the Eleventh Circuit, the "key to unlocking a court's inherent power is a finding of bad

faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  "[I]n the absence of direct

evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious

that it could only be committed in bad faith."  *Purchasing Power, LLC v. Bluestem Brands, Inc.*,

851 F.3d 1218, 1224–25 (11th Cir. 2017).  "[R]ecklessness plus a frivolous argument suffice" to

make this showing.  *Id.* at 1225.  In addition, "a finding of bad faith 'does not require that the legal

and factual basis for the action prove totally frivolous; where a litigant is substantially motivated

by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the

assessment of attorney's fees.'"  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002).

Here, the same conduct described above supports a finding not only of recklessness, but of

subjective bad faith.  *See supra*, pp. 5–11.  "A finding of bad faith is warranted where an attorney

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose

of harassing an opponent."  *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273 (11th Cir. 2009).  "If

particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts

can be the basis for a finding of bad faith."  *Id.*

1.  The totality of the problems with the Complaint, Amended Complaint, and Opposition

are so significant that this Court can infer the suit was filed and prosecuted in bad faith.  Indeed,

the Court has already noted "serious doubts" as to whether this case was brought for a proper

purpose, was warranted under existing law, and had evidentiary support.  *See* Op. at 6–7.

13

2. Particularly important here is the evidence that this case was brought for an improper purpose: namely, "'as a fundraising tool, a press release, or a list of political grievances.'" Op. at 3. "At its core, the problem with Plaintiff's Amended Complaint is that Plaintiff is not attempting to seek redress for any legal harm; instead, he is seeking to flaunt a two-hundred-page political manifesto outlining his grievances against those that have opposed him, and this Court is not the appropriate forum." Op. at 64.

Counsel's own statements make clear that this suit was filed as a political tool and in order to fight back at Plaintiff's perceived political enemies. After the initial Complaint, counsel for Plaintiff went on a media tour to discuss the suit. According to video clips hosted on her own firm's website, Alina Habba stated to Newsmax: "What the real goal [of the suit] is, is democracy. Is continuing to make sure that our elections, continuing to make sure our justice system is not obstructed by political enemies. That cannot happen. And that's exactly what happened. They obstructed justice, they continued the false narrative. . . . This grand scheme, that you literally could not make up, to take down an opponent. That is un-American."[4] To Fox News's Sean Hannity, she explained: "You can't make this up. You literally cannot make a story like this up. . . . And President Trump is just not going to take it anymore. If you are going to make up lies, if you are going to try to take him down, he is going to fight you back. And that is what this is, this is the beginning of all that."[5] In both clips, counsel emphasizes the same misleading statements present in the Complaint, Amended Complaint, and Opposition, suggesting that the

---

[4] Video at 0:35–1:21, *Trump Suing Hillary Clinton Over Russia Hoax*, Habba Madaio & Associates LLP – News (March 31, 2022), https://habbalaw.com/news/trump-suing-hillary-clinton-over-russia-hoax/.

[5] Video at 1:55–2:13, *Trump Sues Clinton, Steele for 'False Narrative' About Russia Collusion*, Habba Madaio & Associates LLP – News (March 25, 2022), https://habbalaw.com/news/trump-sues-clinton-steele-for-false-narrative-about-russian-collusion/.

claims are factually supported by Robert Mueller's investigation, the Inspector General's Report, and the Durham investigation.

Counsel continued her comments after this Court dismissed the suit.  In a September 10, 2022 interview with Sean Hannity, the host asked her "Why isn't [Hillary Clinton] being held accountable for what she did?"  Counsel's response is illuminating for its reiteration, after extensive briefing, of the many misrepresentations on which the suit was based: [6]

> ALINA HABBA, ATTORNEY FOR FORMER PRESIDENT DONALD TRUMP: Because when you have a Clinton judge as we did here, Judge Middlebrooks who I had asked to recuse himself but insisted that he didn't need to, he was going to be impartial, and then he proceeds to write a 65-page scathing order where he basically ignored every factual basis which was backed up by indictments, by investigations, the Mueller report, et cetera, et cetera, et cetera, not to mention Durham, and all the testimony we heard there, we get dismissed.  Not only do we get dismissed, he says that this is not the proper place for recourse for Donald Trump. He has no legal ramifications.  Where what is the proper place for him?  Because the FBI won't help when you can do anything, obstruct justice, blatantly lie to the FBI, Sussmann's out, he gets acquitted, where do you go?  That's the concern for me.  Where do you get that -- that recourse?[7]

