IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 2:22-cv-14102-DMM

DONALD J. TRUMP,

               Plaintiff,

v.

HILLARY R. CLINTON, et al.,

               Defendant.

_____/

**PLAINTIFF AND PLAINTIFF'S COUNSEL'S RESPONSE TO DEFENDANTS'
MOTION FOR SANCTIONS SEEKING ATTORNEYS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES………………………………………………………..…….…i

ARGUMENT…………………………………………………………………………..1

I.     SANCTIONS ARE NOT WARRANTED AGAINST PLAINTIFF OR
        PLAINTIFF'S COUNSEL……………………………………………………1

        A.  28 U.S.C. § 1927………………………………………………………2

              i.     Plaintiff's Counsel did not engage in unreasonable or vexatious
                      Conduct………………………………………………………..….2

              ii.    The conduct at issue did not "multiply the proceedings"………………..12

              iii.   The amount of the sanctions do not have a financial nexus to any
                      excess proceedings………………………………………………13

              iv.    To the extent necessary, Plaintiff's Counsel request an evidentiary
                      hearing……………………………………………....……………..14

        B.  The Court's Inherent Powers…………………………………….……………14

        C.  Defend Trade Secrets Act…………………………………………………...16

II.    THE DEFENDANTS' FEES ARE UNREASONABLE AND IMPROPER………..17

        A.  A Large Portion of the Defendants' Fees Are Block Billing……………………17

        B.  Defendants' Fees are Unreasonable and Excessive……………………………...18

        C.  Redundant Hours Should Be Excluded…………………………………………18

        D.  Particulars As To The Defendants Invoices……………….……………………19

CONCLUSION……………………………………………………………………...19

# TABLE OF AUTHORITIES

## Cases

*ACLU v. Barnes,*
168 F.3d at 423, 428 (11th Cir. 1999) ........................................................................ 17

*Akkasha v. Bloomingdales, Inc.,*
 No. 17-CIV-22376, 2020 WL 6820879, at *2 (S.D. Fla. July 20, 2020) ..................................... 3
*Akkasha v. Bloomingdales, Inc.,*
*Amlong & Amlong, P.A. v. Denny's, Inc.,*
500 F.3d 1230, 1252 (11th Cir. 2007). ...................................................................... 14

*Blankenship v. Gulf Power Co.,*
551 Fed. App'x 468 (11th Cir. 2013) ......................................................................... 16

*Bridge v. Phoenix Bond & Indemnity Co,*
553 U.S. 639 (2008) ........................................................................................ 7

*Bryant v. Military Dept. of Mississippi,*
597 F.3d 678 (5th Cir. 2010) ................................................................................ 2

*Byrne v. Nezhat,*
261 F.3d 1075 (11th Cir. 2001) ........................................................................... 2, 8

*Clinton v. Jones,*
520 U.S. 681 (1997) ...................................................................................... 4, 5

*Compulife Software Inc. v. Newman,*
959 F.3d 1288 (11th Cir. 2020) ........................................................................... 6,7

*Daniels v. Sodexo, Inc.*
2013 WL 4008744 (M.D. Fla. Aug. 5, 2013) ................................................................ 11

*Digiport, Inc. v. Foram Dev. BFC, LLC,*
314 So.3d 550 (Fla. Dist. Ct. App. 2020) .................................................................... 6
*Digiport, Inc. v. Foram Dev. BFC, LLC,*
*Gianelli v. Schoenfeld,*
2021 WL 4690724, at *6 (E.D. Cal. Oct. 7, 2021) ........................................................... 5

*Gust, Inc. v. Alphacap Ventures*, LLC,
905 F.3d 1321 (Fed. Cir. 2018) .............................................................................. 3

*Harvey v Cable News Network, Inc.,*
48 F.4th 257, 280 (4th Cir. 2022) ......................................................................... 12

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S. Ct. 1937, 76 L. Ed. 2d 40 (1983) ................................................................ 16

*Hudson v. Int'l Computer Negotiations, Inc.*,
499 F.3d 1252, 1262 (11th Cir. 2007) ................................................................ 2

*In re Ruben*,
825 F.2d 977 (6th Cir. 1987) ................................................................ 1

*Jackson v. Bank of America, NA*,
898 F.3d 1348 (11th Cir. 2018) ................................................................ 8

*Kreager v. Solomon & Flanagan*,
775 F.2d 1541, 1543 (11th Cir. 1985) ................................................................ 15

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) ................................................................ 6

*Leh v. Gen. Petroleum Corp.*,
382 U.S. 54, 59 (1965) ................................................................ 5

*LaSalle Nat'l Bank v. First Conn. Holding Group*, LLC,
287 F.3d 279 (3d Cir. 2002) ................................................................ 2

*Malautea v. Suzuki Motor Co., Ltd.*,
987 F.2d 1536, 1544 (11th Cir.1993) ................................................................ 3

*McMahan v. Toto*,
256 F.3d 1120 (11th Cir. 2001) ................................................................ 3

*Nemesis Veritas, L.P. v. Toto*,
 539 U.S. 914, 123 S.Ct. 2273, 156 L.Ed.2d 129 (2003) ................................................................ 3

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ................................................................ 4

*Norman v. Housing Auth. of Montgomery*,
836 F.2d 1292, 1299 (11th Cir. 1988) ................................................................ 16

*Nollner v S. Baptist Convention, Inc.*,
628 Fed Appx 944 (6th Cir. 2015) ................................................................ 11

*Mar. Mgmt., Inc. v. United States*,
242 F.3d 1326, 1333 (11th Cir. 2001) ................................................................

*McMahan Sec. Co. L.P. v. FB Foods, Inc.*,
2006 WL 2092643 (M.D. Fla. July 27, 2006)) ............................................................... 1

*Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*,
18 F.3d 260, 264 (4th Cir. 1994) ..................................................................................... 7

*Peer v. Lewis*,
606 F.3d 1306 (11th Cir. 2010) ....................................................................................... 2

*Pension Fund Mid Jersey Trucking Industry v. Omni Funding*,
687 F.Supp. 962, 965 (D.N.J., June 28, 1988) ............................................................... 5

*Peterson v. BMI Refractories*,
124 F.3d 1386 (11th Cir. 1997) ....................................................................................... 2

*Pharma Supply, Inc. v. Stein*
2015 WL 11439276 (S.D. Fla. May 27, 2015) ............................................................... 1

*Pres. Petrified Forrest v. Renzi*,
2014 WL 530574, at *3-4 (D. Ariz. Feb. 12, 2013) ....................................................... 5

*Procter & Gamble Co. v. Amway Corp.*,
242 F.3d 539, 565 (5th Cir. 2001) ................................................................................... 7

*Religious Tech. Ctr. v. Liebreich*,
98 Fed.Appx. 979 (5th Cir.2004) ..................................................................................... 2

*Reynolds v. Roberts*,
207 F.3d 1288, 1302 (11th Cir.2000). ............................................................................. 13

*Riddle v. Egensperger*,
266 F3d 542, 556 (6th Cir. 2001) .............................................................................. 1, 13

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) ......................................................................................................... 1

*Schwartz v. Millon Air, Inc.*,
341 F.3d 1220 (11th Cir 2003) ........................................................................................ 3

*State Farm Mut. Auto. Ins. Co. v. Kugler*,
No. 11-80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011) ....................................... 4

*Tello v. Dean Witter Reynolds, Inc.*,
410 F.3d 1275 (11th Cir. 2005) ....................................................................................... 4
*Trump v. Vance*,
140 S.Ct. 2412 (2020) ...................................................................................................... 4

