IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Donald J. Trump,

          Plaintiff,

    v.

Hillary R. Clinton, *et al.*,

          Defendants.

Civil Action No. 2:22-cv-14102-DMM

**JOINT OPPOSITION OF HILLARY CLINTON, HFACC, INC., JOHN PODESTA, ROBERT MOOK, JAKE SULLIVAN, DEMOCRATIC NATIONAL COMMITTEE, DNC SERVICES CORP., DEBBIE WASSERMAN SCHULTZ, PERKINS COIE LLP, MARC ELIAS, MICHAEL SUSSMANN, CHARLES HALLIDAY DOLAN, JR., FUSION GPS, GLENN SIMPSON, PETER FRITSCH, NELLIE OHR, BRUCE OHR, IGOR DANCHENKO, RODNEY JOFFE, NEUSTAR SECURITY SERVICES, NEUSTAR INC., AND ORBIS BUSINESS INTELLIGENCE LTD. TO PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S MOTION FOR AN INDICATIVE RULING**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 6

I.      Movants Cannot Satisfy Rule 201(b)'s Requirements for Judicial Notice. ..................... 6

II.     Movants Fail to Show This Court Should Grant Relief Under Rule 60(b). ...................... 9

        A.      The Durham Report Does Not Contain Newly Discovered Evidence. ................. 10

        B.      The Allegations Contained in the Durham Report Are Cumulative of the
                Allegations Contained in the Amended Complaint. .............................................. 12

        C.      The Durham Report Is Not "Material" to Plaintiff's Remaining Claims. ............. 13

        D.      There Is No Possibility the Durham Report Would "Produce a New Result"
                in this Case. ........................................................................................................... 15

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................13

*Blash v. City of Hawkinsville & Pulaski Cnty.*,
2018 WL 2247246 (M.D. Ga. May 16, 2018) ..........................................................7

*Cavaliere v. Allstate Ins. Co.*,
996 F.2d 1111 (11th Cir. 1993) ................................................................................9

*Chavez v. Sec'y Fla. Dep't of Corr.*,
647 F.3d 1057 (11th Cir. 2011) ..............................................................................17

*Coney v. Smith*,
738 F.2d 1199 (11th Cir. 1984) ................................................................................8

*First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc.*,
825 F.2d 1475 (11th Cir. 1987) ..............................................................................13

*FTC v. QT, Inc.*,
249 F.R.D. 305 (N.D. Ill. Apr. 8, 2008)..................................................................13

*Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*,
869 F.3d 1204 (11th Cir. 2017) .....................................................................6, 7, 8, 9

*Hunnicutt v. Bd. of Regents of Univ. Sys. of Ga.*,
122 F.R.D. 605 (M.D. Ga. 1988) ............................................................................13

*Jarvis v. JP Morgan Chase Bank, N.A.*,
2010 WL 2927276 (C.D. Cal. July 23, 2010) ..........................................................8

*Jeld-Wen, Inc. v. Nebula Glass Int'l*,
Inc., 2008 WL 1139960 (S.D. Fla. May 13, 2008) .................................................13

*McKenna v. St. Louis Cnty. Police Dep't*,
2010 WL 3340494 (E.D. Mo. Aug. 23, 2010) ........................................................14

*United States ex rel. Osheroff v. Humana, Inc.*,
776 F.3d 805 (11th Cir. 2015) ..................................................................................8

*Ray v. Spirit Airlines, Inc.*,
836 F.3d 1340 (11th Cir. 2016) ..............................................................................16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Rothenberg v. Sec. Mgmt. Co.*,
    667 F.2d 958 (11th Cir. 1982) ...................................................................................8

*Scutieri v. Paige*,
    808 F.2d 785 (11th Cir. 1987) .................................................................................12

*Shahar v. Bowers*,
    120 F.3d 211 (11th Cir. 1997) ...................................................................................6

*Toole v. Baxter Healthcare Corp.*,
    235 F.3d 1307 (11th Cir. 2000) ...........................................................................9, 12

*United States v. Jones*,
    29 F.3d 1549 (11th Cir. 1994) .............................................................................1, 8, 9

*United States v. Morton*,
    993 F.3d 198 (3d Cir. 2021) ....................................................................................17

*Waddell v. Hendry Cnty. Sheriff's Off.*,
    329 F.3d 1300 (11th Cir. 2003) ...........................................................................9, 15

*White Oak Vineyards & Winery LLC v. White Oak Spirits, LLC*,
    2015 WL 12731903 (C.D. Cal. Mar. 9, 2015) .........................................................7

*Williams v. Saul*,
    2020 WL 13567469 (N.D. Al. Nov. 12, 2020) .......................................................10

### RULES

Fed. R. Evid. 201 ..................................................................................................... 6

### OTHER AUTHORITIES

*Black's Law Dict.* (11th ed. 2019) ...............................................................................13

John H. Durham, *Report on Matters Related to Intelligence Activities and Investigations
    Arising Out of the 2016 Presidential Campaigns* (May 12, 2023).............4, 5, 6, 7, 10, 15, 16

Nate Cohn, *Did Comey Cost Clinton the Election? Why We'll Never Know*, N.Y. Times
    (June 14, 2018)...........................................................................................................14

## INTRODUCTION

This Court explained in three orders spanning 130 pages why plaintiff Donald J. Trump's ("Plaintiff") claims not only lacked merit but also warranted the imposition of sanctions. Dkt. 267 ("MTD Order"), 284 ("First Sanctions Order"), 302 ("Second Sanctions Order"). The Court concluded that Plaintiff's claims were "not warranted under existing law," MTD Order at 4, were "plainly foreclosed by binding precedent," *id.* at 64, raised theories that Plaintiff was "unable to support with any relevant legal authority," *id.* at 27, and were rife with other "fatal substantive defects that preclude[d] Plaintiff from proceeding under any of the theories he has presented," *id.* at 64. Yet Plaintiff and his attorneys ("Movants") now ask this Court to indicate, under Federal Rules of Civil Procedure 62.1 and 60(b), that it would grant relief from both the judgment of dismissal and the two sanctions orders based on a special counsel report that rehashes the same unproven allegations that Plaintiff recited throughout his amended complaint.

