UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>    Plaintiff,<br><br>v.<br><br>HILLARY R. CLINTON, et al.,<br><br>    Defendants. | Case No. 2:22-cv-14102-DMM |

## MOTION TO DISQUALIFY

BINNALL LAW GROUP, PLLC
Jared J. Roberts (FL Bar #1036550)
Jason C. Greaves (*pro hac vice* application forthcoming)
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jared@binnall.com
jason@binnall.com

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*

Judges are required to disqualify themselves whenever their "impartiality might be reasonably questioned." 28 U.S.C. § 455(a). Specifically, disqualification is required when the source of perceived impartiality arises from an extrajudicial source that reveals such antagonism against parties, their case, or their counsel as to make a fair judgment impossible. *Liteky v. U.S.,* 510 U.S. 540, 555-56 (1994). Importantly, the test is objective. "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky*, 510 at 548.

Here, Plaintiff and his counsel seek disqualification because of the politically charged language in the Court's recent opinions and the extrajudicial factual research performed by the Court, at its own initiative, in coming to those decisions. Regardless of whether the Court is actually biased against a party or its counsel, such instances provide the appearance of bias. Disqualification is especially important when the case is in the public eye, as is this one. It is critical that the public can have confidence that justice is being dispensed impartially based solely upon the facts and the law, and not on any other extraneous factors.

In its recent decisions, the Court entered orders accepting Defendants' narration of the 'facts' as true, without taking evidence or even holding a hearing, while entirely discounting President Trump's allegations and punishing President Trump and his former counsel for exercising their First Amendment rights and pursuing viable legal remedies here and elsewhere. These orders even opined on the merits of ongoing cases in other jurisdictions and not before the Court. Accordingly, President Trump and his former counsel respectfully request that this Court disqualify itself from all future proceedings in this matter pursuant to 28 U.S.C. § 455, including President Trump's Rule 62.1 Motion.

**BACKGROUND**

President Trump filed this lawsuit on March 24, 2022. This Court previously denied a motion to disqualify based on different grounds.

On September 8, 2022, this Court dismissed President Trump's Amended Complaint. The language and tone of the order was unfortunate. The Court called President Trump's Amended Complaint "hyperbole," a "settling of scores and grievances," and a mere "political manifesto." Dkt. No. 267 at 5, 64. The Court then went out of its way to reserve jurisdiction to impose sanctions, despite there being no sanctions motions docketed at the time. *Id.* at 65.

Next, on November 10, 2022, this Court granted Defendant Dolan's motion for sanctions under Federal Rule of Civil Procedure 11. The Court took Defendant Dolan's word that he was a simple door knocker during the 2016 election and that he had nothing to do with the Steele Dossier. *See generally* Dkt. No. 284. As borne out by the Durham Report, however, Defendant Dolan was intimately involved with the false smear campaign against President Trump. Not only was he a source for information in the discredited Steele Dossier (and appears to have also been the source for the most salacious of the Steele smears), he even admitted to fabricating information that was included in the Steele Dossier. The imposition of Rule 11 sanctions by the Court inappropriately accepted Defendant Dolan's allegations at face value over those of President Trump.

Concerningly, this Court viewed President Trump's claims as "political grievances masquerading as legal claims," and "performative litigation for purposes of fundraising and political statements." *Id.* at 14. The bias did not end there. The Court concluded that President Trump only added Schiff to the Amended Complaint because he takes "delight[] in insulting" him. *Id.* at 17. Further, for simply exercising her First Amendment rights after the disposition of the motion to dismiss, the Court called for Ms. Habba to face discipline from Bar and other disciplinary authorities. *Id.* at 18.

On January 19, 2023, this Court entered its most recent order in this case and used its inherent powers to sanction President Trump and his former counsel. In doing so, the Court made extraordinary comments about President Trump and his former counsel and included in its reasoning

information gathered by the Court outside the record and without notice to counsel. Once again, the Court penalized Ms. Habba for exercising her First Amendment rights after the case had been dismissed. *Id.* at 3. Notably, Ms. Habba's interview on Fox News was the only conduct the Court cited in this sanctions order that occurred *after* the first mention of sanctions in the dismissal order. Thus, the only supposed wrongdoing occurring after the first mention of sanctions was Ms. Habba utilizing the First Amendment. And again, failing to recognize the very real harm to President Trump, the Court determined the Amended Complaint was just to "advance a political narrative," and a "deliberate attempt to harass." *Id.* at 7, 10.

