UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DONALD J. TRUMP,

    *Plaintiff*,

v.

HILLARY R. CLINTON *et al.*,

    *Defendants.*

Case No. 2:22-cv-14102-DMM

**PLAINTIFF AND PLAINTIFF'S ATTORNEYS' REPLY IN SUPPORT OF MOTION FOR INDICATIVE RULING BASED UPON NEW EVIDENCE**

BINNALL LAW GROUP, PLLC
Jared J. Roberts (FL Bar #1036550)
Jason C. Greaves (*pro hac vice* application forthcoming)
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jared@binnall.com
jason@binnall.com

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*

Defendants argue that this Court need not consider the Durham Report because it contains information that was already accepted as fact during the prior proceedings. Yet, this Court's prior orders did not accept all factual allegations of the Plaintiff's filings. Specifically, in this Court's prior sanctions orders it found the claims were frivolous both "factually and legally." Dkt. No. 302 at 6. Moreover, this Court betrayed its assumption of the truth of allegations when it plainly stated that some of the allegations in the Amended Complaint were "conclusory" and "implausible" in the sanctions order. Dkt. No. 302 at 7, 10. In its order of dismissal, the Court referred to "characterizations of events" as "implausible" and lacking "factual support." Dkt. No. 267 at 5.

The Durham Report, a government report produced by the Department of Justice Office of the Special Counsel, following an extensive investigation, changes the landscape for determining what were or were not both plausible and reasonable conclusions to draw from existing facts and information. Such a change weighs heavily on the issue of sanctions, and also upon the merits of this case, which depend on mixed questions of law and fact. Therefore, President Trump requests an indicative ruling from this Court on these issues.

## ARGUMENT

### I.  The Durham Report is Eligible for Judicial Notice.

All three responses in opposition filed by or on behalf of the various Defendants argue that the Durham Report is not something of which this Court or any court may take judicial notice. This is incorrect as courts often take judicial notice of government reports. *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1 (C.D. Cal.

1

Jul. 23, 2010) (holding that federal courts routinely take judicial notice of "documents available on government websites"); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from FDIC's official website); *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered not to be subject to reasonable dispute. . . . This includes public records and government documents available from reliable sources on the Internet.") (citation omitted); *White Oak Vineyards & Winery LLC v. White Oak Spirits, LLC*, 2015 WL 12731903, at *2 (C.D. Cal. Mar. 9, 2015) (holding that "[r]ecords and reports from government agencies are the proper subject of judicial notice"). Likewise, the District of Columbia district court took judicial notice of background information in the January 6th Report because it came from a source whose accuracy cannot be reasonably questioned. *United States v. MacAndrew*, 2023 WL 196132, at *2 n.1 (D.D.C. Jan. 17, 2023). Defendants' joint opposition admits, as it must, that the court may at a minimum take judicial notice of the existence of the Durham Report. *See* Dkt. No. 333 at 7–9.

The existence of the Durham Report provides important context for the issues before this Court and presents new evidence simply by its existence, especially as it pertains to sanctions. The Durham Report, which Defendants readily admit contains information similar to allegations of the Amended Complaint, represents the findings and conclusions of investigators and prosecutors assigned to investigate these issues. At a minimum, the mere existence of this report and these findings erodes the basis

for any sanctions order against President Trump or his attorneys based on allegations that are similar to these findings because these allegations are not only plausible but supported by a government investigation.

In their joint opposition, Defendants argue that the findings contained within the Durham Report are "unproven allegations." Dkt. No. 333 at 1, *see also* Dkt. No. 333 at 2, 7–9. The only support that they offer is to show that some of the findings that relate to the criminal trials of Igor Danchenko and Michael Sussman did not result in convictions. *See id.* at 2. This, however, does not mean that the findings are not true. Rather, this means that a jury did not find them guilty of the charges *beyond a reasonable doubt*. That is, of course, not the standard here, where Plaintiffs simply had to show plausibility to succeed on the motion to dismiss and the *Defendants* had the burden to prove either subjective frivolity (for inherent authority sanctions) or the lack of evidentiary support for the Amended Complaint's factual allegations (for Rule 11 sanctions). That the government did not meet the reasonable doubt standard at a criminal trial is consequently irrelevant. As noted by Defendants, it is not the truth of the findings that is relevant to judicial notice, but the existence of the findings in a government report.

Finally, it is important to note, this Court or the Eleventh Circuit does not need to take judicial notice of the Durham Report when it addresses the sanctions orders. This is particularly true as evidenced by this Court considering things outside the record without taking judicial notice of them when imposing the sanctions. Dkt No. 302 at 10, 21, 24–25 (relying on external information to find that Comey testified

3

before Congress and the alleged impact upon Ms. Clinton's campaign, as well as articles about other cases in which President Trump is involved.). It does not, therefore, "end the inquiry right there," as alleged by Dolan. Dkt. No. 332 at 1. Nor does this Court need to accept the contents or conclusions of the Durham Report as true, because true or not, the Durham Report shows that at the very least there was a reasonable basis for the factual allegations made by President Trump.

