# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 26, 2026



FILED BY_____AP____D.C.

May 26, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  22-13410-HH   ; 22-14099 -HH   ; 23-10387 -HH   ; 23-13177 -HH
Case Style: Donald Trump v. Hillary Clinton, et al
District Court Docket No: 2:22-cv-14102-DMM

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13410
_____

DONALD J. TRUMP,

*Plaintiff-Appellant,*

*versus*

HILLARY R. CLINTON,
DEMOCRATIC NATIONAL COMMITTEE,
HFACC, INC.,
DNC SERVICES CORPORATION,
PERKINS COIE, LLC, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM
_____

2                                                                                          22-13410

_____

No. 23-10387
_____

DONALD J. TRUMP,

                                                                       *Plaintiff-Appellant,*

ALINA HABBA,

HABBA MADAIO & ASSOCIATES,

                                                          *Interested Parties-Appellants,*

versus

HILLARY R. CLINTON,

DEMOCRATIC NATIONAL COMMITTEE,

HFACC, INC.,

DNC SERVICES CORPORATION,

DEBORAH WASSERMAN SCHULTZ, et al.,

                                                                  *Defendants-Appellees,*

PERKINS COIE, LLC, et al.,

                                                                          *Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM
_____

_____

No. 23-13177
_____

DONALD J. TRUMP,

22-13410                                                                              3

ALINA HABBA,

MICHAEL T. MADAIO,

HABBA MADAIO & ASSOCIATES,

PETER TICKTIN, et al.,

*Plaintiffs-Appellants,*

*versus*

HILLARY R. CLINTON,

DEMOCRATIC NATIONAL COMMITTEE,

HFACC, INC.,

DNC SERVICES CORPORATION,

PERKINS COIE, LLC, et al.,

*Defendants-Appellees,*

JAMES COMEY, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM

_____

_____

No. 22-14099

_____

DONALD J. TRUMP,

*Plaintiff,*

4                                                                    22-13410

ALINA HABBA,

MICHAEL T. MADAIO,

HABBA MADAIO & ASSOCIATES,

PETER TICKTIN,

JAMIE A. SASSON,

THE TICKTIN LAW GROUP, et al.,

                                                        *Plaintiffs-Appellants*

versus

HILLARY R. CLINTON, et al.,

                                                                *Defendants,*

CHARLES HALLIDAY DOLAN JR.,

                                                        *Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued
on this date in this appeal is entered as the judgment of this Court.

Entered: November 26, 2025

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE: May 26, 2026

**FOR PUBLICATION**

## In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-13410

————————————————

DONALD J. TRUMP,

*Plaintiff-Appellant,*

*versus*

HILLARY R. CLINTON,
DEMOCRATIC NATIONAL COMMITTEE,
HFACC, INC.,
DNC SERVICES CORPORATION,
PERKINS COIE, LLC, et al.,

*Defendants-Appellees.*

2                          Opinion of the Court                    22-13410

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM
_____


_____

No. 23-10387
_____


DONALD J. TRUMP,

*Plaintiff-Appellant,*

ALINA HABBA,

HABBA MADAIO & ASSOCIATES,

*Interested Parties-Appellants,*

*versus*


HILLARY R. CLINTON,

DEMOCRATIC NATIONAL COMMITTEE,

HFACC, INC.,

DNC SERVICES CORPORATION,

DEBORAH WASSERMAN SCHULTZ, et al.,

*Defendants-Appellees,*

PERKINS COIE, LLC, et al.,

*Defendants.*


_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM
_____

22-13410                     Opinion of the Court                          3

_____

No. 23-13177

_____

DONALD J. TRUMP,

ALINA HABBA,

MICHAEL T. MADAIO,

HABBA MADAIO & ASSOCIATES,

PETER TICKTIN, et al.,

*Plaintiffs-Appellants,*

*versus*

HILLARY R. CLINTON,

DEMOCRATIC NATIONAL COMMITTEE,

HFACC, INC.,

DNC SERVICES CORPORATION,

PERKINS COIE, LLC, et al.,

*Defendants-Appellees,*

JAMES COMEY, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM

_____

4                    Opinion of the Court                    22-13410

_____

No. 22-14099

_____

DONALD J. TRUMP,

*Plaintiff,*

ALINA HABBA,

MICHAEL T. MADAIO,

HABBA MADAIO & ASSOCIATES,

PETER TICKTIN,

JAMIE A. SASSON,

THE TICKTIN LAW GROUP, et al.,

*Plaintiffs-Appellants*

*versus*

HILLARY R. CLINTON, et al.,

*Defendants,*

CHARLES HALLIDAY DOLAN JR.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14102-DMM

_____

Before WILLIAM PRYOR, Chief Judge, and BRASHER and KIDD, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

22-13410               Opinion of the Court                    5

These four consolidated appeals concern five separate orders. In 2022, between his terms of office, President Donald Trump filed a lawsuit against dozens of defendants, alleging several claims, including two under the Racketeer Influenced and Corrupt Organizations Act and three under Florida law. The district court dismissed the amended complaint with prejudice for failure to state a claim. On the defendants' motions, the district court also entered sanctions against Trump and his attorneys, under Rule 11 and under its inherent authority. While those orders were on appeal, Trump and his attorneys moved the district court to reconsider each order in the light of a report by Special Counsel John Durham. They also moved to disqualify the district judge. The district court denied both motions. Two defendants ask us to sanction Trump for bringing a frivolous appeal.