She also indicated that, while Plaintiff himself doubted whether the suit would succeed, she nevertheless "fought" to pursue it:

> HABBA: You know, I have to share with you a story, Sean, that I have not shared with anybody.  The recourse that I have at this point is obviously to appeal this to the 11th Circuit as Gregg said.  But when I brought this case and we were assigned, you know, this judge and we went through the recusal process, we lost five magistrates, including Rinehart [sic] who's dealing with the boxes as we know.  The former president looked at me and he told me, you know what, Alina.  You're not going to win.  You can't win, just get rid of it, don't do the case.  And I said, no, we have to fight.  It's not right what happened.  And you know, he was right, and it's a sad day for me personally because I fought him on and I should have listened, but I don't want to lose hope in our system.  I don't.  So, you know, I'm

---

[6] Although the Court need not find subjective bad faith on the part of counsel to impose sanctions under Section 1927, *supra*, p. 5, the evidence of bad faith here may aid in the determination of whether counsel was *objectively* reckless.  Counsel's subjective state of mind is therefore "relevant" "to some extent" under Section 1927, because "conduct is more likely to be 'unreasonable and vexatious' if it is done with a malicious purpose."  *Norelus*, 628 F.3d at 1284.

[7] *See* Exhibit 1 at 12–13 ("Biden Again Slams Republicans," Transcript from FOX: Hannity, Sept. 10, 2022).

deciding whether we're going to appeal it.  But I got to tell you, Sean, it's hard when you're looking at what's happening in these in this justice system.[8]

3.  The record reflects further evidence of bad faith based on unfair conduct "calculated to gain a tactical advantage and protect its interest in the instant litigation."  *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, No. 9:11-CV-80427-DMM, 2013 WL 11317858, at *8 (S.D. Fla. May 6, 2013) (Middlebrooks, J.), *aff'd*, 778 F.3d 1205 (11th Cir. 2015).  Some of Plaintiff's strategies in prosecuting this case appear to involve this form of gamesmanship.

For example, early in this suit, Plaintiff frivolously moved to disqualify the Court for supposed bias.  When a recusal motion is frivolous, and without support in existing law or fact, it can support a finding of bad faith.  *See In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273–77 (11th Cir. 2009) (finding bad faith in connection with frivolous recusal motion); *Bettis v. Toys R Us*, 646 F. Supp. 2d 1273, 1332–41 (S.D. Fla. 2009) (same).  Plaintiff's counsel also unreasonably multiplied proceedings by moving this Court to enter a scheduling order and postpone the trial date while the motions to dismiss were pending—despite having previously agreed during a status conference to postpone discovery and the scheduling order pending resolution of the motions.  Plaintiff's vexatious motion necessitated a meet and confer call with 41 attorneys.  DE 233, at 2.

Under its inherent power, this Court has substantial flexibility to craft an appropriate remedy against a party and its attorneys.  The amount of any monetary sanctions based on attorneys' fees must be reasonable.  But where a plaintiff initiates a case in bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may reasonably award *all* costs and fees incurred in defending the action.  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017); *see also Barash v. Kates*, 585 F. Supp. 2d 1368, 1374 (S.D. Fla. 2008).  These costs

---

[8] *Id.* at 13.

and fees may be taxed against client, attorney, or both. *Dude v. Cong. Plaza, LLC*, No. 17-80522-CIV, 2018 WL 3432714, at *5 (S.D. Fla. July 16, 2018).

Under its inherent authority, this Court should enter an order awarding sanctions, to be paid by Plaintiff himself, for the Defendants' full measure of attorneys' fees and costs incurred in defending this action from its inception through its dismissal, and to the conclusion of these sanctions proceedings.  At the very least, Defendants are entitled to fees and costs from the Amended Complaint onward, at which point Plaintiff and his counsel were indisputably on notice of the myriad deficiencies in their claims.  The appropriate measure of fees and costs is described below and in Appendix A. *See infra*, pp. 19–20 & App'x A.