*Vibe Micro, Inc. v. Shabanets*,
878 F.3d 1291, 1295 (11th Cir. 2018) ................................................................. 8


*United States v. Ronda*,
455 F.3d 1273 (11th Cir 2006) ............................................................................ 6

*United States v. Lee*,
919 F.3d 340 (6th Cir. 2019) ............................................................................... 6

## **Statutes**

28 U.S.C. § 1927 ............................................................................................... 1, 3

15 U.S.C. § 16(i) .................................................................................................. 5

18 U.S.C.  §  1512 ................................................................................................ 6

The Plaintiff, Donald J. Trump ("Plaintiff") and his undersigned attorneys ("Plaintiffs' Counsel") hereby submit this Response to the Joint Motion for Sanctions filed by Defendants, Hillary Clinton, HFACC, Inc., John Podesta, Robert Mook, DNC, DNC Services Corporation, Debbie Wasserman Schultz, Charles Halliday Dolan, Jr., Fusion GPS, Glenn Simpson, Peter Fritsch, Nellie Ohr, Bruce Ohr, Igor Danchenko, Rodney Joffe, Neustar Security Services, Neustar Inc., and Orbis Business Intelligence Ltd. (hereinafter collectively referred to as "Defendants"), and in support, state as follows:

## ARGUMENT

## I.   SANCTIONS ARE NOT WARRANTED AGAINST PLAINTIFF OR PLAINTIFF'S COUNSEL

The imposition of sanctions is a drastic remedy that "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). The party requesting sanctions "bears a heavy burden of demonstrating that sanctions are warranted, with all doubts resolved in the non-movant's favor." *Pharma Supply, Inc. v. Stein*, 2015 WL 11439276, at *1 (S.D. Fla. May 27, 2015) (citing *McMahan Sec. Co. L.P. v. FB Foods, Inc.*, 2006 WL 2092643 at *2 (M.D. Fla. July 27, 2006)). Further, in imposing sanctions, "[a] district judge should not await the aggregation of what he considers multiple acts of misconduct and then levy an aggregated sanction without at least warning the attorneys at the time of each act or reserving decision upon timely requests by opposing counsel." *Riddle v. Egensperger*, 266 F.3d 542, 556 (6th Cir. 2001) (citing *In re Ruben,* 825 F.2d 977, 990 (6th Cir. 1987)).

In the instant matter, the Defendants have applied for sanctions against Plaintiff and/or Plaintiff's Counsel pursuant to three separate authorities: (i) 28 U.S.C. § 1927; (ii) the Court's inherent powers; and (iii) the Defend Trade Secrets Act. For the reasons set forth *infra*, there is no basis for awarding sanctions against Plaintiff or Plaintiff's Counsel under any of the three and, therefore, the Defendants' application must be denied.

### A.  28 U.S.C. § 1927

Despite the Defendants' claim to the contrary, Plaintiff's Counsel's conduct throughout course of this litigation does not in any way justify sanctions under 28 U.S.C. § 1927.

Section 1927 provides, in pertinent part, as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)); *see also LaSalle Nat'l Bank v. First Conn. Holding Group*, LLC, 287 F.3d 279, 288 (3d Cir. 2002) (stating that sanctions under 28 U.S.C. § 1927 "are intended to deter an attorney from *intentionally* and unnecessarily delaying judicial proceedings.") (emphasis in original)). In other words, Section 1927 is focused on "the *conduct* of the litigation and not on the merits**.**" *Bryant v. Military Dept. of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) (citing *Religious Tech. Ctr. v. Liebreich,* 98 Fed.Appx. 979, 983 (5th Cir.2004)) (emphasis added).

In interpreting Section 1927, the Eleventh Circuit has noted that it is "not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Rather, per the plain language of the statute, there are three essential requirements which must be satisfied to justify a fee award under Section 1927.  As the *Peterson* court has explained, those elements are as follows:

> First, the attorney must engage in unreasonable and vexatious conduct.  Second, that unreasonable and vexatious conduct must be conduct which multiplies the proceedings.  Finally, the dollar amount of the sanctions must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorney's fees reasonably incurred because of such conduct.

As outlined below, none of these elements are met in the instant scenario. First, Plaintiff's Counsel did not engage in "unreasonable and vexatious conduct," since they did not prosecute the underlying proceedings in a frivolous or reckless manner, much less conduct themselves in a manner so egregious that it is "tantamount to bad faith." *See Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007)(citation omitted). Second, Plaintiff's Counsel did not "multiply the proceedings" since the conduct at issue—amending the complaint—was undertaken in good faith and, critically, with leave of court. Third, even assuming *arguendo*

that any excess proceedings took place, Defendants have failed to establish a sufficient financial nexus between said proceedings and the exorbitant amount of fees sought by Defendants.

### i. Plaintiff's Counsel did not engage in unreasonable or vexatious conduct

To impose sanctions under Section 1927, the movant must show that opposing counsel engaged in "unreasonable and vexatious conduct" during the course of litigation. 28 U.S.C. § 1927.

For this element to be satisfied, "something more than a lack of merit is required," *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir 2003) (citing *Nemesis Veritas, L.P. v. Toto,* 539 U.S. 914, 123 S.Ct. 2273, 156 L.Ed.2d 129 (2003)), since the statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith," *id.* (citing *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1544 (11th Cir.1993)). "'Bad faith' is the touchstone . . . Section 1927 is not about mere negligence." *Schwartz*, 341 F.3d at 1225 (citations omitted); *see also McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001) ("Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case."). A determination of bad faith is warranted where an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz*, 341 F.3d at 1225 (citation omitted).

At the outset, Plaintiff's Counsel maintains that the claims are supported by existing precedent or, at a minimum, present a compelling argument for the extension of existing law. *Secs. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321–22 (2d Cir. 1990), *abrogated on other grounds recognized by Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("When the applicable law is unsettled, attorneys may not be sanctioned merely for making reasonable arguments for interpreting the law.").

"When assessing the frivolity of a non-prevailing [party's] case, courts 'view the evidence in the light most favorable to [that party].'" *Akkasha v. Bloomingdales, Inc.,* No. 17-CIV-22376, 2020 WL 6820879, at *2 (S.D. Fla. July 20, 2020), *report and recommendation adopted,* No. 17-CIV-22376, 2020 WL 6820878 (S.D. Fla. Sept. 14, 2020) (citation omitted). "[I]n cases where a finding of frivolity has been sustained, the [non-prevailing party] typically failed to introduce any evidence in support of [its] claims." *Id.* at 3. (citation omitted). "When the applicable law is unsettled, attorneys may not be sanctioned merely for making reasonable arguments for interpreting the law. *Gust, Inc. v. Alphacap Ventures*, LLC, 905 F.3d 1321, 1329 (Fed. Cir. 2018) (citing *Secs. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321–22 (2d Cir. 1990), *abrogated on other*

*grounds recognized by Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

Contrary to the Defendants' contention, Plaintiff's lawsuit has a sound legal basis. In attempting to argue otherwise, the Defendants misstate existing precedent and mischaracterize the positions taken by Plaintiff. As outlined below, these arguments are misguided.