This Court should deny the motion for an indicative ruling that it would grant relief from judgment. At the outset, Movants fail to demonstrate that this Court may take judicial notice of the report by Special Counsel John Durham that they claim "seismically alters the legal landscape of this case." Dkt. 331 ("Mot.") at 1. Under Federal Rule of Evidence 201(b), federal courts may take judicial notice only of "a fact that is not subject to reasonable dispute," a category that does *not* include allegations from other court or agency proceedings offered for their truth. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). But the portions of the Durham Report on which Movants rely include unproven allegations from the special counsel's failed prosecution of defendants Michael Sussmann and Igor Danchenko—both of whom were unanimously acquitted by a jury. Such allegations, offered "for the truth of the matters asserted in the other litigation," cannot be subject to judicial notice. *Id.* (citation omitted).

Even if this Court could take judicial notice of the Durham Report, which it cannot, that document does not salvage Plaintiff's claims or undercut the propriety of this Court's sanctions orders.  Movants contend that the Durham Report "corroborates" and "confirms the plausibility of" certain allegations in the amended complaint.  Mot. at 1.  But that is simply another way of saying that the Durham Report recites the same allegations that Movants previously sourced from the special counsel's unproven indictments of Sussmann and Danchenko.  The Court already accepted those allegations as true, as it must at the pleading stage, and concluded that they failed to state a RICO or injurious falsehood claim as a matter of law.  *See* MTD Order at 22, 30, 49.  Movants simply ignore that this Court dismissed Plaintiff's claims based on a wide variety of legal defects, which the Durham Report cannot and does not cure.  In sum, the disputed facts in the Durham Report do not retroactively render Movants' legal arguments more colorable or their decision to pursue this case more reasonable.

If anything, this wasteful proceeding underscores why this Court's award of sanctions was necessary and appropriate.  The motion for an indicative ruling forces this Court to devote more time and resources, and Defendants to incur yet another round of legal fees, addressing frivolous claims that this Court thoroughly vetted the first time around.  Movants have also evidently failed to learn the lesson the sanctions order was intended to impart—that the Court will not tolerate their attempts to "misrepresent[]" and "cherry-pick[]" the contents of government documents.  Second Sanctions Order at 14.  Despite this warning, Movants persist in arguing that the Durham Report shows the "plausibility" of their allegation that Sussmann tendered "manufactured information" to the FBI while "falsely claiming" he was acting "not on behalf of a client or company."  Mot. at 7 (emphasis omitted).  But, as they did in their amended complaint, Movants yet again fail to apprise the Court of the salient fact that the jury *acquitted* Sussmann on precisely this charge.  And their

invitation for the Court to consider the Durham Report mischaracterizes and ignores contrary and important qualifying language—exactly the same failure that occasioned the imposition of sanctions in the first place. *See, e.g.*, pp. 16–17, *infra*.

In short, Movants have provided no conceivable basis for this Court to grant relief from judgment under Rule 60(b). This Court should deny the motion and promptly return this case to the Eleventh Circuit so that Defendants may finally have their opportunity to explain why the court of appeals should affirm this Court's well-reasoned orders and end this frivolous litigation once and for all.

## BACKGROUND

Six years after the 2016 presidential election, former President Trump filed a 193-page complaint alleging that Hillary Clinton—the candidate he defeated—and numerous other defendants formed a RICO enterprise and committed various crimes and torts in an effort to derail his candidacy. This Court dismissed the claims against the private-party defendants ("Defendants") with prejudice and imposed nearly $1 million in sanctions on Plaintiff and his counsel, concluding that they had "recklessly advanced claims foreclosed by existing precedent" and "consistently misrepresented" the contents of the Mueller Report and other public documents that supposedly bolstered their claims. Second Sanctions Order at 14, 19. As to Plaintiff specifically, the Court found that these "frivolous" claims were only the latest example in a "pattern of misusing the courts to serve political purposes." *Id.* at 6, 21.

Movants appealed the judgment of dismissal along with this Court's two sanctions orders. On appeal, Plaintiff abandoned all but three of the 16 claims in the amended complaint, standing on only the civil RICO, RICO conspiracy, and injurious falsehood claims. Plaintiff also did not appeal this Court's order dismissing the claims against former FBI Director James Comey and

other government defendants without prejudice for failure to exhaust under the Federal Tort Claims Act.  MTD Order at 14.  As a result, only the private-party defendants remain in this case.

Shortly before Movants filed their opening brief on appeal, Special Counsel John Durham released a 306-page report memorializing the results of his investigation into whether FBI agents violated the law as they investigated Russian interference in the 2016 presidential election.  *See* John H. Durham, *Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns* 5 (May 12, 2023) ("Durham Report").  Specifically, the Durham Report examined the circumstances that led to the opening of the FBI's Crossfire Hurricane investigation, which targeted four individuals associated with Plaintiff's campaign (but not Plaintiff himself).  Durham Rep. 10.  In his amended complaint, Plaintiff already had drawn heavily from Durham's investigation and from his criminal indictments of defendants Michael Sussmann and Igor Danchenko.  *See, e.g.*, Dkt. 177 ("AC") ¶¶ 5, 138, 145, 201, 205, 206, 217, 341, 487.