Tellingly, the Court called President Trump's claims about James Comey "categorically absurd." *Id.* at 10. This mistaken conclusion improperly discounts numerous allegations in the Amended Complaint that were supported by the public record and have been further corroborated by the findings of the Durham Report. *See* Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns authored by Special Counsel John H. Durham ("Durham Report") at 68–81. As an initial matter, the Court goes outside the record on this point, claiming that Comey's "announcement on [Clinton's] 2016 campaign"[1] precludes any possibility that Comey could have conspired with Defendant Clinton to damage Trump.[2] That announcement,

---

[1] This is an obvious reference to Defendant Comey's statement regarding the closure of the FBI's investigation into Clinton. *See* Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System (July 5, 2016), *available at* [https://www.fbi.gov/news/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system](https://www.fbi.gov/news/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system). In that statement, Director Comey recommends against prosecution of Clinton.

[2] The Court's reference to information and material outside the record is improper and creates the appearance of bias. *See United States v. Carey*, 929 F.3d 1092, 1106 (9th Cir. 2019) (citations omitted):

> We do, however, caution judicial officers against similar uses of extrajudicial material. The Magistrate judge in Carey's case served as a trier of fact, and we note that jurors who sit in that same capacity are directed to "not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it," and if they

3

and any impact from it, are entirely outside the record and not argued by any of the parties; the order improperly injected speculations about that statement into the facts of the case. Regardless, it is not "categorically absurd" to interpret James Comey's actions in closing the Clinton email investigation as calculated to do minimal damage to Clinton's presidential campaign, while preserving a façade of impartiality and providing cover to Attorney General Loretta Lynch on the heels of her tarmac meeting with Bill Clinton—regardless of the Court's feelings on the matter. Nor is it "categorically absurd" to believe that James Comey's opening of a baseless investigation of Trump based on "salacious and unverified" allegations of collusion with Russia, while ignoring intelligence of a Clinton plan to falsely link Donald Trump with Vladimir Putin,[3] was part of a scheme to do maximum damage to the Trump Campaign, and later his presidency.

The order *again* went outside the record and made conclusions about unrelated lawsuits in other states and courts in which President Trump is a plaintiff, to reach the conclusion that President Trump has a "pattern of misusing the courts to serve political purposes." Dkt. No. 302 at 21; *see also id.* at 24–25 (citing to social media posts and news articles about these cases that were outside the record, again creating the appearance of bias). The cases cited for this bold accusation, however, had

---

do, "turn away and report it . . . as soon as possible." The American Bar Association places similar restrictions on judges.

*See also* Am. Bar Assoc. 2020 Model Code of Judicial Conduct, R. 2.9(C):

A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

[3] On this point as well, the Court betrays its bias, snidely commenting that "Mr. Trump's lawyers saw no professional impediment or irony in relying upon Russian intelligence as the good faith basis for their allegation." Dkt. No. 302 at 8 n.6. This was in reference to Amended Compl. ¶ 369, and the allegation that Clinton and her campaign concocted the Russia collusion narrative to damage Trump and distract from her own scandals. While this is utterly borne out by the Durham Report, it was already well-known that the Steele Dossier was bought and paid for by the Clinton campaign. The Court's contempt for President Trump and his counsel is palpable here.

4

not even been fully adjudicated, and it is wholly improper for the Court to deduce President Trump's subjective intent from his participation in other litigation. For example, this Court, commenting on a defamation lawsuit against the Pulitzer Prize Board, accused President Trump of "us[ing] the courts to bully journalists as part of a dishonest and futile attempt to rewrite history" and that the lawsuit "is a shameless attack on a freedom essential to democracy." *Id.* at 24. Based upon these characterizations, this Court went on to sanction President Trump and his former counsel nearly one million dollars. In coming to its subjective determinations, not only did the Court decline to take evidence, it even declined Plaintiff's request for a hearing.

President Trump has since appealed all three decisions from this Court, which, due to the release of the Durham Report, is currently stayed in the Eleventh Circuit, pending the resolution of President Trump's Rule 62.1 Motion filed contemporaneously with this motion. Accordingly, President Trump now moves for this Court to disqualify itself from this matter, and for a new judge to decide President Trump's Rule 62.1 Motion and all future proceedings that may come before the Southern District of Florida in this case.