## II. The Durham Report Produces Different Results.

While Defendants accuse President Trump and his former attorneys of "cherry picking" the Durham Report, they have done the same in their analysis. Defendants repeatedly claim that the Durham Report is irrelevant because the Court found President Trump's claims deficient *legally*, while ignoring and side-stepping the *factual* component, and the many ways the existence of the Durham Report supports the plausibility of the factual allegations. The potential for the Durham Report to change the outcome of this case is especially true as it relates to this Court's prior sanctions orders. Notably, the Eleventh Circuit found the request to consider the Durham Report sufficiently significant to stay the case pending this Court's indicative ruling.

This Court's prior sanctions orders found the claims were frivolous both "factually and legally." Dkt. No. 302 at 6. The existence of the Durham Report, however, corroborates many of President Trump's prior allegations, something Defendants side-step. Defendants attempt to avoid this by arguing that the Court was already required to accept these facts as true. Dkt. No. 333 at 13. While this

should have been true as it pertains to the motion to dismiss, it is not the standard that the Court used for determining sanctions. *See e.g.* Dkt. No. 302 at 7, 10 (finding that allegations were conclusory and implausible in considering sanctions). As previously elaborated in President Trump's opening brief in the Eleventh Circuit, the Court took Defendant Dolan's word that (1) Defendant Dolan was not "intimately" involved with the Clinton Campaign and "there was no basis" for that belief, (2) Mr. Dolan was not the source of allegations against President Trump regarding salacious sexual activity in a Moscow Ritz Carlton hotel, and (3) Mr. Dolan did not engage with Mr. Danchenko to provide information for the Steele dossier. Dkt. No. 284 at 6–9. Had this Court viewed these facts in favor of President Trump, sanctions would have been inappropriate.

President Trump's allegations, such as that Defendant Dolan was the source of several key allegations contained in the Steele Dossier, are not "leaps of logic" as Defendant Dolan claimed. Dkt. No. 332 at 3. The Durham Report itself concluded that "[i]n light of these facts, there appears to be a real likelihood that Dolan was the actual source of much of the Ritz Carlton and Pavlov information contained in the Steele Reports." Durham Report at 148. Whether the Court accepts the truth of the Report's conclusions is irrelevant; the existence of the Report itself signifies that there was a basis for President Trump's allegations.

Defendants finally argue that the Durham Report is not material because the motion included the Durham Report's findings on the former government defendants. Dkt. No. 333 at 15. Defendants misunderstand this motion. President Trump and his

5

former attorneys included this information for the purpose of showing that the factual allegations in the Amended Complaint were not without support. Instead of the allegations lacking any support or lacking logical basis, a thorough government investigation corroborates much of what President Trump previously alleged. As the Eleventh Circuit has held, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *United States v. Stinson*, 729 Fed. App'x 891, 900 n.7 (11th Cir. 2018). The Durham Report's findings that are similar, and in some instances identical, to allegations in Complaint lend credence to the fact that none of President Trump's material claims "utterly lack[ed] support." While Crossfire Hurricane was opened to investigate President Trump's campaign and members of the campaign, this inherently injured President Trump, making the Report entirely relevant, and reinforcing why this Court should have never awarded sanctions in the first place. It also strains credulity to claim—as the Defendants seem to do—that the machinations of Crossfire Hurricane and the coordinated actions that led to it, were not directed at President Trump himself.

Lastly, while much of this reply has focused on the impact of sanctions, the Durham Report also has material components that support President Trump's legal claims, allowing President Trump to survive a motion to dismiss.[1] For example, the Durham Report supports the argument for equitable tolling. The basis for President's

---

[1] Regardless of Defendant Orbis's personal jurisdiction argument, Defendant Orbis was still an improper recipient of an award of sanctions.

6

Trump's novel claim of equitable tolling in this case is a mixed question of law and fact because the situation he faced was entirely new. Additionally, President Trump's RICO claim includes allegations of actual malice, which also involved factual allegations. This Court utterly dismissed factual claims by President Trump as "implausible" and lacking "factual support" which ultimately impacted this Court's final determination. *See* Dkt. No. 267 at 5.