We affirm the orders with a caveat. Because the district court lacked jurisdiction over one defendant, it erred in dismissing the claims against that defendant with prejudice. So we vacate the dismissal of those claims and remand with instructions to dismiss them without prejudice. Because Trump's remaining claims are untimely and otherwise meritless, we affirm the dismissal of the amended complaint with prejudice for the other defendants. And because Trump and his attorneys committed sanctionable conduct and forfeited their procedural objections, we affirm both sanctions orders. The Durham Report does not change our conclusions, and the district court lacked jurisdiction to consider the disqualification motion. Yet, because the appeal of the dismissal order is not frivolous, we deny both motions for appellate sanctions.

6                    Opinion of the Court                    22-13410

## I. BACKGROUND

When evaluating a motion to dismiss, "we recount and accept the allegations of [the] complaint as true." *McCarthy v. City of Cordele*, 111 F.4th 1141, 1144 (11th Cir. 2024). We review the facts alleged in the amended complaint, before outlining Trump's claims, the merits proceedings in the district court, the collateral proceedings, and the appellate proceedings that followed.

### A. The Facts as Alleged

Trump's amended complaint alleged that, in the lead-up to the 2016 election, Hillary Rodham Clinton, the presumptive presidential nominee for the Democratic Party, conspired with others to "weave a false narrative" about him. Clinton and her allies sought to "discredit, delegitimize and defame" Trump by fabricating a story that he and his campaign colluded with Russia. They enlisted a law firm, Perkins Coie, to assist them, and Perkins Coie partner Marc Elias hired Fusion GPS, a political consulting firm known to "produce false and/or misleading dossiers." Fusion in turn enlisted Orbis Limited, an England-based "private intelligence firm" run by Christopher Steele. Their effort produced the Steele Dossier, a collection of documents alleging collusion with Russia based on "unverified, falsified, and fraudulent information." Steele's main source for the Dossier was Igor Danchenko, a Russian analyst. Danchenko in turn relied on Charles Dolan, an operative with "intimate ties to the Clinton Campaign" who provided some of the material used in the Dossier. And Perkins Coie partner Michael Sussmann contracted with an information technology

firm, Neustar, to access "sensitive data sources" to "manufacture ties" between Trump and Alfa Bank, a Russian financial institution. Neustar was run by Rodney Joffe.

After they fabricated the Steele Dossier and the Alfa Bank connection, the operatives pushed them to the news media and law enforcement. Fusion fed the collusion story to news media starting in late spring 2016. Soon afterward, Steele gave his Dossier to the Federal Bureau of Investigation, which led in part to the initiation of the "Crossfire Hurricane" investigation of the Trump campaign. Sussmann, falsely claiming that he was not operating on behalf of a client or company, gave the Alfa Bank story to the Bureau, leading to a separate investigation. These investigations were "prolonged and exacerbated" by several "Clinton loyalists" in high positions within the Bureau, including James Comey. In late October, the Clinton campaign shopped the Alfa Bank story to the press and promoted it on social media. After the election, the alleged conspirators continued to spread the collusion story in the media and call for further investigations.

Over the next few years, a "string of federal investigations" refuted the Russian collusion narrative. The report of Special Counsel Robert Mueller, appointed to investigate possible collusion, found "no evidence" of it. The Inspector General for the Department of Justice reviewed the Crossfire Hurricane investigation and found multiple "errors [and] omissions" in procedure and concluded that the Bureau lacked probable cause for some of the warrants it secured. The Federal Election Commission investigated the

Clinton campaign and found that it and the Democratic National Committee had misreported the funds they expended through Perkins Coie for opposition research. Special Counsel John Durham, assigned to investigate the origins of Crossfire Hurricane, obtained an indictment against Kevin Clinesmith for making false statements to the Foreign Intelligence Surveillance Court, and Clinesmith pleaded guilty. Durham also obtained indictments against Sussmann for making false statements to federal officials, and against Danchenko for five counts of making false statements to federal officials during the Crossfire Hurricane investigation.

Trump alleges that the conspiracy is still ongoing, as members of the conspiracy continue to allege that he colluded with Russia during the 2016 campaign. Trump alleges that he suffered at least $24 million in defense costs and legal fees because of the conspirators' actions in addition to loss of business opportunities.

### B. Trump's Amended Complaint

Of the 16 claims in the amended complaint, only five are before us on appeal. Trump alleged two claims under the Racketeer Influenced and Corrupt Organizations Act: a civil racketeering claim against Clinton, the Clinton campaign, the Democratic National Committee, Perkins Coie, Elias, Sussmann, Fusion, and Joffe, and a racketeering conspiracy claim against the same defendants and several others. Trump also alleged three claims under Florida law: an injurious falsehood claim against several defendants, including Clinton, Danchenko, Sussmann, and Steele; a claim of conspiracy to commit injurious falsehood against them and

several others; and a claim of conspiracy to commit malicious prosecution against Clinton, Sussmann, Dolan, Elias, Steele, Danchenko, and Comey, among others. Trump does not appeal the dismissal of eleven of his claims, including his underlying claim of malicious prosecution, his claim under the Computer Fraud and Abuse Act, his claim for theft of trade secrets, and his claim under the Stored Communications Act.

### C. Merits Proceedings in the District Court

On March 24, 2022, President Trump sued 28 named defendants in the district court. His initial complaint was 108 pages long and contained 508 numbered paragraphs. Two law firms, Habba Madaio & Associates and The Ticktin Law Group, represented Trump.