## III.   THE COURT SHOULD IMPOSE SANCTIONS UNDER THE DEFEND TRADE SECRETS ACT.

Here, one of Plaintiff's claims for relief was for the supposed theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1830–32, in Count VIII against Defendants Neustar Inc., Neustar Security Services, Joffe, DNC, Clinton Campaign, Hillary Clinton, Perkins Coie and Sussmann (hereinafter "DTSA Defendants").   Under that statute, "if a claim of . . . misappropriation [of a trade secret] is made in bad faith, which may be established by circumstantial evidence, . . . [a court may] award reasonable attorney's fees to the prevailing party."  18 U.S.C. § 1836(b)(3)(D).

"Although the Eleventh Circuit has [also] not addressed what constitutes 'bad faith' for purposes of the DTSA, there is ample precedent as to what constitutes 'bad faith' warranting the award of attorneys' fees." *Temurian v. Piccolo*, No. 18-CV-62737, 2021 WL 1520588, at *5 (S.D. Fla. Mar. 3, 2021), *report and recommendation adopted in part*, No. 18-62737-CIV, 2021 WL

1121003 (S.D. Fla. Mar. 24, 2021).[9]  "In determining the propriety of a bad faith fee award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'"  *Temurian*, 2021 WL 1121003, at *6 (quoting *Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1333 (11th Cir. 2001)).  "For there to be a finding of bad faith, a plaintiff's conduct must be objectively specious or frivolous and there must be evidence of subjective misconduct."  *Id.*

"A prevailing party can establish that the claim against it was objectively specious by demonstrating 'that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm.'"  *Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, No. CV420-322, 2022 WL 987945, at *3 (S.D. Ga. Mar. 31, 2022) (citation omitted).  "Objective speciousness exists where 'there is a complete lack of evidence as to every element of a misappropriation of trade secrets claim.'"  *Id.* (citation omitted).  In sum, "[w]hile feelings may provide a reason to investigate a claim, they do not provide a good faith basis for filing an action."  *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 19CV3283 (DLC), 2022 WL 2119344, at *2 (S.D.N.Y. May 31, 2022).

Plainly, DTSA Defendants are "prevailing part[ies]" here.  And for the reasons explained in their motions to dismiss the Amended Complaint, Plaintiff failed to allege every single element of his trade secret claim.  *See* DE 226 at 9–11.  Most fundamentally, as this Court found, he failed even to allege the existence of a trade secret.  Op. at 33–37.

"[S]ubjective misconduct is found to exist 'where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit,' and may be proven by direct evidence of actual knowledge or may be inferred from the speciousness of plaintiff's trade secret

---

[9] *Temurian* and other authorities cited declined to award the full measure of requested fees and costs, but there is only a small body of precedent regarding sanctions under the DTSA, which was enacted in 2016.  *See Temurian*, 2021 WL 1121003 (declining to award fees under the DTSA "because of Plaintiffs' inability to properly plead their claim").

claim and its conduct during litigation." *Temurian*, 2021 WL 1520588, at \*5; *see also Greenberg Farrow Architecture, Inc. v. Perkins Eastman Architects, P.C.*, 1:12-CV-1435, 2014 WL 12694260, at \*6 (N.D. Ga. July 2, 2014).  For the reasons above, the Court can also conclude that Plaintiff acted in bad faith in bringing and prosecuting this suit.  *See supra*, pp. 5–11, 13–16.  Indeed, Plaintiff was amply warned of the deficiencies with his DTSA claim in DTSA Defendants' initial motions to dismiss, but nevertheless renewed the same claim in the Amended Complaint.

Under the DTSA, this Court should enter an order awarding sanctions, to be paid by Plaintiff himself, for the DTSA Defendants' full measure of attorneys' fees and costs incurred in defending this action from its inception through its dismissal, and to the conclusion of these sanctions proceedings.  At the very least, the DTSA Defendants are entitled to fees from the Amended Complaint onward, at which point Plaintiff and his counsel were indisputably on notice of the myriad deficiencies in their claims.  The appropriate measure of fees and costs is described below and in Appendix A.  *See infra*, pp. 19–20 & App'x A.