To start, Defendants contention that Plaintiff's claims were barred by the statute of limitations ignores the numerous arguments advanced by Plaintiff in favor of a tolling of the statute of limitations. These arguments were well-founded in the law and, given the discretionary nature of a determination of a court's decision to grant or deny an equitable tolling, it can hardly be said that it "appear[ed] beyond a doubt that Plaintiff[] c[ould] prove no set of facts that toll the statute" at the motion to dismiss stage. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (internal quotations omitted); *State Farm Mut. Auto. Ins. Co. v. Kugler,* No. 11-80051, 2011 WL 4389915 at *13 (S.D. Fla. Sept. 21, 2011) (denying motion to dismiss RICO and state law claims, noting "perimeters of [four year] limitations period are appropriately defined by reference to the delayed discovery doctrine. . . and the doctrine of equitable tolling" and refusing to resolve on motion to dismiss).

For instance, Plaintiff's position that he should be granted an equitable tolling of the statute of limitations for the duration of his presidency—which the Defendant acknowledge is a "novel" one—is a compelling argument for the extension of existing law. (DE 250 at 3). This argument is well-reasoned and based in Supreme Court precedent, which has consistently emphasized the all-encompassing nature of the President's position and the need for him to devote his undivided time and attention to fulfilling his duties. *See, e.g., Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) (Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government."); *Trump v. Vance*, 140 S.Ct. 2412, 2432 (2020) ("Incidental to the functions confided in Article II is 'the power to perform them[] without obstruction or impediment.'"); *Clinton v. Jones*, 520 U.S. 681, 698 (1997) (noting that the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties."). The Defendants claim that the holding in *Clinton v. Jones* "arrived at the opposite conclusion than that which Plaintiff urges," but this is simply not the case.  While it is true that the *Clinton* court found that an automatic stay of all private litigation commenced against a sitting President was not a constitutional imperative under the separation of powers

doctrine, the Court noted that it "accepted the initial premise" that the "public interest demands that [the President] devote his undivided time and attention to his public duties." *Clinton*, 520 U.S. at 697-699. In rejecting this "categorical rule," the Court acknowledged that the "high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of [an] entire proceeding" and stressed that "the question of whether a specific case should receive exceptional treatment is more appropriately the subject of the exercise of judicial discretion than an interpretation of the Constitution." *Id.* at 706. Accordingly, the holding in *Clinton* firmly supports Plaintiff's position that an equitable tolling of the statute of limitations was warranted for the duration of his presidency.

Likewise, Plaintiff's argument that the statute of limitations should be tolled pursuant to under the Clayton Act's tolling provision, 15 U.S.C. § 16(i), is a similarly compelling argument for an extension of the law. Indeed, the Court even acknowledged that it "appears to be an open question whether the Clayton Act's tolling provision applies in RICO actions," (DE 267 at 28), and there is ample out-of-circuit support for the proposition that it should be applied here, *see, e.g.*, *Pension Fund Mid Jersey Trucking Industry v. Omni Funding*, 687 F.Supp. 962, 965 (D.N.J., June 28, 1988) ("I conclude that the tolling provisions of the Clayton Act are applicable under RICO."); *Gianelli v. Schoenfeld*, 2021 WL 4690724, at *6 (E.D. Cal. Oct. 7, 2021) ("The court is willing to assume . . . that the Clayton Act's tolling provision applies to RICO claims."); *Pres. Petrified Forrest v. Renzi*, 2014 WL 530574, at *3-4 (D. Ariz. Feb. 12, 2013) ("The Court concludes that the tolling provision in 15 U.S.C. § 16(i) applies to the RICO civil enforcement provisions."). The Defendants argument that the tolling provision does not apply because there are no ""government actions founded on the specific RICO predicate acts [] alleged" in the Complaint, (DE 237 at 5), is misguided because there is no such requirement under § 16(i); the applicable test is whether "the matters complained of in the government suit bear a real relation to the private plaintiff's claim for relief," *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965); *see also Minnesota Min. & Mfg. Co.*, 381 U.S. at 323 (stating that § 16(i) "provides for tolling as long as the private claim is based 'in part on any matter complained of' in the government proceedings."), a standard which clearly applies to numerous actions, including: (i) *In the Matter of DNC Services Corp., et al.*, Federal Election Commission, MURs 7291, 7331 and 7449; (ii) *United States v. Michael Sussmann*, case no. 1:21-cr-00582-CRC, United States District Court, District of Columbia; and (iii) *United States v. Igor Danchenko*, case no. 1:21-cr-00245-AJT, United States District Court, Eastern District of

Virginia; and , under the caption, *United States v. Igor Danchenko*, case no. 1:21-cr-00245-AJT.

Beyond the statute of limitations, the Defendants point to several other purported deficiencies with Plaintiff's claims that simply do not withstand scrutiny. For example, the Defendants claim that Plaintiff is unable to sustain a single RICO predicate act is belied by binding case law.

*First*, with respect to the predicate act of obstruction of justice, the Defendants argue that it is frivolous because Plaintiff failed to identify an "official proceeding" that was obstructed. Def. Mem. at 6. However, this argument is misplaced for two reasons. First, one of the provisions which Plaintiff's obstruction of justice claims is brought under, 18 U.S.C. § 1512 (b)(3), a provision which "makes no mention of 'an official proceeding' and does not require that a defendant's misleading conduct relate in any way either to an 'official proceeding' or even to a particular ongoing investigation." *United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir 2006); see also 18 U.S.C. § 1512(b)(3) (containing no requirement that the alleged conduct relate to an "official proceeding."). The other relevant provision, 18 U.S.C. § 1512 (c)(2), does require some nexus to an "official proceeding," but this requirement is met because the FBI's Crossfire Hurricane investigation likely qualifies as an 'official proceeding,' s*ee, e.g., United States v. Lee*, 919 F.3d 340 (6th Cir. 2019) (finding that defendant's misleading acts and representations to FBI agents during preliminary investigation stage was sufficient to constitute a violation of 18 U.S.C. § 1512), and, even if it does not, Plaintiff sufficiently alleged that the Defendants "knew of or foresaw an official proceeding, and knew that [their actions were likely to affect it" – including the investigations carried out by the House Permanent Select Committee on Intelligence and the Department of Justice's Special Counsel, both of which were either pending or easily foreseeable when all of the predicate acts occurred.

*Second*, Plaintiff's predicate act for theft of trade secrets has a sound basis in the law. Indeed, Plaintiff's allegation that the Defendants stole large swaths of his DNS data qualifies under the statute since it is well established that "'distillation of' publicly available information [is] a protectable trade secret." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1314 (11th Cir. 2020); *see also Digiport, Inc. v. Foram Dev. BFC, LLC*, 314 So.3d 550, 553 (Fla. Dist. Ct. App. 2020) ("Even if *all* of the information is publicly available, a unique compilation of that information, which adds value to the information, also may qualify as a trade secret.") (citing *Capital Asset Rsch. Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998)). Thus, in reliance on

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir 2003) and its progeny, which recognized that "DNS is a document (or perhaps more accurately a collection of documents), Plaintiff has a compelling argument that he had ownership interest in his DNS data, which was stolen and misappropriated by the Defendants through utilization of special technology to compile an "infeasible amount of data." *Compulife Software Inc*, 959 F.3d at 1314.