The Durham Report criticized the FBI for opening Crossfire Hurricane based on a tip from Australian diplomats that "there might be some type of collusion between the Trump campaign and the Russians," without vetting that information through intelligence agencies.  Durham Rep. 10.  The report also concluded that at least one FBI agent associated with Crossfire Hurricane had "pronounced hostile feelings toward Trump."  *Id.* at 9.  In the special counsel's view, the FBI also exhibited an "over-willingness to rely on information from individuals connected to political opponents" as Crossfire Hurricane progressed.  *Id.* at 18.  The Durham Report did not, however, recommend any changes to FBI "guidelines and policies" as a result of the special counsel's investigation.  *Id.*  Indeed, the Report observes that "there is no question that the FBI had an affirmative obligation to closely examine" the Trump-Russia connection; it simply argues that

Crossfire Hurricane should have been initially opened as a preliminary, rather than a full, investigation.  *Id.* at 53–54.

The Durham Report also addressed a supposed plan by the Clinton campaign "to stir up a scandal" by tying Plaintiff to President Vladimir Putin of Russia.  Durham Rep. 81.  The report noted that these allegations against the Clinton campaign originated with "Russian intelligence" and "may reflect exaggeration or fabrication."  *Id.* at 81.  To the extent such a plan existed, the special counsel found nothing untoward or even unusual about these ordinary campaign tactics.  "To be clear," the Durham Report explained, "the Office did not and does not view the potential existence of a political plan by one campaign to spread negative claims about its opponent as illegal or criminal *in any respect*."  Durham Rep. 82 n.393 (emphasis added).

On the same day Movants filed their opening brief in the Eleventh Circuit, they filed a separate motion asking the court of appeals to take judicial notice of the Durham Report or, in the alternative, to stay proceedings so Movants could seek an indicative ruling from this Court under Federal Rule of Civil Procedure 62.1.  Case No. 22-13410, Dkt. 81 (11th Cir.).  Movants did not apprise the court of appeals that they intended to move to disqualify the Hon. Donald M. Middlebrooks if it returned the case to the district court for an indicative ruling.  *See* 11th Cir. Dkt. 81; *see also* Mot. 1 n.1.  After Defendants filed their opposition to Movant's motion, explaining why judicial notice was improper, 11th Cir. Dkt. 107, the Eleventh Circuit stayed the appeal to permit Movants to seek an indicative ruling, 11th Cir. Dkt. 108.  The Eleventh Circuit did not address Defendants' judicial notice arguments on the merits.  *Id.*

## ARGUMENT

I.   **Movants Cannot Satisfy Rule 201(b)'s Requirements for Judicial Notice.**

The motion for relief from judgment fails at the threshold because Movants fail to show that this Court may even consider the special counsel report that supposedly confirms the plausibility of their allegations.  Under Federal Rule of Evidence 201(b), courts may judicially notice "a fact that is not subject to reasonable dispute," either because it (1) is "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  "Indisputability is a prerequisite" to judicial notice under this rule.  *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1225 (11th Cir. 2017) (citation omitted).  The Durham Report does not satisfy that standard because it contains contested findings and conclusions that bear little resemblance to the sort of incontrovertible facts—"when does the sun rise or set" or "who was president in 1958"—of which courts take notice under Rule 201.  *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (en banc).

Far from establishing indisputable facts, the Durham Report contains contested findings and conclusions drawn from the special counsel's failed prosecution of defendants Sussmann and Danchenko.  For example, the Durham Report states that the special counsel's "investigation showed" that Sussmann, a former partner at Perkins Coie LLP and an outside lawyer for the Clinton campaign, made a "false" representation to the FBI that he was "acting on his own" and "not representing any client" when he furnished information concerning Plaintiff.  Durham Rep. 16.  But far from establishing that allegation beyond "reasonable dispute," Fed. R. Evid. 201(b)(1), the special counsel failed to convince a jury, which unanimously acquitted Sussmann at his criminal trial.  Durham Rep. 287.  Similarly, the Durham Report asserts that Danchenko "never

spoke" to an alleged source of information contained in the Steele Dossier and instead "fabricated" that information. *Id.* at 16.  But another federal jury acquitted Danchenko on four counts of making false statements about the same topic, and the court dismissed a fifth count against Danchenko for making a false statement about defendant Charles Halliday Dolan, Jr. *Id.* at 238.  As to Sussmann and Danchenko, then, the report contains only unproven allegations that were rejected by separate federal juries.  That is a far cry from the sort of indisputably true facts that are subject to judicial notice under Rule 201(b). *See Blash v. City of Hawkinsville & Pulaski Cnty.*, 2018 WL 2247246, at *2 n.4 (M.D. Ga. May 16, 2018) (taking judicial notice of criminal indictment for the "limited purpose that the indictment exists," but declining to take notice of its allegations).

Likewise, the Durham Report contains disputed inferences concerning defendant Dolan that are not a proper subject of judicial notice.  Based on hearsay and disparate bits of information gathered during the special counsel's investigation, the Durham Report speculates that "there appears to be a real likelihood that Dolan was the actual source of much of the Ritz Carlton and Pavlov information contained in the Steele Reports."  Durham Rep. 148.  This bare conjecture does not come close to satisfying Federal Rule 201's "indisputability" requirement for judicial notice. *Grayson*, 869 F.3d at 1225.