## ARGUMENT

The politically charged statements above and repeated citations to material outside the record create an appearance of bias and demonstrate that this is not a case over which this Court should preside. Pursuant to 28 U.S.C. § 455, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Similarly, under the Code of Conduct for United States Judges, Canon 3(C)(1):

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."

Here, "the test for determining whether a judge's impartiality might reasonably be questioned is an objective one and requires asking whether a disinterested observer fully informed of the facts

would entertain a significant doubt as to the judge's impartiality." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla.*, 140 F.3d 898, 912 (11th Cir. 1998) (citing *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 385 (11th Cir. 1991). The standard is "designed to promote the public's confidence in the impartiality and integrity of the judicial process." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) (quoting *Davis v. Jones*, 506 F.3d 1325, 1332 n.12 (11th Cir. 2007)). Thus, "[a] federal judge *must* disqualify [himself] if [his] 'impartiality *might* reasonably be questioned.'" *Lomax v. Ruvin*, 476 Fed. App'x 175, 176 (11th Cir. 2012) (emphasis added).

The three orders at issue are indicative of "a partisan zeal." *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983). The order's characterizations objectively appear to be partisan in origin and reasonably call into question the Court's impartiality to a disinterested observer. The Supreme Court has been clear: "… what matters is not the reality of bias or prejudice but its appearance." *Liteky,* 510 U.S. at 548 (interpreting 28 U.S.C. § 455). Thus, disqualification is appropriate.

President Trump's Amended Complaint clearly outlined the harm that Defendants' conduct caused him in an inherently complicated case. This Court, however, disregarded all of this, characterizing the lawsuit as "hyperbole," "settling of scores and grievances," a "political manifesto," a lawsuit being used to "advance a political narrative," and a "deliberate attempt to harass." Dkt. No. 267 at 5, 64; Dkt. No. 302 at 7, 10. Further, the Court seemingly took on the role of advocate for the Defendants, stating, "opposing [President Trump's] presidential campaign" does not amount to real loss, and going out of its way in the dismissal order to suggest that sanctions might be proper. *Id.* at 48, 65. Continuing to advocate, the Court implied that sanctions were not enough, and Ms. Habba should be penalized by the Bar. Dkt. No. 284 at 18.

In similar cases, wherein courts demonstrated clear bias and interposed themselves as advocates, recusal has been appropriate. *See United States v. S. Fla. Water Mgmt. Dist.*, 290 F. Supp. 2d

6

1356, 1360–61 (S.D. Fla. 2003) (holding that a judge's statements such as "I think [Governor] Bush is a good man and he means well, . . . But I'm afraid he fell into the hands of those who don't like the Everglades," and "[w]hen the governor signs this bill—and he will, I think, sign it—the South Florida Water Management District has got to be watched," creates "[a] reasonable interpretation . . . that Judge Hoeveler does not trust the South Florida Water Management District," therefore, disqualification was appropriate); *Crowe v. Di Manno*, 225 F.2d 652, 656–59 (1st Cir. 1955) (holding that because the trial judge repeatedly interrupted the questioning of witnesses in favor of the plaintiff and was being highly argumentative, recusal was necessary). Likewise, recusal is more than appropriate here, where the Court has made statements as to President Trump's character in commenting on this current lawsuit and other unrelated lawsuits, and became highly argumentative, calling President Trump's claims an attempt to "bully" and saying that his claims were "dishonest." Dkt. 302 at 24.

Importantly, Section 455 "requires judges to resolve any doubts they may have in favor of disqualification." *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989). Thus, to the extent there is any doubt as to whether these statements demonstrate bias, this Court should still recuse itself.

Impartiality is vitally important in the administration of justice. Even the appearance of impartiality undermines the trust of litigants and of the public in our justice system. This is the reason that any doubt must be resolved in favor of recusal, and why justice cannot be done if this Court continues to preside over this matter.

## CONCLUSION

For these reasons, the Court should disqualify itself from further proceedings in this matter.

## CERTIFICATE OF CONFERRAL 7.1(a)(3)

The undersigned counsel conferred with all parties through their counsel in a good faith effort to resolve the issues raised in this motion but has been unable to do so.

Dated: August 14, 2023

Respectfully submitted,

/s/ Jared J. Roberts
Jared J. Roberts (FL Bar #1036550)
Jason C. Greaves (*pro hac vice* application forthcoming)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jared@binnall.com
jason@binnall.com

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

Dated: August 14, 2023

/s/ Jared J. Roberts
Jared J. Roberts

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*