Consideration of the Durham Report is not simply a question of law, which Defendants repeatedly claim, but also of facts. Again, it is not the truth of the information in the Durham Report that is relevant to this analysis, but the fact of its publication after thorough government investigation, that bears on the plausibility of factual allegations that the Court discounted as mere hyperbole. The Durham Report's existence supports the factual allegations made by President Trump to show the extraordinary circumstances he faced as President—namely, that he was under attack, by proxy, with a partisan FBI improperly investigating his campaign, based solely on the coordinated machinations of his political opponents to damage him. Because of this, and his requirement as President to maintain the public trust in the executive branch, President Trump's injurious falsehood claim should be found timely. Additionally, President Trump's allegations supporting malice and falsity are shown to be plausible by their inclusion in the Durham Report, and this claim overcomes the motion to dismiss threshold.

Defendants' argument that the Durham Report does not change the outcome of the motion to dismiss because Crossfire Hurricane was not an official proceeding

misses the mark. As this Court seemingly acknowledged, Dkt. No. 267 at 32–33, and as Plaintiffs are pursuing on appeal, 18 U.S.C. §1512(b)(3) does not require that there be an official proceeding. Therefore, this argument does nothing to dispel the materiality of the Durham Report to this Court's prior dismissal order.

### III. The Durham Report Qualifies Under Rule 60(b).

#### a. The Durham Report is newly discovered evidence that is not merely cumulative.

The existence of the Durham Report *is* new evidence, as conceded by Defendants. *See* Dkt. No. 333 at 7–9. It is a new Report not in existence at the time this Court issued its three orders. The existence of the Durham Report shows that President Trump's allegations were not frivolous, as they are now corroborated by an official government investigation. While much of the information contained within the Durham Report may have been reported in the press or asserted in legal proceedings prior to the Durham Report's release, the existence of this same information in a report of an official government investigation is fundamentally different and new. As stated previously, it is not the truth of the Durham Report that matters for the purposes of this motion, but rather, that key factual allegations of the Amended Complaint are now published in the Durham Report. True or not, this new information—their inclusion in the Durham Report—demonstrates the plausibility of the factual allegations made in support of President Trump's legal claims and bears directly on the credibility of many Defendants and witnesses, such as Sussman, Dolan, and Danchenko. Accordingly, the Durham Report is newly discovery evidence within the meaning of Rule 60(b)(2), and not merely cumulative.

In an American Law Reports publication, the journal noted that, in early cases involving new evidence requiring a new trial, evidence is not merely cumulative, even if it is similar to previous evidence, if that new evidence comes from a disinterested witness. This is because testimony from a disinterested party is historically given more weight. T.C.W., *Newly discovered evidence, corroborating testimony given only by a party or other interested witness, as ground for new trial*, 158 A.L.R. 1253 (2023) (citing *Sluman v. Dolan*, 24 S.D. 32 (1909)). Further, in a criminal case, the Southern District of New York found that new evidence that goes directly to credibility cannot be considered merely cumulative. *Alvarez v. United States*, 808 F. Supp. 1066, 1093 (S.D.N.Y. 1992). Here, the Durham Report is from a disinterested source, the government, bearing on the credibility of many of the defendants and witnesses in this case. In cases where the Eleventh Circuit found evidence to be merely cumulative, the court came to this conclusion because the witness had already been cross examined on the exact issue that the new document purported to show. *United States v. Gelin*, 2022 WL 10220112, at *3 (11th Cir. Oct. 18, 2022). The evidence did not go to any credibility, it merely added on to the previous cross questions. *Id*. Here, this is not the case. Thus, President Trump has satisfied the requirements of Rule 60(b)(2).

  **b. Alternatively, Rule 60(b)(6) applies.**

Defendants do not address President Trump and his former attorneys' argument that Rule 60(b)(6) should apply if this Court finds the evidence is not newly discovered. The Durham Report represents extraordinary circumstances. *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996). Because of President Trump's position

9

as President, he was required to allow a partisan and faulty investigations into his campaign and candidacy to otherwise avoid an improper appearance. The Durham Report outlines the dynamics of these investigations and their improper purpose. No person has faced these circumstances before in this Nation's history. Accordingly, if not under Rule 60(b)(2), the Court should vacate its prior orders pursuant to Rule 60(b)(6).

## CONCLUSION

For the reasons above and the arguments in Plaintiff's and Plaintiff's former attorney's motion, this Court should issue an indicative ruling that it would vacate its prior three orders.

Dated: August 17, 2023

Respectfully submitted,

/s/ Jared J. Roberts
Jared J. Roberts (FL Bar #1036550)
Jason C. Greaves (*pro hac vice* application forthcoming)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jared@binnall.com
jason@binnall.com

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

Dated: August 17, 2023

/s/ Jared J. Roberts
Jared J. Roberts

*Counsel for President Donald J. Trump, Alina Habba, Michael T. Madaio, Habba, Madaio, & Associates, Peter Ticktin, Jamie Alan Sasson, and The Ticktin Law Group*