Judge Donald M. Middlebrooks was assigned this case. After Judge Middlebrooks's assignment, Trump moved for his disqualification. Trump argued that Judge Middlebrooks had a "relationship to the Defendant" Hillary Clinton because President William Clinton nominated Judge Middlebrooks to his position. The district court denied this motion.

One defendant, Charles Dolan, identified several errors in Trump's pleadings and notified Trump's counsel of these errors by letter. The original complaint stated that Dolan was a former chairman of the Democratic National Committee. This allegation was false. Dolan's attorneys told Trump's attorneys that many of the material allegations against Dolan were likewise false, including his participation in the conspiracy and his having been in contact with

any defendant other than Danchenko. The letter threatened sanctions under Rule 11 if Dolan was not dropped from the complaint.

After an initial round of motions to dismiss, Trump filed an amended complaint that added over eighty pages of allegations and three defendants. Four attorneys were listed in the signature block: Alina Habba and Michael Madaio from Habba Madaio, and Peter Ticktin and Jamie Alan Sasson from Ticktin Law Group. Dolan remained a defendant in the amended complaint, which described him as the former chairman of a "national Democratic political organization" and as a "senior Clinton Campaign official." It also incorrectly described him as a resident of New York.

The defendants moved to dismiss the amended complaint. The United States moved to substitute itself for the defendants employed by the Bureau and Department of Justice and then moved to dismiss the claims against it for lack of subject-matter jurisdiction. Dolan, Joffe, and Orbis moved to dismiss for lack of personal jurisdiction. Most of the defendants jointly moved to dismiss the amended complaint for failure to state a claim for relief.

The district court dismissed the amended complaint. It ruled that the amended complaint was "foreclosed by existing precedent" and "implausible because [it] lack[ed] any specific allegations which might provide factual support for the conclusions reached," and found that it "misrepresent[ed]" its sources. It described the amended complaint as a "quintessential shotgun pleading" because it was "excessive in length" and incorporated "all the general allegations and all the allegations of the preceding counts" in later

counts. The district court ruled that the United States was the proper party for the claims against the defendants employed by the Bureau and Department of Justice and dismissed the claims against the United States without prejudice. It also ruled that it lacked personal jurisdiction over Orbis, Joffe, and Dolan. But it dismissed the claims against Orbis, Joffe, and Dolan with prejudice.

On the merits, the district court ruled that the claims failed as a matter of law. It ruled that Trump's racketeering claims were barred by the statute of limitations. It ruled alternatively that the claims failed because they lacked any valid predicate act, a pattern of activity, an enterprise, or an injury. Trump's injurious falsehood claims met a similar fate: they were largely untimely and failed to allege damage to Trump's property interests. Many of the conspirators' alleged statements were "plainly protected by the First Amendment." The malicious prosecution claims failed because no "judicial proceeding" had been filed against Trump. The district court rejected Trump's request to amend because any amendment would be "futile." It "reserve[d] jurisdiction to adjudicate issues pertaining to sanctions."

### D. Collateral Proceedings in the District Court

Soon after the district court dismissed the amended complaint, Dolan moved to sanction Trump's attorneys under Rule 11. The district court granted his motion. It found that many of the allegations against Dolan were "knowingly false or made in reckless disregard for the truth." It also ruled that the legal theory on which Trump proceeded lacked "any chance of success," and that

the action was a "shotgun lawsuit" motivated by an improper purpose. It required Trump's attorneys to pay a $50,000 penalty plus $16,274.23 in Dolan's fees because their "conduct was willful." To support its willfulness finding, the district court cited the attorneys' failure to correct their basic factual errors and Alina Habba's post-dismissal appearance on Fox News where she continued to promote the theory of the case.

Following Dolan's motion, many of the other defendants jointly moved for sanctions against Trump and his counsel. The district court granted their motion. This time it issued sanctions based on its inherent authority. It described the shotgun pleadings, knowingly false factual allegations, and frivolous legal theories as evidence of bad faith. It also mentioned other "[f]rivolous lawsuits" Trump had filed to establish he had a "pattern of misusing the courts." It calculated the fees and costs requested by defendants as slightly more than $1 million. It ruled that the amounts requested were largely reasonable, in part because the requests were "substantially discounted" from the total charged. It then considered Trump's line-by-line objections to the hours billed and reduced certain attorneys' hours to account for vague or block billing. It assessed a total of $937,989.39 in fees and costs. It found Trump and Habba, along with Habba's law firm, jointly and severally liable for that amount.

### E. Appellate Proceedings

Trump and his attorneys filed their initial brief on June 9, 2023. The same day, they requested that we take judicial notice of

the report of Special Counsel John Durham. In the alternative, they asked that we stay our appellate proceedings to allow them to move in the "district court for an indicative ruling" under Federal Rule of Civil Procedure 62.1(a). We stayed the appeal and allowed them to seek an indicative ruling from the district court. They filed the motion, and while that motion was pending, they again moved to disqualify Judge Middlebrooks.

The district court denied both motions. It ruled that even if the Durham Report could support some of Trump's allegations, it could not cure the legal problems with his amended complaint that required dismissal and warranted sanctions. It declined to disturb any of its prior orders. It also denied the motion to disqualify because it lacked jurisdiction over the motion based on our limited remand. It also decided, in the alternative, that the standards for disqualification were not met.

Two defendants, Orbis and Dolan, also moved for damages and double costs under Federal Rule of Appellate Procedure 38.