## IV.   DEFENDANTS' ATTORNEYS' FEES WERE REASONABLE.

Whether under Section 1927, its inherent authority, the Defend Trade Secrets Act, or another source of authority, this Court may impose an award of fees and costs.  Depending on the Court's source of authority, it may tax these sanctions against Plaintiff and/or his attorneys.

"The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Celsius Holdings*, 2022 WL 3568042, at \*4 (quoting *Bivins v. Wrap It Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)).  "That 'lodestar' may be adjusted after considering other factors." *Id.*  "Under this method, the Court must determine whether the fee applicant has satisfied the burden of establishing that the requested hourly rate is reasonable." *Id.*  In determining the prevailing market rates, the Court

should consider several factors, including "the attorneys' customary fee, the skill required to perform the legal services, [and] the attorneys' experience, reputation and ability." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Celsius Holdings*, 2022 WL 3568042, at *4. Furthermore, the Court may make a fee award based on its own experience. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Mindful that the Court might structure the fee award differently depending on the source of sanctions authority and its findings about the appropriateness of sanctions, Defendants identify in Appendix A the attorneys' fees incurred by each Defendant that correspond to three phases of the case: (1) the period from the filing of the initial Complaint to the filing of Defendants' initial motions to dismiss; (2) the period after the filing of Defendants' initial motions to dismiss to the Court's dismissal of the Amended Complaint; and (3) the period related to this sanctions motion. Each request for fees is supported by further facts set forth in the declarations identified in Appendix A.  Some Defendants have also sought certain costs incurred; those costs are identified in Appendix A and supported by the referenced declarations.

Defendants served this request for fees on Plaintiff consistent with Local Rule 7.3, but were unable to resolve the issues here despite meeting and conferring in good faith by video twice, on October 13 and October 26, 2022.  A certification of compliance and verification is included after Appendix A.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court impose sanctions against Plaintiff and his counsel for attorneys' fees, costs, and other relief the Court finds just.

Dated:  October 31, 2022                              Respectfully submitted,


/s/ David Oscar Markus                                /s/ David E. Kendall
David Oscar Markus                                    David E. Kendall (pro hac vice)
MARKUS/MOSS PLLC                                      Katherine M. Turner (pro hac vice)
40 NW 3rd Street, PH 1                                Michael J. Mestitz (pro hac vice)
Miami, FL 33128                                       WILLIAMS & CONNOLLY LLP
Tel:  (305) 379-6667                                  680 Maine Avenue, S.W.
                                                      Washington, DC 20024
                                                      Tel:  (202) 434-5000
                                                      Fax:  (202) 434-5029
                                                      dkendall@wc.com

*Attorneys for Defendant Hillary Rodham Clinton*


/s/ Robert P. Trout
Robert P. Trout (pro hac vice)
Paola Pinto (Florida Bar Number 1013933)
SCHERTLER ONORATO MEAD & SEARS
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Phone:  (202) 628-4155
rtrout@schertlerlaw.com
ppinto@schertlerlaw.com

*Attorneys for Defendants HFACC, Inc. and John Podesta*


/s/ Gerald Edward Greenberg                           /s/ Roberta A. Kaplan
Gerald Edward Greenberg                               Roberta A. Kaplan (pro hac vice)
GELBER SCHACHTER & GREENBERG PA                       Shawn G. Crowley (pro hac vice)
One Southeast Third Avenue                            Maximillian L. Feldman (pro hac vice)
Suite 2600                                            KAPLAN HECKER & FINK LLP
Miami, FL 33131-1715                                  350 Fifth Avenue, 63rd Floor
(305) 728-0950                                        New York, NY 10118
ggreenberg@gsgpa.com                                  212.763.0883
                                                      rkaplan@kaplanhecker.com
                                                      scrowley@kaplanhecker.com
                                                      mfeldman@kaplanhecker.com


*Attorneys for Defendants Democratic National Committee, DNC Services Corporation, and*
*Debbie Wasserman Schultz*

/s/ Jonathan Edward Levine
Jonathan Edward Levine (FBN 937711)
Levine & Associates, PLLC
5311 Lee Highway
Arlington, VA 22207
Tel. (703) 525-2669

/s/ George R.A. Doumar
George R.A. Doumar (pro hac vice)
Mahdavi, Bacon, Halfhill & Young PLLC
11350 Random Hills Road, Suite 700
Fairfax, VA 22030
Tel. (703) 352-1300