*Third*, with respect to Plaintiff's wire fraud claim, the Defendants argue that Plaintiff lacks standing because his claim is premised upon the theory that the fraud was perpetrated against the media, not Plaintiff himself. However, this contention is sharply undercut by the Supreme Court's holding in *Bridge v. Phoenix Bond & Indemnity Co.*, which established that a wire fraud plaintiff "need not show, either as an element of [their] claim or as a prerequisite to establishing proximate causation, that it relied on [the [d]efendant's alleged misrepresentations." 553 U.S. 639, 661 (2008). Further, contrary to the Defendants' contention, a wire fraud claim need not be designed to "obtain" the property of another, but may be properly based upon the "deprivation" of the plaintiff's property. *See, e.g., Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260, 264 (4th Cir. 1994) (recognizing "lost customers and lost revenue" as valid wire fraud injury); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) (recognizing "injuries to competitive position" as valid wire fraud injury); *Alix v. McKinsey & Co.*, 23 F.4th 196, 204–06 (2d Cir. 2022) (recognizing loss of potential clients and contractual relations as cognizable RICO injury); *Lewis v. Lhu*, 696 F.Supp. 723, 727 (D.D.C. 1988) (recognizing reputational damages as valid wire fraud injury); *Bridge*, 553 U.S. at 649-650 (recognizing "lost valuable liens" as valid wire fraud injury; also, contemplating that "[if] an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers . . . [and] the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business 'by reason of' a pattern of mail fraud[.]").

Moreover, with regard to the issue of personal jurisdiction, the Defendants entirely overlook the fact that 18 U.S.C. § 1965(b) and Florida Statute § 48.193(1)(a)(2) both provide a legitimate basis for Plaintiff to obtain personal jurisdiction over all of the defendants. The statutes' reach were only negated because the Court found the underlying claims to lack merit. Since Plaintiff's Counsel have, and, at all relevant times had, a good-faith belief that their claims are cognizable and valid, personal jurisdiction would not have otherwise been a bar to prosecuting this action.

Further, to the extent the Defendants' claim that the Amended Complaint is a 'shotgun pleading,' this issue is largely irrelevant to the determination of whether sanctions are appropriate since neither the Defendants, nor the Court, moved for a repleading order. *See Jackson v. Bank of America, NA*, 898 F.3d 1348, 1357-58 (11th Cir. 2018); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001). The Eleventh Circuit requires that a District Court give a Plaintiff prior notice of a "shotgun pleading" and at least one opportunity to correct it before dismissing with prejudice. *Vibe Micro, Inc.*, 878 F.3d at 1294-95 (11th Cir. 2018) (plaintiff must be given "chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds"; district court must "explain how the offending pleading violates the shotgun pleading rule."). Since Plaintiff was not provided with "fair notice" that the Amended Complaint was purportedly a 'shotgun pleading,' nor a "meaningful chance" to correct any such deficiency, it would be inappropriate to award sanctions against Plaintiff's Counsel on this basis alone. *Jackson*, 898 F.3d at 1358.

Beyond these specific issues, given the breadth of the legal issues involved in this action, Plaintiff's Counsel will rely upon the arguments set forth in the memorandum of law filed in opposition to the Defendants motion to dismiss (DE 262) in support of their contention that Plaintiff's claims have merit.

The Defendants also generally allege that Plaintiff's Counsel conducted themselves throughout this litigation in a manner that is consistent with a showing of bad faith. This inflammatory accusation is entirely without merit. For instance, Defendants argue that the Amended Complaint is "replete with misleading citations of fact," and point to various footnotes which the Defendants claim were strategically placed in a misleading fashion. This was never Plaintiff Counsel's intention and there seems to be a general misunderstanding as to how footnotes were utilized in the Amended Complaint. For instance, the example pointed to by the Court— paragraph 3 of the Amended Complaint, which cited page 96 of the  U.S. Dep't of Justice, Office of the Inspector General, Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation (2019) (hereinafter "IG Report")[1]—reads as follows:

> "The scheme was conceived, coordinated and carried out by top-level officials at the Clinton Campaign and the DNC—including

---
[1] Available at https://www.justice.gov/storage/120919-examination.pdf.

> *'the candidate'* herself—who attempted to shield her involvement
> behind a wall of third parties." *See* Am. Compl. at ¶ 3; *see also*
> September Order at 6.

Page 96 of the IG Report, in turn, states the following:

> "Steele told Handling Agent 1 that Steele was aware that
> 'Democratic Party associates' were paying for Fusion GPS's
> research, the 'ultimate client' was the leadership of the Clinton
> presidential campaign, and *'the candidate'* was aware of Steele's
> reporting . . . He also said it was clear that Fusion GPS was backed
> by Clinton supporters and senior Democrats who were supporting
> her."

The reference to Page 96 of the IG Report was merely included for the purpose of citing to the source of the quoted language – "the candidate" (i.e., Hillary Clinton) – which, in the context it was made, supports that Clinton was personally aware of the Steele Dossier and the roles of various players who contributed to the development of it. The purpose of the footnotes was not to mislead – it was to substantiate the evidentiary basis for Plaintiff's claims.

Defendants also claims that "although Plaintiff's counsel repeatedly cited unproven allegations from Special Counsel Durham's indictment of Michael Sussmann, they omitted that Sussmann was acquitted or that many of those allegations were never the subject of an offer of proof at trial." Def. Mem. at 8. With regard to the acquittal, Plaintiff's Counsel, of course, does not dispute that Mr. Sussmann was acquitted at trial. In fact, the acquittal was cited twice in Plaintiff's opposition papers, wherein it was further explained why his acquittal on such a narrow criminal charge (i.e., whether Sussmann's statement to Jim Baker that he was "not acting on behalf of his client" was false) is immaterial to the claims in the Amended Complaint:

> Defendants argue that Sussmann's misrepresentation to FBI General
> Counsel, Jim Baker, that he "was not acting on behalf of any client"
> cannot be tied to Plaintiff's injuries because Sussmann was
> ultimately acquitted by a jury on a related criminal charge. This
> argument is flawed for several reasons. First, criminal cases have an
> extremely high burden of proof, so an acquittal is by no means an
> acknowledgement of innocence. In fact, Sussmann relayed the very
> same to Baker in a text message—as referenced in the Complaint,
> *see* Am. Compl. ¶ 204—so the fact that the statement was made is
> not in dispute. More importantly, despite the high-profile jury trial
> that surrounded it, Sussmann's misrepresentation to Jim Baker is a
> very minor part of the RICO Defendants' wide-spanning scheme. In

> fact, it was not even the most noteworthy thing that happened at his
> meeting with Baker on September 19, 2017; he also handed over
> falsified records and threatened that a major media outlet would be
> reporting on the story imminently (omitting the fact that he had
> provided the story to the major media outlet) – which led to the FBI
> launching a "full field investigation" into the supposed Trump-Alfa
> Bank connections "as a direct result of Sussmann's meeting with
> Baker."

Pl. Opp. (DE 262) at 42; *see also id.* at 12 n. 2 ("[A]lthough Sussmann was acquitted on the charge
of making a false statement in violation of 18 U.S.C. § 1001(a)(2), the acquittal has no legal effect
on the applicability of the tolling provision of § 16(i) . . . [n]or should it, since Plaintiff was able
to "reap the benefits" of the Sussmann Action as evidenced by the vast number of references in
the Complaint to testimony and evidence adduced throughout the course of the Sussmann
Action.")[2].