Movants gloss over the question of whether the Court may take judicial notice of the Durham Report, burying in a footnote their conclusory argument that the Court may consider the report because it is a "government document[]." Mot. at 3 n.2.  But the cases Movants cite do not support their position that this Court may consider the contents of the Durham Report to "confirm[]" that Plaintiff's factual allegations are "plausible." Mot. at 13.  Instead, those courts took judicial notice of the *fact of publication*, rather than the truth of the documents' contents. *See, e.g.*, *White Oak Vineyards & Winery LLC v. White Oak Spirits, LLC*, 2015 WL 12731903, at *2

(C.D. Cal. Mar. 9, 2015) (taking judicial notice of the existence of certificates issued by the U.S. Patent and Trademark Office and Alcohol and Tobacco Tax and Trade Bureau); *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal. July 23, 2010) (taking judicial notice of a Purchase and Assumption Agreement on the FDIC's website).  Those decisions reflect the well-established principle that courts may take judicial notice of government documents and other publicly available sources "for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)."  *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015).

The Eleventh Circuit has specifically applied this principle in cases, like this one, where a party seeks judicial notice of proceedings in unrelated criminal or civil cases.  While the Eleventh Circuit has taken notice of procedural developments in other litigation, it has not relied on unproven allegations in those other cases to assess the facial plausibility of a plaintiff's claims. *See, e.g.*, *Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir. 1984) (recognizing that a state court had previously considered a question appellant was seeking to relitigate in federal court); *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 & n.8 (11th Cir. 1982) (taking notice that another court had entered a directed verdict against plaintiff).  These cases again underscore that "a court may take judicial notice of . . . *the fact of*" other "litigation and related filings," but not "*the truth of* the matters asserted in the other litigation."  *Jones*, 29 F.3d at 1553 (emphases added); *see also Grayson*, 869 F.3d at 1225 n.50.

Movants are thus attempting to use Rule 201(b) to do precisely what the Eleventh Circuit forbids.  They argue (at 8, 13) that the Court should take notice of the Durham Report because it "lends credence" to their claims and "confirms" that the allegations are "plausible."  But the only way the report could possibly bear on the credibility or plausibility of Plaintiff's allegations is if

the Court accepts its contents as true.  But as *Jones* and other cases make clear, Rule 201(b) is not a vehicle for courts to accept "the truth of the matters asserted in . . . other litigation," including the unproven findings of the special counsel's criminal investigations.  *Jones*, 29 F.3d at 1553 (citation omitted); *see also Grayson*, 869 F.3d at 1225 n.50.[1]

## II.    Movants Fail to Show This Court Should Grant Relief Under Rule 60(b).

Assuming this Court can judicially notice the Durham Report at all, that report provides no basis for relieving Movants of the judgment in this case under Federal Rule 60(b).  Relief under Rule 60(b) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993).  "Even then, whether to grant the requested relief is a matter for the district court's sound discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) (ellipsis omitted).

A party seeking relief under Rule 60(b)(2) must demonstrate that (1) the evidence is "newly discovered since the trial"; (2) he exercised "due diligence" to discover the new evidence; (3) the evidence is "not . . . merely cumulative or impeaching"; (4) the evidence is "material"; and (5) the evidence is "such that a new trial would probably produce a new result." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).  Because "[f]inality is a virtue in the law," each of these requirements "must be strictly met." *Id.*

Movants fail to satisfy these strict requirements.  Rather than constituting newly discovered evidence, the Durham Report collects tired allegations and (by Movants' own admission) is cumulative of the allegations already considered and accepted as true by this Court.  The Durham Report is not material and would not produce a new result because this Court dismissed Plaintiff's

---

[1] Compare this with the Court's taking of judicial notice of Plaintiff's tweets "not for the truth of their contents but for what they reveal about Plaintiff's knowledge"—an appropriate (and unobjected-to) use of judicial notice.  MTD Order at 25.

claims and sanctioned Movants on the ground that the lawsuit was legally frivolous and brought in bad faith, not because Plaintiff's allegations were insufficiently supported with evidence. In fact, rather than satisfying the Rule 60(b)(2) standard for relief, Movants' motion provides yet another example of their misleading, wasteful conduct in this action.

### A.   The Durham Report Does Not Contain Newly Discovered Evidence.

Movants contend that the Durham Report "undoubtedly" constitutes new evidence because it "came out *after* this Court closed this case and could not have been discovered previously." Mot. at 3. While the report itself is new, the allegations it contains are not. The Durham Report compiles the same unproven allegations already reflected in the special counsel's criminal indictments of Sussmann and Danchenko. *See, e.g.*, Durham Rep. 11–16, 95–98, 126–38, 149–80, 183–84, 243–50, 254–73. Both of these indictments predated Plaintiff's amended complaint, as did Sussmann's criminal trial, and Movants drew from them extensively in drafting the amended complaint. *E.g.*, AC ¶¶ 5, 138, 145, 201, 205, 206, 217, 341, 487. Movants do not point this Court to a *single* new fact contained in the Durham Report of which they were unaware at the time they filed their amended complaint—much less any new fact that would possibly change the outcome of this case. As shown in the chart below, every alleged fact from the Durham Report on which Movants rely already appears in the amended complaint. The Durham Report therefore does not qualify as "newly discovered" evidence that would justify granting relief under Rule 60(b)(2). *See Williams v. Saul*, 2020 WL 13567469, at *1 (N.D. Al. Nov. 12, 2020) (recognizing that evidence is not "newly discovered" when plaintiff already "had knowledge" of its contents).