## II. STANDARDS OF REVIEW

We review the dismissal order *de novo*. We review *de novo* the dismissal of a defendant for lack of personal jurisdiction. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). We review *de novo* the dismissal of a complaint for "failure to satisfy the applicable statute of limitations." *Fedance v. Harris*, 1 F.4th 1278, 1283 (11th Cir. 2021) (citation and internal quotation marks omitted). We also review *de novo* the dismissal of a

14                    Opinion of the Court                    22-13410

complaint for failure to state a claim. *Evanto v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016).

We review the other orders for abuse of discretion. We review sanctions for abuse of discretion. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222 (11th Cir. 2017). We review a finding of bad faith "for clear error." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023). "We review the denial of a motion for relief from judgment under Rule 60(b) for an abuse of discretion." *Howell v. Sec'y, Fla. Dep't of Corr.*, 730 F.3d 1257, 1260 (11th Cir. 2013). And we review the denial of a motion for judicial disqualification for abuse of discretion. *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988).

### III. DISCUSSION

We divide our discussion in seven parts. First, we explain that Trump's amended complaint failed to state a claim for relief on any issue before us. Second, we explain that the district court had personal jurisdiction over Joffe and Dolan, but not over Orbis. Third, we explain that the district court did not abuse its discretion in issuing sanctions against Trump and Habba based on its inherent authority. Fourth, we explain that the district court did not abuse its discretion in sanctioning Trump's attorneys under Rule 11. Fifth, we explain that the district court did not abuse its discretion in declining to reconsider its judgment. Sixth, we explain that the district court correctly ruled that it lacked jurisdiction to grant the disqualification motion. Seventh, we decline to award sanctions under Rule 38 for Orbis or Dolan.

### A. The District Court Correctly Dismissed the Amended Complaint for Failure to State a Claim.

We do not doubt that, in the light of the Durham Report, President Trump has concerns about some defendants' conduct during the 2016 election. The investigation by Special Counsel Durham found that some defendants played a role in orchestrating unverified allegations of him colluding with Russia. Durham Report 11–12, 16–17. And it found that key allegations in the Steele Dossier, relied on by the Federal Bureau of Investigation and the press, were never corroborated. *Id.* at 13. Some appeared to be fabricated. *Id.* at 16. The Special Counsel's investigation found that Bureau officials appeared to favor Clinton and that their investigation decisions reflected that preference. *Id.* at 9–10. And it found that the Crossfire Hurricane investigation began without "any actual evidence of collusion." *Id.* at 8. Yet, those findings do not cure the deficiencies in Trump's racketeering claims.

The district court committed no error in ruling that Trump's federal claims of racketeering and state tort claims failed as a matter of law. We reject the argument that the district court based its dismissal on the shotgun nature of the pleading. We address below why the dismissals were sound.

### 1. Trump's Racketeering Claims Are Untimely.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (citation and internal quotation marks

omitted), *abrogated on other grounds by Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). A four-year statute of limitations governs civil claims under the Racketeer Act, which accrue when the plaintiff discovers or should have discovered his injury. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). The district court found that Trump was aware of the underlying conduct, and his purported injury, by October 2017. But he waited until March 2022 to bring suit—five months after the statute of limitations expired.

Trump does not challenge these findings. Instead, he argues that the limitations period was either statutorily or equitably tolled. We reject both theories.

### a. The Limitations Period Was Not Statutorily Tolled.

The Racketeer Act adopts the "4-year statute of limitations for Clayton Act actions" as its limitations period. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). The Clayton Act includes a tolling provision for its statute of limitations that applies whenever "any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws." 15 U.S.C. § 16(i). Neither this Court nor the Supreme Court has decided whether this tolling provision is incorporated into the Racketeer Act along with the statute of limitations. Trump argues that we should do so now. We need not do so because Trump's claims would not be tolled even if the tolling provision of the Clayton Act applied.

To toll the limitations period under the Clayton Act, the federal proceeding must bear a "real relation" to the conduct

underlying the later civil suit. *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965). We have required that the facts "alleged by the private plaintiff . . . be intertwined with and fundamentally the same as those alleged in the government action." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 830 (11th Cir. 1999) (citation and internal quotation marks omitted). We have allowed the precise legal theories between the proceedings to differ, but we still require that both the federal and private proceedings allege an antitrust "conspiracy." *Id.* at 830–31. Indeed, whenever the Supreme Court has decided that the Clayton Act's tolling provision applied, both the federal and the private proceedings alleged antitrust violations. *See, e.g.*, *Leh*, 382 U.S. at 60–61; *see also Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S 311, 322–23 (1965) (tolling limitations period based on Federal Trade Commission action alleging "substantially the same claims"); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 334–38 (1971).

No "real relation" exists between any earlier proceeding and this suit. Trump presents as candidates the Federal Election Commission's action against the Clinton campaign, Durham's prosecution of Sussmann, and the Danchenko and Clinesmith prosecutions. None of these proceedings are, or even resemble, racketeering actions. At best, they are actions involving some of the conduct that Trump incorporates into his racketeering claim. But none of these actions are even prosecutions of a racketeering predicate act. The Commission's action objected to the Democratic National Committee's and Clinton campaign's "mischaracteriz[ation] . . . of certain disbursements," and at most establishes that the campaign

18                    Opinion of the Court                    22-13410

relayed funds through Perkins Coie to opposition research. And the Sussmann, Danchenko, and Clinesmith prosecutions for making false statements to federal officials are relevant only to discrete parts of Trump's claims. These facts do not amount to a racketeering enterprise or a racketeering conspiracy.