*Attorneys for Charles Halliday Dolan, Jr.*

/s/ Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
Andrew J. Ceresney (pro hac vice)
Wendy B. Reilly (pro hac vice)
Isabela M. Garcez (pro hac vice)
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
aceresney@debevoise.com
wbreilly@debevoise.com
imgarcez@debevoise.com

/s/ William R. Barzee
William R. Barzee (Florida Bar No. 158720)
BARZEE FLORES
Courthouse Center, Penthouse One
40 NW Third Street
Miami, FL 33128
Tel:  (305) 374–3998
williambarzee@barzeeflores.com

*Attorneys for Defendant Robert E. Mook*

/s/ Adam S. Fels
Adam S. Fels
FRIDMAN FELS & SOTO PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
Tel:  305-569-7701
afels@ffslawfirm.com

/s/ Joshua A. Levy
Joshua A. Levy (pro hac vice)
Rachel Clattenburg (pro hac vice)
Kevin P. Crenny (pro hac vice)
LEVY FIRESTONE MUSE LLP
900 17th St. NW, Suite 1200
Washington, D.C. 20006
Tel:  202-845-3215
Fax:  202-595-8253
jal@levyfirestone.com
rmc@levyfirestone.com
kcrenny@levyfirestone.com

*Attorneys for Defendants Fusion GPS, Peter Fritsch, and Glenn Simpson*

/s/ Joshua Berman
Joshua Berman
CLIFFORD CHANCE US LLP
2011 K Street, NW
Washington, D.C.  20006
Tel. (202) 912-5000
Fax (202) 912-6000
Joshua.Berman@CliffordChance.com

/s/ Adam Fels
Adam Fels (Florida Bar No. 0114917)
FRIDMAN FELS & SOTO, PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL  33134
Tel. (305) 569-7701
Afels@ffslawfirm.com

/s/ Benjamin Peacock
Benjamin Peacock

CLIFFORD CHANCE US LLP
New York, New York 10019
Tel. (212) 878-8000
Fax (212) 878-8375
Benjamin.Peacock@CliffordChance.com

*Attorneys for Bruce Ohr and Nellie Ohr*

/s/ Franklin Monsour Jr.
Franklin Monsour Jr. (pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel:  (212) 506-3512
Fax:  (212) 506-5151
fmonsour@orrick.com

/s/ Diana Marie Fassbender
Diana Marie Fassbender (Fla Bar ID #17095)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street N.W.
Washington, DC  20005-1706
Tel:  (202) 339-88533
Fax:  (202) 339-8500
dszego@orrick.com

*Attorneys for Igor Danchenko*

/s/ Samantha L. Southall
Samantha L. Southall (pro hac vice)
Pennsylvania Bar No. 80709
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel:  (215) 665 8700
Fax (215) 667 8760
samantha.southall@bipc.com

/s/ Jennifer Olmedo Rodriguez
Jennifer Olmedo Rodriguez (Florida Bar No. 605158)
BUCHANAN INGERSOLL & ROONEY PC
2 South Biscayne Blvd., Suite 1500
Miami, Florida 33131
Tel:  (305) 347 4080
Fax:  (305) 347 4089
jennifer.olmedo-rodriguez@bipc.com

*Attorneys for Defendant Neustar, Inc.*

/s/ John M. McNichols
John M. McNichols (pro hac vice)
Allison S. Eisen (pro hac vice)
Kathryn E. Garza (pro hac vice)
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Telephone:  (202) 434-5000
Fax:  (202) 434-5029
jmcnichols@wc.com

/s/ James E. Gillenwater
James E. Gillenwater (Bar No. 1013518)
GREENBERG TRAURIG P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Telephone:  (305) 579-0500
Fax:  (305) 579-0717
gillenwaterj@gtlaw.com

*Attorneys for Neustar Security Services*

/s/ Edward Soto
Edward Soto (FBN 0265144)
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200

/s/ Steven A. Tyrrell
Steven A. Tyrrell (pro hac vice)
WEIL GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600

| | |
|---|---|
| Miami, FL 33131 | Washington, D.C. 20036 |
| Telephone:  (305) 577-3100 | Telephone:  (202) 682-7000 |
| Facsimile:  (305) 374-7159 | Facsimile:  (202) 857-0940 |