Further, Defendants' contention that Plaintiff relied upon allegations that were "never the
subject of an offer of proof at trial" is simply not true. In fact, many of the changes made to the
Amended Complaint were done to address this exact concern. For instance, 37 footnotes that had
previously cited to the Sussmann Indictment were replaced with references to testimony of
witnesses who took the stand at the Sussmann trial. *See*, *e.g.*, Am. Compl. at ¶¶ 17, 18, 22-24, 30,
32, 43, 59, 64-65, 91, 105-106, 122, 137, 140-146, 172-179, 180-182, 187-189, 280. Likewise, 23
footnotes that had previously cited to the Sussmann Indictment were replaced with references to
documentary evidence offered in the Sussmann trial. *See*, *e.g.*, *id.* at ¶¶ 5, 17, 31, 61-62, 90, 92,
98-99, 102-105, 112, 115, 117, 123, 136, 147, 157, 171, 184, 231. Thus, contrary to Defendants'
assertion, Plaintiff Counsel's use of the Sussmann trial was indeed in good faith and intended to
substantiate the veracity of the allegations contained in the Amended Complaint and not intended
to mislead in any way.

Defendants have failed to establish, and the record does not support, that any of Plaintiff's
Counsel's conduct throughout the course of this litigation was undertaken in bad faith,  Plaintiff's

---

[2] The Amended Complaint also cited to an identical statement made by Mr. Sussmann, under oath,
to the House Permanent Select Committee, which establishes the same exact fact—that Sussmann
was acting on behalf of his client when he met with the FBI—as was at issue in the Sussmann trial,
thereby rendering the acquittal immaterial for the purposes of the instant action. *See* Am. Compl.
at ¶ 307.

Counsel made viable legal arguments, which are supported by existing precedent and/or warrant an extension of existing law, and otherwise. Even assuming *arguendo* that Plaintiff's claims are without merit, such a finding, on its own, does not warrant the imposition of sanctions, *see Schwartz*, 341 F.3d at 1225 ("something more than a lack of merit is required"), particularly where Plaintiff's Counsel engaged in good-faith efforts to substantiate the veracity of the allegations contained in the Amended Complaint by sourcing to various authorities supporting the underlying facts. Plaintiff's Counsel pursued every avenue of research which was available to them to verify the facts as understood and legitimately believed by them. Further, it was understood that with the progression of the lawsuit, discovery would have supported the claims against the Defendants which were alleged in the Complaint.

Therefore, the record does not support a finding that Plaintiff's Counsel engaged in "unreasonable and vexatious conduct" during the course of this litigation. 28 U.S.C. § 1927.

### ii.    The conduct at issue did not "multiply the proceedings"

The second requirement, relating to multiple proceedings, is only satisfied when an attorney's conduct "results in proceedings which would not have been conducted otherwise." *Daniels v. Sodexo, Inc.*, 2013 WL 4008744, at *7 (M.D. Fla. Aug. 5, 2013) (citing *Peterson*, 124 F.3d at 1396).

"In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings. Under the plain statutory language, objectionable conduct—even 'unreasonable and vexatious' conduct—is not sanctionable unless it results in proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396.

The Defendants have failed to identify to any additional "proceedings" that would not have been conducted but for the filing of the Amended Complaint. The allegedly vexatious conduct cited by the Defendants, amending the Complaint, was ***expressly authorized*** by the Court. (*See* DE 111) (Judge Middlebrooks stating that Plaintiff's request to amend the Complaint, corresponding extension, was granted with leave of court pursuant to FRCP 15(a)(2)). The Defendants also consented to this request and failed to raise any concern that they viewed a proposed amendment as being 'vexatious' in nature or futile in any way.

At least two circuit cases have found 28 U.S.C. 1927 sanctions to be impermissible when a party amends a complaint with leave of court. *See Nollner v S. Baptist Convention, Inc.*, 628 Fed

Appx 944 (6th Cir. 2015) ("The Amended Complaint is manifestly deficient and, as discussed herein, reflects (at least) a lack of attentiveness by plaintiffs' counsel. Notwithstanding its substantive defects, ***the Amended Complaint was filed with the court's permission; accordingly, the court cannot conclude that counsel needlessly multiplied proceedings by filing it***. Therefore, the court will not award sanctions to the defendants for fees related to the Defendants' Motion to Dismiss the Amended Complaint.") (emphasis added); *see also Harvey v Cable News Network, Inc.*, 48 F.4th 257, 280 (4th Cir. 2022) ("Although Harvey's effort to amend was unsuccessful, his filing of a single amended complaint does not, under the circumstances presented here, demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent that this Court and others have found bad faith that warranted sanctions . . . ***None of the cases the district court cites persuade us that Harvey's filing of a single Amended Complaint, where the original complaint was dismissed without prejudice and where the court invited him to amend, justifies the sanctions award***") (emphasis added).

Indeed, sanctions are simply not appropriate, nor warranted, in the instant scenario. This is not a situation where the Court dismissed the Complaint and Plaintiff re-filed an Amended Complaint necessitating an additional proceeding as to the merits of his claims. The Court expressly permitted Plaintiff to file an Amended Complaint, and Plaintiff did precisely that. While the Court ultimately found the Amended Complaint to be deficient, this position was only made clear after the Amended Complaint was filed – the Court's September 8, 2022 Order was the first and only substantive ruling as to whether the Plaintiff's claims were sufficient to survive a motion to dismiss. Succinctly stated, "when a district court grants leave to amend a complaint and later finds, as it often does, that an amended complaint continues to fail to state a claim, the typical outcome is dismissal of the amended complaint, not an award of sanctions against the litigant and his counsel for making an attempt." *Harvey*, 48 F.4th at 280.

Therefore, the simple act of amending the complaint—with leave of the Court and consent from the Defendants—did not multiply the proceedings. Therefore, the Defendants are unable to satisfy the second element of 28 U.S.C. § 1927.

### iii.    The amount of the sanctions do not have a financial nexus to any excess proceedings

Even assuming the first two factors are satisfied (which they are not), there is no financial nexus between the filing of the Amended Complaint and the gratuitous costs incurred by the

Defendants subsequent to that point.

In its June 23, 2022 Order, the Court specifically noted that it had "reviewed Plaintiff's Amended Complaint" and encouraged the Defendants that "to the extent that the allegations against certain Defendants, and therefore the arguments relied on by those Defendants in support of dismissal, remain unchanged, and in the interest of reducing costs in this action, Defendants are advised that they may readopt their prior Motions to Dismiss if they so choose." (DE 188). In a subsequently-filed Order, the Court noted that the Amended Complaint "did not significantly alter the allegations as to most Defendants, and the arguments in support of dismissal of the Amended Complaint should therefore be substantially similar to the arguments in support of dismissal of Plaintiff's original Complaint." (DE 200).

Despite the Court's urging them to "readopt" their prior arguments, the Defendants proceeded to bill an exorbitant and excessive amount of time to put forth what has been described by the Court as "substantively identical arguments in support of dismissal [as the] earlier round of briefing." September Order at 63. In other words, the Defendants claim to have incurred nearly $500,000 in crafting a response to the Amended Complaint that was *essentially unchanged* from their prior response. Given this inexplicable discrepancy, it is apparent that the costs incurred by the Defendants do not have a legitimate financial nexus to the filing of the Amended Complaint. At a minimum, it is clear that the Defendants made no effort to mitigate their damages. *See Riddle v. Egensperger*, 266 F3d 542, 556 (6th Cir. 2001) ("[D]efendants made a tactical decision to participate in a scorched earth approach rather than to mitigate their damages. It is now too late to change course.")