| Allegedly New Evidence in Durham Report | Allegation(s) in the Amended Complaint |
|---|---|
| Defendants "were seeking in 2016 to promote a false or exaggerated narrative to the public and | "Defendants maliciously conspired to weave a false narrative that their Republican opponent, Donald J. Trump, was colluding |

| | |
|---|---|
| to U.S. government agencies about Trump's possible ties to Russia." Mot. at 7. | with a hostile foreign sovereignty." AC ¶ 1; *see also id.* ¶¶ 63, 104. |
| "Defendants Clinton, Clinton Campaign, and DNC . . . funded the Steele Reports." Mot. at 7. | "[T]he Dossier was reportedly funded by the Clinton Campaign and the DNC and compiled by Fusion GPS." AC ¶ 404.<br><br>"Steele was aware that Democratic Party associates were paying for his and Fusion GPS's research, and that the ultimate client was the leadership of the Clinton presidential campaign." AC ¶ 100 (quotations omitted). |
| "Defendants Sussman [sic], Fusion GPS, Perkins Coie, Elias, and Joffe, worked together to create the false Alfa Bank allegations." Mot. at 7. | "Defendants undertook to develop two separate false narratives that would be fed to law enforcement and simultaneously spread through the media . . . including . . . falsified and/or misleading data which allegedly showed a 'back channel' connection between the Trump Organization and a Russian bank, Alfa Bank." AC ¶ 93.<br><br>"Elias, Sussmann, Joffe, Fritsch, and Fusion GPS . . . had an in-person meeting at the Washington D.C. office of Perkins Coie . . . to discuss allegations of communications between the Trump organization and Alfa Bank." AC ¶ 175 (quotations omitted). |
| "[T]he Clinton campaign funded these Alfa Bank allegations for delivery to the media and the FBI." Mot. at 7. | "This plot was conceived and funded by Clinton, the Clinton Campaign, and DNC." AC ¶ 64.<br><br>"Sussmann reported the Trump-Alfa Bank connection, as though it was real, and . . . billed the Clinton Campaign for his efforts." AC ¶ 207. |
| "Defendant Sussman [sic] provided this manufactured information to James Baker at the FBI, falsely claiming to be acting '*not on behalf of a client or company*.'" Mot. at 7. | "Sussmann reported the Alfa Bank connection as though it was real and lied to the FBI General Counsel in that he falsely stated that he was not acting on behalf of any client, when he was specifically there at the behest of Clinton, the Clinton Campaign, and the DNC." AC ¶ 766. |

11

The Durham Report does not qualify as newly discovered evidence for yet another reason. "Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence." *Scutieri v. Paige*, 808 F.2d 785, 794 (11th Cir. 1987). Yet as Plaintiff acknowledged in his opening brief in the Eleventh Circuit, "many of the facts contained [in the Durham Report] had been publicly reported and were included in the Amended Complaint." 11th Cir. Dkt. 83, at 59; *id.* at 62 ("the district court did not need the Durham Report to understand these mostly public facts"). Movants again highlight the public nature of these facts in their motion for an indicative ruling. They argue, for example, that the Durham Report makes "clear" that "Defendant Comey was *actually* aware of a Clinton campaign plan to smear President Trump by associating him with Vladimir Putin as early as August 3, 2016." Mot. at 14. But the amended complaint already contained that precise allegation, citing to a *Washington Times* article reporting that Comey supposedly knew the Clinton campaign "was planning to blame 'collusion' between Trump and the Russian government." AC ¶ 402(a). Because the allegations in the Durham Report were publicly available at the time Movants filed the amended complaint, they do not constitute newly discovered evidence.

### B.   The Allegations Contained in the Durham Report Are Cumulative of the Allegations Contained in the Amended Complaint.

Movants also fail to show the alleged "evidence" contained in the Durham Report is anything other than "cumulative," another requirement to obtain relief under Rule 60(b)(2). *See Toole*, 235 F.3d at 1317. Movants argue that the Durham Report "is not merely cumulative" because it was "developed by an investigation conducted by an agent of the United States government." Mot. at 3. But the fact that the Durham Report was prepared by federal prosecutors says nothing about whether its contents are cumulative—and, indeed, Movants' other arguments show that it is. Movants contend that the Court should consider the Durham Report because it

"corroborates" and "bolsters" allegations already contained in the amended complaint.  Mot. at 1.

That is the very definition of cumulative evidence.  *See Black's Law Dict.* (11th ed. 2019) (defining

"cumulative" as "tending to prove the same thing"); *see also First Ala. Bank of Montgomery, N.A.*

*v. Parsons Steel, Inc.*, 825 F.2d 1475, 1487 (11th Cir. 1987) (denying motion to supplement the

record when the "fact" at issue was "already clear from the record"); *FTC v. QT, Inc.*, 249 F.R.D.

305, 310 (N.D. Ill. Apr. 8, 2008) (concluding that evidence was cumulative when it was "similar"

to statements made in a party's brief).  Because the Durham Report presents nothing new, it

provides no basis for relief under Rule 60(b)(2).

       **C.**       **The Durham Report Is Not "Material" to Plaintiff's Remaining Claims.**

Movants next fail to establish that the Durham Report is material to any issue before this

Court.  The materiality element of Rule 60(b)(2) "refers to [the] pertinency of the offered evidence

to the issue in dispute."  *Hunnicutt v. Bd. of Regents of Univ. Sys. of Ga,*, 122 F.R.D. 605, 607

(M.D. Ga. 1988).  To qualify as material, the offered evidence must have "an effective influence

or bearing on [a] question in issue."  *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, 2008 WL 11399608,

at *5 (S.D. Fla. May 13, 2008).