### b. The Limitations Period Is Not Equitably Tolled.

"Equitable tolling pauses the running of . . . a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Fedance*, 1 F.4th at 1284 (citation and internal quotation marks omitted). Equitable tolling is a "rare remedy," *Wallace v. Kato*, 549 U.S. 384, 396 (2007), and the extraordinary circumstance must be "beyond [Trump's] control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016). For example, we have tolled limitations periods because of a fraudulent concealment or credible fear of reprisal from death squads. *NuVasive, Inc. v. Absolute Med., LLC*, 71 F.4th 861, 876 (11th Cir. 2023); *Jean v. Dorélien*, 431 F.3d 776, 780 (11th Cir. 2005). Trump's arguments for applying equitable tolling are either squarely foreclosed by governing law or by his own concessions.

Trump argues that the limitations period should be tolled for the entirety of his first presidential term because he faced "historically-unprecedented circumstances" as president. Although Trump insists that his argument is based on a "case-by-case analysis," many of his premises support a broader rule, such as his argument that "the President occupies a unique position in the

22-13410                Opinion of the Court                19

constitutional scheme," and his reliance on his "official role." It is hard to untangle these points from an argument for a generic "presidential tolling" which would apply to *any* president during his term in office, especially because Trump requests that we toll the limitations period "for the term of his Presidency."

The Supreme Court rejected a similar request from President Clinton when it refused to excuse him from judicial process during his term. *See Clinton v. Jones*, 520 U.S. 681, 703–04 (1997). It took no issue with a private citizen subjecting the president to judicial process, in the process burdening his "time and energy" and "impair[ing] the effective performance of his office." *Id.* at 702. If a president can be haled into court, he cannot be excused from suing to enforce his rights.

Trump unpersuasively argues that two "circumstances" support his request. First, he points to the workload he faced during his first term. But it is hard to see how his presidential workload differs from any other modern president, and those concerns did not arrest the Supreme Court in *Clinton*. *See* 520 U.S. at 697–99. Second, Trump argues that he was unable to seek relief in court while in office because, if he had filed this lawsuit during the Mueller or Durham investigations, "it would have looked like [he] was interfering with law enforcement functions." But this argument gives away the game. Equitable tolling requires the circumstances "prevent[ing]" Trump from suing to be "beyond [his] control." *Menominee Indian Tribe*, 577 U.S. at 255, 257 (citation and internal quotation marks omitted). Trump concedes that he *chose* not

to bring this lawsuit because he made a "presidential decision to put constitutional duties and obligations to the country first." That concession controls our decision. Trump may not avail himself of equitable tolling.

Without statutory or equitable tolling, Trump failed to state a timely claim of racketeering or conspiracy. The district court did not err in dismissing those claims as untimely.

## 2. Trump Forfeited His Challenge to the Dismissal of His Claims of Injurious Falsehood.

Injurious falsehood is a Florida tort related to but distinct from defamation. The "gist" of injurious falsehood "is the intentional interference with another's economic relations." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999) (citation and internal quotation marks omitted). Florida courts define the tort as a published falsehood, which the publisher knows or should know will induce others not to deal with the plaintiff, and that plays a "material and substantial part" in inducing others not to deal with the plaintiff, which proximately causes special damages. *Id.* at 388 (citing *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. Dist. Ct. App. 1984)). The district court ruled that Trump failed to satisfy several of the elements, including that special damages were warranted. And many of the statements to which Trump objected were "plainly protected by the First Amendment."

Trump forfeited his arguments as to several of these elements and so fails to convince us the judgment should be reversed.

"To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). If he fails to do so, "the judgment is due to be affirmed." *Id.* Trump has failed to challenge the ruling that he did not plead "special damages," which the district court called a "crucial element" of the injurious falsehood tort. Nor does Trump challenge the ruling that his claim of conspiracy to commit injurious falsehood cannot survive independent from the underlying tort.

Perhaps realizing his error, Trump contests the issue in his reply brief. But we do not consider arguments raised only in reply briefs. *Id.* at 683. Because Trump failed to provide even a possible basis for reversal, we decline to hold that the district court erred.

### 3. Trump Forfeited His Objection to the Dismissal of His Claim of Conspiracy to Commit Malicious Prosecution.

The district court held that Trump could not state a claim for conspiracy to commit malicious prosecution unless he also stated a claim for the underlying tort. On appeal, Trump argues that his conspiracy claim can stand alone because he pleaded "an illegal combination to cause prosecution." But he does not respond to the authorities cited by the district court that hold that a claim of conspiracy to commit malicious prosecution cannot survive the dismissal of the underlying tort. *See Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 279 (Fla. Dist. Ct. App. 1994); *see also Buchanan v. Miami Herald Publ'g Co.*, 206 So. 2d 465, 469 (Fla. Dist.

Ct. App. 1968) ("The gist of a civil action for conspiracy is not conspiracy itself but a civil wrong which was done pursuant to the conspiracy."). Even if Trump's forfeiture did not require us to affirm, his claim would fail under Florida law.

### B. The District Court Had Personal Jurisdiction over Joffe and Dolan but not Orbis.

To survive a motion to dismiss for lack of personal jurisdiction, a complaint must allege "sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Orbis, Joffe, and Dolan contend that Trump failed to satisfy that burden. In the district court, Trump presented two theories of personal jurisdiction: the Racketeer Act's nationwide service provision and Florida's long-arm statute. The district court rejected both. Trump points only to the nationwide service provision on appeal. Although he argues his second theory in the reply brief, we "decline to address an argument advanced by an appellant for the first time in a reply brief." *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528 F.3d 839, 844 (11th Cir. 2008).