*Attorneys for Rodney Joffe*

| | |
|---|---|
| /s/ Enjoliqué A. Lett | /s/ Akiesha G. Sainvil |
| Enjoliqué A. Lett (FBN 0104881) | Akiesha G. Sainvil (FBN 1003260) |
| GREENBERG TRAURIG P.A. | GREENBERG TRAURIG P.A. |
| 333 S.E. 2nd Ave., Suite 4400 | 333 S.E. 2nd Ave., Suite 4400 |
| Miami, FL 33131 | Miami, FL 33131 |
| Telephone: (305) 579-0500 | Telephone: (305) 579-0500 |
| Fax: (305) 579-0717 | Fax: (305) 579-0717 |
| enjolique.lett@gtlaw.com | akiesha.sainvil@gtlaw.com |

*Attorneys for Orbis Business Intelligence Ltd.*

24

**Appendix A – Fee Requests and Supporting Evidence**

| Defendant(s) | Fees sought to be recovered from Complaint to initial MTD | Fees sought to be recovered from initial MTD to dismissal | Fees sought to be recovered to date on the sanctions motion | Costs sought to be recovered | Supporting declaration |
|---|---|---|---|---|---|
| Hillary Clinton | $44,975 | $99,725 | $27,515 | $4,197.31 | Ex. 2 (Kendall Decl.) |
| HFACC and John Podesta | $2,343 | $13,406 | $4,600 | $0 | Ex. 3 (Trout Decl.) |
| DNC, DNC Services Corporation, and Debbie Wasserman Schultz | $137,412.50 | $32,780 | $15,632.50 | $2,176.69 | Ex. 4 (Crowley Decl.) |
| Robert Mook | $36,312.50 | $24,192.50 | $9,105 | $597.08 | Ex. 5 (Reilly Decl.) |
| Fusion GPS, Peter Fritsch, and Glenn Simpson | $31,550 | $18,690 | $5,580 | $0 | Ex. 6 (Levy Decl.) |
| Bruce and Nellie Ohr | $25,760 | $26,820 | $6,330 | $400 | Ex. 7 (Berman Decl.) |
| Igor Danchenko | $5,600 | $10,220 | $1,540 | $6,389 | Ex. 8 (Monsour Decl.) |
| Neustar Inc. | $67,944.50 | $57,569 | $8,630 | $0 | Ex. 9 (Southall Decl.) |
| Neustar Security Services | $0 | $50,950 | $2,620 | $327.98 | Ex. 10 (McNichols Decl.) |
| Rodney Joffe | $81,734.85 | $118,568.90 | $25,434.90 | $604.33 | Ex. 11 (Tyrrell Decl.) |
| Orbis Business Intelligence Ltd. | $0 | $40,675 | $9,375 | $0 | Ex. 12 (Lett Decl.) |
| Charles Halliday Dolan, Jr. | Mr. Dolan's request for $16,274 in attorneys' fees is supported by the materials filed in connection with his motion at DE 269. | | | | |

**CERTIFICATE OF COMPLIANCE WITH RULE 7.3 AND VERIFICATION**

Consistent with Local Rule 7.3, I served the draft sanctions motion on Plaintiff's counsel by email on October 5, 2022.  That same day, my colleague provided counsel with a link to download the draft supporting declarations via Secure File Transfer (SFT).  Defendants met and conferred in good faith with Plaintiff's counsel by Microsoft Teams twice, on October 13 and October 26, 2022, but were unable to reach any agreement as to either the Defendants' entitlement to or the amount of fees and expenses not taxable under 28 U.S.C. §1920 that are recoverable from Plaintiff and/or his counsel.

Consistent with the requirements of Rule 7.3, I verify under penalty of perjury that the statements made in this Motion and Memorandum are true and correct to the best of my knowledge, and are based either on my personal knowledge or on the information provided to me in the appended Declarations.

   */s/ David E. Kendall*
David E. Kendall

Dated:  October 31, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2022, I caused a copy of the foregoing

Defendants' Motion for Sanctions to be served on all counsel of record via CM/ECF.  All parties

required to be served have been served.

_/s/ David Oscar Markus_
David Oscar Markus