Moreover, there is improper duplication in that the Plaintiff's attorneys have already been sanctioned for the same conduct as it relates to the Defendant, Charles Dolan. While Plaintiff's Counsel maintains that no sanctions are warranted, Plaintiff's Counsel have already been sanctioned for the full cost of Mr. Dolan's attorneys' fees, as well as an additional $50,000 in punitive fines. It is respectfully submitted that the imposition of these fines, on their own, should suffice in terms of monetary sanctions against Plaintiff's Counsel.

       **iv.**    **To the extent necessary, Plaintiff's Counsel requests an evidentiary hearing**

To the extent this Court is willing to entertain the imposition of sanctions against Plaintiff's Counsel pursuant to 28 U.S.C. § 1927, Plaintiff's Counsel requests the opportunity to be heard in

an evidentiary hearing. See *Reynolds v. Roberts,* 207 F.3d 1288, 1302 (11th Cir.2000). ("Plainly, an attorney threatened with sanctions under § 1927 is entitled to a hearing."). Plaintiff's Counsel further reserves the right to identify an expert witness and present expert testimony concerning, among other things, the substantive merits of Plaintiff's claims.

### B.  The Court's Inherent Powers

At the outset, "Sanctions that are impermissible under § 1927 are also impermissible under a district court's inherent powers. . . the threshold of bad faith conduct for purposes of sanctions under the court's inherent powers is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1252 (11th Cir. 2007). Thus, sanctions under the Court's inherent powers are not appropriate for the same reasons set forth in section A above.

Nonetheless, like Section 1927 sanctions, the invocation of a court's inherent power requires a finding of bad faith. *See, e.g., Amlong,* 500 F.3d at 1251 ("[B]efore a court can impose sanctions on an attorney under its inherent powers, it must make a finding of bad faith."); *see also Chambers v. Nasco, Inc*., 501 U.S. 32 (1991). "Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Brown Jordan Intl., Inc. v. Carmicle*, 0:14-CV-60629, 2016 WL 815827, at *35 (S.D. Fla. Mar. 2, 2016), *affd*, 846 F.3d 1167 (11th Cir 2017). Importantly, "[t]his power 'must be exercised with restraint and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (citation omitted).

Here, this is simply no support for the Defendants' contention that Plaintiff or his counsel acted in bad faith in commencing or prosecuting the instant action. In attempting to argue otherwise, the Defendants largely raise two points: first, they claim that statements made by one of Plaintiff's Counsel on a mainstream news network is proof that the suit was filed in bad faith; second, they claim that Plaintiff and his counsel exhibits various forms of "gamesmanship" throughout the course of litigation. Both contentions are misguided and plainly untrue.

With respect to the statements made by Ms. Habba, her appearance on Fox News does not in any way indicate that she, or any other Plaintiff's Counsel, prosecuted this action in bad faith. To the extent these statements are relevant to the instant application at all, they simply demonstrate that Ms. Habba is a zealous advocate for her client, that she staunchly believes in the viability of

the underlying claims, and that she has extensively familiarity with the relevant evidence. The statements made by Ms. Habba are indicative of an attorney prosecuting an action, in good faith, and nothing more.

Further, neither Plaintiff nor his counsel engaged in any sort of "gamesmanship" during the course of this litigation. In fact, the opposite is true. Throughout the course of proceedings, Plaintiff's Counsel, with Plaintiff's blessing, consented to each and every request for an extension or similar accommodation that was posed by the more than 30 defendants. When it was determined that an Amended Complaint would need to be filed, Plaintiff's Counsel filed a motion seeking to extend the deadline to amend to allow for a consolidated motion to dismiss that would save time and costs for all defense counsel involved. In this way, and in others, Plaintiff dealt with defense counsel in a professional and courteous manner at all relevant times.

Based on the foregoing, and for the reasons set forth in section A above, sanctions under the Court's inherent powers are neither appropriate nor warranted.

### C.  Defend Trade Secrets Act

The Defendants also seek sanctions under the Defend Trade Secrets Act, 18 U.S.C. §§ 1830-32, however this request is similarly flawed.

18 U.S.C. § 1836(b)(3)(D) provides that "if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing party." There is scant law as it pertains to § 1836(b)(3)(D) specifically, so courts have generally looked toward more general principles governing the award of sanctions and bad faith conduct. *See Temurian v. Piccolo*, No. 18-CV-62737, 2021 WL 1520588, at *5 (S.D. Fla. Mar. 3, 2021), *report and recommendation adopted in part*, No. 18-62737-CIV, 2021 WL 1121003 (S.D. Fla. Mar. 24, 2021) ("[T]he Eleventh Circuit has not addressed what constitutes 'bad faith' for the purposes of the DTSA, but there is ample precedent as to what constitutes 'bad faith' warranting the award of attorneys' fees."); *see also Mar. Mgmt., Inc. v. United States,* 242 F.3d 1326, 1333 (11th Cir. 2001) ("In determining the propriety of a bad faith fee award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'") (citation omitted); *Kreager v. Solomon & Flanagan,* 775 F.2d 1541, 1543 (11th Cir. 1985) ("Bad faith is determined by focusing on a party's conduct and motive rather than on the validity of the case.").

Here, for the same reasons set forth above in sections A and B, neither Plaintiff nor Plaintiff's Counsel has engaged in bad faith conduct. Further, sanctions are particularly inappropriate in the DTSA context since the Defendants only attack the "validity of" Plaintiff's DTSA claim, and do not question his "conduct or motive" for bringing the claim. Def. Mem. at 18-19. Thus, these Defendants have failed to establish their entitlement to any fees under 18 U.S.C. § 1836(b)(3)(D).

In addition, the DTSA claim is only asserted against eight Defendants, Neustar, Inc., Neustar Security Services, Joffe, Perkins Coie, Sussmann, Clinton Campaign, DNC., and Clinton. Yet, none of these defendants have identified which portion of their attorneys' fees were specially accrued in connection with opposing the DTSA claim (Count VIII), as opposed to the other claims in the action. Therefore, even if these defendants could otherwise support a cognizable claim under 18 U.S.C. § 1836(b)(3)(D), they have failed to articulate the proper amount of fees to be awarded under the statute.

Further, with respect to Defendant, Joffe, the Court dismissed him from the action for lack of jurisdiction, meaning that it lacked the subject matter jurisdiction to dismiss the claims against him on the merits and with prejudice. *Blankenship v. Gulf Power Co*., 551 Fed. App'x 468, 471 (11th Cir. 2013) ("Because the district court lacked subject matter jurisdiction, however, it did not have authority to dismiss the complaint on the merits."). As such, he cannot be considered a "prevailing party" and is not eligible for relief under 18 U.S.C. 1836(b)(3)(D). *See McGriff Insurance Services, Inc. v. Littlestone*, 21-CV-480 (M.D. Fl. Dec. 30, 2021),

For the foregoing reasons, the Defendants' request for attorneys' fees under 18 U.S.C. § 1836(b)(3)(D) must be denied.

## II.   THE DEFENDANTS' FEES ARE UNREASONABLE AND IMPROPER

### A.  A Large Portion of the Defendants' Fees Are Block Billing.

The lodestar approach to calculating attorneys' fees requires the Court to first multiply a reasonable hourly rate by the reasonable hours expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Attorneys should "maintain billing records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1937, 76 L. Ed. 2d 40 (1983).  When an attorney includes multiple tasks in a single entry, often referred to as

"block billing," it can be difficult for the Court to determine the amount of time expended on a single issue.  A court has "broad discretion in determining the extent to which a reduction in fees is warranted by block billing." *Bujanowski v. Kocontes*, 2009 WL 1564263, at *2 (M.D. Fla. 2009), report and recommendation adopted in part, No. 808CV390T33EAJ, 2009 WL 1564244 (M.D. Fla. May 1, 2009), aff'd, 359 F. App'x 112 (11th Cir. 2009).