The Durham Report is not "material" because it provides no basis for this Court to revisit

its orders dismissing the complaint and awarding sanctions.  Movants argue that the report

"corroborates many facts and allegations about which this Court expressed skepticism."  Mot. at

1.  But no corroboration is necessary because this Court was required to, and did, "accept" any

well-pleaded allegations "as true" for purposes of the motion to dismiss.  MTD Order at 22 (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* MTD Order at 22, 32 n.7, 33.  Movants do

not point to a single fact that the Court refused to accept as true at the pleading stage that would

possibly change the outcome of this case.

To the contrary, the Court rejected Plaintiff's claims because his allegations, taken as true, failed to state a single claim as a matter of law—and failed many times over.  To give just one example, this Court held that Plaintiff failed to plead obstruction of justice, one of his RICO predicate acts, because Crossfire Hurricane did not qualify as an "official proceeding" within the meaning of 18 U.S.C. § 1512(c).  MTD Order at 32.  Whatever conclusions the Durham Report reached about Crossfire Hurricane, they would not change the *legal conclusion* that "official proceedings" are "limited to federal judicial cases" or formal "proceedings before Congress or a federal agency" and do not include FBI investigations, *id.*—a conclusion Movants do not even challenge on appeal.  *See McKenna v. St. Louis Cnty. Police Dep't*, 2010 WL 3340494, at *1 (E.D. Mo. Aug. 23, 2010) (when a complaint was dismissed "for failure to state a claim as a matter of law," new evidence did "not affect [the] analysis" or "cure the fact that [the] original complaint's allegations failed as a matter of law").

To be sure, in its second order imposing sanctions, the Court remarked on the absurdity of Plaintiff's allegation that James Comey—whose damaging letter to Congress undercut Mrs. Clinton's campaign days before the 2016 election—was in fact her co-conspirator.  *See* Mot. at 14; *see also* Nate Cohn, *Did Comey Cost Clinton the Election?  Why We'll Never Know*, N.Y. Times (June 14, 2018).  But the Court was not required to accept this conclusory and "categorically absurd" factual allegation as true for purposes of the sanctions motion, where the standard instead required the Court to consider whether Movants brought the lawsuit "in bad faith for an improper purpose."  Second Sanctions Order at 6, 10.  The Court correctly concluded that they did for multiple independent reasons, and nothing in their motion rebuts that conclusion.  *Id.* at 6.

Similarly, Movants argue that the Durham Report undermines this Court's statement that the FBI opened Crossfire Hurricane "for an authorized purpose" and "with adequate factual

predication." Mot. at 15.  But the Court was quoting the conclusions of the Department of Justice's Inspector General, MTD Order at 51, whose report Plaintiff incorporated by reference into the amended complaint.  Far from undermining the Inspector General's findings, the Durham Report praised that office for its "careful examinations" of the facts.  Durham Rep. 7.  The Court, in any event, relied on the Inspector General's conclusions in dismissing the malicious prosecution claim, which Plaintiff abandoned on appeal.  MTD Order at 51.  Movants therefore fail to show how the Durham Report is "material" to any remaining issue in this case.

The Durham Report also flunks the materiality requirement to the extent it focuses on alleged shortcomings in the FBI's Crossfire Hurricane investigation because Mr. Comey and the other FBI defendants are no longer parties to this case.  Movants argue, for example, that the Durham Report concluded that "at least some high-level actors in the FBI . . . had a 'clear predisposition' against President Trump."  Mot. at 14 (quoting Durham Rep. 47).  And they say that the report helps demonstrate that "Defendant Comey" learned that the Clinton campaign planned "to smear President Trump by associating him with Vladimir Putin" around the same time the FBI opened Crossfire Hurricane.  Mot. at 14.  But these allegations have no possible bearing on the outcome of this case because Plaintiff failed to appeal the Court's order dismissing his claims against the FBI defendants for failure to exhaust.  The party whom Movants continually refer to as "Defendant Comey" is no longer a defendant at all.

> **D.    There Is No Possibility the Durham Report Would "Produce a New Result" in this Case.**

Movants also fail to show that the alleged "evidence" contained in the Durham Report "would probably produce a new result" in this case.  *Waddell*, 329 F.3d at 1309.  As already described in the preceding section, this Court dismissed the RICO and injurious falsehood claims not because the factual allegations lacked sufficient corroboration, but because those allegations

failed to state a claim as a matter of law.  MTD Order at 23–64.  For example, the Court rejected

Plaintiff's invented presidential "tolling" doctrine because he was "unable to support" that "novel

theory . . . with any relevant legal authority."  *Id.* at 27.  Similarly, the Court rejected Plaintiff's

injurious falsehood claim because (1) it was premised on speech protected by the First Amendment

and (2) Plaintiff failed to plead falsity and special damages.  *Id.* at 46–49.  Because nothing in the

Durham Report affects those legal conclusions, Plaintiff's claims would not survive a motion to

dismiss even if the Court considered the unproven allegations in the Durham Report.[2]

Nor does the Durham Report in any way undermine the Court's sanctions orders.  This

Court imposed those penalties because Movants pursued claims that were squarely foreclosed by

precedent; misrepresented the contents of various government records; and (as to Plaintiff

specifically) repeatedly misused the federal courts for political ends.  *See* Second Sanctions Order

at 14, 19. 21.  Movants fail to explain how the Durham Report in any way alters that analysis.  To

the contrary, their motion for an indicative ruling exemplifies the very sort of problems that

compelled this Court to levy sanctions.