The Racketeer Act's nationwide service provision authorizes service "on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d). Although we ordinarily "address issues relating to personal jurisdiction before reaching the merits," *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997), we can address the merits first when jurisdiction turns on a merits question, *see id.* at 941. Trump may establish jurisdiction under the

nationwide service provision unless his claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *Id.* at 941–42 (citation and internal quotation marks omitted); *cf. Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974) (requiring that federal claims be "so insubstantial . . . as not to involve a federal controversy" to undermine subject-matter jurisdiction). Although Trump's equitable tolling argument is frivolous, his statutory tolling argument is not so implausible, nor foreclosed by precedent, that it could not confer federal jurisdiction. So the district court had jurisdiction to dismiss the claims against Joffe and Dolan.

Orbis is a different matter. It contends that Trump did not serve it according to the nationwide service provision. Because Trump served Orbis in England, not in the United States, it contends, "the nationwide service of process provision . . . cannot provide for personal jurisdiction in this case."

Trump concedes that Orbis was served abroad. So we agree with Orbis that the district court lacked personal jurisdiction over it. But this defect proves only that dismissal *with prejudice* was error. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (holding that a dismissal for lack of personal jurisdiction must be "without prejudice"). Because Trump did not prove that he served Orbis according to the requirements of the Racketeer Act, we vacate the dismissal with prejudice of the claims against Orbis and remand with instructions to dismiss them without prejudice.

*C. The District Court Did Not Abuse Its Discretion in Issuing
Sanctions Based on Its Inherent Authority.*

Federal courts have the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). This authority arises from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962). To "unlock[] that inherent power," a court must find that a party or his attorney acted in "bad faith." *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015). On a finding of bad faith, the district court may "assess attorney's fees." *Id.*

The district court ordered Trump and Habba (along with her law firm) to pay nearly $1 million in attorney's fees under its inherent authority. On appeal, Trump and Habba present several arguments against the sanctions. We discuss and reject each in turn.

1.  Trump and Habba Abandoned their Argument that they
Lacked Adequate Notice.

Trump and Habba argue that the district court did not provide fair notice for the sanctions order. They suggest that the district court invoked its inherent authority to issue Rule 11 sanctions. Unlike Rule 11, inherent authority sanctions lack a "safe harbor" rule. *See Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1346 (11th Cir. 2022) (describing the requirement that a movant for sanctions first give the opposing party 21 days to cure the violation

before moving for sanctions). Because the district court sanctioned Trump and Habba for their pleadings, they argue that the district court "circumvent[ed] the notice required" under Rule 11.

Trump and Habba abandoned this argument by not raising it in the district court, despite having the opportunity to do so. "[W]e do not consider issues not presented in the first instance to the trial court." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007). After the defendants moved the district court for inherent-authority sanctions, Trump and Habba limited their discussion of notice to the possibility of sanctions based on their shotgun pleadings. And they argued only that the district court should not impose sanctions on a shotgun pleading theory "alone." The only other mention of "notice" in their opposition to the sanctions motion was a summary quote from a Supreme Court case saying that sanctions should not be assessed "without fair notice." But they did not elaborate on that principle or explain how it applies here. It is at most a "passing reference[]" to an argument unmade. *Sapuppo*, 739 F.3d at 681. We consider the issue forfeited.

2. Trump and Habba Abandoned their Argument that the District Court Abused Its Discretion in Not Holding a Hearing.

Trump and Habba argue that it is a due process violation for a district court not to hold a hearing when issuing inherent authority sanctions. But they did not raise this issue in the district court, even though defendants requested sanctions under the court's inherent authority. The closest Trump and Habba came was their request for a hearing "[t]o the extent" that the district court was

26                    Opinion of the Court                    22-13410

considering sanctions "pursuant to 28 U.S.C. [section] 1927." This request failed to mention, much less make an argument for, a hearing about *inherent authority* sanctions. And their discussion of inherent authority sanctions made no mention of a hearing. This issue too was forfeited.

> 3. The Finding of Bad Faith Was Not Clear Error.

We review a finding of bad faith for clear error. *Bagelheads*, 75 F.4th at 1311. Clear error review requires "that a finding that is plausible in light of the full record—even if another is equally or more so—must govern." *Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894, 896 (11th Cir. 2024) (citation and internal quotation marks omitted). To establish bad faith under the inherent authority standard, a court must find "subjective bad faith." *Purchasing Power*, 851 F.3d at 1224. "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (citation and internal quotation marks omitted). An egregious failure to pursue "reasonable inquiry into the underlying facts" of a claim can also support a finding of bad faith. *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) (citation and internal quotation marks omitted).

The district court rested its bad faith finding on three features of the amended complaint. First, it found that the amended complaint was a shotgun pleading filed for a political purpose. Second, it found that the amended complaint contained factual

allegations that were "knowingly false or made with reckless disregard for the truth." Finally, it ruled that the amended complaint was based on patently frivolous legal theories. Trump challenges all three grounds. We affirm on the first and third.

### a. The Shotgun Pleadings Suggest Bad Faith.

The district court found that Trump filed a shotgun complaint "to harass," "an abusive litigation tactic which amounts to obstruction of justice." Trump and Habba respond that "every complaint claiming an interwoven [racketeering] claim is bound to include some 'shotgun' elements." They also argue that sanctions should not be imposed for shotgun pleadings when the procedurally correct response is dismissal without prejudice. Neither argument persuades us.