In the instant matter, an overwhelming majority of the Defendants' billing records are comprised of overly vague block-billing entries, as evidenced in the attached Exhibits which are described in greater detail below.

**B.  The Defendants' Fees are Unreasonable or Excessive.**

In making an application for attorneys' fees, the Defendants were required to provide "sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. Id. at 1301. A fee applicant must exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]." *Hensley*, Supra. at 434.

Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *ACLU v. Barnes*, 168 F.3d at 423, 428 (11th Cir. 1999).  When a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

As evidenced in the annexed Exhibits, the invoices offered in support of Defendants' Motion are unreasonable and excessive. Therefore, to the extent any attorneys' fees are awarded at all, this Court should reduce the amount of fees awarded to make them commensurate to the work actually performed, and appropriately recorded, by Defendants' counsel.

**C.  Redundant Hours Should Be Excluded**

"Redundant hours must be excluded from the reasonable hours claimed by the fee applicant." *ACLU*, 168 F.3d at 432. Such "hours generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301-1302.  While there is nothing unreasonable about

a client having multiple attorneys, a fee applicant may only recover for the hours of multiple attorneys if the attorneys "are not unreasonably doing the same work, and are being compensated for the distinct contribution of each lawyer." *Id.* at 1302; *ACLU*, 168 F.3d at 432. A fee applicant has the burden to show "that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Id.*

### D.  Particulars As To The Defendants' Invoices

The Summary and the individual billing invoices were compared and analyzed, and the following is a summary of the amount of overbilling to which the Plaintiff and his attorneys object. Moreover, in support of this summary, the spreadsheet for each of the Defendants' law firms is attached as Exhibits 1 through 12 (There is no Exhibit 4 or 9 as there were no objections to the amount billed by Defendants Schultz and Neustar, Inc.). The Invoices which were provided are also attached with indications on each, which are reflected by the page number of each invoice, with the specific objections indicated for each billing entry to that Plaintiff and his attorneys object to. In addition, attached as Exhibit A is a summary of the objections to the Defendants' billing records.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion must be dismissed in its entirety. In the alternative, to the extent the Court deems it necessary and appropriate to impose sanctions, the Defendants invoices should be reduced accordingly.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed this 14th day of November, 2022, with the Clerk of Court using CM/ECF, which will send a

notice of electronic filing to all Parties listed on the Service List.


_____/s/ *Peter Ticktin*_____

**THE TICKTIN LAW GROUP**
Peter Ticktin, Esquire
Florida Bar No.: 887935
Serv512@LegalBrains.com
Jamie Alan Sasson, Esquire
Florida Bar No.: 10802
Serv513@LegalBrains.com
270 SW Natura Avenue
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757
*Attorneys for the Plaintiff*

**HABBA MADAIO & ASSOCIATES**
Alina Habba, Esquire
ahabba@habbalaw.com
Michael T. Madaio, Esquire
mmadaio@habbalaw.com
1430 US Highway 206 Suite 240
Bedminster, New Jersey 07921
Telephone: (908) 869-1188
*Attorneys for the Plaintiff*

**SERVICE LIST**

Anthony Erickson-Pogorzelski, Esquire
Fla. Bar No. 619884
Anthony.Pogorzelski@usdoj.gov
**Assistant U.S. Attorney**
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Telephone: 305- 961-9296
*Attorneys for Defendant*
*United States of America*

David E. Kendall, Esquire
dkendall@wc.com
**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*

David Oscar Markus, Esquire
dmarkus@markuslaw.com
**Markus/Moss, LLP**
40 N.W. Third Street
Penthouse 1
Miami, Florida 33128
Telephone: 305-379-6667
*Attorneys for the Defendant*
*Hillary R. Clinton*

Katherine M. Turner, Esquire
kturner@wc.com
**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*

Michael J. Mestitz, Esquire
mmestitz@wc.com

**Williams & Connolly, LLP**
725 12th Street NW
Washington, DC 20005-3901
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Hillary R. Clinton*

Jonathan Edward Levine, Esquire
Jonathan.levine@levinepllc.com
**Levine & Associates, PLLC**
5311 Lee Highway
Arlington, Virginia 22207
Telephone: 703-525-2668
*Attorney for Defendant*
*Charles Halliday Dolan, Jr.*

George R.A. Doumar, Esquire
gdoumar@doumarmartin.com
**Mahdavi, Bacon, Halfhill & Young,
PLLC**
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
Telephone: 703-352-1300
*PRO HAC VICE*
*Attorney for Defendant*
*Charles Halliday Dolan, Jr*

Franklin G. Monsour, Jr., Esquire
fmonsour@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
51 West 52nd Street
New York, New York 10019
Telephone: 202-339-8533
*PRO HAC VICE*
*Attorney for Defendant*
*Igor Danchenko*

Diana Marie Fassbender, Esquire
dszego@orrick.com
**Orrick, Herrington & Stcliffe, LLP**
1152 15th Street NW
Washington, D.C. 20005

*PRO HAC VICE*
*Attorney for Defendant*
*Igor Danchenko*


Jennifer Olmedo-Rodriguez, Esquire
Florida Bar No.: 605158
Jennifer.olmedo@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
2 South Biscayne Boulevard, Suite 1500
Miami, Florida 33131
Telephone: 305-347-4080
*Attorney for the Defendant*
*Neustar, Inc.*


Samantha L. Southall, Esquire
Samantha.southall@bipc.com
**Buchanan Ingersoll & Rooney, P.C.**
50 South 16th Street, Suite 3200
Two Liberty Place
Philadelphia, PA 19102
Telephone: 215-665-3884
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar, Inc*


Adam Seth Fels, Esquire
afels@ffslawfirm.com
Florida Bar No.: 0114917
**Fridman Fels & Soto, PLLC**
2525 Ponce de Leon Blvd., Ste 750
Coral Gables, FL 33134
Telephone: 305-569-7701
*Attorney for the Defendant*
*Bruce Ohr and Nellie Ohr*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*


Kevin P. Crenny, Esquire
kcrenny@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*

*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*


Joshua Levy, Esquire
jal@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*


Rachel Clattenburg, Esquire
rmc@levyfirestone.com
**Levy Firestone Muse, LLP**
900 17th Street NW, Suite 1200
Washington, D.C., 20006
Telephone: 202-845-3215
*PRO HAC VICE*
*Attorney for the Defendant*
*Fusion GPS*
*Glenn Simpson*
*Peter Fritsch*


Joshua Berman, Esquire
Joshua.Berman@cliffordChance.com
**Clifford Chance US, LLP**
2011 K. Street, NW
Washington, D.C., 20006-1001
Telephone: 202-912-5000
*PRO HAC VICE*
*Attorney for Defendants*
*Nellie Ohr and Bruce Ohr*


Benjamin Peacock, Esquire
Benjamin.Peacock@cliffordChance.com
**Clifford Chance US, LLP**
2011 K. Street, NW
Washington, D.C., 20006-1001
Telephone: 202-912-5000
*PRO HAC VICE*

*Attorney for Defendants*
*Nellie Ohr and Bruce Ohr*


Eugene K. Pettis, Esquire
cmarr@hpslegal.com
Service@hpslegal.com
**Haliczer Pettis & Schwamm P.A.**
100 SE 3rd Avenue, 7th Floor
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
*Attorneys for Defendant*
*Marc Elias*