At the outset, the motion misleadingly states that the Durham Report "confirms" that "the

FBI opened an investigation *into President Trump* without 'any actual evidence.'"  Mot. at 5

(emphasis added).  But Crossfire Hurricane did not target Mr. Trump, nor did the Durham Report

so indicate.  Like the Department of Justice Inspector General's Report before it, the Durham

Report made clear that Crossfire Hurricane concerned "individual(s) associated with the Trump

---

[2] In fact, to the extent the Durham Report has any effect on Plaintiff's claims, it undermines rather
than supports them.  According to Movants, the Durham Report demonstrates that it took the FBI
"all of a day to dismantle [the Alfa Bank] allegations."  Mot. at 7 (citing Durham Rep. 258).  That
concession demonstrates that Plaintiff's RICO claim fails because he did not suffer any injury as
a result of Defendants' alleged substantive RICO violation.  *See Ray v. Spirit Airlines, Inc.*, 836
F.3d 1340, 1348 (11th Cir. 2016).

campaign," but not the candidate himself.  Durham Rep. 51; *see also id.* at 10, 64, 295 (noting Crossfire Hurricane included investigations of Trump associates George Papadopoulos, Carter Page, Michael Flynn, and Paul Manafort).  Movants' continued lack of candor regarding the contents of public documents supports rather than undermines the award of sanctions.

More generally, like Movants' prior filings, the motion for an indicative ruling taxes the resources of the parties and the Court.  This Court imposed sanctions not only because the claims were frivolous, but because they were packaged in a 193-page, 819-paragraph complaint "filled with immaterial, conclusory facts not connected to any particular cause of action."  Second Sanctions Order at 7.  Here, with the same disregard for judicial economy, Movants ask the Court to take judicial notice of a 306-page, single-spaced special counsel report that rehashes the same allegations in the amended complaint and that ultimately has no bearing on the legal issues in this case.  Movants have not even bothered to excerpt portions of the Durham Report they believe are most critical to their case, instead importuning the Court and opposing parties to wade through this dissertation-length document in its entirety.  But "judges are not like pigs, hunting for truffles buried in briefs" or the record.  *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011); *see also United States v. Morton*, 993 F.3d 198, 204 n.10 (3d Cir. 2021) (similar).  Movants' failure to identify anything more than a handful of soundbites within the 306-page Durham Report provides yet another basis for denying their motion for relief from judgment.

## CONCLUSION

The Court should deny Plaintiff's motion for an indicative ruling that it would grant relief from judgment under Rule 60(b)(2) based on the Durham Report.

Dated:  August 10, 2023

Respectfully submitted,

By: */s/ Eleni S. Kastrenakes Howard*
    Eleni S. Kastrenakes Howard

F. Joseph Warin
Geoffrey M. Sigler
Katherine Moran Meeks
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Tel:  202.955.8500
fwarin@gibsondunn.com

Nancy E. Hart
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel:  212.351.4000
nhart@gibsondunn.com

Eleni S. Kastrenakes Howard
AKERMAN LLP
777 South Flagler Drive
Suite 1100, West Tower
West Palm Beach, FL 33401
Tel:  561.273.5578
Fax:  561.651.1514
eleni.kastrenakeshoward@akerman.com

*Attorneys for Perkins Coie LLP*

David Oscar Markus
MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, FL 33128
Tel:  (305) 379-6667

David E. Kendall
Katherine M. Turner
Michael J. Mestitz
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel:  (202) 434-5000
dkendall@wc.com

*Attorneys for Hillary Rodham Clinton*

/s/ Robert P. Trout
Robert P. Trout
Paola Pinto (Fla. Bar No. 1013933)
SCHERTLER ONORATO MEAD & SEARS
555 13th Street, N.W., Suite 500 West
Washington, D.C. 20004
Tel:  (202) 628-4155
rtrout@schertlerlaw.com
ppinto@schertlerlaw.com

*Attorneys for HFACC, Inc. and John Podesta*

/s/ Gerald Edward Greenberg

Gerald E. Greenberg
  (Florida Bar No. 440094)
GELBER SCHACHTER &GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue,
Suite 2600
Miami, FL 33131-1715
Tel:  (305) 728-0950
ggreenberg@gsgpa.com

Carmen Iguina González
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, D.C. 20001
Phone: (212) 763-0883
ciguinagonzalez@kaplanhecker.com

/s/ Roberta A. Kaplan

Roberta A. Kaplan
Shawn G. Crowley
KAPLAN HECKER & FINK LLP
350 5th Avenue, 63rd Floor
New York, NY 10118
Tel:  (212) 763-0883
rkaplan@kaplanhecker.com
scrowley@kaplanhecker.com

*Attorneys for Democratic National Committee, DNC Services Corporation, and Debbie Wasserman Schultz*

/s/ Debbie P. Klauber

Debbie P. Klauber
  (Fla. Bar No. 55646)
HALICZER, PETTIS & SCHWAMM
One Financial Plaza
100 S.E. 3rd Ave., Seventh Floor
Fort Lauderdale, FL 33394
Tel:  (954) 523-9922

/s/ Reid J. Schar

Reid J. Schar
April A. Otterberg
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel:  (312) 222-9350

*Attorneys for Marc Elias*

/s/ Roberto Martinez
Roberto Martínez
  (Fla. Bar No. 305596)
Zachary Lipschultz
  (Fla. Bar No. 123594)
COLSON, HICKS, EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel:  (305) 476-7400
bob@colson.com
zach@colson.com

/s/ Sean M. Berkowitz
Sean M. Berkowitz
LATHAM & WATKINS LLP
330 N. Wabash, Suite 2800
Chicago, IL 60611
Tel:  (312) 876-7700
sean.berkowitz@lw.com

/s/ Stephen P. Barry
Stephen P. Barry
LATHAM & WATKINS LLP
555 Eleventh Street N.W., Suite 1000
Washington, DC 20004
(202) 637-2200
stephen.barry@lw.com