First, we have recognized that racketeering plaintiffs are not exempt from the requirement to avoid shotgun pleadings. *See, e.g., Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1293–96 (11th Cir. 2018) (affirming the dismissal of a racketeering complaint because it was a shotgun pleading). Trump and Habba maintain that despite the length and complexity of their complaint, there was no "intelligibility defect" from its shotgun nature. But we have described as one of the four paradigmatic types of shotgun pleadings a complaint that "adopts the allegations of all preceding counts." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). That kind of pleading confuses both defendants and courts, who "must be able to determine which facts support which claims." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citation and

28                      Opinion of the Court                    22-13410

internal quotation marks omitted); *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (noting that because "many of the facts alleged could not possibly be material to all of the counts[,] . . . the district court had to sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted, a difficult and laborious task indeed"), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008). Trump's amended complaint did not spare the district court (or this Court) that task.

For example, Trump incorporates each of the preceding 633 paragraphs in his third count, injurious falsehood. Nothing prevented him from specifying the statements he contends are injurious falsehoods under this count. Although he identified some examples in this section of his complaint, the previous paragraphs contain dozens of candidate statements that Trump obliged the district court to evaluate for itself. We consider that abuse of judicial resources sanctionable. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1360 (11th Cir. 2018) (affirming dismissal of shotgun pleading with prejudice and ordering plaintiff to show cause why he should not be sanctioned on appeal).

Second, Trump and Habba are wrong that because the ordinary remedy for shotgun pleading is dismissal, shotgun pleading itself cannot be evidence of bad faith. Indeed, we have relied on shotgun pleadings as evidence that a plaintiff "brought [a] suit purely to harass." *Pelletier*, 921 F.2d at 1517–18. We discern no clear error in the shotgun pleadings findings.

### b. The Amended Complaint Recklessly Forwards Frivolous Legal Theories.

The district court decided that the amended complaint advanced legal theories foreclosed by precedent "that the most basic legal research would have revealed." It listed several examples, including Trump's statutory and equitable tolling theories. Trump and Habba argue that "the case law is unsettled or there was a reasonable request for an extension of the law," at least for the tolling argument.

Many of Trump's and Habba's legal arguments were indeed frivolous. Even setting aside the tolling arguments, the district court ruled that Trump brought several frivolous claims, including a "malicious prosecution claim without a prosecution," and a "trade secret claim without a trade secret." Trump also appended seven counts to his indictment which did not allege any cause of action and which the district court found were "the high-water mark of shotgun pleading." Trump leaves all these frivolous claims behind, making a total of *11* of his 16 claims he does not appeal. Trump and Habba give us no reason to reverse the district court's ruling that these claims were frivolous.

### 4. The District Court Properly Considered Outside Conduct.

The district court bolstered its finding of bad faith by pointing to Trump's litigation conduct in other cases. It found that Trump's activity showed a "pattern of misusing the courts." Trump and Habba argue the district court was wrong to consider Trump's other litigation conduct.

The district court did not clearly err. We have affirmed a sanctions award based on a review of "similar cases" brought by a plaintiff and his attorney. *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1313–14 (11th Cir. 2021). Trump and Habba cite no contrary authority. Although they tell us that the district court misread *Johnson* and other cases, they never explain why the principle it drew from those cases is wrong. Nor do they explain how the district court clearly erred in concluding that Trump's litigation conduct in other cases was "similar" to the conduct here. All they offer is the cursory statement that the other cases were "brought for different, good faith reasons." We have no basis for vacatur.

5. The District Court's Fee Award Was Proper.

The district court engaged in a detailed review of the sanctions request and considered Trump and Habba's line-by-line objections. Trump and Habba argue that the district court erred because, despite the similarity of the amended complaint to the original complaint, "Defendants proceeded to bill a similar amount of time" drafting their motions to dismiss both complaints.

Trump and Habba forfeited this argument by not raising it in the district court. The closest they came to making this argument was their general statement that the fees requested were "unreasonable and excessive." All they offered to support this assertion were line-by-line objections to the fees requested, not the objection they make now. Because they did not make this argument in the district court, we decline to consider it.

### D. The District Court Did Not Abuse Its Discretion in Issuing Sanctions Under Rule 11.

Rule 11 allows a district court to impose sanctions on a party and his attorney for filing frivolous pleadings or motions. FED. R. CIV. P. 11(b)–(c). "Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022). Before imposing sanctions, a district court must decide that the claims were "objectively frivolous," and decide that the attorney "who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Failure to make a reasonable inquiry is grounds for sanctions "despite the attorney's good faith belief that the claims were sound." *Gulisano*, 34 F.4th at 942 (citation and internal quotation marks omitted). A pleading or motion is frivolous when it "has no reasonable factual basis"; "is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law"; or is filed "in bad faith for an improper purpose." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citation and internal quotation marks omitted).

The district court decided that Trump's attorneys filed frivolous pleadings in all three ways available under Rule 11. *See id*. We affirm the Rule 11 sanctions order for the same reasons we affirm the sanctions issued based on the district court's inherent authority. As discussed above, the district court did not clearly err in finding that Trump's attorneys filed the amended complaint in bad faith.

Trump's attorneys give us no reason to conclude the district court clearly erred in that finding.