Debra P. Klauber, Esquire
dklauber@hpslegal.com
Service@hpslegal.com
**Haliczer Pettis & Schwamm P.A.**
100 SE 3rd Avenue, 7th Floor
Fort Lauderdale, FL 33394
Telephone: 954-523-9922
*Attorneys for Defendant*
*Marc Elias*


April A. Otterberg, Esquire
aotterberg@jenner.com
**Jenner & Block, LLP**
353 N. Clark Street
Chicago, Il 60654-3454
Telephone: 312-222-9350
*PRO HAC VICE*
*Attorney for the Defendant*
*Marc Elias*


Reid J. Schar, Esquire
rschar@jenner.com
**Jenner & Block, LLP**
353 N. Clark Street
Chicago, Il 60654-3454
Telephone: 312-222-9350
*PRO HAC VICE*
*Attorney for the Defendant*
*Marc Elias*


Roberto Martinez, Esquire

Bob@colson.com
becky@colson.com
Florida Bar No.: 305596
**Colson Hicks Eidson, P.A.,**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*


Zachary Lipshultz, Esquire
zach@colson.com
Florida Bar No.: 123594
**Colson Hicks Eidson, P.A.,**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: 305-476-7400
*Attorney for the Defendant*
*Michael Sussmann*


Michael S. Bosworth, Esquire
Michael.Bosworth@lw.com
**Latham & Watkins, LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-916-1221
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*


Michael F. Houlihan, Esquire
Michael.Houlihan@lw.com
**Lathem & Watkins, LLP**
200 Clarendon Street
Boston, MA 02116
Telephone: 617-880-4642
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*


Sean M. Berkowitz, Esquire
Sean.Berkowitz@lw.com
**Latham & Watkins, LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700

*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Stephen P. Barry, Esquire
Stephen.Barry@lw.com
**Latham & Watkins, LLP**
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
*PRO HAC VICE*
*Attorney for the Defendant*
*Michael Sussmann*

Eleni Kastrenakes Howard, Esquire
Eleni.kastrenakeshoward@akerman.com
Florida Bar No.: 73073
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West
Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

Howard Jay Harrington, Esquire
Jay.harrington@akerman.com
Florida Bar No.: 0118719
**Akerman, LLP**
777 S. Flagler Drive, Suite 1100, West
Tower
West Palm Beach, Florida 33401
Telephone: 561-653-5000
*Attorney for the Defendant*
*Perkins Coie, LLP*

F. Joseph Warin, Esquire
fwarin@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Geoffrey M. Sigler, Esquire
gsigler@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Katherine M. Meeks, Esquire
kmeeks@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Nancy E. Hart, Esquire
nhart@gibsondunn.com
**Gibson Dunn & Crutcher, LLP**
1050 Connecticut Avenue NW
Washington, D.C., 20036-5306
Telephone: 202-887-3609
*PRO HAC VICE*
*Attorney for the Defendant*
*Perkins Coie, LLP*

Gerald E. Greenberg, Esquire
ggreenberg@gsgpa.com
Florida Bar No.: 440094
**Gelber Schachter & Greenberg, P.A.**
One South East Third Avenue, Suite 2600
SunTrust International Center
Miami, Florida 33131
Telephone: 305-728-0950
*Attorney for the Defendant*
*Democratic National Committee*
*DNC Services Corporation*
*Debbie Wasserman Schultz*

Shawn G. Crowley, Esquire
scrowley@kaplanhecker.com

5

**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Maximillian Feldman, Esquire
mfeldman@kaplanhecker.com
**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Roberta A. Kaplan, Esquire
rkaplan@kaplanhecker.com
**Kaplan Hecker & Fink, LLP**
350 5th Avenue, 63rd Floor
New York, New York 10118
Telephone: 212-763-0883
*PRO HAC VICE*
*Attorney for the Defendants*
*Democratic National Committee*
*DNC Services Corporation*

Edward Soto, Esquire
Edward.soto@weil.com
Florida Bar No.: 0265144
**Weil Gotshal & Manges, LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: 305-577-3100
*PRO HAC VICE*
*Attorney for the Defendant*
*Rodney Joffee*

Steven Tyreell, Esquire
Steven.tyrrell@weil.com
**Weil, Gotshal & Manges, LLP**
2001 M St. NW, Suite 600

Washington, D.C. 20063
Telephone:
*PRO HAC VICE*
*Attorney for the Defendant*
*Rodney Joffee*

Noah Brozinsky, Esquire
nbrozinsky@kaiserDillon.com
Florida Bar No.: 010470
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Christopher Muha, Esquire
CMuha@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

William Pittard, Esquire
Wpittard@kaiserdillon.com
**KaiserDillon, PLLC**
1099 14th Street NW, 8th Floor West
Washington, D.C. 20005
Telephone: 202-640-2850
*PRO HAC VICE*
*Attorney for the Defendant*
*Kevin E. Clinesmith*

Paola Pinto, Esquire
ppinto@schertlerlaw.com
Florida Bar No.: 1013933
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Telephone: 202-628-4155
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

Robert P. Trout, Esquire
Rtrout@schertlerlaw.com
**Schertler Onorato Mead & Sears**
555 13th Street, N.W.
Suite 500 West
Washington, D.C. 20004
Telephone: 202-628-4155
*PRO HAC VICE*
*Attorney for the Defendants*
*John Podesta*
*HFACC, Inc.*

William R. Barzee, Esquire
williambarzee@barzeeflores.com
**Barzee Flores**
Courthouse Center, Penthouse One
40 NW Third Street
Miami, Florida 33128
Telephone: 3025-374-3998
*Counsel for the Defendants*
*Robert E. Mook*
*Jack Sullivan*

Andrew J. Ceresney, Esquire
aceresney@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Isabela M. Garcez, Esquire
imgarcez@debevoise.com
**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Wendy B. Reilly, Esquire
wbreilly@debevoise.com

**Debevoise & Plimpton, LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
*PRO HAC VICE*
*Attorney for the Defendant*
*Robert E. Mook*

Brian L. Stekloff, Esquire
bstekloff@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

Sarah E. Neuman, Esquire
sneuman@wilkinsonstekloff.com
**Wilkinson Stekloff, LLP**
2001 M. Street NW, 10th Floor
Washington, D.C. 20036
Telephone: 202-847-4030
*PRO HAC VICE*
*Attorney for the Defendant*
*Jake Sullivan*

James E. Gillenwater, Esquire
gillenwaterj@gtlaw.com,
**Greenberg Traurig, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
*Attorney for the Defendant*
*Neustar Security Services*

Allison S. Eisen, Esquire
aeisen@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

Kathryn E. Garza, Esquire
kgarza@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

John M. McNichols, Esquire
jmcnichols@wc.com
**Williams & Connolly, LLP**
380 Maine Avenue, SW
Washington, D.C. 20024
Telephone: 202-434-5000
*PRO HAC VICE*
*Attorney for the Defendant*
*Neustar Security Services*

Enjolique Aytch Lett, Esquire
lette@gtlaw.com
**Greenberg Traurig, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
*Attorney for the Defendant*
*Orbis Business Intelligence, Ltd.*

Akiesha Gilchrist Sainvil, Esquire
sainvila@gtlaw.com
**Greenberg Traurig, P.A.**
333 SE 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: 305-579-0500
*Attorney for the Defendant*
*Orbis Business Intelligence, Ltd.*