*Attorneys for Michael Sussmann*

/s/ Jonathan Edward Levine
Jonathan Edward Levine
  (Fla. Bar No. 937711)
Levine & Associates, PLLC
5311 Lee Highway
Arlington, VA 22207
Tel:  (703) 525-2669

/s/ George R.A. Doumar
George R.A. Doumar
Mahdavi, Bacon, Halfhill & Young PLLC
11350 Random Hills Road
Suite 700
Fairfax, VA 22030
Tel:  (703) 352-1300

*Attorneys for Charles Halliday Dolan, Jr.*

/s/ John William Wylie IV
John William Wylie IV
  (Fla. Bar No. 133817)
John W. Wylie, P.A.
Courthouse Center, Penthouse One
40 Northwest Third Street
Miami, FL 33128
Tel:  (305) 586-1338
jww@johnwylielaw.com

/s/ Brian L. Stekloff
Brian L. Stekloff
Sarah E. Neuman
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  (202) 847-4000
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com

*Attorneys for Jake Sullivan*

/s/ John William Wylie IV
John William Wylie IV
  (Fla. Bar No. 133817)
John W. Wylie, P.A.
Courthouse Center, Penthouse One
40 Northwest Third Street
Miami, FL 33128
Tel:  (305) 586-1338
jww@johnwylielaw.com

/s/ Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
Andrew J. Ceresney
Wendy B. Reilly
66 Hudson Boulevard
New York, NY 10001
Tel:  (212) 909-6000
aceresney@debevoise.com
wbreilly@debevoise.com

*Attorneys for Robert E. Mook*

/s/ Adam S. Fels
Adam S. Fels
FRIDMAN FELS & SOTO PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL 33134
Tel:  305-569-7701
afels@ffslawfirm.com

/s/ Joshua Levy
Joshua Levy
Rachel Clattenburg
Kevin P. Crenny
LEVY FIRESTONE MUSE LLP
900 17th Street NW, Suite 1200
Washington, DC 20006
Tel.:  202-845-3215
jal@levyfirestone.com

*Attorneys for Fusion GPS, Peter Fritsch, and Glenn Simpson*

/s/ Joshua Berman
Joshua Berman
CLIFFORD CHANCE US LLP
2011 K Street, NW
Washington, D.C.  20006
Tel. (202) 912-5000
Fax (202) 912-6000
Joshua.Berman@CliffordChance.com

/s/ Adam Fels
Adam Fels
  (Fla. Bar No. 0114917)
FRIDMAN FELS & SOTO, PLLC
2525 Ponce de Leon Blvd., Suite 750
Coral Gables, FL  33134
Tel. (305) 569-7701
Afels@ffslawfirm.com

/s/ Benjamin Peacock
Benjamin Peacock
CLIFFORD CHANCE US LLP
New York, New York 10019
Tel. (212) 878-8000
Fax (212) 878-8375
Benjamin.Peacock@CliffordChance.com

*Attorneys for Bruce Ohr and Nellie Ohr*

/s/ Franklin Monsour Jr.

Franklin Monsour Jr.
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Tel:  (212) 506-3512
Fax:  (212) 506-5151
fmonsour@orrick.com

/s/ Diana Marie Fassbender

Diana Marie Fassbender
  (Fla. Bar No. 17095)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1152 15th Street N.W.
Washington, DC  20005-1706
Tel:  (202) 339-88533
dszego@orrick.com

*Attorneys for Igor Danchenko*

/s/ Samantha L. Southall

Samantha L. Southall
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Tel:  (215) 665 8700
Fax (215) 667 8760
samantha.southall@bipc.com

/s/ Jennifer Olmedo Rodriguez

Jennifer Olmedo Rodriguez
  (Fla. Bar No. 605158)
BUCHANAN INGERSOLL & ROONEY
PC
2 South Biscayne Blvd., Suite 1500
Miami, Florida 33131
Tel:  (305) 347 4080
jennifer.olmedo-rodriguez@bipc.com

*Attorneys for Neustar, Inc.*

/s/ John M. McNichols

John M. McNichols
Allison S. Eisen
Kathryn E. Garza
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Tel:  (202) 434-5000
jmcnichols@wc.com

/s/ James E. Gillenwater

James E. Gillenwater
  (Bar No. 1013518)
GREENBERG TRAURIG P.A.
333 SE 2nd Ave., Suite 4400
Miami, FL 33131
Tel:  (305) 579-0500
Fax:  (305) 579-0717
gillenwaterj@gtlaw.com

*Attorneys for Neustar Security Services*

/s/ Edward Soto
Edward Soto (Fla. Bar No. 0265144)
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel:  (305) 577-3100
Fax:  (305) 374-7159

/s/ Steven A. Tyrrell
Steven A. Tyrrell
WEIL GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Tel:  (202) 682-7000
Fax:  (202) 857-0940

*Attorneys for Rodney Joffe*

/s/ Enjoliqué A. Lett
Enjoliqué A. Lett (Fla. Bar No. 0104881)
GREENBERG TRAURIG P.A.
333 S.E. 2nd Ave., Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717
enjolique.lett@gtlaw.com

/s/ Akiesha G. Sainvil
Akiesha G. Sainvil (Fla. Bar No. 1003260)
GREENBERG TRAURIG P.A.
333 S.E. 2nd Ave., Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500
Fax: (305) 579-0717
akiesha.sainvil@gtlaw.com

*Attorneys for Orbis Business Intelligence Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2023, I caused a copy of the foregoing

Opposition to the Motion for an Indicative Ruling to be served on all counsel of record via

CM/ECF.  All parties required to be served have been served.


*/s/ Eleni Kastrenakes Howard*
Eleni Kastrenakes Howard