### E. The District Court Did Not Abuse Its Discretion in Declining to Reconsider the Judgment.

A district court "may relieve a party . . . from a final judgment, order, or proceeding" for the reasons specifically enumerated in Federal Rule of Civil Procedure 60(b)(1)-(5), or for "any other reason that justifies relief" under the catchall provision in Rule 60(b)(6). FED. R. CIV. P. 60(b). "[O]nly 'extraordinary circumstances' can justify relief under the Rule 60(b)(6) catchall." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1617 (2025). The district court rejected the motion for reconsideration because the Durham Report was not newly discovered evidence under Rule 60(b)(2) and because it did not satisfy the stringent standard required by Rule 60(b)(6). In their initial brief, Trump and his attorneys argue only for relief under the Rule 60(b)(6) catchall. In their reply brief, they also argue that the Report was newly discovered evidence, but we "refuse[] to consider issues raised for the first time in an appellant's reply brief." *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1327 (11th Cir. 2020) (citation and internal quotation marks omitted).

Trump and his attorneys failed to satisfy their burden under Rule 60(b)(6). The release of a long-expected report is hardly extraordinary, especially when the movants fail to identify a single material fact in the report previously unknown to them. Trump and his attorneys argue that the Durham Report should be

considered in the interests of justice, but this argument does not cure the extraordinary circumstances problem or explain how the report would aid them. To try to prove the latter, Trump and his attorneys return to their equitable tolling argument. They tell us that the report establishes "that a federal investigation of the relevant conduct was ongoing during" Trump's first presidential term. But the existence of an investigation was already evident at the time of—and expressly mentioned in—the amended complaint. Trump and his attorneys offer us no reason to reverse the district court.

### F. The District Court Lacked Jurisdiction to Consider the Second Disqualification Motion.

A judge is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The district court rejected the second disqualification motion because it lacked jurisdiction to consider anything but the Rule 60(b) motion. Trump and his attorneys contend that disqualification is a duty that does not "dissipate[] upon appeal."

The district court lacked jurisdiction to rule on the motion to disqualify. We assume jurisdiction "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Because the dismissal and sanctions orders were on appeal when the disqualification motion was filed, there were no "aspects of the case" left for the district court to "control" other than Trump and his attorneys' request for an indicative ruling as permitted by Rule 62.1 *Id*. Rule 62.1 allows a district court

34                    Opinion of the Court                    22-13410

presented with a motion for relief from judgment to "defer con-sider[ation]" of the motion, "deny" it, or "state . . . that it would grant the motion if the court of appeals remands for that purpose." FED. R. CIV. P. 62.1(a). Rule 62.1 does not permit a party to simul-taneously request that a new district court judge consider the mo-tion for relief, much less take over "all future proceedings," as Trump and his attorneys requested.

Trump and his attorneys rely on a Tenth Circuit decision for the proposition that a judge has a "continuing duty to recuse . . . in some circumstances, after a proceeding." *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993). But that appeal involved post-trial motions for acquittal, not motions for relief from judgment pursu-ant to Rule 62.1. *Id.* at 991–92. In other words, *Cooley* discussed recusal when a district court has plenary jurisdiction, unlike here. They also point to *Cooley*'s statement that the disqualification re-quirement "is waivable, and, therefore, not jurisdictional in na-ture," *id.* at 996 n.9, as if to suggest that disqualification is "not lim-ited by formalities." The former does not imply the latter. For ex-ample, personal jurisdiction "is waivable"—and our personal juris-diction jurisprudence is certainly bound by formalities. Here we rely on nothing more than the "formalities" of the federal court system embodied in our rules of procedure. The district court cor-rectly ruled that it lacked jurisdiction to consider anything more than the Rule 60(b) motion.

### G. *We Decline to Sanction Appellants Under Rule 38.*

Orbis and Dolan have moved for fees and double costs under Rule 38. Rule 38 allows us to "award just damages and single or double costs to the appellee" if "an appeal is frivolous." FED R. APP. P. 38. An appeal is frivolous when the legal claim at issue lacks an "underlying factual basis," or when appellants "ignore[] the governing law and rel[y] on clearly frivolous arguments." *Jackson*, 898 F.3d at 1359 (citation and internal quotation marks omitted). Both Orbis and Dolan object to the appeal of the dismissal order.

We deny the motions for sanctions. Trump presented meritorious arguments that the district court erred in dismissing the claims against Orbis and Dolan. In Orbis's case, dismissal of the claims against it with prejudice was wrong because the district court lacked personal jurisdiction over it. And in Dolan's case, the district court erred in ruling that it lacked personal jurisdiction over him. Trump presented valid grounds for relief. And even though Trump also presented frivolous arguments, we do not intend to grant Rule 38 sanctions "every time one or two arguments in an appeal might arguably be deemed frivolous." *McCoy v. Iberdrola Renewables, Inc.*, 769 F.3d 535, 538 n.1 (7th Cir. 2014).

### IV. CONCLUSION

We **VACATE** the dismissal with prejudice of the claims against Orbis and **REMAND** with instructions to dismiss them without prejudice. We **AFFIRM** the dismissal with prejudice of the claims against the other defendants, both sanctions orders, and the denials of the reconsideration and disqualification motions. We

36                    Opinion of the Court                    22-13410

**DENY** the motions filed by Orbis and Dolan for appellate sanctions.

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 26, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-13410-HH   ; 22-14099 -HH   ; 23-10387 -HH   ; 23-13177 -HH
Case Style:  Donald Trump v. Hillary Clinton, et al
District Court Docket No:  2:22-cv-14102-DMM

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing <u>must</u> include a Certificate of Interested Persons**. <u>See</u> 11th Cir. R. 40-3.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, <u>see</u> FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion